CLOSED, SPECIAL

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:06-cv-00165-JG
## Internal Use Only

HARTFORD FIRE INSURANCE COMPANY et al v.
INTERDIGITAL COMMUNICATIONS CORPORATION
et al
Assigned to: HONORABLE JAMES T. GILES
Cause: 28:1332 Diversity-Insurance Contract

Date Filed: 01/12/2006
Jury Demand: Plaintiff
Nature of Suit: 110 Insurance
Jurisdiction: Diversity

### Plaintiff

$0 6 \equiv 4 2 2 -$

**HARTFORD FIRE INSURANCE
COMPANY**

represented by **GALE WHITE**
WHITE & WILLIAMS
1650 MARKET STREET
ONE LIBERTY PLACE, STE. 1800
PHILADELPHIA, PA 19103-7395
TEL 215-864-7000
Fax: FAX 215-864-7123
Email: whiteg@whiteandwilliams.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ANTHONY L. MISCIOSCIA**
WHITE & WILLIAMS
1650 MARKET STREET
ONE LIBERTY PLACE, SUITE 1800
PHILADELPHIA, PA 19103-7395
TEL 215-864-6356
Email:
miscosciaa@whiteandwilliams.com
*ATTORNEY TO BE NOTICED*

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2006 JUL -7 PM 2: 53

### Plaintiff

**HARTFORD CASUALTY
INSURANCE COMPANY**

represented by **GALE WHITE**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**ANTHONY L. MISCIOSCIA**
(See above for address)
*ATTORNEY TO BE NOTICED*

A TRUE COPY CERTIFIED TO FROM THE RECORD
DATED: 7/6/06
ATTEST: _____
DEPUTY CLERK, UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

7/6/2006 2:56 PM

V.

**Defendant**
**INTERDIGITAL COMMUNICATIONS CORPORATION**

represented by **ARLEIGH PRITCHARD HELFER**
HOYLE FICKLER HERSCHEL & MATHES, LLP
ONE S. BROAD STREET
SUITE 1500
PHILADELPHIA, PA 19107
215-981-5830
Email: ahelfer@hoylelawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**BESS MADWAY COLLIER**
HOYLE FICKLER HERSCHEL & MATHES LLP
ONE SOUTH BROAD ST.
SUITE 1500
PHILADELPHIA, PA 19107
215-981-5700
Email: bcollier@hoylelawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**STEPHEN J. MATHES**
HOYLE, FLICKER, HERSCHEL & MATHES, LLP
ONE SOUTH BROAD STREET
SUITE 1500
PHILADELPHIA, PA 19107
215-981-5880
Fax: 215-981-5959
Email: smathes@hoylelawfirm.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**
**INTERDIGITAL TECHNOLOGY CORPORATION**

represented by **ARLEIGH PRITCHARD HELFER**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**BESS MADWAY COLLIER**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**STEPHEN J. MATHES**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/12/2006 | ●1 | COMPLAINT against INTERDIGITAL COMMUNICATIONS CORPORATION, INTERDIGITAL TECHNOLOGY CORPORATION ( Filing fee $ 250 receipt number 924818.), filed by HARTFORD FIRE INSURANCE COMPANY, HARTFORD CASUALTY INSURANCE COMPANY. (Attachments: # 1)(cw, ) (Entered: 01/12/2006) |
| 01/12/2006 | ● | Summons Issued as to INTERDIGITAL COMMUNICATIONS CORPORATION, INTERDIGITAL TECHNOLOGY CORPORATION. Two Given To: Counsel on 01/12/06 (cw, ) (Entered: 01/12/2006) |
| 01/12/2006 | ● | DEMAND for Trial by Jury by HARTFORD FIRE INSURANCE COMPANY, HARTFORD CASUALTY INSURANCE COMPANY. (cw, ) (Entered: 01/12/2006) |
| 01/12/2006 | | ***Set/Clear Flags Set Flag Special Case Management Track (cw, ) (Entered: 01/12/2006) |
| 01/13/2006 | ●2 | Disclosure Statement Form by HARTFORD FIRE INSURANCE COMPANY. (jmp, ) (Entered: 01/17/2006) |
| 01/13/2006 | ●3 | Disclosure Statement Form by HARTFORD CASUALTY INSURANCE COMPANY. (jmp, ) (Entered: 01/17/2006) |
| 01/17/2006 | ●4 | NOTICE of Appearance by ARLEIGH PRITCHARD HELFER on behalf of INTERDIGITAL COMMUNICATIONS CORPORATION, INTERDIGITAL TECHNOLOGY CORPORATION with Certificate of Service (HELFER, ARLEIGH) (Entered: 01/17/2006) |
| 01/17/2006 | ●5 | NOTICE of Appearance by BESS MADWAY COLLIER on behalf of INTERDIGITAL COMMUNICATIONS CORPORATION, INTERDIGITAL TECHNOLOGY CORPORATION with Certificate of Service (COLLIER, BESS) (Entered: 01/17/2006) |
| 01/17/2006 | ●6 | NOTICE of Appearance by STEPHEN J. MATHES on behalf of INTERDIGITAL COMMUNICATIONS CORPORATION, INTERDIGITAL TECHNOLOGY CORPORATION with Certificate of Service (MATHES, STEPHEN) (Entered: 01/17/2006) |
| 01/20/2006 | ●7 | NOTICE of Appearance by ANTHONY L. MISCIOSCIA on behalf of HARTFORD FIRE INSURANCE COMPANY, HARTFORD CASUALTY INSURANCE COMPANY with Certificate of Service (MISCIOSCIA, ANTHONY) (Entered: 01/20/2006) |

| 01/25/2006 | ◉8 | WAIVER OF SERVICE Returned Executed by HARTFORD FIRE INSURANCE COMPANY, HARTFORD CASUALTY INSURANCE COMPANY. INTERDIGITAL COMMUNICATIONS CORPORATION waiver sent on 1/12/2006, answer due 3/13/2006; INTERDIGITAL TECHNOLOGY CORPORATION waiver sent on 1/12/2006, answer due 3/13/2006. (kw, ) Additional attachment(s) added on 1/27/2006 (kw, ). (Entered: 01/26/2006) |
|---|---|---|
| 03/13/2006 | ◉9 | MOTION to Transfer filed by INTERDIGITAL COMMUNICATIONS CORPORATION, INTERDIGITAL TECHNOLOGY CORPORATION.Memorandum of Law, Certificate of Service. (Attachments: # 1 Exhibit Exhibit A -- December 21, 2005 Memorandum Opinion)(HELFER, ARLEIGH) (Entered: 03/13/2006) |
| 03/13/2006 | ◉10 | MOTION to Dismiss *Count Two of Complaint as Premature and Unripe* filed by INTERDIGITAL COMMUNICATIONS CORPORATION, INTERDIGITAL TECHNOLOGY CORPORATION.Memorandum of Law, Certificate of Service. (Attachments: # 1 Exhibit A -- December 21, 2005 Memorandum Opinion)(HELFER, ARLEIGH) (Entered: 03/13/2006) |
| 04/05/2006 | ◉11 | Disclosure with Certificate of Service by all defendants.(HELFER, ARLEIGH) (Entered: 04/05/2006) |
| 04/05/2006 | ◉12 | STIPULATION AND ORDER THAT HARTFORD SHALL HAVE AN EXTENSION UNTIL & INCLUDING 4/10/2006 TO FILE ITS OPPOSITION IN RESPONSE TO INTERDIGITAL'S MOTION TO DISMISS COUNT TWO WITHOUT PREJUDICE, ETC. INTERDIGITAL SHALL BE ENTITLED TO FILE A REPLY MEMORANDUM OF LAW TO HARTFORD'S OPPOSITION TO INTERDIGITALS MOTION TO DISMISS COUNT TWO, BY 4/24/06. SIGNED BY JUDGE JAMES T. GILES ON 4/4/06. 4/6/06 ENTERED AND COPIES MAILED AND FAXED.(kw, ) (Entered: 04/06/2006) |
| 04/10/2006 | ◉13 | RESPONSE to Motion re 10 MOTION to Dismiss *Count Two of Complaint as Premature and Unripe Response of Plaintiffs, Hartford Fire Insurance Company and Hartford Casualty Insurance Company in Opposition to Defendants' Motion to Dismiss Count of the Complaint* filed by HARTFORD FIRE INSURANCE COMPANY, HARTFORD CASUALTY INSURANCE COMPANY. (Attachments: # 1)(MISCIOSCIA, ANTHONY) (Entered: 04/10/2006) |
| 04/24/2006 | ◉14 | REPLY to Response to Motion re 10 MOTION to Dismiss *Count Two of Complaint as Premature and Unripe Pursuant to Order entered April 6, 2006 and including Certificate of Service* filed by INTERDIGITAL COMMUNICATIONS CORPORATION, INTERDIGITAL TECHNOLOGY CORPORATION. (HELFER, ARLEIGH) (Entered: 04/24/2006) |
| 05/09/2006 | ◉15 | ORDER THAT ORAL ARGUMENTS SHALL BE HELD BY TELEPHONE ON ALL PENDING MOTIONS ON 5/23/2006 AT 5:00 |

| | | |
|---|---|---|
| | | P.M. SIGNED BY JUDGE JAMES T. GILES ON 5/4/06. 5/9/06 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 05/09/2006) |
| 05/23/2006 | ●16 | Report Of *Joint Report of the Parties Pursuant to Federal Rule of Civil Procedure 26(F)* by HARTFORD FIRE INSURANCE COMPANY, HARTFORD CASUALTY INSURANCE COMPANY. (MISCIOSCIA, ANTHONY) (Entered: 05/23/2006) |
| 05/23/2006 | ●17 | Minute Entry, re: Hearing - oral argument on all outstanding motions for proceedings held before Judge JAMES T. GILES on 5/23/06. Court rules: The above captioned case shall be transferred to the District of Delaware. Court Reporter: ESR. (kw, ) (Entered: 05/24/2006) |
| 06/02/2006 | ●18 | ORDER THAT DEFTS' MOTION TO TRANSFER VENUE TO THE U.S.D.C. FOR THE DISTRICT OF DELAWARE PURSUANT TO 28 U.S.C. SEC. 1404 IS GRANTED. THE ABOVE-CAPTIONED MATTER SHALL BE TANSFERRED TO THE U.S.D.C. FOR THE DISTRICT OF DELAWARE. IT IS FURTHER ORDERED THAT ALL PENDING MOTIONS ARE DENIED AS MOOT. SIGNED BY JUDGE JAMES T. GILES ON 5/30/06.6/5/06 ENTERED AND COPIES E-MAILED. (kw, ) (Entered: 06/05/2006) |
| 06/02/2006 | | ***Deadlines terminated., ***Documents terminated. (kw, ) (Entered: 06/05/2006) |
| 06/02/2006 | | ***Civil Case Terminated. (sf, ) (Entered: 06/06/2006) |
| 06/13/2006 | ●19 | ORDER THAT THE COURT'S ORDER OF 5/30/06 IS VACATED INASMUCH AS THE PENDING MOTION OF DEFTS' MOTION TO DISMISS COUNT TWO OF THE COMPLAINT WAS DENIED AS MOOT. DEFTS' MOTION & THE RESPONSES THERTO REMAIN PENDING FOR CONSIDERATION BY THE U.S.D.C. FOR THE DISTRICT OF DELAWARE UPON TRANSFER. SIGNED BY JUDGE JAMES T. GILES ON 6/13/06. 6/14/06 ENTERED AND COPIES E-MAILED.(kw, ) (Entered: 06/14/2006) |

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFF(S)

HARTFORD FIRE INSURANCE COMPANY and HARTFORD CASUALTY INSURANCE COMPANY

**DEFENDANT(S)**

INTERDIGITAL COMMUNICATIONS CORPORATION and INTERDIGITAL TECHNOLOGY CORPORATION

(b) County of Residence of First Listed Plaintiff    **Hartford, CT**
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    **N/A**
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorneys (Firm Name, Address, and Telephone Number)

White and Williams LLP
One Liberty Place, Suite 1800, 1650 Market Street
Philadelphia, PA 19103, (215) 864-7000

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | | |
|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question (U.S. Government Not a Party) | |
| ☐ 2 U.S. Government Defendant | X 4 Diversity (Indicate Citizenship of Parties in Item III) | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PLF | DEF | | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | X |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | X | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| X 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities – Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities – Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | |
|---|---|---|---|---|---|---|
| X 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (do not cite jurisdictional statutes unless diversity):    28 USC § 1332(a)
28 USC § 2201 et seq

Brief description of cause:    **DECLARATORY JUDGMENT ACTION Regarding Insurance Coverage**

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    X YES    ☐ NO

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE _____    DOCKET NUMBER _____

DATE _____    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

DOCS_PH 1840047v.1

# UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA - DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff:    Hartford Fire Insurance Company, Hartford Plaza, Hartford, CT 06115
                         Hartford Casualty Insurance Company, 4040 Vincennes Circle, Suite 100, Indianapolis, IN 46268

Address of Defendant:    Interdigital Communications Corporation, 781 Third Avenue, King of Prussia, PA 19406
                         Interdigital Technology Corporation, 300 Delaware Avenue, Suite 527, Wilmington, DE 19801

Place of Accident, Incident or Transaction:    N/A
                         *(Use Reverse Side for Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes ☒    No ☐

Case 2:06-cv-00165-JG   Document 1-1   Filed 01/12/2006   Page 2 of 66

Does this case involve multidistrict litigation possibilities?    Yes ☐    No ☒

*RELATED CASE IF ANY*
Case Number:                    Judge                         Date Terminated:

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in earlier numbered suit pending or within one year    Yes ☐    No ☒
   previously terminated action in this court?

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior    Yes ☐    No ☒
   suit pending or within one year previously terminated action in this court?

3. Does this case involve the validity or infringement of a patent already in suit or any earlier    Yes ☐    No ☒
   numbered case pending or within one year previously terminated action in this court?

---

**CIVIL:** (Place ☒ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act – Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Security Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases (please specify)

B. *Diversity Jurisdiction Cases:*

1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability - Asbestos
9. ☐ All Other Diversity Cases (Please specify)

---

## ARBITRATION CERTIFICATION
*(Check appropriate category)*

I,                    counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE:    January 12, 2006            Gale White                    46485
                                     Attorney-at-Law               Attorney I.D. #

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

---

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE:    January 12, 2006            Gale White                    46485
                                     Attorney-at-Law               Attorney I.D. #

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

## CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| HARTFORD FIRE INSURANCE | : | CIVIL ACTION |
| COMPANY and HARTFORD CASUALTY | : | |
| INSURANCE COMPANY | : | |
| v. | : | |
| INTERDIGITAL COMMUNICATIONS | : | |
| CORPORATION and INTERDIGITAL | : | NO. |
| TECHNOLOGY CORPORATION | | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a)    Habeas Corpus -- Cases brought under 28 U.S.C. §2241    ( )
        through §2255.

(b)    Social Security -- Cases requesting review of a decision of    ( )
        the Secretary of Health and Human Services denying
        plaintiff Social Security Benefits.

(c)    Arbitration -- Cases required to be designated for    ( )
        arbitration under Local Civil Rule 53.2.

(d)    Asbestos -- Cases involving claims for personal injury or    ( )
        property damage from exposure to asbestos.

(e)    Special Management -- Cases that do not fall into tracks (a)    (X)
        through (d) that are commonly referred to as complex and
        that need special or intense management by the court. (See
        reverse side of this form for a detailed explanation of
        special management cases.)

(f)    Standard Management -- Cases that do not fall into any one    ( )
        of the other tracks.

| | | |
|---|---|---|
| January 12, 2006 | _[signature]_ | Gale White |
| **Date** | **Attorney-at-law** | **Attorney for Plaintiffs** |
| 215-864-6234 | 215-789-7534 | whiteg@whiteandwilliams.com |
| **Telephone** | **Fax Number** | **E-mail Address** |

DOCS_PH 1840078v.1

## Civil Justice Expense and Delay Reduction Plan
### Section 1:03 - Assignment to a Management Track

(a)    The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)    In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

Case 1:06-cv-00422-JJF    Document 1    Filed 01/13/2006    Page 4 of 66

(c)    The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)    Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)    Nothing in this Plan is intended to supersede Local Civil Rules 3 or 7, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

## SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See § 1.02(e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HARTFORD FIRE INSURANCE COMPANY** <br> Hartford Plaza <br> Hartford, CT 06115 <br><br> and <br><br> **HARTFORD CASUALTY INSURANCE COMPANY** <br> 4040 Vincennes Circle, Suite 100 <br> Indianapolis, IN 46268 <br><br> Plaintiffs, <br><br> vs. <br><br> **INTERDIGITAL COMMUNICATIONS CORPORATION** <br> 781 Third Avenue <br> King of Prussia, PA 19406 <br><br> and <br><br> **INTERDIGITAL TECHNOLOGY CORPORATION** <br> 300 Delaware Avenue <br> Suite 527 <br> Wilmington, DE 19801 <br><br> Defendants. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | JURY TRIAL DEMANDED <br><br><br> **COMPLAINT** <br><br> CIVIL ACTION NO. |

## COMPLAINT FOR DECLARATORY JUDGMENT

By way of this Complaint, Hartford Fire Insurance Company and Hartford Casualty

Insurance Company (referred to herein collectively as "Hartford") allege as follows:

1.      In this action, Hartford seeks a declaration that it has no duty to defend

InterDigital Communications Corporation ("ICC") and/or InterDigital Technology Corporation

("ITC") (collectively referred to herein as "InterDigital") in connection with the underlying

action styled *Nokia Corporation and Nokia, Inc. v. InterDigital Communications Corporation and InterDigital Technology Corporation* (referred to herein as either the "*Nokia* action" or "*Nokia* complaint").

2.    In this action, Hartford also seeks a judicial declaration that it owes no indemnity to ICC and/or ITC in connection with the *Nokia* action.

3.    Alternatively, Hartford seeks a declaration of the parties' respective rights, duties and obligations, if any, under certain policies of insurance issued by Hartford to InterDigital Communications Corporation.

## THE PARTIES

4.    Plaintiff Hartford Fire Insurance Company ("Hartford Fire") is a citizen of the State of Connecticut, being a corporation that is organized under the laws of the State of Connecticut and which maintains its principal place of business in Hartford, Connecticut.

5.    Plaintiff Hartford Casualty Insurance Company ("Hartford Casualty") is a citizen of the State of Indiana, being a corporation that is organized under the laws of the State of Indiana and which maintains its principal place of business in Indianapolis, Indiana.

6.    On information and belief, Defendant ICC is a citizen of the Commonwealth of Pennsylvania, being a corporation that is organized under the laws of the Commonwealth of Pennsylvania and which maintains its principal place of business in King of Prussia, Pennsylvania. On information and belief, at all times relevant to this action, ICC was authorized to conduct business in the Commonwealth of Pennsylvania, including within the Eastern District.

-2-

7. On information and belief, Defendant ITC is a citizen of the state of Delaware, being a corporation that is organized under the laws of Delaware and which maintains its principal place of business in Wilmington, Delaware. On information and belief, at all times relevant to this action, ITC was authorized to conduct business in the Commonwealth of Pennsylvania, including within the Eastern District.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over this declaratory judgment action based upon 28 U.S.C. § 1332(a) and 28 U.S.C. § 2201 *et seq*. The amount in controversy exceeds, exclusive of interest and costs, the sum of $75,000.00.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

10. Pursuant to 28 U.S.C. § 1391(a), venue is proper in the Eastern District of Pennsylvania if either "a substantial part of the events or omissions giving rise to the claim occurred" and/or "any defendant is subject to personal jurisdiction at the time the action is commenced" in the Eastern District of Pennsylvania.

11. A substantial part of the events or omissions giving rise to this action took place in the Eastern District of Pennsylvania.

12. On information and belief, the Hartford Policies were delivered to ICC in the Commonwealth of Pennsylvania at its location in King of Prussia, Pennsylvania.

13.    Upon information and belief, ICC, a resident of the Commonwealth of

Pennsylvania, is located in and regularly conducts business from King of Prussia, Pennsylvania

and, therefore, is subject to personal jurisdiction within the Eastern District of Pennsylvania.

## THE UNDERLYING *NOKIA* COMPLAINT

14.    On or about January 12, 2005, Nokia Corp. and Nokia, Inc. (collectively "Nokia")

filed the *Nokia* complaint against ICC and ITC in the United States District Court for the District

of Delaware.

15.    The *Nokia* complaint sets forth 21 causes of action - 20 of which seek declarations

of non-infringement and/or invalidity as to various patents purportedly held by InterDigital

relating to mobile phone technology and one of which sets forth a claim for alleged violations of

the Lanham Act. *See Nokia* complaint, attached hereto as Exhibit A.

16.    The *Nokia* complaint sets forth Nokia's claims that:

(a)    InterDigital is the owner of many patents.  InterDigital has been claiming
since the early 1990's that these patents cover much of the technology
necessary to operate mobile phone systems. *See Nokia* complaint, ¶ 8.

(b)    InterDigital has been involved in litigation with two other companies,
Motorola, Inc. and Ericcson, involving whether these companies' products
infringe InterDigital's patents, but courts have rejected most of
InterDigital's patent infringement claims. *See Nokia* complaint, ¶¶ 9, 10.

(c)    InterDigital has "more recently" been claiming that its patents cover the
technology being used in new mobile phone systems, the so-called "3G"
technology.  *See Nokia* complaint, ¶ 11.

(d)    Nokia and InterDigital are parties to three licensing agreements which
license to Nokia the right to manufacture and sell products that fall within
the older (2G) and the new (3G) technology and patents owned by
InterDigital. *See Nokia* complaint, ¶ 12.

(e)    The parties are engaged in an arbitration relating to royalties owed by
Nokia under the licensing agreements. *See Nokia* complaint, ¶ 14.  On

-4-

information and belief, the arbitration has been resolved in favor of InterDigital.  *See* InterDigital Wins Ruling in Nokia Royalty Dispute, WALL STREET JOURNAL, December 29, 2005, attached as Exhibit B.

  (f)  The licensing agreements are in place only to the end of 2006 and Nokia contends that it believes (based in part on InterDigital's purported litigiousness) that InterDigital will sue Nokia for patent infringement at that time. *Nokia* complaint, ¶¶ 15, 16.

  17. Nokia's claim of violation of the Lanham Act (Count XXI of the *Nokia*

complaint) alleges that InterDigital has made false or misleading representations about

InterDigital patents and Nokia's products and the application of InterDigital's patents to Nokia's

products.  Nokia asserts that these statements have damaged Nokia's business and reputation in

the wireless market. *See Nokia* complaint, ¶ 142.

  18. The *Nokia* complaint alleges that InterDigital made these false statements in "bad

faith" and with "knowledge of their falsity." *See Nokia* complaint, ¶ 146.

  19. Upon information and belief, the *Nokia* complaint remains pending against

InterDigital; however, by Memorandum Opinion dated December 21, 2005, the United States

District Court for the District of Delaware dismissed Nokia's declaratory judgment claims

relating to non-infringement and patent invalidity for lack of jurisdiction. *Nokia Corp. v.

InterDigital Communications,* Slip Copy, 2005 WL 3525696 (D. Del. Dec. 21, 2005).

## THE HARTFORD POLICIES

The General Liability Policies

  20. Hartford Fire issued the following two commercial general liability policies to

ICC as the named insured:

  (a)  Policy No. 39 UUN TS 0845 DB for the December 22, 2003 to December 22, 2004 policy period; and,

-5-

(b)     Policy No. 39 UUN TS 0845 K1 for the December 22, 2004 to December 22, 2005 policy period.

21.     The Hartford Fire general liability policies provide coverage subject to, among other things, a $1 million per occurrence limit, a $1 million personal and advertising injury limit, and a $2 million general aggregate limit.

22.     Hartford Fire's general liability policies provide that Hartford will pay certain sums that the insured becomes legally obligated to pay as damages because of "bodily injury," "property damage," and/or "personal and advertising injury" to which the insurance applies.

23.     The "bodily injury" or "property damage" must be caused by an "occurrence" that takes place in a "coverage territory" during the policy period.

24.     The Hartford Fire general liability policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

25.     The Hartford Fire general liability policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time."

26.     The Hartford Fire general liability policies define "property damage" as "physical injury to tangible property, including all resulting loss of use of that property . . . ." and as "[l]oss of use of tangible property that is not physically injured. . . ."

27.     On information and belief, InterDigital does not contend that the *Nokia* complaint implicates "bodily injury" or "property damage" coverage.  If InterDigital contends that covered "bodily injury" and/or "property damage" are alleged in the *Nokia* complaint, Hartford will, at

-6-

that time, amend this complaint to include the applicable exclusions with regard to "bodily injury" and/or "property damage."

28.     The Hartford Fire general liability policies also provide a duty to defend and/or indemnify "those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which this insurance applies" provided that the offense arises out of the insured's business and was committed in the "coverage territory" during the policy period.

Case 1:06-cv-00422-JJF     Document 19-2     Filed 07/07/2006     Page 11 of 66

29.     The Hartford Fire general liability policies define "personal and advertising injury" as "injury, including consequential 'bodily injury,' arising out of one or more of the following offenses:

  a.     False arrest, detention or imprisonment;

  b.     Malicious prosecution;

  c.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

  d.     Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

  e.     Oral, written or electronic publication of material that violates a person's right of privacy;

  f.     Copying, in your "advertisement" or on "your web site", a person's or organization's "advertising idea" or style of "advertisement";

  g.     Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement" or on "your web site"; or

    h.    Discrimination or humiliation that results in injury to the
feelings or reputation of a natural person."

(Parts g. and i. of the definition of "personal and advertising injury" are added/amended to the
policy by the Cyberflex endorsement, amending Coverage B).

    30.    Hartford is not obligated, however, to defend or indemnify a "suit" that does not

seek covered damages.

    31.    The Hartford Fire general liability policies bar coverage for "personal and

advertising injury" to the extent precluded by the various policy exclusions, including but not

limited to those set forth below:

    a.    Knowing Violation of Rights of Another

    "Personal and advertising injury" caused by an offense
committed by, at the direction or with the consent or
acquiescence of the insured with the expectation of
inflicting "personal and advertising injury."

    b.    Material Published with Knowledge of Falsity

    "Personal and advertising injury" arising out of oral,
written or electronic publication of material, if done by or
at the direction of the insured with knowledge of its falsity.

    c.    Material Published Prior to Policy Period

    "Personal and advertising injury" arising out of oral,
written or electronic publication of material whose first
publication took place before the beginning of the policy
period.

    * * *

    g.    Quality or Performance of Goods - - Failure to Conform to Statements

    "Personal and advertising injury" arising out of the failure
of goods, products, or services to conform with any
statement of quality or performance made in your
"advertisement" or on "your web site";

    * * *

-8-

i.    Infringement of Intellectual Property Rights

"Personal and advertising injury" arising out [of] any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

\* \* \*

(Exclusions g. and i. are added/amended to the policy by the Cyberflex endorsement, amending Coverage B).

Case 2:06-cv-00165-JS    Document 1-1    Filed 01/12/2006    Page 13 of 66

<u>The Umbrella Policies</u>

32.    Hartford Casualty issued the following two umbrella policies to ICC as the named insured:

(a)    Policy No. 39 RHU TS 0953 for the December 22, 2003 to December 22, 2004 policy period; and,

(b)    Policy No. 39 RHU TS 0953 for the December 22, 2004 to December 22, 2005 policy period.

33.    The Hartford Casualty umbrella policies each provide coverage subject to a $10,000 self-insured retention, a $15 million per occurrence limit, and a $15 million general aggregate limit.

34.    The Hartford Casualty umbrella policies provide that Hartford Casualty "will pay those sums that the 'insured' becomes legally obligated to pay as 'damages' in excess of the 'underlying insurance,' . . . because of 'bodily injury,' 'property damage,' or 'personal and advertising injury' to which this insurance applies because of an 'occurrence.'"

35.    The Hartford Casualty umbrella policies define "occurrence" as:

1.    With respect to any "bodily injury" or "property damage": an accident, including continuous or repeated exposure to substantially the same general harmful conditions, and

-9-

2.   With respect to "personal and advertising injury": an offense described in one of the numbered subdivisions of that definition in the "underlying insurance".

36.    The terms "bodily injury," "property damage" and "personal and advertising injury," since not otherwise defined within the Hartford Casualty umbrella policies, "shall follow the definitions of the applicable 'underlying insurance' policy" – that is, the Hartford Fire

general liability policy definitions as set forth above.

37.    The Hartford Casualty umbrella policies will not provide either a defense or indemnity for "personal and advertising injury" in accordance with the following exclusion:

4.   Personal and Advertising Injury

This policy does not apply to "personal and advertising injury."

EXCEPTION

This exclusion does not apply if "underlying insurance" is applicable to "personal and advertising injury" and to claims arising out of that "personal and advertising injury."

38.    The Hartford Casualty umbrella policies provide a duty to defend "bodily injury," "property damage," and/or "personal and advertising injury" to which the insurance applies and for which either there is no "underlying insurance" or the "underlying insurance" has been exhausted by payments of "damages" for "occurrences" within the "policy period."

39.    The Hartford Fire general liability policies and the Hartford Casualty umbrella policies are collectively referred to herein as the "Hartford Policies."

-10-

## COVERAGE DISPUTE

40.    InterDigital has tendered the *Nokia* complaint to Hartford seeking a defense and indemnity for said action.

41.    In response to the tender of the *Nokia* complaint, by letter dated April 5, 2005, Hartford denied any obligation to defend and/or indemnify InterDigital and advised, *inter alia,* that the *Nokia* complaint did not seek damages for any "bodily injury," "property damage," or "personal and advertising injury" as defined in the Hartford Policies.

42.    In the April 5, 2005 letter, Hartford requested further information concerning ITC given that ITC was not expressly listed as a Named Insured or Additional Insured to the Hartford Policies.

43.    Thereafter, InterDigital challenged Hartford's declination of coverage and argued that the Lanham Act allegations within the *Nokia* complaint constitute a "personal and advertising injury."

44.    By letter dated June 6, 2005, Hartford reaffirmed its declination of coverage.

45.    By letter dated October 12, 2005, InterDigital again challenged Hartford's declination of coverage.

46.    Under the express terms, conditions, definitions, endorsements and exclusions of the Hartford Policies, there is no duty to defend any of the allegations contained within the *Nokia* complaint.

-11-

47.    Under the express terms, conditions, definitions, endorsements and exclusions of the Hartford Policies, Hartford has no obligation to indemnify InterDigital for any of the claims contained within the *Nokia* complaint.

48.    Pursuant to 28 U.S.C. § 2201 *et seq.*, Hartford is entitled to a judicial determination concerning the scope and of its rights and obligations, if any, under the Hartford Policies with respect to the *Nokia* complaint.

49.    For the reasons set forth herein, an actual, justiciable controversy exists between the parties concerning their respective rights and obligations, if any, under the Hartford Policies with respect to the *Nokia* complaint.

## COUNT ONE

*For A Declaratory Judgment That Hartford Has No Duty to Defend InterDigital in the Nokia Action*

50.    Hartford restates the allegations set forth in paragraphs 1 through 49 of this complaint and incorporates them by reference herein.

51.    Under the terms, conditions, definitions, exclusions and endorsements of the Hartford Policies, Hartford has no duty to defend InterDigital in connection with the *Nokia* complaint.

52.    The *Nokia* complaint does not allege any "bodily injury" caused by an "occurrence" as defined by the Hartford Policies.

53.    The *Nokia* complaint does not allege any "property damage" caused by an "occurrence" as defined by the Hartford Policies.

-12-

54.     The *Nokia* complaint does not allege any "personal and advertising injury" as defined by the Hartford Policies.

55.     The Hartford Fire general liability policies exclude "'personal and advertising injury' arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity." This exclusion applies to the *Nokia* complaint because, *inter alia*:

Case 1:06-cv-00422-JJF     Document 19-2     Filed 07/12/2006     Page 17 of 66

> (a)     The *Nokia* complaint alleges that InterDigital has made false statements regarding the scope and applicability of its patents in "bad faith" and with "knowledge of their falsity." *See Nokia* complaint, ¶ 146.
>
> (b)     The United States District Court for the District of Delaware held in its December 21, 2005 Memorandum Opinion that in order to state a claim under section 43(a) of the Lanham Act, Nokia must demonstrate that InterDigital (the patent holder) acted in bad faith. *See Nokia Corp. v. InterDigital Communications,* Slip Copy, 2005 WL 3525696, *5 (D. Del. Dec. 21, 2005).

56.     The Hartford Fire general liability policies exclude "'personal and advertising injury' caused by an offense committed by, at the direction or with the consent or acquiescence of the insured with the expectation of inflicting 'personal and advertising injury'." This exclusion applies to the *Nokia* complaint because, *inter alia:*

> (a)     The *Nokia* complaint alleges that InterDigital has used false or misleading descriptions and has made false public statements regarding the scope of its patent portfolio and the applicability of its patents. *See Nokia* complaint, ¶¶ 142-143.
>
> (b)     The *Nokia* complaint asserts that these statements were made in "bad faith" and with "knowledge of their falsity." *See Nokia* complaint, ¶ 146.

57.     The Hartford Fire general liability policies exclude "'personal and advertising injury' arising out of the oral, written or electronic publication of material whose first publication

-13-

took place before the beginning of the policy period." This exclusion applies to the *Nokia*

complaint because, *inter alia*:

> (a)   The earliest Hartford general liability policy issued to ICC bears an
>       inception date of December 22, 2003;
>
> (b)   There is no duty to defend available under the Hartford Fire general
>       liability policies for any "personal and advertising injury" arising out of
>       material "first published" prior to December 22, 2003.

Case 2:06-cv-00163-JS    Document 11    Filed 07/12/2006    Page 18 of 66

> (c)   The *Nokia* complaint alleges that InterDigital began making allegations in
>       the "early 1990's" concerning its patents for 2G technology (*see Nokia*
>       complaint, ¶ 8); and,
>
> (d)   The *Nokia* complaint alleges that "more recently" InterDigital's
>       allegations include that it also has patents which cover 3G technology.
>       *See Nokia* complaint, ¶ 11.

58.    The Hartford Fire general liability policies exclude "'personal and advertising

injury' arising out of the failure of goods, products or services to conform with any statement of

quality or performance made in your 'advertisement' or on 'your web site'." This exclusion

applies to the *Nokia* complaint because, *inter alia*:

> (a)   The Nokia complaint alleges that InterDigital claims in public statements
>       that InterDigital's patent portfolio covers the practice of 3G wireless
>       phone systems.  *See Nokia* complaint, ¶ 143.
>
> (b)   Nokia alleges that these statements are false and that the InterDigital
>       patents are not necessary to practice 3G wireless phone standards.  *See
>       Nokia* complaint, ¶ 143

59.    The Hartford Fire general liability policies exclude "'personal and advertising

injury' arising out of any violation of any intellectual property rights such as copyright, patent,

trademark, trade name, trade secret, service mark or other designation of origin or authenticity."

This exclusion applies to the *Nokia* complaint because, *inter alia*:

> (a)   The claims in the *Nokia* complaint arise out of a dispute concerning
>       intellectual property rights.

-14-

(b)    The Lanham Act violations alleged in Count XXI arise out of statements allegedly made by InterDigital regarding the scope of its patent portfolio and Nokia's possible violation of such patents. *See Nokia* complaint, ¶¶ 143, 145.

60.    The Hartford Policies cover only those "personal and advertising injury" offenses that were committed during the policy period. Certain, if not all, of the statements made by InterDigital took place outside the Hartford policy period.

(a)    Nokia alleges that InterDigital began making statements concerning the scope of InterDigital's patents in the "early 1990's." *See Nokia* complaint, ¶ 8.

(b)    Nokia further alleges that "more recently" InterDigital has made statements concerning the scope of InterDigital's 3G technology patents. *See Nokia* complaint, ¶ 11.

61.    Because the *Nokia* complaint does not allege any "personal and advertising injury" within the Hartford Fire general liability policies, there is no duty to defend implicated pursuant to the Hartford Casualty umbrella policies which specifically exclude "personal and advertising injury" unless "'underlying insurance' is applicable."

62.    Since there is no duty to defend under the Hartford Fire general liability policies for the reasons set forth herein, there is also no duty to defend under the umbrella policies issued by Hartford Casualty.

63.    To the extent that some or all of InterDigital's expense, loss or obligation was voluntarily incurred, without the consent of Hartford, such expense, loss or other obligations are excluded from the Hartford Policies.

-15-

64.    To the extent that InterDigital failed to mitigate and/or avoid any legal fees and costs incurred in connection with the underlying claims, such legal fees, costs or other obligations are excluded from the Hartford Policies.

65.    Any obligations otherwise determined to be afforded under the Hartford Policies (which Hartford denies) are limited, and perhaps rendered excess, by the existence of any other insurance and the terms and conditions of any "other insurance" provisions in the Hartford Policies.

**WHEREFORE,** Plaintiffs Hartford Fire and Hartford Casualty respectfully request that the Court:

    (a)    Declare that Hartford has no duty to defend InterDigital in connection with the *Nokia* complaint;

    (b)    Alternatively, should the Court determine that there is a duty to defend, the Court should also:

        (1)    declare the respective rights and obligations of the parties under the Hartford Policies, and declare the limits of any obligation of Hartford to defend InterDigital with respect to the *Nokia* complaint;

        (2)    determine the respective rights and obligations (if any) of Hartford in seeking and obtaining reimbursement from InterDigital of any fees, costs or settlements not related to the defense or settlement of a potentially covered claim;

    (c)    Grant Hartford such other and further relief as may be necessary and appropriate under the circumstances.

## COUNT TWO

*For A Declaratory Judgment that Hartford Owes No Indemnity to InterDigital in the Nokia Action*

66.    Hartford restates the allegations set forth in paragraphs 1 through 65 of this complaint and incorporates them by reference herein.

67.    Under the terms, conditions, definitions, exclusions and endorsements of the Hartford Policies, there is no indemnity available to InterDigital in connection with the *Nokia* complaint.

68.    Since Hartford has no duty to defend the *Nokia* complaint for all of the reasons set forth above, Hartford has no duty to indemnify InterDigital for the claims set forth in the *Nokia* complaint.

69.    Even if Hartford were to have an obligation to defend the *Nokia* complaint (which Hartford denies), Hartford may not ultimately owe any indemnity to InterDigital because the duty to indemnify is not based on the allegations of the complaint.

70.    The duty to indemnify is based on the true facts which have not yet been determined.

**WHEREFORE,** Plaintiffs Hartford Fire and Hartford Casualty respectfully request that the Court:

(a)    Declare that Hartford has no obligation to indemnify InterDigital in connection with the *Nokia* complaint;

(b)    Alternatively, should the Court determine that there an obligation to indemnify InterDigital, the Court should also:

(1)    declare the respective rights and obligations of the parties under the Hartford Policies, and declare the limits of any obligation of Hartford to indemnify InterDigital with respect to the *Nokia* complaint;

(2)     determine the respective rights and obligations (if any) of Hartford in seeking and obtaining reimbursement from InterDigital of any fees, costs or settlements not related to the defense or settlement of a potentially covered claim;

(c)     Grant Hartford such other and further relief as may be necessary and appropriate under the circumstances.

## COUNT THREE

*For A Declaratory Judgment Concerning Whether ITC Is An Insured Under The Hartford Policies And Entitled to Either A Defense or Indemnity Thereunder*

71.     Hartford restates the allegations set forth in Paragraphs 1 through 70 of this complaint and incorporates them by reference herein.

72.     By letter dated March 28, 2005, Hartford acknowledged receipt of the *Nokia* complaint, advised that "InterDigital Technology Corporation" is not listed on the policy, and asked for information about the relationship of this entity to InterDigital Communications Corporations, Inc.

73.     InterDigital responded by letter dated April 21, 2005 and advised that "InterDigital Technology Corporation is (i) a direct, wholly owned, subsidiary of InterDigital Communications Corporation and (ii) not an insured under another policy." *See* InterDigital Letter dated April 21, 2005, attached hereto as Exhibit C.

74.     InterDigital requested that Hartford confirm that ITC is an "insured under Section II of the Commercial General Liability coverage Form . . . and the umbrella policy referenced above."

-18-

75.     ITC is not expressly named as either a Named Insured or an Additional Insured under the Hartford Policies.

76.     ITC is not a Named Insured to the Hartford Policies unless it qualifies as such pursuant to a Named Insured endorsement attached to one of the Hartford Policies.

77.     Furthermore, unless ITC qualifies as an insured pursuant to the "Who Is An Insured" provisions to any of the Hartford Policies, ITC is not an insured under such policies.

78.     No duty to defend or indemnify is extended to ITC under the Hartford Policies to the extent that ITC does not constitute a named insured or an additional insured under the policies.

**WHEREFORE,** Plaintiffs Hartford Fire and Hartford Casualty respectfully request that the Court:

(a)     Declare that Hartford has no duty to defend or indemnify ITC in connection with the *Nokia* complaint;

(b)     Alternative, should the Court determine that there is a duty to defend and/or indemnify ITC, the Court should also:

(1)     declare the respective rights and obligations of the parties under the Hartford Policies, and declare the limits of any obligation of Hartford to defend and/or indemnify ITC with respect to the *Nokia* complaint;

(2)     determine the respective rights and obligations (if any) of Hartford in seeking and obtaining reimbursement from ITC of any fees, costs or settlements not related to the defense or settlement of a potentially covered claim;

(c)    Grant Hartford such other and further relief as may be necessary and
appropriate under the circumstances.

**WHITE AND WILLIAMS**

Attorneys for Plaintiffs, Hartford Fire
Insurance Company and Hartford Casualty
Insurance Company

Case 2:06-cv-00165-JG    Document 1-1    Filed 01/12/2006    Page 24 of 66

By: _____

Gale White, Esquire
Anthony L. Miscioscia, Esquire
Pa. I.D. Nos: 46485/69215
1800 One Liberty Place
Philadelphia, PA  19103-7395
Tel. No. (215) 864-6234/6356

-20-

**A**



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and NOKIA,
INC.

    Plaintiffs,

      v.

INTERDIGITAL COMMUNICATIONS
CORPORATION and INTERDIGITAL
TECHNOLOGY CORPORATION

    Defendants.

**COPY**

Civil Action No.  0 5 - 1 6

**DEMAND FOR JURY TRIAL**

## COMPLAINT FOR DECLARATORY JUDGMENTS
## OF PATENT INVALIDITY AND NONINFRINGEMENT AND VIOLATIONS OF
## THE LANHAM ACT RELATING TO 3G MOBILE PHONE TECHNOLOGY

Plaintiffs Nokia Corporation and Nokia, Inc. (collectively referred to as "Nokia")

file this Complaint for Declaratory Judgments Of Patent Invalidity And Noninfringement

And Violations Of The Lanham Act Relating To 3G Mobile Phone Technology against

Defendants InterDigital Communications Corporation and InterDigital Technology

Corporation (collectively "InterDigital") and in support of their Complaint allege:

### Nature And Basis Of Action

1.    This is an action arising under the Declaratory Judgment Act, 28 U.S.C.

§§ 2201 and 2202, the United States Patent Laws, 35 U.S.C. § 1 *et seq*. and the Lanham

Act, 15 U.S.C. §1051 *et seq*.. Nokia requests declarations that: (i) the claims of various

patents owned by InterDigital are invalid; and (ii) Nokia does not infringe any claim of

the patents. Nokia seeks damages and injunctive relief for InterDigital's violations of the

Lanham Act.

### The Parties

2.　　Nokia Corporation is a global leader in the design, manufacture and supply of mobile handset and infrastructure products. Nokia Corporation is incorporated under the laws of Finland and has its principal place of business at Keilalahdentie 4, Espoo, Finland. Nokia, Inc. is incorporated under the laws of the state of Delaware and has a principal place of business at 6000 Connection Dr., Irving, Texas.

3.　　InterDigital Communications Corporation is incorporated under the laws of the State of Pennsylvania and has its principal place of business at 781 Third Avenue, King of Prussia, Pennsylvania. InterDigital Technology Corporation is incorporated under the laws of the State of Delaware and has its principal place of business at 300 Delaware Avenue, Suite 527, Wilmington, Delaware. Upon information and belief, InterDigital Technology Corporation is a wholly-owned subsidiary of InterDigital Communications Corporation.

### Jurisdiction And Venue

4.　　This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 based on federal question jurisdiction.

5.　　This Court has personal jurisdiction over InterDigital Communications Corporation and InterDigital Technology Corporation pursuant to the laws of the State of Delaware, including the Delaware long-arm statute, 10 Del. Code § 3104.

6.　　Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## Facts Giving Rise To This Action

7.    InterDigital has continued to represent for more than a decade both publicly and to the wireless handset industry that it has hundreds of patents that cover the principal wireless handset standards in the United States.

*InterDigital's 2G Allegations*

8.    InterDigital began making allegations in the early 1990's that it had hundreds of patents that cover the principle "2G" mobile phone systems that implement the IS-54/136 and GSM mobile phone standards. The IS-54/136 and GSM standards are implemented through so-called 2G mobile phone systems using Time Division Multiple Access ("TDMA") technology. The IS-54/136 standard, or US-TDMA, is a standard developed in the United States and includes an early version of the standard, IS-54, and a later revision, IS-136. The GSM standard is a similar standard originally developed in Europe. Both IS-54/136 and GSM standards use TDMA as a means by which multiple mobile callers can use the same radio frequency concurrently.

9.    InterDigital has in the past asserted certain of its 2G patents in court against Motorola, Inc. and Ericsson. The courts in the *Motorola* and *Ericsson* cases determined that most, if not all, of the asserted patents in those cases were either invalid or not infringed by mobile handset and infrastructure products used in the United States.

10.    Most of the 2G patents asserted against Motorola and Ericsson by InterDigital were found to be invalid or not infringed for at least the following reasons:

- Many of the broad claims of the patents are limited to an obsolete speech compression method different from the method used in 2G systems in the United States;

- Many of the claims of the InterDigital 2G Patents are limited to a system with a single base station controlling a single cell. This single base station

limitation was used by InterDigital in the United States Patent Office in an effort to distinguish InterDigital's patents from prior art. No industry standard applicable to mobile handsets or their associated infrastructure contemplates such a system; instead, all current mobile systems in use in the United States use multiple base stations to control multiple cells.

- In an effort to distinguish prior art, many of the claims of the 2G patents were limited – during prosecution of the respective applications in the United States Patent Office and in subsequent litigation – to systems in which the call path is hard-wired, rather than controlled by software. Likewise, no industry standard applicable to mobile handsets or their associated infrastructure requires hard-wired call paths; instead, mobile systems in use in the United States during any relevant period are controlled dynamically by software.

Case 2:06-cv-00055-CE  Document 1  Filed 11/2/2006    Page 29 of 66

Comparison of the claim limitations of InterDigital 2G patents and their prosecution histories to either the 2G industry standards or any systems in use in the United States shows that none of the hundreds of claims can be infringed by any of those 2G systems, including those utilized by companies such as Motorola, Ericsson and Nokia.

*InterDigital's 3G Allegations*

11.    More recently, InterDigital has made allegations that it has patents that cover "3G" mobile systems that are currently being rolled out and further developed in the United States, referred to as the WCDMA and CDMA 2000 products. The WCDMA and CDMA 2000 standards are implemented through 3G mobile systems using Code Division Multiple Access ("CDMA") technology. The patents that InterDigital contends cover 3G mobile systems (hereafter collectively defined as "InterDigital's 3G Patents"), copies of which are attached as Exhibits A-R, include:

U.S. Patent No. 5,574,747, issued November 12, 1996 (the "'747 patent");

U.S. Patent No. 6,181,949, issued January 30, 2001 (the "'949 patent");

U.S. Patent No. 5,841,768, issued November 24, 1998 (the "'768 patent);

- 4 -

U.S. Patent No. 6,215,778, issued April 10, 2001 (the "'778 patent");

U.S. Patent No. 5,179,572, issued January 12, 1993 (the "'572 patent);

U.S. Patent No. 6,075,792, issued June 13, 2000 (the "'792 patent");

U.S. Patent No. 5,799,010, issued August 25, 1998 (the "'010 patent");

U.S. Patent No. 5,614,914, issued March 25, 1997 (the "'914 patent");

U.S. Patent No. 5,663,990, issued September 2, 1997 (the "'990 patent");

U.S. Patent No. 5,859,879, issued January 12, 1999 (the "'879 patent");

U.S. Patent No. 5,363,403, issued November 8, 1994 (the "'403 patent");

U.S. Patent No. 5,553,062, issued September 3, 1996 (the "'062 patent");

U.S. Patent No. 5,719,852, issued February 17, 1998 (the "'852 patent");

U.S. Patent No. 6,014,373, issued January 11, 2000 (the "'373 patent");

U.S. Patent No. 6,259,688, issued July 10, 2001 (the "'688 patent");

U.S. Patent No. 6,289,004, issued September 11, 2001 (the "'004 patent");

U.S. Patent No. 5,081,643, issued January 14, 1992 (the "'643 patent");

and

U.S. Patent No. 5,673,286, issued September 30, 1997 (the "'286 patent").

Although InterDigital contends that 3G mobile products made in the United States infringe its 3G Patents, all of InterDigital's 3G Patents are either invalid or not infringed by mobile handset and infrastructure products being rolled out on the United States. In particular, no Nokia product either sold in the United States or in development for sale in the United States infringes any valid claim of InterDigital's 3G Patents.

*The License Agreement Between Nokia and InterDigital*

12.    Nokia and InterDigital are parties to three expressly interrelated agreements ("the Agreements"), the primary subject matter of which is a license to Nokia of the patents owned by InterDigital that InterDigital alleges are required to make and sell products that are compliant with the 2G and 3G telephone standards.

13.    There is a dispute between Nokia and InterDigital as to the validity and scope of the patents that form the basis of the Agreements between them.

14.    With respect to 2G products, despite the invalidity and/or narrowness of InterDigital's 2G patents as determined by the courts in the *Motorola* and *Ericsson* cases, InterDigital has publicly announced its intention to seek hundreds of millions of dollars in royalties from Nokia under the Agreements. Nokia has refused to pay the fees InterDigital is demanding. The parties are currently engaged in an International Chamber of Commerce Arbitration with respect to 2G products, entitled *Nokia Corporation v. InterDigital Communications Corporation and InterDigital Technology Corporation,* ICC Case Number 12 829/JNK.

15.    With respect to 3G products, InterDigital continues to contend that its patents broadly cover 3G technology. Under the Agreements, Nokia is licensed to InterDigital's 3G patents only through the end of 2006. Nokia is currently designing, rolling out and further developing 3G products in the United States that will be manufactured and sold by Nokia after 2006.

16.    Nokia has a reasonable apprehension that InterDigital will sue Nokia for patent infringement with respect to InterDigital's 3G patents.

17.    InterDigital has a history of litigiousness. InterDigital's tactics are so well known, in fact, that *Forbes Magazine* published an article on InterDigital's litigation tactics, a copy of which is attached as Exhibit S. The article describes InterDigital as a company that uses litigation to "extract[] money from companies" that make handheld mobile phones. The article goes on to explain that InterDigital

has earned enmity for its hardball enforcement of intellectual property rights. Virtually all of its $33 million profit from the first nine months [of 2003] has come from dragging customers like Ericsson and NEC Corp. through legal disputes over patents.

18.    In an August 13, 2003, investor conference call, InterDigital's Chief Executive Officer, Howard Goldberg, acknowledged that InterDigital uses litigation as leverage in disputes with companies such as Nokia, included bringing injunctions to prevent the shipping of handsets. A copy of the transcript of the conference call is attached as Exhibit T (see page 14).

19.    Such articles and statements by InterDigital executives support Nokia's reasonable apprehension that it has regarding InterDigital's willingness and intent to pursue patent infringement litigation against it.

20.    Nokia has filed this suit because of InterDigital's efforts to enhance the value of its patents and Nokia's current need to design and develop 3G products that it will put into wide scale production after 2006.

21.    Nokia seeks declarations that the claims of InterDigital's 3G Patents are either invalid or that Nokia's 3G products do not infringe any valid claim of those patents.

22.    Although Nokia and InterDigital are currently arbitrating their 2G dispute, that dispute does not involve 3G products. Further, when Nokia attempted to raise the validity and scope of relevant InterDigital Patents in the arbitration by requesting that the

Arbitral Tribunal issue declarations on the validity and scope of InterDigital's 2G patents, InterDigital denied that declarations the invalidity and scope of its patents were arbitrable disputes under the Agreements.

## COUNT I.
### Declaration Of NonInfringement Of U.S. Patent No. 5,574,747

23.     Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 22, as if set forth in full.

24.     The '747 patent relates to a system and method for adaptive power control of a spread spectrum transmitter of a mobile unit operating in a cellular-communications network having a plurality of mobile units in communication with a base station.  Claims 1-3, 6-10 and 13-24 of the '747 patent are directed to a circuit in the mobile unit which changes the transmitted power of the handset so that the power level detected by the base station is at a "threshold level."  This change is made using a step-size algorithm located in the mobile unit.  The '747 patent requires that an accumulator in a handset store a series of prior power level values and uses this series in the power control algorithm used by the handset.

25.     The WCDMA and CDMA 2000 3G standards require a command to raise or lower transmitted power within a WCDMA or CDMA 2000 mobile handset based on a power control algorithm.   The standards specify that this adjustment be made by infrastructure, not by an algorithm contained in the handset.  Accordingly, Nokia does not infringe claims 1-3, 6-10 and 13-24 of the '747 patent either literally or under the doctrine of equivalents, nor does it contribute to the infringement by others or actively induce others to infringe these claims of the '747 patent.

26.     Accordingly, Nokia is entitled to a declaratory judgment of non-infringement of the '747 patent.

## COUNT II.
### Declaration Of Invalidity Of U.S. Patent No. 5,574,747

27.     Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 26, as if set forth in full.

28.     Upon information and belief, at least claims 4-5 and 11-12 of the '747 patent are invalid.  The '747 patent relates to a system and method for adaptive power control of a spread spectrum transmitter of a mobile unit operating in a cellular-communications network having a plurality of mobile units in communication with a base station.  Claims 4-5 and 11-12 of the '747 patent are invalid in view of a 1993 IEEE publication, Viterbi & Viterbi, *Performance of Power-Controlled Wideband Terrestrial Digital Communication,* IEEE Transactions on Communications, vol. 41, no. 4, April 1993, pp. 559-569, because the limitations of these claims of the '747 patent are either contained in the Viterbi reference or are inherent in wireless systems, including IS-95 systems.

29.     Accordingly, Nokia is entitled to a declaratory judgment of invalidity of claims 4-5 and 11-12 of the '747 patent.

## COUNT III.
### Declaration Of Noninfringement Of U.S. Patent No. 6,181,949

30.     Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 29, as if set forth in full.

31.     The '949 patent relates to a method of controlling initial power ramp-up in CDMA systems by using short codes.  Specifically, the patent relates to a system and

method of controlling transmission power during the establishment of a channel in a CDMA communication system utilizing the transmission of a short code from a subscriber unit to a base station during initial power ramp-up. According to the '949 patent, the short code is a sequence for detection by the base station which has a much shorter period than a conventional spreading code. The ramp-up starts from a power level that is guaranteed to be lower than the required power level for detection by the base station. The subscriber unit quickly increases transmission power while repeatedly transmitting the short code until the signal is detected by the base station. Once the base station detects the short code, it sends an indication to the subscriber unit to cease increasing transmission power. Various claims of the '949 patent require a second ramp-up rate after the initial power ramp-up.

32.    Nokia does not infringe Claims 3-5, and 8-10 of the '949 patent. Each of those claims requires a second ramp-up period after the first ramp-up period. WCDMA and CDMA 2000 standards compliant handsets, including those of Nokia, do not have a second ramp-up period. Rather they have a single step increase in the power level after the initial ramp-up. Therefore, Nokia does not infringe Claims 3-5 or 8-10 of the '949 patent either literally or under the doctrine of equivalents, nor does it contribute to the infringement by others or actively induce others to infringe these claims of the '949 patent.

33.    Accordingly, Nokia is entitled to a declaratory judgment of non-infringement of the '949 patent.

## COUNT IV.
### Declaration Of Invalidity Of U.S. Patent No. 6,181,949

34.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 33, as if set forth in full.

35.    Upon information and belief, claims 1-2 and 6-7 of the '949 patent are invalid.    As alleged in paragraph 31 above, the '949 patent relates to a method of

controlling initial power ramp-up in CDMA systems.

36.    Claims 1-2, and 6-7 of the '949 patent are either anticipated or obvious in view of the IS-95A standard.    The IS-95A standard, published by the Telecommunications Industry Association, May 1995, discloses each limitation of these claims of the '949 patent.

37.    Claims 1-2, and 6-7 of the '949 patent are also either anticipated or obvious in view of Viterbi & Viterbi, *Erlang Capacity of a Power Controlled CDMA System*, IEEE Journal on Selected Areas in communications, vol. 11, no. 6, August 1993, pp. 892-900.  With respect to the ramp-up limitation contained in the claims of the '949 patent, Viterbi states "[i]f this initial power level is not sufficient for detection, and hence acknowledgement is not received, the user increases his power in constant decibel steps every frame until his request is acknowledged." Id. at p. 898.

38.    Accordingly, Nokia is entitled to a declaratory judgment that Claims 1-2 and 6-7 of the '949 patent are invalid.

## COUNT V.
### Declaration Of Noninfringement Of U.S. Patent No. 5,841,768

39.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 38, as if set forth in full.

40.    The '768 patent relates to a method of controlling initial power ramp-up in a CDMA system.  Specifically, the patent relates to a system and method of controlling transmission power during the establishment of a channel in a CDMA communication system utilizing the transmission of a code from a subscriber unit to a base station during initial power ramp-up.  The code is a sequence for detection by the base station which has a shorter period than a conventional spreading code.  The ramp-up starts from a power level that is guaranteed to be lower than the required power level for detection by the base station. The subscriber unit quickly increases transmission power while repeatedly transmitting the code until the signal is detected by the base station.  Once the base station detects the code, it sends an indication to the subscriber unit to cease increasing transmission power.  The claims of the '768 patent also require transmission of a second periodic signal at a second ramp-up rate with the second ramp-up rate being less than said first ramp-up rate.

41.    Nokia's products do not implement a second ramp-up rate function as claimed in the '768 patent nor does the WCDMA or CDMA 2000 standards require such a second ramp-up rate function.  Therefore, Nokia does not infringe any claim of the '768 patent either literally or under the doctrine of equivalents, nor does it contribute to the infringement by others or actively induce others to infringe any claim of the '768 patent.

42.    Accordingly, Nokia is entitled to a declaratory judgment of non-infringement of the '768 patent.

## COUNT VI.
### Declaration Of Noninfringement of U.S. Patent No. 6,215,778

43.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 42, as if set forth in full.

- 12 -

44.    The '778 patent relates to a bearer channel modification system for a code division multiple access (CDMA) communication system.

45.    According to the '778 patent, the multiple access, spread-spectrum communication system disclosed in the patent processes a plurality of information signals received by a Radio Carrier Station (RCS) over telecommunication lines for simultaneous transmission over a radio frequency (RF) channel as a code-division-multiplexed (CDM) signal to a group of Subscriber Units (SUs).  The RCS receives a call request signal that corresponds to a telecommunication line information signal, and a user identification signal that identifies a user to receive the call. The RCS includes a plurality of Code Division Multiple Access (CDMA) modems, one of which provides a global pilot code signal.  The modems provide message code signals synchronized to the global pilot signal.  Each modem combines an information signal with a message code signal to provide a CDM processed signal. The RCS includes a system channel controller coupled to receive a remote call.  An RF transmitter is connected to all of the modems to combine the CDM processed signals with the global pilot code signal to generate a CDM signal. The RF transmitter also modulates a carrier signal with the CDM signal and transmits the modulated carrier signal through an RF communication channel to the SUs.  Each SU includes a CDMA modem which is also synchronized to the global pilot signal. The CDMA modem despreads the CDM signal and provides a despread information signal to the user. The system includes a closed loop power control system for maintaining a minimum system transmit power level for the RCS and the SUs, and system capacity management for maintaining a maximum number of active SUs for improved system performance.

- 13 -

46.    Accordingly, the claims of the '778 patent are directed to having a subscriber unit change from one spread spectrum channel to another spread spectrum channel having a different data rate.

47.    WCDMA standards compliant infrastructure manages the bandwidth assigned to a base station by changing the bandwidth of an assigned channel, rather than dynamically adding or removing channels.  Nokia's WCDMA products do not infringe the '778 patent either literally or under the doctrine of equivalents, nor does Nokia contribute to the infringement by others or actively induce others to infringe any claim of the '778 patent.

48.    In CDMA 2000 standards compliant systems, infrastructure manages the bandwidth assigned to a base station by determining the order, type, and number of channels assigned to handsets.  Claims 4 of the '778 patent requires assigning multiple channels to a subscriber station at a time.  CDMA 2000 infrastructure can manage the bandwidth of a handset solely by changing the type of channel currently assigned to the handset.  Nokia's CDMA 2000 handsets do not infringe Claim 4 of the '778 patent either literally or under the doctrine of equivalents, nor does Nokia contribute to the infringement by others or actively induce others to infringe any claim of the '778 patent.

49.    Nokia is entitled to a declaratory judgment of non-infringement of the '778 patent.

## COUNT VII.
### Declaration Of Invalidity of U.S. Patent No. 6,215,778

50.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 49, as if set forth in full.

51.    As alleged in paragraph 44 above, the '778 patent relates to a bearer channel modification system for a code division multiple access (CDMA) communication system.

52.    Upon information and belief, the claims of the '778 patent are invalid.

53.    The claims of the '778 patent are directed to having a subscriber unit change from one spread spectrum channel to another spread spectrum channel having a different data rate.

54.    The claims of the '778 patent are either anticipated or obvious in view of the IS-95a standard of May 1995, as modified by *Telecommunications Systems Bulletin, Support for 14.4 kbps Data Rate and PCS Interaction for Wideband Spread Spectrum Cellular Systems*, dated May 11, 1995. Each limitation of the claims of the '778 patent is disclosed or obvious in view of the IS-95a Telecommunications Systems Bulletin and/or the IS-95a standard.

55.    The claims of the '778 patent are either anticipated or obvious in view of the A. Baier et al, *Design Study for a CDMA-Based Third-Generation Mobile Radio System*, IEEE Journal on Selected Areas in Communications, vol. 12, no. 4, May 1994. Each limitation of the claims of the '778 patent is disclosed in the Baier reference and/or the IS-95 standard.

56.    Nokia is entitled to a declaratory judgment that the claims of the '778 patent are invalid.

**COUNT VIII.**
Declaration Of Noninfringement of U.S. Patent No. 5,179,572

57.    Nokia incorporates and re-alleges the averments contained in paragraphs 1
through 56, as if set forth in full.

58.    The '572 patent relates to a spread spectrum conference calling system and
method. Specifically, the patent relates to a spread-spectrum-conference-calling receiver

Case 2:06-cv-00165-JG    Document 1-1    Filed 01/12/2006    Page 41 of 66

for use over multiple communications channels. The patent specifies that at each of a
plurality of spread-spectrum transmitters, a transmitter-generic-chip-code generator
generates a generic-chip-code signal and a transmitter-message-chip-code generator
generates a message-chip-code signal. An EXCLUSIVE-OR gate spread-spectrum
processes message data with the message-chip-code signal to generate a spread-spectrum
signal. The combiner combines the generic-chip-code signal and the spread-spectrum-
processed signal. A plurality of receiver-generic-chip-code generators generate a
plurality of replicas of the generic-chip-code signal. Each receiver-generic mixer
recovers a carrier signal from one of the plurality of received spread-spectrum-
communications signals. A plurality of receiver-message-chip-code generators generate
a plurality of replica of the message-chip-code signals. A plurality of receiver-message
mixers despread one of the plurality of received spread-spectrum-communications signal
as a modulated-data signal. Tracking and acquisition circuits use the recovered carrier
signal for synchronizing the replicas of the generic-chip-code signals to the recovered
carrier signals, respectively. An envelope detector demodulates the modulated-data signal
as a demodulated signal.

59.    The claims of the '572 patent, therefore, are directed to a system and
method for synchronously demodulating a plurality of modulated data signals on a

plurality of spread spectrum channels in a conference call. The conference call is sent on multiple channels and the subscriber unit demodulates all of the calls in order to listen to them.

60.     Nokia's CDMA 2000 and WCDMA products do not provide for conference calling such that the calls are combined from separate spread spectrum channels at the mobile handset. Therefore, Nokia's CDMA 2000 handsets do not infringe the '572 patent either literally or under the doctrine of equivalents, nor does Nokia contribute to the infringement by others or actively induce others to infringe any claim of the '572 patent.

61.     Nokia is entitled to a declaratory judgment of noninfringement of the '572 patent.

## COUNT IX.
### Declaration Of Invalidity of U.S. Patent No. 5,179,572

62.     Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 61, as if set forth in full.

63.     As alleged in paragraph 58 above, the '572 patent relates to a spread spectrum conference calling system and method. Specifically, the claims of the '572 patent are directed to a system and method for synchronously demodulating a plurality of modulated data signals on a plurality of spread spectrum channels in a conference call. The conference call is sent on multiple channels and the subscriber unit demodulates all of the calls in order to listen to them.

64.     Upon information and belief, if the claims of the '572 patent are not limited to conference calling, the '572 patent is invalid as anticipated or obvious.

## COUNT X.
### Declaration Of Noninfringement of U.S. Patent No. 6,075,792

65.     Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 64, as if set forth in full.

66.     The '792 patent relates to a CDMA communication system which

selectively allocates bandwidth upon demand.  The '792 patent discusses a CDMA wireless digital communication system which supports all types of voice and data communications while utilizing a minimum amount of bandwidth for the particular application.  According to the '792 patent, the system efficiently allocates ISDN bandwidth on demand by a subscriber.  Upon initialization of the subscriber unit, the system establishes a channel and generates the necessary spreading codes to support the highest capacity channel desired by the subscriber unit.  Portions of the communication spectrum bandwidth are not reserved until actually required by the subscriber unit.  The '792 patent states that since the call setup is performed at the beginning of a call from that subscriber unit, including the assignment of spreading codes, a subscriber unit can quickly gain access to the portion of the spectrum that is required to support the particular application.

67.     The '792 patent, therefore, is directed to bandwidth allocation of the spread spectrum by utilizing different channels that may be added or removed, and selectively used to increase bandwidth.  The claims of the '792 patent are directed to subscriber units and base stations that have the capability to use, establish and tear down such channels.

- 18 -

68.    The WCDMA standard does not dynamically add or tear down channels to establish different data rates. Nokia's products comply with the WCDMA standard and therefore do not implement the bandwidth allocation process claimed in the '792 patent.

69.    Nokia's products also do not establish or use a wireless ISDN channel. Accordingly, Nokia's products do not infringe the '792 patent, including at least claims 1,

3-6, 10-12, and 17-18, because those claims require the use of an ISDN channel.

70.    Nokia's handsets also do not assign or allocate wireless channels. Such decisions are done by infrastructure. Therefore, Nokia's products do not infringe the claims of the '792 patent, including at least claim 9, either literally or under the doctrine of equivalents, nor does Nokia contribute to the infringement by others or actively induce others to infringe any claim of the '792 patent.

71.    Upon information and belief, Nokia's CDMA 2000 handsets do not directly infringe any claim of the '792 patent, because those claims require claim elements that are not present in Nokia's handsets. Nokia's CDMA 2000 handsets also do not contributorily infringe any claim of the '792 patent because only CDMA 2000 infrastructure, as opposed to handsets, could meet various claim limitations. Upon information and belief, for each such claim limitation not present in Nokia's CDMA 2000 handsets, there exist substantial uses and infrastructure implementations that do not infringe any claim of the '792 patent. Therefore, Nokia's products do not infringe any claim of the '792 patent either literally or under the doctrine of equivalents, nor does Nokia contribute to the infringement by others or actively induce others to infringe any claim of the '792 patent.

72.     Nokia is entitled to a declaratory judgment of noninfringement of the '792 patent.

<div align="center">

**COUNT XI.**
**Declaration Of Invalidity of U.S. Patent No. 6,075,792**

</div>

73.     Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 72, as if set forth in full.

74.     As alleged in paragraph 66 above, the '792 patent relates to a CDMA communication system which selectively allocates bandwidth on demand.

75.     Upon information and belief, at least claims 2, 7, 8, and 13-15 of the '792 patent are invalid in view of at least *IS-95 Enhancements for Multi-Media Services* by Chih-Lin I et al. Each of the elements of these claims of the '792 patent are disclosed or obvious in light of the *IS-95 Enhancements for Multi-Media Services* which was published at least as early as Autumn of 1996.

76.     Upon information and belief, at least claims 2, 7, 8, and 13-15 of the '792 patent are invalid in view of at least U.S. Patent No. 6,072,787 ("the '787 patent") assigned to Nokia. Each of the elements of these claims of the '792 patent is disclosed or obvious in light of the '787 patent, which was filed on July 5, 1996.

77.     Nokia is entitled to a declaratory judgment of invalidity with respect to at least claims 2, 7, 8, and 13-15 of the '792 patent.

<div align="center">

**COUNT XII.**
**Declaration Of Noninfringement of U.S. Patent No. 5,799,010**

</div>

78.     Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 77, as if set forth in full.

<div align="center">

- 20 -

</div>

79.     The '010 patent relates to a code division multiple access (CDMA) communication system.  The '010 patent discusses a multiple access, spread-spectrum communication system that processes a plurality of information signals received by a Radio Carrier Station (RCS) over telecommunication lines for simultaneous transmission over a radio frequency (RF) channel as a code-division-multiplexed (CDM) signal to a

group of Subscriber Units (SUs).  The RCS receives a call request signal that corresponds to a telecommunication line information signal, and a user identification signal that identifies a user to receive the call. The RCS includes a plurality of Code Division Multiple Access (CDMA) modems, one of which provides a global pilot code signal. The modems provide message code signals synchronized to the global pilot signal. Each modem combines an information signal with a message code signal to provide a CDM processed signal. The RCS includes a system channel controller coupled to receive a remote call. An RF transmitter is connected to all of the modems to combine the CDM processed signals with the global pilot code signal to generate a CDM signal. The RF transmitter also modulates a carrier signal with the CDM signal and transmits the modulated carrier signal through an RF communication channel to the SUs. Each SU includes a CDMA modem which is also synchronized to the global pilot signal.  The CDMA modem despreads the CDM signal and provides a despread information signal to the user.

80.     The claims of the '010 patent are therefore directed to a CDMA system that uses a "global pilot code signal" for synchronizing modems.  The global pilot code is defined as "a channel with a spreading code but no data modulation."

- 21 -

81.   The WCDMA standard does not require that message signals be synchronized to a global pilot code signal as claimed in the '010 patent.  In Nokia's WCDMA systems, message channels are not synchronized to a global pilot code signal and therefore do not infringe the '010 patent.

82.   Nokia's CDMA 2000 handsets do not directly infringe claims 1-4 and 9 of

the '010 patent because those claims require "means for receiving a call request signal" and "modem processing means."  These claim limitations, as properly construed, are not present in Nokia's CDMA 2000 handsets.  Nokia's CDMA 2000 handsets likewise do not contributorily infringe claim 1-4 and 9 of the '010 patent because only CDMA 2000 infrastructure, as opposed to handsets, could contain "means for receiving a call request signal."  There likewise exist substantial uses and infrastructure implementations that do not meet the "means for receiving a call request signal," as properly construed, required in claims 1-4 and 9 of the '010 patent.  Therefore, Nokia's CDMA 2000 products do not infringe claims 1-4 and 9 of the '010 patent either literally or under the doctrine of equivalents, nor does Nokia contribute to the infringement by others or actively induce others to infringe claims 1-4 and 9 of the '010 patent.

83.   Nokia's CDMA 2000 handsets likewise do not infringe claims 5-8 of the '010 patent.  Nokia's CDMA 2000 handsets do not calculate the acquisition signal as required by those claims.  Therefore, Nokia's CDMA 2000 products do not infringe claims 5-8 of the '010 patent either literally or under the doctrine of equivalents, nor contribute to the infringement by others or actively induces others to infringe claims 5-8 of the '010 patent.

84.     Nokia's CDMA 2000 handsets also do not infringe any claim of the '010 patent because Nokia's CDMA 2000 handsets are not synchronized to a pilot code as required by the claims of the '010 patent. Therefore, Nokia's CDMA 2000 products do not infringe any claim of the '010 patent either literally or under the doctrine of equivalents, nor does Nokia contribute to the infringement by others or actively induce others to infringe any claim of the '010 patent.

85.     Nokia is entitled to a declaratory judgment of noninfringement of the '010 patent.

## COUNT XIII.
## Declaration Of Invalidity of U.S. Patent No. 5,799,010

86.     Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 85, as if set forth in full.

87.     Upon information and belief, the claims of the '010 patent are invalid. As alleged in paragraph 79 above, the '010 patent relates to a code division multiple access (CDMA) communication system that uses a "global pilot code signal" for synchronizing modems.

88.     Each of the claims of the '010 is anticipated by or obvious in light of the IS-95a standard or the TR45 draft to the IS-95a standard entitled *Mobile Station – Base Station Compatibility Standard for dual-Mode Wideband Spread Spectrum Cellular System*, PN-3144, dated December 9, 1992, both of which were published before the filing date of the '010 patent.

89.     Each of the claims of the '010 patent is anticipated or obvious in light of Gaudenzi, et al., *Chip Timing Synchronization in an All-Digital Band-Limited DS/SS Modem*, IEEE Conference on Communications (ICC), 1991, pp. 1688-1692.

90.     The claims of the '010 patent are therefore either anticipated or rendered obvious by the IS-95a standard, the TR45 draft to the IS-95a standard, and/or Gaudenzi, et al.

91.     Nokia is entitled to a declaratory judgment of invalidity of the claims of the '010 patent.

## COUNT XIV.
### Declaration Of Noninfringement of U.S. Patent No. 5,614,914

92.     Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 91, as if set forth in full.

93.     The '914 patent relates to a wireless telephone distribution system with time and space diversity transmission for determining receiver location. The '914 patent discloses a wireless communication system that combines time and space diversity to reduce fading. In particular, the '914 patent discloses a data packet which carries digital telephone traffic that is transmitted at three different times from three different antennas. The mobile subscriber receiver receives the same data packet at three different times from the three different antennas, and uses the best data packet or combination of the data packets to reduce the effects of fading. A transfer station receives a time division multiplex multiple access (TDMA) signal from a base station carrying telephone data packet traffic to form three data packet repeats at spatially diverse antennas locations. The transfer station further modulates a code division multiple access (CDMA) system using a TDMA signal which links the mobile subscriber receiver to the transfer station. Each data packet received at the transfer station is retransmitted at three different times to the mobile subscriber station on a CDMA link. The time division and code division multiplex signals transmitted from space diversity antennas provide the ability to

- 24 -

determine subscriber location using the same communication signals which are used for the primary telephone data communication.  Specifically, the subscriber station receiver uses the absolute and relative time of arrival of the three repeated data packets to determine the respective distances of the mobile subscriber station to the three transmitting antennas.  Because the transmitting antennas are at known fixed locations,

receiver location is determined.

94.    The '914 patent, therefore, claims a system and method relating to determining the location of a mobile subscriber station using an observed time difference of arrival (OTDOA) of wireless signals from at least three transmitting stations.

95.    Nokia does not implement OTDOA in its WCDMA or CDMA 2000 wireless products and therefore does not infringe the '914 patent.

96.    Nokia is entitled to a declaratory judgment of noninfringement of the '914 patent.

## COUNT XV.
### Declaration Of Noninfringement of U.S. Patent No. 5,663,990

97.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 96, as if set forth in full.

98.    Nokia does not infringe any claim of the '990 patent.  The '990 patent relates to a wireless telephone distribution system with time and space diversity transmission and has a similar disclosure as that of the '914 patent alleged in paragraph 93 above.

99.    The claims of the '990 patent focus on a time switched transmission technique wherein the same data is broadcast twice in two different time slots to achieve time switched transmit diversity.

100.    Two open loop transmit diversity schemes are included in the WCDMA standard.  These two schemes include Time Switched Transmit Diversity (TSTD) and Space Time Transmit Diversity (STTD).  TSTD involves periodically switching the transmit antenna for separate time divided slots and retransmitting the same information. STTD involves coding the signal for separate antennas and transmitting on those antennas simultaneously.

101.    All but two of the independent claims (9 and 23) of the '990 patent include a limitation to a communication system or method where the transmitted signal is encoded using a pseudorandom number to achieve spread spectrum modulation.  Claims 9 and 23, which do not contain the pseudorandom number encoding limitation, contain a limitation to a system or method where a transfer station is utilized between the base station and the user equipment.

102.    None of Nokia's WCDMA or CDMA 2000 products infringe claim 9 or 23 of the '990 patent, or their dependent claims.  No implementation of either standard includes a transfer station as required by those claims.  Nokia's handsets when used with such systems, therefore, do not infringe claim 9 or 23 of the '990 patent, or the claims which depend from them.

103.    Nokia's CDMA 2000 handsets do not infringe any claim of the '990 patent because no CDMA 2000 system has been implemented with either TSTD or STTD. Nokia's handsets when used with such systems, therefore, do not infringe any claim of the '990 patent.

104.    The WCDMA standard specifies that the only channel that employs a TSTD scheme is the synchronization channel.   In the WCDMA standard, the

synchronization channel is not spread as required by all of the independent claims of the '990 patent (except claims 9 and 23).

105.    When the WCDMA standard employs STTD, the "same data packet" is not transmitted as required by the claims of the '990 patent.  Additionally, when the WCDMA standard employs STTD, data packets are not discarded as required by the claims of the '990 patent.

106.    Nokia's WCDMA systems comply with the WCDMA standard.  Nokia's systems therefore do not infringe the claims of the '990 patent.

107.    Nokia is entitled to a declaratory judgment of noninfringement of the '990 patent.

## COUNT XVI.
### Declaration Of Noninfringement of U.S. Patent No. 5,859,879

108.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 107, as if set forth in full.

109.    The '879 patent relates to a wireless telephone distribution system with time and space diversity transmission and has a similar disclosure as that of the '914 and '990 patents alleged in paragraphs 93 and 100-101 above.

110.    The claims of the '879 patent focus on a time divided transmission technique wherein the same data is broadcast twice in two different time slots to achieve time transmit diversity.

111.    The claims of the '879 patent include a limitation to a communication system or method where the transmitted signal is encoded using a pseudorandom number to achieve spread spectrum modulation.

112.    As explained in paragraph 104 above, the only channel in WCDMA that employs TSTD is the standard synchronization channel and that channel is not spread as required by all of the claims of the '879 patent.

113.    As explained in paragraph 105 above, when the WCDMA standard employs STTD, the "same data packet" is not transmitted as required by the claims of the '879 patent..

114.    When the WCDMA standard employs STTD it uses the same spreading code instead of different spreading codes as required by the claims of the '879 patent.

115.    Nokia's WCDMA systems comply with the WCDMA standard.  Nokia's systems therefore do not infringe the claims of the '879 patent.

116.    Upon information and belief, Nokia's CDMA 2000 handsets do not infringe any claim of the '879 patent because no CDMA 2000 systems have been implemented with either TSTD or STTD.  Nokia's handsets when used with such systems, therefore, do not infringe any claim of the '879 patent.

117.    Nokia is entitled to a declaratory judgment of noninfringement of the '879 patent.

### COUNT XVII.
### Declaration Of Noninfringement of U.S. Patent Nos. 5,363,403; 5,553,062; 5,719,852; 6,014,373; and 6,259,688

118.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 117, as if set forth in full.

119.    Nokia does not infringe any claim of the '403 patent, the '062 patent, the '852 patent, the '373 patent, or the '688 patent.

120.    The '403 patent relates to a spread spectrum CDMA subtractive interference canceler and method.  The patent discloses a spread-spectrum code division multiple access interference canceler for reducing interference in a direct sequence CDMA receiver having N chip-code channels.  The interference canceler includes a plurality of correlators or matched filters, a plurality of spread-spectrum-processing circuits, subtracting circuits, and channel correlators or channel-matched filters.  Using a plurality of chip-code signals, the plurality of correlators despreads the spread-spectrum CDMA signal as a plurality of despread signals, respectively.  The plurality of spread-spectrum-processing circuits use a timed version of the plurality of chip-code signals, for spread-spectrum processing the plurality of despread signals, respectively, with a chip-code-signal corresponding to a respective despread signal.  For recovering a code channel using an i.sup.th chip-code-signal, the subtracting circuits subtract from the spread-spectrum CDMA signal, each of the N-1 spread-spectrum-processed-despread signals thereby generating a subtracted signal. The N-1 spread-spectrum-processed-despread signals do not include the spread-spectrum-processed-despread signal of the i.sup.th channel of the spread-spectrum CDMA signal. The channel correlator or channel-matched filter despreads the subtracted signal.

121.    The '062 patent is a continuation-in-part of the '403 patent.  The '852 patent, the '373 patent and the '688 patent are all continuations of the '403 patent.

122.    The '403 patent, the '062 patent, the '852 patent, the '373 patent and the '688 patent (the "Subtractive Interference Cancellation patents") all disclose and claim a method and system for subtractive interference cancellation in a multi-channel, spread spectrum CDMA system.

Case 2:06-cv-00163-TJS    Document 1    Filed 01/12/2006    Page 54 of 66

- 29 -

123.    In a multiple channel spread spectrum system, interference is created by the multiple channels. When one channel is decoded or despread, interference from the other channels will appear as noise. The system and method in the Subtractive Interference Cancellation patents claim a series of components to remove this noise by subtracting the signals corresponding to other channels from the input signal prior to processing the channel of interest.

124.    Nokia's WCDMA digital wireless systems do not implement subtractive interference cancellation techniques and therefore do not infringe any claim of the Subtractive Interference Cancellation patents.

125.    Nokia's CDMA 2000 handsets do not implement subtractive interference cancellation techniques as required by InterDigital's patents and therefore do not infringe any claim of the Subtractive Interference Cancellation patents.

126.    Nokia is entitled to a declaratory judgment of noninfringement of the Subtractive Interference Cancellation patents.

### COUNT XVIII.
### Declaration Of Noninfringement of U.S. Patent No. 6,289,004

127.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 126, as if set forth in full.

128.    The '004 patent relates to adaptive cancellation of fixed interferers and discloses a base station which cancels the effects of known fixed interference sources by producing a signal substantially free from the interference sources to thereby increase channel capacity. The adaptive interference canceler system includes a main antenna for receiving signals from other communication stations and at least one directional antenna

- 30 -

directed toward an interference source. The main and directional antennas are coupled to the adaptive canceler, which weights signals received by the directional antennas and sums the weighted signals to produce a cancellation signal. The adaptive canceler subtracts the cancellation signal from the signals received by the main antenna to provide an output signal substantially free from the interference generated by the one or more known interference sources.

129.    The claims of the '004 patent all require that the system include a directional antenna with four coplanar feeds mounted near the main base station antenna.

130.    Neither the WCDMA standard, nor the CDMA 2000 standard, require the use of directional antennas.

131.    Nokia's WCDMA and CDMA 2000 products comply with the WCDMA and CDMA 2000 standards, and do not employ directional antennas. Nokia's systems therefore do not infringe any claim of the '004 patent.

132.    Nokia is entitled to a declaratory judgment of noninfringement of the '004 patent.

<div align="center">

**COUNT XIX.**
**Declaration Of Noninfringement of**
**U.S. Patent No. 5,081,643**

</div>

133.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 132, as if set forth in full.

134.    The '643 patent relates to a spread spectrum multipath receiver apparatus and method. In particular, the '643 patent discloses an apparatus for adapting to receive a particular path, having the greatest amplitude, of a spread-spectrum signal with multipath. According to the patent, the spread-spectrum signal is modulated by a chip-code. A chip-

code generator generates a chip-code signal having the same chip-code as the spread-spectrum signal. A plurality of shift registers shift the chip-code signal by a plurality of time delays. First and second ring counters generate first and second sequencing signals for controlling first and second switching devices. The first switching device successively switches between a plurality of taps of the shift registers in a direction of increasing or decreasing delays for generating the chip-code signal with the first time delay. The second switching device successively switches between the plurality of taps of the shift registers in a direction of increasing or decreasing delays for generating the chip-code signal with a second time delay. A first correlator correlates the spread-spectrum signal received at the input with the chip-code signal with the first time delay. A second correlator correlates the spread-spectrum signal received at the input with the chip-code signal with the second time delay. A comparator generates first and second comparator signals by comparing the outputs of the first correlator and the second correlator.

135.    Nokia's WCDMA and CDMA 2000 products do not include "delay means" or "shift registers" as claimed in the '643 patent. The WCDMA and CDMA 2000 standards likewise to not require such "delay means" or "shift registers." Instead of delaying a code after it is generated by the code generator, as required by the '643 patent, Nokia's WCDMA products modify the speed of the code generator by internal clocking. Instead of delaying a code after it is generated by the code generator with shift registers, as required by the '643 patent, Nokia's CDMA 2000 products choose from multiple samples of the input signal or reprogram the code generator. Nokia's products therefore do not infringe any claim of the '643 patent either literally or under the doctrine of

equivalents, nor does Nokia contribute to the infringement by others or actively induce others to infringe any claim of the '643 patent.

136.    Nokia's WCDMA products also do not include delay codes by one or more chip intervals, as required by claims 1 and 2 of the '643 patent because Nokia's WCDMA products shift the speed of the internal code generator by 1/2 chip. Nokia's

WCDMA products do not infringe claims 1 and 2 of the '643 patent either literally or under the doctrine of equivalents, nor contribute to the infringement by others or actively induce others to infringe claims 1 and 2 of the '643 patent.

137.    Nokia's WCDMA products also do not include a difference amplifier as required by the claims of the in the '643 patent.  Therefore, Nokia's WCDMA products do not infringe the claims of the '643 patent either literally or under the doctrine of equivalents, nor does Nokia contribute to the infringement by others or actively induce others to infringe the claims of the '643 patent.

**COUNT XX.**
**Declaration Of Noninfringement of**
**U.S. Patent No. 5,673,286**

138.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 137, as if set forth in full.

139.    The '286 patent relates to a spread spectrum multipath processor system and method.   In particular, the '286 patent discloses a spread-spectrum system and method for providing high capacity communications through multipath compensation. The multipath processor system includes a first plurality of correlators, a second plurality of correlators, a first adder, a second adder, and a selector device or a combiner device is provided for tracking a spread-spectrum signal arriving in a plurality of groups. The first

plurality of correlators despreads a first group of spread-spectrum signals as a first group of despread signals which are added by the first adder to generate a first combined-despread signal. The second plurality of correlators despreads a second group of spread-spectrum signals as a second group of despread signals which are added by the second adder to generate a second combined-despread signal. The selector device selects either the first or the second combined-despread signal and outputs the selected signal. According to the patent, the combiner device alternatively combines the first and the second combined-despread signals and outputs the combined signal.

Case 2:06-cv-00105-JJG    Document 1-1    Filed 07/07/2006    Page 59 of 66

140.    Nokia's WCDMA and CDMA 2000 products do not include "combining" or "selecting" signals twice as required by the claims of the '286 patent.  Nokia's products therefore do not infringe any claim of the '286 patent either literally or under the doctrine of equivalents, nor does Nokia contribute to the infringement by others or actively induce others to infringe any claim of the '286 patent.

## COUNT XXI.
### Violation Of § 43(a) Of The Lanham Act

141.    Nokia incorporates and re-alleges the averments contained in paragraphs 1 through 140, as if set forth in full.

142.    InterDigital has used false or misleading descriptions or representations in connection with its patent portfolio, the WCDMA Standard, the CDMA 2000 standard, Nokia's products, the applicability of InterDigital's patents to Nokia's products, and the applicability of InterDigital's patents to 3G wireless standards within the meaning of 15 U.S.C. §1125(a) (§43(a) of the Lanham Act).  This misconduct of InterDigital has inhibited the development of 3G technology, damaged Nokia's business and its reputation in the wireless market.

143.   Upon information and belief, InterDigital has repeatedly made public statements that its patent portfolio covers the practice of 3G wireless phone systems and the sale of 3G compliant products.  These statements are false because InterDigital's patents are not necessary to practice 3G wireless phone standards.

144.   These false statements are material and, upon information and belief, have

caused actual deception or have a tendency to deceive a substantial portion of the intended audience.

145.   InterDigital's misrepresentations about the scope and validity of its patents and how these patents apply to Nokia's products have injured Nokia in its business and have damaged Nokia's reputation.

146.   Upon information and belief, InterDigital has made these false statements in bad faith and with knowledge of their falsity.

### JURY DEMAND

Nokia demands a trial by jury.

### PRAYER FOR RELIEF

WHEREFORE, Nokia respectfully requests that the Court enter judgment:

(a)   That Nokia does not infringe the '747 patent, the '949 patent, the '768 patent, the '778 patent, the '572 patent, the '792 patent, the '010 patent, the '914 patent, the '990 patent, the '879 patent, the '403 patent, the '062 patent, the '852 patent, the '373 patent, the '688 patent, the '004 patent, the '643 patent, or the '286 patent;

(b)   That the '747 patent, the '949 patent, the '778 patent, the '792 patent, the '572 patent and the '010 patent are invalid;

(c)    That InterDigital's statements concerning the scope and validity of its 3G patents are false and misleading, in violation of § 43(a) of the Lanham Act;

(d)    Awarding Nokia damages in an amount to be determined at trial for Nokia's loss;

(e)    Granting Nokia its attorneys' fees and costs; and

(f)    Granting such other and further relief as the Court deems just and proper.

MORRIS, NICHOLS, ARSHT & TUNNELL

Jack B. Blumenfeld (#1014)
Julia Heaney (#3052)
1201 N. Market Street
Wilmington, DE 19801
(302) 658-9200
Attorneys for NOKIA CORPORATION and
NOKIA, INC.

Of Counsel:

ALSTON & BIRD LLP

Peter Kontio
Patrick J. Flinn
Gardner S. Culpepper
Keith E. Broyles
1201 West Peachtree Street
Atlanta, GA  30309-3424
404-881-7000

January 12, 2005

**B**

---

**InterDigital Wins Ruling In Nokia Royalty Dispute**

**By CHAD BRAY**
**DOW JONES NEWSWIRES**
**December 29, 2005 4:17 a.m.**

NEW YORK — A federal judge confirmed an arbitration award of about $250 million for InterDigital Communications Corp., which is in a dispute with cellphone maker Nokia Corp. over royalties.

Case 2:06-cv-00165-JG    Document 1-1    Filed 01/12/2006    Page 63 of 66

In an order filed Wednesday in the Southern District of New York, Judge William H. Pauley III upheld the award granted by an arbitration panel in June and denied Nokia's motion to vacate it.

"While this court does not necessarily agree with every finding of the panel, there is nothing so aberrant about the award to require vacatur," Judge Pauley said in his order. "This court confirms the award in its entirety."

The dispute revolves around royalties agreed to as part of licensing agreements entered into by InterDigital Communications and Nokia in January 1999.

A Nokia spokesman didn't immediately have a comment when reached Wednesday afternoon.

Under the agreements, Nokia paid InterDigital $31.5 million in royalties for all handset sales using InterDigital technology prior to January 2002, according to the judge's order.

Nokia's royalty obligations for sales between January 2002 and December 2006 would then be contingent on InterDigital entering into licensing agreements with one of Nokia's three "major competitors" — Lucent Technologies Inc., Telefon AB L.M. Ericsson or Motorola Inc., according to the order.

In March 2003, InterDigital entered into two patent licensing agreements with Ericsson and Sony Ericsson Mobile Communications — a joint venture between Sony Corp. and Ericsson. In creating the joint venture, Ericsson sold its handset business to Sony Ericsson for cash consideration, according to the judge's order.

After entering into the Ericsson agreements, InterDigital requested about $500 million in royalty payments from Nokia, which disputed the obligations and invoked its right to arbitration.

In a filing with the Securities and Exchange Commission on Tuesday, InterDigital said it has taken action to utilize the dispute resolution process under its licensing agreement with Nokia in order to compel Nokia to abide by the arbitration panel's ruling.

The dispute resolution process would establish a timetable for discussions, senior representative meetings and any future initiation of arbitration, if necessary, according to the filing.

C



**Smart Technologies™**

<u>**CONFIDENTIAL**</u>

April 21, 2005

**Via Fedex and Certified Mail**

Ms. Patricia M. Palmer, CCLA
The Hartford                                              **KEY OFFICE 344**
100 Enterprise Drive
P.O. Box 2000
Rockaway, NJ 07866

> Re:   InterDigital Communications Corporation
>          <u>Your File No. YCH KLP 42471</u>

Dear Ms. Palmer:

In accordance with your telephone conversation of April 13, 2005 with Bruce Pailet of this office, the undersigned, on behalf of InterDigital Communications Corporation, hereby respectfully requests reconsideration of the declination of coverage decision set forth in your letter to me of April 5, 2005 for the reasons stated below.

The justification for the declination of coverage is erroneously predicated upon the belief that the claims alleged by Nokia Corporation under Section 43(a) of the Lanham Act are excluded from coverage because they do not come within subsections (f) or (g) of the definition of "personal and advertising injury" as contained in Commercial General Liability Coverage Form (HG 00 01 10 01), nor do the claims allege any patent infringement.   On the contrary, we believe that the claims asserted by Nokia that InterDigital has "used false or misleading descriptions or representations in connection with its patent portfolio, the WCDMA Standard, the CDMA 2000 standard, Nokia's products, the applicability of InterDigital's patents to Nokia's products, and the applicability of InterDigital's patents to 3G wireless standards..." which "have damaged Nokia's business and its reputation in the wireless market" come squarely within the coverage provided by subsection (d) of the definition of "personal and advertising injury".   It is critical to note here that the claims alleged by Nokia are *not claims for patent infringement*, but rather are for *statements or writings alleging patent infringement* that were made and which have had the effect of damaging Nokia's business and reputation.

Subsection (d) affords coverage for "publication of material that slanders or libels a person or organization *or disparages a person's or organization's goods, products and*

---

**InterDigital**®

Smart Technologies™

*services*"; precisely (indeed, almost verbatim) the claims alleged by Nokia under the Lanham Act.   As the Lanham Act makes clear, claims brought under Section 43(a) are predicated on the statements themselves and not the act of any underlying patent infringement (those claims are addressed elsewhere in the complaint).  Thus any attempt to deny coverage based on narrowly applying the alleged disparagement claims to the patent infringement "exclusion" from the definition of personal and advertising injury is in error.

    In respect of the analysis and declination of coverage under Policy No. 39RHU TS 0953 (umbrella liability coverage) it is stated that the "policy does not apply to 'personal and advertising injury [unless] underlying insurance' is applicable...."  Therefore, in accordance with the conclusions reached above, coverage should be available under this policy also.  Again, your letter incorrectly predicates its analysis on the act of patent infringement, when the Lanham Act claims are grounded in slander, libel and disparagement.  Patent infringement arises only in the context of simply being one of the topics referenced in the alleged slander, libel or disparagement.  It is *not* the basis for the claims themselves.

    Lastly, your letter also requests information with respect to the relationship of InterDigital Technology Corporation to InterDigital Communications Corporation.  InterDigital Technology Corporation is (i) a direct, wholly-owned subsidiary of InterDigital Communications Corporation and (ii) not an insured under another policy.  Therefore, we ask that you confirm that it is also an "insured" under Section II of the Commercial General Liability Coverage Form (CG 00 01 10 01) and the umbrella policy referenced above.

    For the reasons set forth above, InterDigital believes that one or more of the claims alleged by Nokia are covered under one or more of InterDigital's policies and request is hereby made that the declination of coverage decision contained in your letter of April 5, 2005 be reconsidered and that InterDigital be provided with a defense and indemnity to Nokia's lawsuit.

    If you need any further information please contact me.

                Sincerely,

                Lawrence F. Shay
                General Counsel

cc: The Addis Group

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **HARTFORD FIRE INSURANCE COMPANY** and | : | |
| **HARTFORD CASUALTY INSURANCE COMPANY** | : | Case 2:06-cv-00165-JG    Document 1-2    Filed 01/12/2006    Page 1 of 1 |
| Plaintiffs, | : | |
| vs. | : | CIVIL ACTION NO. |
| **INTERDIGITAL COMMUNICATIONS CORP.** | : | |
| and | : | |
| **INTERDIGITAL TECHNOLOGY CORP.** | : | |
| Defendants. | : | |

## DEMAND FOR TRIAL BY JURY

Plaintiffs Hartford Fire Insurance Company and Hartford Casualty Insurance Company

hereby demand a trial by jury of issues so triable.

**WHITE AND WILLIAMS**

Attorneys for Plaintiffs, Hartford Fire
Insurance Company and Hartford Casualty
Insurance Company

By: _____
      Gale White, Esquire
      Anthony L. Miscioscia, Esquire
      WHITE AND WILLIAMS LLP
      One Liberty Place, Suite 1800
      1650 Market Street
      Philadelphia, PA  19103
      (215) 864-6234-6356

DOCS_PH 1829139v.1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

HARTFORD FIRE INSURANCE COMPANY :
AND HARTFORD CASUALTY INSURANCE :
COMPANY, Plaintiffs :
:
:
v. :    Civil Action
:    No. 06-0165
:
INTERDIGITAL COMMUNICATIONS :
CORPORATION AND INTERDIGITAL
TECHNOLOGY CORPORATION, Defendants

**DISCLOSURE STATEMENT FORM**

Please check one box:

☐    The nongovernmental corporate party,      , in the above listed civil action does not have any parent corporation and publicly held corporation that owns 10% or more of its stock.

☒    The nongovernmental corporate party, Hartford Fire Insurance Company, in the above listed civil action has the following parent corporation(s) and publicly held corporation(s) that owns 10% of its stock:  The Hartford Financial Services Group, Inc.

---

January 13, 2006
Date

/s/
Signature

Gale White
White and Williams LLP
Counsel for:  Hartford Fire Insurance Company and
            Hartford Casualty Insurance Company

**Federal Rule of Civil Procedure 7.1 Disclosure Statement**

(a)    Who Must File:  Nongovernmental Corporate Party.  A nongovernmental corporate party to an action or proceeding in a district court must file two copies of a statement that identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock or states that there is no such corporation.

(b)    Time for Filing; Supplemental Filing.  A party must:

(1)    file the Rule 7.1(a) statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court, and

(2)    promptly file a supplemental statement upon any change in the information that the statement requires.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

HARTFORD FIRE INSURANCE COMPANY    :
AND HARTFORD CASUALTY INSURANCE    :
COMPANY, Plaintiffs    :
   :
           v.    :    Civil Action
   :    No. 06-0165
INTERDIGITAL COMMUNICATIONS    :
CORPORATION AND INTERDIGITAL
TECHNOLOGY CORPORATION, Defendants

Case 2:06-cv-00165-JCJ    Document 2    Filed 01/13/2006    Page 2 of 2

**DISCLOSURE STATEMENT FORM**

Please check one box:

☐    The nongovernmental corporate party, _____, in the above listed civil action does not have any parent corporation and publicly held corporation that owns 10% or more of its stock.

☒    The nongovernmental corporate party, Hartford Casualty Insurance Company, in the above listed civil action has the following parent corporation(s) and publicly held corporation(s) that owns 10% of its stock: The Hartford Financial Services Group, Inc.

_____

January 13, 2006
_____
Date

/s/
_____
Signature

Gale White
White and Williams LLP
Counsel for: Hartford Fire Insurance Company and
                  Hartford Casualty Insurance Company

**Federal Rule of Civil Procedure 7.1 Disclosure Statement**

(a)    Who Must File: Nongovernmental Corporate Party. A nongovernmental corporate party to an action or proceeding in a district court must file two copies of a statement that identifies any parent corporation and any publicly held corporation that owns 10% or more of its stock or states that there is no such corporation.

(b)    Time for Filing; Supplemental Filing. A party must:

(1)    file the Rule 7.1(a) statement with its first appearance, pleading, petition, motion, response, or other request addressed to the court, and

(2)    promptly file a supplemental statement upon any change in the information that the statement requires.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

HARTFORD FIRE INSURANCE COMPANY     :
AND HARTFORD CASUALTY INSURANCE     :
COMPANY, Plaintiffs                 :
                                    :
                                    :
        v.                          :        Civil Action
                                    :        No.  06-0165
INTERDIGITAL COMMUNICATIONS         :
CORPORATION AND INTERDIGITAL
TECHNOLOGY CORPORATION, Defendants

DISCLOSURE STATEMENT FORM

Please check one box:

☐   The nongovernmental corporate party, _____, in the above listed civil action does not have any parent
    corporation and publicly held corporation that owns 10% or more of its stock.

☒   The nongovernmental corporate party, Hartford Fire Insurance Company, in the above listed civil
    action has the following parent corporation(s) and publicly held corporation(s) that owns 10% of its
    stock:  The Hartford Financial Services Group, Inc.

---

January 13, 2006
Date

/s/
Signature

Gale White
White and Williams LLP
Counsel for:  Hartford Fire Insurance Company and
              Hartford Casualty Insurance Company

**Federal Rule of Civil Procedure 7.1 Disclosure Statement**

(a)     Who Must File:  Nongovernmental Corporate Party.  A nongovernmental corporate party to an
action or proceeding in a district court must file two copies of a statement that identifies any parent corporation
and any publicly held corporation that owns 10% or more of its stock or states that there is no such corporation.

(b)     Time for Filing; Supplemental Filing.  A party must:

    (1)     file the Rule 7.1(a) statement with its first appearance, pleading, petition, motion,
            response, or other request addressed to the court, and

    (2)     promptly file a supplemental statement upon any change in the information that the
            statement requires.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

HARTFORD FIRE INSURANCE COMPANY :
AND HARTFORD CASUALTY INSURANCE :
COMPANY, Plaintiffs :
                                  :
                                  :
            v.                    :        Civil Action
                                  :        No.  06-0165
INTERDIGITAL COMMUNICATIONS       :
CORPORATION AND INTERDIGITAL
TECHNOLOGY CORPORATION, Defendants

**DISCLOSURE STATEMENT FORM**

Please check one box:

☐   The nongovernmental corporate party,          , in the above listed civil action does not have any parent
    corporation and publicly held corporation that owns 10% or more of its stock.

☒   The nongovernmental corporate party, Hartford Casualty Insurance Company, in the above listed civil
    action has the following parent corporation(s) and publicly held corporation(s) that owns 10% of its
    stock:  The Hartford Financial Services Group, Inc.

_____

January 13, 2006
Date

/s/
Signature

Gale White
White and Williams LLP
Counsel for:  Hartford Fire Insurance Company and
              Hartford Casualty Insurance Company

**Federal Rule of Civil Procedure 7.1 Disclosure Statement**

    (a)    Who Must File:  Nongovernmental Corporate Party.  A nongovernmental corporate party to an
action or proceeding in a district court must file two copies of a statement that identifies any parent corporation
and any publicly held corporation that owns 10% or more of its stock or states that there is no such corporation.

    (b)    Time for Filing; Supplemental Filing.  A party must:

        (1)    file the Rule 7.1(a) statement with its first appearance, pleading, petition, motion,
        response, or other request addressed to the court, and

        (2)    promptly file a supplemental statement upon any change in the information that the
        statement requires.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| HARTFORD FIRE INSURANCE CO. and | : | |
| HARTFORD CASUALTY INSURANCE CO., | : | |
|  | : | |
| Plaintiffs, | : | |
|  | : | |
| v. | : | Civ. A. No. 06-cv-00165 (JG) |
|  | : | |
| INTERDIGITAL COMMUNICATIONS | : | |
| CORPORATION and INTERDIGITAL | : | |
| TECHNOLOGY CORPORATION, | : | |
|  | : | |
| Defendants. | : | |
|  | : | |

## ENTRY OF APPEARANCE

TO THE CLERK:

Kindly enter our appearance on behalf of the defendants, InterDigital Communications Corporation and InterDigital Technology Corporation.

/s/ Stephen J. Mathes
Stephen J. Mathes (Pa. ID No. 14942)
Arleigh P. Helfer III (Pa. ID No. 84427)
Bess Madway Collier (Pa. ID No. 91574)

Hoyle, Fickler, Herschel & Mathes LLP
One South Broad Street, Suite 1500
Philadelphia, PA 19107
(215) 981-5700

Attorneys for Defendants

Dated: January 17, 2006

## <u>CERTIFICATE OF SERVICE</u>

I, Arleigh P. Helfer III, hereby certify that I caused the foregoing Entry of Appearance to

be filed and served this day by the Electronic Court Filing system, where it is available for

viewing, and also served by U.S. Mail, postage prepaid, upon the following:

        Gale White, Esquire
        Anthony L. Miscioscia, Esquire
        White and Williams
        1800 One Liberty Place
        Philadelphia, PA 19103-7395

        Attorneys for Plaintiffs

                                  /s/ Arleigh P. Helfer III
                                  Arleigh P. Helfer III

Dated: January 17, 2006

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|   |   |   |
|---|---|---|
| HARTFORD FIRE INSURANCE CO. and HARTFORD CASUALTY INSURANCE CO., | : | |
| Plaintiffs, | : | |
| v. | : | Civ. A. No. 06-cv-00165 (JG) |
| INTERDIGITAL COMMUNICATIONS CORPORATION and INTERDIGITAL TECHNOLOGY CORPORATION, | : | |
| Defendants. | : | |

## ENTRY OF APPEARANCE

TO THE CLERK:

Kindly enter our appearance on behalf of the defendants, InterDigital Communications Corporation and InterDigital Technology Corporation.

/s/ Stephen J. Mathes
Stephen J. Mathes (Pa. ID No. 14942)
Arleigh P. Helfer III (Pa. ID No. 84427)
Bess Madway Collier (Pa. ID No. 91574)

Hoyle, Fickler, Herschel & Mathes LLP
One South Broad Street, Suite 1500
Philadelphia, PA 19107
(215) 981-5700

Attorneys for Defendants

Dated: January 17, 2006

## <u>CERTIFICATE OF SERVICE</u>

I, Arleigh P. Helfer III, hereby certify that I caused the foregoing Entry of Appearance to

be filed and served this day by the Electronic Court Filing system, where it is available for

viewing, and also served by U.S. Mail, postage prepaid, upon the following:

> Gale White, Esquire
> Anthony L. Miscioscia, Esquire
> White and Williams
> 1800 One Liberty Place
> Philadelphia, PA 19103-7395
>
> Attorneys for Plaintiffs

<div style="text-align: right;">

/s/ Arleigh P. Helfer III_____
Arleigh P. Helfer III

</div>

Dated: January 17, 2006

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| HARTFORD FIRE INSURANCE CO. and | : | |
| HARTFORD CASUALTY INSURANCE CO., | : | |
|  | : | |
| Plaintiffs, | : | |
|  | : | |
| v. | : | Civ. A. No. 06-cv-00165 (JG) |
|  | : | |
| INTERDIGITAL COMMUNICATIONS | : | |
| CORPORATION and INTERDIGITAL | : | |
| TECHNOLOGY CORPORATION, | : | |
|  | : | |
| Defendants. | : | |
|  | : | |

## ENTRY OF APPEARANCE

TO THE CLERK:

Kindly enter our appearance on behalf of the defendants, InterDigital Communications

Corporation and InterDigital Technology Corporation.


/s/ Stephen J. Mathes_____
Stephen J. Mathes (Pa. ID No. 14942)
Arleigh P. Helfer III (Pa. ID No. 84427)
Bess Madway Collier (Pa. ID No. 91574)

Hoyle, Fickler, Herschel & Mathes LLP
One South Broad Street, Suite 1500
Philadelphia, PA 19107
(215) 981-5700

Attorneys for Defendants


Dated: January 17, 2006

## <u>CERTIFICATE OF SERVICE</u>

     I, Arleigh P. Helfer III, hereby certify that I caused the foregoing Entry of Appearance to

be filed and served this day by the Electronic Court Filing system, where it is available for

viewing, and also served by U.S. Mail, postage prepaid, upon the following:

        Gale White, Esquire
        Anthony L. Miscioscia, Esquire
        White and Williams
        1800 One Liberty Place
        Philadelphia, PA 19103-7395

        Attorneys for Plaintiffs

                          /s/ Arleigh P. Helfer III
                          Arleigh P. Helfer III

Dated: January 17, 2006

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HARTFORD FIRE INSURANCE COMPANY** and | : : : |
| **HARTFORD CASUALTY INSURANCE COMPANY** | : : |
| Plaintiffs, | : : : |
| vs. | : : |
| **INTERDIGITAL COMMUNICATIONS CORP.** and | : : : : |
| **INTERDIGITAL TECHNOLOGY CORP.** | : |
| Defendants. | : : : |

CIVIL ACTION NO. 06-0165

---

**ENTRY OF APPEARANCE**

Kindly enter the appearance of Anthony L. Miscioscia, Esquire in the above-captioned matter on behalf of Plaintiffs Hartford Fire Insurance Company and Hartford Casualty Insurance Company.

Respectfully submitted,

WHITE AND WILLIAMS LLP

By: _____

Anthony L. Miscioscia, Esq.
Attorney I.D. no. 69215
1800 One Liberty Place
Philadelphia, PA 19103
(215) 864-7000

Date: January 20, 2006

DOCS_PH 1845190v.1

## <u>CERTIFICATE OF SERVICE</u>

I, Anthony L. Miscioscia Esquire, hereby certify that I have caused a true and correct

copy of the Entry of Appearance of Anthony L. Miscioscia on behalf of Plaintiffs Hartford Fire

Insurance Company and Hartford Casualty Insurance Company to be electronically filed with the

Court (which is available for viewing and downloading) and to be served by regular mail, on

January 20, 2006, to the following:

Mr. Lawrence Shay
General Counsel
InterDigital Communications Corporation
InterDigital Technology Corporation
781 Third Avenue
King of Prussia, PA 19406

WHITE AND WILLIAMS LLP

Anthony L. Miscioscia, Esq.

## WAIVER OF SERVICE OF SUMMONS

TO:    Gale White, Esquire
       Attorney for Hartford Fire Insurance Company and Hartford Casualty Insurance Company

I acknowledge receipt of your request that I waive service of summons in the action of Hartford Fire Insurance Company and Hartford Casualty Insurance Company v. InterDigital Communications Corporation and InterDigital Technology Corporation, which is case number 06-0165 in the United States District Court for the Eastern District of Pennsylvania.

I have also received a copy of the complaint in the action, two copies of this instrument, and a means by which I can return the signed waiver to you without cost to me.

I agree to save the cost of service of a summons and an additional copy of the complaint in this lawsuit by not requiring that I (or the entity on whose behalf I am acting) be served with judicial process in the manner provided by Rule 4.

I (or the entity on whose behalf I am acting) will retain all defenses or objections to the lawsuit or to the jurisdiction or venue of the court except for objections based on a defect in the summons or in the service of the summons.

I understand that a judgment may be entered against me (or the party on whose behalf I am acting) if an answer or motion under Rule 12 is not served upon you within 60 days after **January 12, 2006**, or within 90 days after that date if the request was sent outside the United States.

| | |
|---|---|
| 01/17/06 | _Signature_ |
| Date | Stephen J. Mathes |
| | Printed/Typed Name |
| | as counsel to Defendants |

### Duty to Avoid Unnecessary Costs of Service of Summons

Rule 4 of the Federal Rules of Civil Procedure requires certain parties to cooperate in saving unnecessary costs of service of the summons and complaint. A defendant located in the United States who, after being notified of an action and asked by a plaintiff located in the United States to waive service of a summons, fails to do so will be required to bear the cost of such service unless good cause be shown for its failure to sign and return the waiver.

It is not good cause for a failure to waive service that a party believes that the complaint is unfounded, or that the action has been brought in an improper place or in a court that lacks jurisdiction over the subject matter of the action or over its person or property. A party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought.

A defendant who waives service must within the time specified on the waiver form serve on the plaintiff's attorney (or unrepresented plaintiff) a response to the complaint and must also file a signed copy of the response with the court. If the answer or motion is not served within this time, a default judgment may be taken against that defendant. By waiving service, a defendant is allowed more time to answer than if the summons had been actually served when the request for waiver of service was received.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

**HARTFORD FIRE INSURANCE COMPANY,**  **:**
**et al.**  **:**
**:**
**Plaintiffs,**  **:**
**:**
**v.**  **:**  **Civ. A. No. 06-0165**
**:**
**INTERDIGITAL**  **:**
**COMMUNICATIONS CORPORATION,**  **:**
**et al.**  **:**
**:**
**Defendants.**  **:**

---

### <u>ORDER</u>

AND NOW, this _____ day of _____, 2006, upon consideration of the Motion of Defendants InterDigital Communications Corporation and InterDigital Technology Corporation to Transfer Venue to the United States District Court for the District of Delaware Pursuant to 28 U.S.C. § 1404, and the opposition thereto, if any, it is hereby ORDERED that this civil action be transferred to the United States District Court for the District of Delaware.

_____
                                                                        J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

---

**HARTFORD FIRE INSURANCE COMPANY,**
**et al.**           :
      **Plaintiffs,**           :
                 :
      **v.**           :    **Civ. A. No. 06-0165**
                 :
**INTERDIGITAL**           :
**COMMUNICATIONS CORPORATION,**           :
**et al.**           :
      **Defendants.**           :

---

## MOTION OF DEFENDANTS INTERDIGITAL COMMUNICATIONS CORPORATION AND INTERDIGITAL TECHNOLOGY CORPORATION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE <u>DISTRICT OF DELAWARE PURSUANT TO 28 U.S.C. § 1404</u>

Defendants InterDigital Communications Corporation and InterDigital Technology Corporation (collectively "InterDigital"), through their undersigned counsel, respectfully move the Court pursuant to 28 U.S.C. § 1404 for an Order transferring this action to the United States District Court for the District of Delaware.  Pursuant to Local Rule 7.1(f), InterDigital respectfully requests oral argument.  The reasons in support of this motion are set forth in the accompanying memorandum of law, which is incorporated herein by reference.

WHEREFORE, InterDigital respectfully requests that this Court enter an Order transferring this action to the United States District Court for the District of Delaware.

Respectfully submitted,

\_\_\_\_s/ Stephen J. Mathes_____
Stephen J. Mathes
Arleigh P. Helfer III
Thomas S. Coleman
HOYLE, FICKLER, HERSCHEL & MATHES LLP
One South Broad Street, Suite 1500
Philadelphia, PA 19103-7397
(215) 981-5700
Attorneys for Defendants

Dated:  March 13, 2006

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **HARTFORD FIRE INSURANCE COMPANY, et al.,** : | |
| : | |
| **Plaintiffs,** : | |
| : | |
| **v.** : | **Civ. A. No. 06-0165** |
| : | |
| **INTERDIGITAL COMMUNICATIONS CORPORATION, et al.** : | |
| : | |
| **Defendants.** : | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER VENUE TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE PURSUANT TO 28 U.S.C. § 1404

Defendants InterDigital Communications Corporation and InterDigital Technology Corporation (collectively "InterDigital"), respectfully submit this memorandum of law in support of their motion pursuant to 28 U.S.C. § 1404 to transfer this matter to the United States District Court for the District of Delaware. This case is a declaratory judgment action brought by two of InterDigital's insurers, Hartford Fire Mutual Insurance Company and the Hartford Casualty Mutual Insurance Company (collectively "Hartford"), which seek a declaration that the policies they sold to InterDigital give rise to no duty to defend and no coverage in a pending action that Nokia Corporation and Nokia, Inc. brought against InterDigital in the District of Delaware. Because this action and the underlying litigation feature overlapping questions of law and fact, as described more fully below, the transfer would be in the interest of justice, would minimize the burdens on the parties and the courts, and would minimize the risk of inconsistent rulings.

I.   **BACKGROUND**

On or about January 12, 2005, Nokia Corporation and Nokia, Inc. (collectively "Nokia") commenced litigation against InterDigital in the United States District Court for the District of Delaware by filing a twenty-one count complaint (the "Nokia action").[1]   As filed, the Nokia action sought declaratory judgments of patent invalidity and noninfringement, as well as judgments for alleged violations of the Lanham Act against InterDigital.   On March 15, 2005, InterDigital moved to dismiss the complaint in the Nokia action pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3) for lack of subject matter jurisdiction and for failure to state a claim.   On December 21, 2005, the court granted InterDigital's motion with respect to twenty of the twenty-one counts in the Nokia complaint, dismissing every claim except one: a claim for violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) for alleged statements made by InterDigital that purportedly "damaged Nokia's business and its reputation in the wireless market."[2]   (Nokia Compl. ¶ 142.)

Shortly thereafter, Hartford commenced this declaratory judgment action on or about January 12, 2006, filing a complaint against InterDigital in this Court.   Hartford seeks a declaration that certain policies of insurance it sold to InterDigital do not give rise to a duty to defend or to indemnify[3] InterDigital for the sole remaining claim in the underlying Nokia action, the Lanham Act claim.   The main thrust of Hartford's declaratory judgment complaint centers on language in the pertinent policies that purports to exclude from coverage statements made by the

---

[1] The Nokia action is styled *Nokia Corp., et al. v. InterDigital Communications Corp., et al.*, Civ. A. No. 05-16-JJF.   A copy of the complaint in the Nokia action is attached to Hartford's complaint as Exhibit A.

[2] A true and correct copy of the district court's December 21, 2005 Opinion is attached hereto as Exhibit A.

[3] The second count of Hartford's complaint seeks a declaration that it has no duty to indemnify InterDigital for any loss in the underlying Nokia action.   InterDigital is filing this day a motion to

insured "with knowledge of the . . . [statements'] falsity." (*See, e.g.*, Complaint ¶¶ 55, 62.)  As stated by the Delaware court in the opinion dismissing all claims in the Nokia action except the Lanham Act count, to recover on a Lanham Act claim involving patents, the plaintiff would have to show that the statements were false or misleading *and* that the defendant acted in *bad faith*.  Nonetheless, Hartford believes that the Nokia complaint necessarily requires proof that InterDigital made certain statements "with knowledge of their falsity."  (Nokia Compl. ¶ 146.)  Thus, a central question in both the underlying Nokia action and in this action will be whether the Lanham Act requires proof that the defendant made false statements with actual knowledge of their falsity, which would allegedly trigger Hartford's exclusions, or proof of only reckless disregard for the truth or falsity of the defendant's statements, which would not trigger Hartford's exclusions.

## II.  ARGUMENT

The transfer statute states, in pertinent part:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  District courts evaluate motions to transfer on a case-by-case consideration of convenience and fairness.  *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1998); *Pro Spice, Inc. v. Omni Trade Group, Inc.*, 173 F. Supp. 2d 336, 339 (E.D. Pa. 2001).  In the final analysis, the purpose of transfer is to "prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616-17 (1964) (internal quotation marks omitted).

---

dismiss the second count of the Hartford complaint as premature and unripe as the underlying litigation has not reached a conclusion.

There are two steps in a court's analysis of a transfer motion.  First, the court should determine whether venue would be proper in the transferee district.  *See Weber v. Basic Comfort Inc.*, 155 F. Supp. 2d 283, 284 (E.D. Pa. 2001).  If that prong of the inquiry is satisfied, the "court then should determine whether a transfer would be in the interests of justice."  *Id*. (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)).

A court analyzing whether a motion to transfer would be in the interest of justice should "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (internal quotations omitted). There is no definitive formula or list of factors to consider.  *See id*.  However, it is well established that pendency of a related action in the proposed transferee forum is a powerful reason to grant transfer, one that will "tilt the balance in favor of transfer even when the convenience of parties and witnesses would suggest the opposite."[4]  *Weber*, 155 F. Supp. 2d at 286 (citing *Blanning v. Tisch*, 378 F. Supp. 1058, 1061 (E.D. Pa. 1974)); *see also Reading Metal Craft Co. v. Hopf Drive Assocs.*, 694 F. Supp. 98, 107 (E.D. Pa. 1988); *Supco Auto. Parts, Inc. v. Triangle Auto Spring Co.*, 538 F. Supp. 1187 (E.D. Pa. 1982); *Prudential Ins. Co. of Am. v. Rodano*, 493 F. Supp. 954, 955 (E.D. Pa. 1980).  Avoidance of inconsistent determinations also counsels for transfer of cases to a forum where related litigation is pending.  *See, e.g., Pergo, Inc. v. Alloc, Inc.*, 262 F. Supp. 2d 122, 131 (S.D.N.Y. 2003) (noting that relevant public interest factors in determining transfer include the avoidance of the potential for inconsistent judgments and the promotion of judicial economy) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)); *Abbott Labs. v. Selfcare, Inc.*, No. 98 C 7102, 1999 WL 162805, *2 (N.D. Ill. March 15,

---

[4] As explained below in part B, there is no inconvenience to the parties and witnesses to transfer this case from Philadelphia to Wilmington.

1999) (observing transfer of venue curbs the risk of inconsistent judgments that led to adoption of a strong policy in favor of transferring a case to a district where a related action is pending); *Upjohn Co. v. General Accident Ins. Co. of United States*, 581 F. Supp. 432, 435-36 (D.D.C. 1984) (noting that litigation of related claims in the same tribunal is strongly favored and avoids inconsistent results).

Here, the United States District Court for the District of Delaware is indisputably a proper venue for this action. Because the underlying Nokia action pending there involves related questions of fact and law, there is a risk of inconsistent rulings such that the interests of justice are best served by having both actions proceed in that forum.

## A.    This Action Could Have Been Brought In The District Of Delaware

To determine whether the transferee forum is one where the action might have originally been brought, the court must first address whether venue would be proper in the transferee district. *See Pro Spice, Inc.*, 173 F. Supp. 2d at 339; *Weber*, 155 F. Supp. 2d at 284. The general federal venue statute states, in pertinent part:

> (a)     A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State . . . .
>
> *        *        *
>
> (c)     For purposes of venue under this chapter, a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.

28 U.S.C. § 1391(a) & (c).

Here, it is beyond cavil that the United States District Court for the District of Delaware is a federal district where this suit might have originally been brought. The sole basis for federal subject matter jurisdiction in this action is diversity jurisdiction pursuant to 28 U.S.C. § 1332.

(*See* Complaint ¶ 8.)  Venue would be proper in Delaware under 28 U.S.C. § 1391(a)(1) because each InterDigital defendant is a corporate entity that is deemed to "reside" in Delaware for purposes of venue pursuant to 28 U.S.C. § 1391(c).  InterDigital Technology Corporation is incorporated in Delaware and, moreover, the Nokia action demonstrates that both InterDigital defendants are subject to personal jurisdiction there.

### B.     The Interests Of Justice Require Transfer

Once a court determines that venue is proper in the proposed transferee forum, it then should "determine whether a transfer would be in the interests of justice."  *Weber*, 155 F. Supp. 2d at 284.  In connection with that analysis, a court should consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice better served by transfer to a different forum."  *Jumara*, 55 F.3d at 879 (internal quotation marks omitted); *Weber*, 155 F. Supp. 2d at 284.  There is no set list of factors to consider, and courts have considered a variety of both private and public interests.  *Jumara*, 55 F.3d at 879.  The private and public interests courts have considered include factors such as:

> (1) the convenience and preference of the parties, including plaintiff's choice of forum; (2) the convenience of witnesses; (3) access to sources of proof such as books and records; (4) practical considerations that makes litigation easy, expeditious or inexpensive; (5) the relative calendar congestion of the two competing districts; (6) where the events at issue took place and the interest of the respective courts in deciding local controversies; (7) the enforceability of any judgment and (8) the familiarity of the trial judge with the applicable law.

*Weber*, 155 F. Supp. 2d at 285.

Here, the interest of justice in avoiding inconsistent results in related cases strongly favors transfer and outweighs the other factors.  The first three factors outlined in *Weber* have little significance in this case.  Hartford has chosen this Court as its preferred forum.  However, when a plaintiff chooses a forum other than its state of residence, its choice is given less weight.

*Weber*, 155 F. Supp. 2d at 285. Moreover, the convenience of the litigating attorneys is not considered in evaluating transfer of venue. *See id*. Other factors concerning the convenience to the parties and witnesses are of minimal effect on the balance here because the proposed transferee forum is an adjacent federal district mere miles further down the interstate highway, imposing no meaningful incremental burden on any party. *See Blanning v. Tisch*, 378 F. Supp. 1058, 1060-61 (E.D. Pa. 1974) (noting that comparatively short distance between Philadelphia and New York detracts from any argument that one forum is more convenient than the other from the standpoint of location of witnesses and parties but also observing that pendency of an apparent related case tilts the balance towards transfer so that inconsistent results may be avoided); *see also Reading Metal Craft Co*., 694 F. Supp. at 103 (noting that proposed transfer from Philadelphia to New York City is not the equivalent of a proposed transfer to the Central District of California). The public interest factors favor Delaware, if for no reason other than that the court there is already familiar with the underlying Nokia action and the issues presented by Lanham Act claims in the patent context.[5]

On the other side of the balance, it is well established in this district that pendency of a related action in the proposed transferee forum is a powerful practical reason to grant transfer, one that will "tilt the balance in favor of transfer even when the convenience of parties and witnesses would suggest the opposite." *Weber*, 155 F. Supp. 2d at 286 (citing *Blanning v. Tisch*, 378 F. Supp. 1058, 1061 (E.D. Pa. 1974)). *A fortiori*, in this case, where the convenience of the parties and witnesses is not affected, the existence of a related case in Delaware surely must "tilt the balance in favor of transfer." In addition, avoidance of inconsistent determinations and

---

[5] The calendars of both courts are comparable and both courts are equally capable of applying the relevant law. Neither court has a greater interest in hearing a dispute between a Pennsylvania corporation and a Delaware corporation and their insurers, who are incorporated in Indiana and Connecticut. (Complaint ¶¶ 4-7.)

inefficiencies in discovery also counsels for transfer of cases to a forum where related litigation is pending.  *See Blanning*, 378 F. Supp. at 1061. Indeed, courts in this district have determined that the pendency of a related case in the proposed transferee forum is a "powerful reason" to grant a motion to transfer venue.  *Supco Auto. Parts, Inc.*, 538 F. Supp. at 1192.

A previously filed and related case, the Nokia action, is currently pending in the proposed transferee forum.  The simultaneous pendency of this case and the related and underlying Nokia action presents a serious risk of inconsistent adjudications that could redound to the detriment of InterDigital.  The present suit concerns principally whether Hartford has a duty to defend in connection with the sole claim remaining in the Nokia action, Nokia's Lanham Act claim.  As noted by the court in the Nokia action, the patent context requires that Nokia prove that InterDigital made a false or misleading claim in *bad faith*.  (*See* December 21, 2005 Opinion at 11-12.)  The ruling in the Nokia action is in accord with the leading decisions addressing the elements of a claim under the Lanham Act when patents are involved.  *See Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1353-54 (Fed. Cir. 1999) (noting that statements about patents must have been made in bad faith to be actionable under Lanham Act); *see also Golan v. Pingle Enter., Inc.*, 310 F.3d 1360, 1370-71 (Fed. Cir. 2002) (observing that plaintiff must show by clear and convincing evidence that statement involving patents was made with knowledge of *or disregard for* its correctness or falsity to demonstrate bad faith).

Whether Hartford owes a duty to defend InterDigital pursuant to its liability and excess policies depends principally on an analysis of *Zenith Electronics Corp*. and its progeny to determine the standard of proof that Nokia must satisfy to prevail on its Lanham Act claim.  The potential for inconsistent rulings and the resulting jeopardy to InterDigital is clear.  In order to adjudicate the coverage issues in this case, the Court must interpret the elements of the Lanham Act claim pending in the underlying case in Delaware.  Should the coverage court reach a

different conclusion on this subject than is reached in the underlying case, InterDigital might be faced with the anomaly of the plaintiff proceeding in the underlying case on a claim that would be covered while the coverage court inconsistently concluded that there was no covered Lanham Act claim.  The result of such inconsistent rulings would be grossly unfair to InterDigital, leaving it without a defense for a claim that its insurer should have been defending.  If the question were before a single court, the potential for such inconsistent and unjust results would be eliminated.

Moreover, if this case and the Nokia action were to proceed simultaneously in separate forums, issues may arise concerning inconsistency in rulings on what constitutes permissible discovery.  There could also be inconsistency between the courts' findings of material fact.  For example, faced with summary judgment motions, this Court and the Delaware court may reach inconsistent determinations as to whether the evidence concerning the alleged misrepresentations made by InterDigital presents a genuine issue of material fact such that a trial is required.  If this case were to proceed to judgment based on a finding that InterDigital made the alleged statements with knowledge of their falsity—which InterDigital denies—the doctrine of issue preclusion or collateral estoppel could prevent InterDigital from litigating the issue in the Nokia action.[6]  The risks posed by concurrent litigation involving such overlapping legal and factual issues actions in separate fora is precisely what 28 U.S.C. § 1404 was intended to avoid.  *See Blanning*, 378 F. Supp. at 1061.

---

[6] Such a result would be especially unjust given that the instant litigation was commenced not by a competitor but by two of InterDigital's insurers, from whom it purchased multiple insurance policies with a view to protect itself from liability, not to incur it.  *See generally* 16 *Couch on Insurance* 3d § 227:37 (noting that declaratory judgment coverage actions brought by insurers before resolution of underlying litigation present major issues with respect to the potential insurers' actions have to prejudice their insureds in the underlying actions).

In sum, given the circumstances of concurrent, parallel litigation already proceeding in the United States District Court for the District of Delaware, the balance of factors and the interest of justice weighs heavily in favor of transferring this action to that forum. As this Court aptly stated under similar circumstances:

> The most compelling reason for transfer is that it would best serve the interests of justice. The presence of two related cases in the transferee forum is a substantial reason to grant a change of venue. The interests of justice and the convenience of the parties and witnesses are ill-served when federal cases arising out of the same circumstances and dealing with the same issues are allowed to proceed separately. The substantial likelihood that this case will be consolidated with the… related case[] pending in [another] United States District Court . . . , weighs heavily in favor of transfer.

*Prudential Ins. Co. of Am.*, 493 F. Supp. at 955. Indeed, when "all other practical considerations making trial easy, expeditious, and inexpensive" are weighed, the decision to transfer this case to the United States District Court for Delaware makes the most sense. *Supco Auto. Parts*, 538 F. Supp. at 1191.

## III. CONCLUSION

For the foregoing reasons, InterDigital respectfully requests that the Court enter an Order transferring this action to the United State District Court for the District of Delaware pursuant to the authority vested in it by 28 U.S.C. 1404(a).

<div style="margin-left:40%">

Respectfully submitted,

_____s/Stephen J. Mathes_____

Stephen J. Mathes
Arleigh P. Helfer III
Thomas S. Coleman
HOYLE, FICKLER, HERSCHEL & MATHES LLP
One South Broad Street, Suite 1500
Philadelphia, PA 19103-7397
(215) 981-5570
Attorneys for Defendants

</div>

Dated:  March 13, 2006

## <u>CERTIFICATE OF SERVICE</u>

I, Arleigh P. Helfer III, hereby certify that I caused the foregoing Motion of Defendants InterDigital Communications Corporation and InterDigital Technology Corporation to Transfer Venue to the United States District Court for the District of Delaware Pursuant to 28 U.S.C. § 1404 to be filed and served this day by the Electronic Court Filing system, where it is available for viewing, and also served by U.S. Mail, postage prepaid, upon the following:

> Gale White, Esquire
> Anthony L. Miscioscia, Esquire
> White and Williams
> 1800 One Liberty Place
> Philadelphia, PA 19103-7395
>
> Attorneys for Plaintiffs

<div align="right">

/s/ Arleigh P. Helfer III_____
Arleigh P. Helfer III

</div>

Dated: March 13, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and NOKIA,    :
INC.,                           :
                                :
        Plaintiffs,             :
                                :
    v.                          :    Civil Action No. 05-16-JJF
                                :
INTERDIGITAL COMMUNICATIONS     :
and INTERDIGITAL TECHNOLOGY     :
CORPORATION,                    :
                                :
        Defendants.             :

---

Jack B. Blumenfeld, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL,
Wilmington, Delaware.
Attorney for Plaintiffs.

Richard L. Horowitz, Esquire and David Ellis Moore, Esquire of
POTTER ANDERSON & CORROON, LLP, Wilmington, Delaware.
Of Counsel: D. Dudley Oldham, Esquire, Robert S. Harrell,
Esquire, and Richard S. Zembek, Esquire of FULBRIGHT & JAWORSKI,
LLP, Houston, Texas.
Of Counsel: Dan D. Davison, Esquire of FULBRIGHT & JAWORSKI, LLP,
Dallas, Texas.
Attorneys for Defendants.

---

**MEMORANDUM OPINION**

December $\underline{31}$, 2005
Wilmington, Delaware

**Farnan, District Judge.**

Pending before the Court is Defendants' Motion To Dismiss For Lack Of Jurisdiction Over The Subject Matter Pursuant To Federal Rules Of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3) (D.I. 10). For the reasons discussed, the Motion will be granted in part and denied in part.

**I.   Background**

On January 12, 2005, Plaintiffs filed a Complaint seeking a declaratory judgment that several of Defendants' third generation wireless technology patents ("3G patents") are either invalid or not infringed by Plaintiffs' products. The patents at issue are the subject of three licensing agreements, whereby Plaintiffs are licensed to practice all of Defendants' patents until the end of 2006. Plaintiffs brought the instant action, alleging reasonable apprehension that Defendants would bring suit at the end of the licensing agreements. Additionally, Plaintiffs alleged that Defendants violated Section 43 of the Lanham Act by using false or misleading information in bad faith, thereby inhibiting Plaintiffs' ability to develop technology and damaging Plaintiffs' reputation in the market. Defendants filed the instant Motion, requesting that the Court dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3).

1

## II.  Parties' Contentions

By their Motion, Defendants contend that Plaintiffs'
Complaint should be dismissed pursuant to Rules 12(b)(1) and
12(h)(3) for failure to plead and prove an actual controversy.
Defendants contend that there is no actual controversy because
Plaintiffs could not be in reasonable apprehension of a lawsuit
when there is a licensing agreement between the parties.
Alternatively, Defendants request that the Court exercise its
"unique and substantial" discretion and refuse to hear the case
because Plaintiffs brought the case for improper purposes.
Finally, Defendants contend that Plaintiffs' Lanham Act claim
should be dismissed pursuant to Rule 12(b)(6), because Plaintiffs
have failed to state a claim under Section 43(a).

In response, Plaintiffs contend that reasonable apprehension
of suit exists because the parties' licensing agreement expires
at the end of 2006, Defendants have a history of threatening
other wireless technology manufacturers with litigation, and
Defendants have threatened to sue Plaintiffs.  Alternatively,
Plaintiffs contend that the Court should consider a ripeness test
or that the Court should exercise its discretion to resolve the
dispute because the case is fit for resolution and a declaratory
judgment would be useful.  Finally, Plaintiffs contend that they
have sufficiently stated a claim under Section 43 of the Lanham
Act to survive Defendants' motion to dismiss.

**III. Discussion**

    A.   <u>Whether Plaintiffs' Claims For Declaratory Judgment Should Be Dismissed Pursuant To Federal Rules Of Civil Procedure 12(b)(1) and 12(h)(3)</u>

        1.   *Standard of Review*

A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of a court to address the merits of a plaintiff's complaint. The motion should be granted where the asserted claim is "insubstantial, implausible, foreclosed by prior decisions of [the] Court, or otherwise completely devoid of merit as not to involve a federal controversy." <u>Coxson v. Commonwealth of Pennsylvania</u>, 935 F.Supp. 624, 626 (W.D. Pa. 1996)(citations omitted).

A motion to dismiss under 12(b)(1) may present either a facial or a factual challenge to subject matter jurisdiction. <u>See</u> <u>Mortensen v. First Fed. Sav. and Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977). A factual challenge to subject matter jurisdiction exists where there is an attack on "the existence of subject matter jurisdiction in fact, quite apart from any pleadings." <u>Id</u>.

When a Court considers a factual challenge to jurisdiction, it does not presume the truth of the plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims. <u>Id</u>. Moreover, the plaintiff has the burden of proof

3

that jurisdiction does in fact exist.  Id.

The Court concludes that the instant case presents a factual
challenge because Defendants dispute the existence of the
jurisdictional facts alleged in the Complaint.  Thus, the Court
is not required to presume the truth of Plaintiffs' allegations,
and Plaintiffs bear the burden of proving that jurisdiction
exists.

2.  *Analysis*

The Declaratory Judgment Act "requires an actual controversy
between the parties before a federal court may exercise
jurisdiction."  28 U.S.C. § 2201(a); EMC Corp. v. Norand Corp.,
89 F.3d 807, 801 (Fed. Cir. 2004).  An actual controversy exists
when there is both "(1) an explicit threat or other action by the
patentee, which creates a reasonable apprehension on the part of
the declaratory judgment plaintiff that it will face an
infringement suit and (2) present activity which could constitute
infringement or concrete steps taken with the intent to conduct
such activity."  Gen-Probe, Inc. v. Vysis, Inc., 359 F.3d 1376,
1380 (Fed. Cir. 2004) (quoting BP Chems. Ltd. v. Union Carbide
Corp., 4 F.3d 975, 978 (Fed. Cir. 1993)).  A court must look to
the circumstances and facts at the time the complaint is filed to
determine whether there is an actual controversy.  MedImmune,
Inc. v. Centocor, Inc., 409 F.3d 1376, 1381 (Fed. Cir. 2005).

The parties do not dispute that the second prong, present infringing activity, of the two-part test is satisfied. Rather, the motion turns on the first prong, reasonable apprehension of suit. "When the defendant's conduct, including its statements, falls short of an express charge, one must consider the 'totality of the circumstances' in determining whether that conduct meets the first prong of the test." Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988) (quoting Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953, 955 (Fed. Cir. 1987)).

The Court concludes that, under the totality of the circumstances, Plaintiffs have not demonstrated reasonable apprehension of suit. First, and most damaging to Plaintiffs, is the existence of a licensing agreement that does not expire until the end of 2006. While the existence of a licensing agreement is not conclusive as to the Court's jurisdiction, C.R. Bard, Inc. v. Schwartz, 716 F.2d 874, 880 (Fed. Cir. 1983), the Federal Circuit has been reluctant to find reasonable apprehension where a licensing agreement exists. See Gen-Probe, 359 F.3d 1376; MedImmune, 409 F.3d 1376. Furthermore, the Federal Circuit has recently distinguished those cases finding reasonable apprehension despite a licensing agreement from the type of case at bar; in the cases finding reasonable apprehension, there was a breach of the licensing agreement or the plaintiff sought to

5

prevent such a breach.  See Gen-Probe, 359 F.3d at 1380 (finding

no reasonable apprehension of suit due to the existence of a

licensing agreement and the absence of two "critical

circumstances" from C.R. Bard: a material breach of the licensing

agreement and a suit brought by the defendant); MedImmune, 409

F.3d at 1381 (distinguishing the case from Cordis Corp. v.

Medtronic, Inc., 835 F.2d 859 (Fed. Cir. 1987) in which the

licensee also "sought to pay royalties into escrow pendente lite,

and to enjoin the licensor from canceling the license

agreement").  In this case, there is a licensing agreement

between Plaintiffs and Defendants, there has been no breach or

threat of breach, and Defendants have not brought any lawsuits

against Plaintiffs.

Second, where a licensing agreement has been formed, a court

must only consider a defendant's actions occurring after

formation of the licensing agreement.  Gen-Probe, 359 F.3d at

1381.  Thus, the Court will examine whether the following facts

alleged by Plaintiffs, occurring after formation, give rise to

reasonable apprehension:

- "Since the early 1990s, InterDigital has been accusing *every* mobile telephone equipment manufacturer of patent infringement."  (D.I. 14 at 17).

- "InterDigital was the cause of *all* of the patent proceedings to which it has been a party."  (Id.).

- "InterDigital also directly filed suit against OKI America and Qualcomm in 1993 and against Lucent this past year."  (Id.).

6

- "After Nokia initiated the arbitration proceeding to obtain information, InterDigital escalated the proceedings by counterclaiming against Nokia for the massive royalties it promised its shareholders in its press release." (Id. at 9).

- "For at least ten years, through correspondence, licensing presentations, meetings, and public statements, InterDigital has been claiming that Nokia's products infringed its patents." (Id. at 17).

- "In its licensing negotiations, InterDigital has repeatedly referenced its suits against other mobile telephone equipment manufacturers." (Id. at 17-18).

- "InterDigital's CEO, Howard Goldberg, recently threatened Nokia with suit, stating that InterDigital was considering litigation as a means of obtaining 'leverage' in the negotiations with Nokia." (Id. at 18).

The Court concludes that, under the totality of the circumstances, the facts alleged do not give rise to a reasonable apprehension of a lawsuit. As to Defendants' litigation tactics, in the past twelve years, Defendants have brought only three actions to defend their patents. The fact that two of them were brought in 1993, "against two other parties unconnected with [Plaintiffs, is] too remote to make [Plaintiffs'] apprehension of further litigation in [2005] reasonable." Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 883 (Fed. Cir. 1985) (finding that a seven-year difference was too remote). Furthermore, even if Defendants have claimed for ten years that Plaintiffs are infringing their patents, Plaintiffs' reasonableness is belied by the fact that not once in those ten years have Defendants sued Plaintiffs. To the contrary, Plaintiffs have filed lawsuits

7

against Defendants, most notably, the arbitration Plaintiffs initiated "regarding Nokia's royalty payment obligations...under the existing patent license agreement." (D.I. 15, Ex. G, p. 54). It was hardly escalation of the proceedings for Defendants to counterclaim on their right to receive those royalties. (Id. at 55).

Additionally, as to Defendants' conduct in negotiations for a potential 2006 license, "the Federal Circuit has concluded that the objective test for determining declaratory justiciability is not met 'when a patentee does nothing more than exercise its lawful commercial prerogatives....'" DuPont Dow Elastomers, LLC v. Greene Tweed of Del., Inc., 148 F. Supp. 2d 412, 415 (D. Del. 2001) (quoting Cygnus Therapeutic Sys. v. Alza Corp., 92 F.3d 1153, 1160 (Fed. Cir. 1996)). Mere "'jawboning,' which typically occurs in licensing negotiations," is not sufficient to give rise to reasonable apprehension. Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 889 (Fed. Cir. 1992).

Finally, Plaintiffs' argument is not furthered by its allegation that InterDigital's CEO, Howard Goldberg, recently threatened it with a lawsuit. In the allegedly threatening conversation, Mr. Goldberg was responding to a question in a conference call from an analyst regarding whether Defendants had any leverage in the arbitration that had been initiated by Plaintiffs:

8

> FRANK MARSALA:  Then just a Nokia question on that
> issue.  Is there any leverage that you guys have today?
> Is there anything you can do to influence Nokia to
> bring this matter to a close--here I'm talking about
> things like bringing injunctions against them--shipping
> handsets--things of that sort of [sic].  So, I'm
> curious about that.
>
> HOWARD GOLDBERG:  Let me first say that we certainly
> will look at every point of leverage.  The dynamics in
> a situation such as this are very important.  We will
> look--and have been looking--at how we can drive this
> to a successful resolution.  Through internal and
> external resources.  One of the ways that leverage is
> best used is as a surprise or--certainly you don't want
> to create an anticipation of anything that you may do.
> So the answer is yes.  But I would be very reluctant to
> talk about it and layout our plan for dealing with this
> particular matter.

(D.I. 1, Ex. T, p. 14).  In the Court's view, Mr. Goldberg is

discussing the leverage that Defendants will use to defend their

rights in the arbitration <u>initiated by Plaintiffs</u>.  It would be

illogical to require patent owners to state that they have no

leverage in legal proceedings initiated by a competitor in order

to avoid giving rise to that competitor's reasonable

apprehension.  Thus, the Court finds that the answer by Mr.

Goldberg was "reflexive and obligatory."  <u>Shell</u>, 970 F.2d at 889.

The Federal Circuit has stated that satisfaction of the two-

part test is not a requirement for every declaratory judgment

action.  <u>Fina Oil & Chem. Co. v. Ewen</u>, 123 F.3d 1466, 1470 (Fed.

Cir. 2003).  Plaintiffs, therefore, contend that the Court should

also consider a ripeness test to determine whether there is a

sufficient controversy.  Plaintiffs cite several cases in support

of this standard, but in each of those cases, the court still applied the two-prong test. See Teva Pharm. USA, Inc. v. Pfizer, Inc., 395 F.3d 1324 (Fed. Cir. 2005); Fina Oil, 123 F.3d 1466; GAF Bldg. Materials Corp. v. Elk Corp., 90 F.3d 479 (Fed. Cir. 1996); EMC Corp., 89 F.3d 807.  Other cases cited in Plaintiffs' analysis either did not discuss the Declaratory Judgment Act or did not discuss whether an actual controversy existed.  See Dow Chem. Co. v. Exxon Corp., 30 F. Supp. 2d 673 (D. Del. 1998); Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573 (Fed. Cir. 1993). Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs, 330 F.3d 1345 (Fed. Cir. 2003)  Moreover, even if the case were ripe for review, the Court still could not hear the case unless an actual controversy existed, which the Court has concluded does not.  Accordingly, the Court declines to apply a test different from the two-prong test applied above.

In sum, the Court concludes that Plaintiffs did not have a reasonable apprehension of litigation at the time the Complaint was filed.  Therefore, there is no actual controversy to support the Court's jurisdiction over the declaratory judgment claims under the Declaratory Judgment Act.  Accordingly, the Court will dismiss Plaintiffs' declaratory judgment claims for lack of subject matter jurisdiction.

B.   Whether Plaintiffs' Claim Under Section 43 Of the
     Lanham Act Should Be Dismissed Pursuant to Rule
     12(b)(6) For Failure To State A Claim

     1.   *Legal Standard*

Defendants also request that the Court dismiss Plaintiffs'

claim under Section 43 of the Lanham Act pursuant to Rule

12(b)(6) for failure to state a claim upon which relief may be

granted.  Fed. R. Civ. P. 12(b)(6).  The purpose of a motion to

dismiss is to test the sufficiency of a complaint, not to resolve

disputed facts or decide the merits of the case.  Kost v.

Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Dismissal is only

appropriate when "it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle

him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

     2.   *Analysis*

To state a claim under § 43(a) of the Lanham Act, a

plaintiff must allege that: (1) defendant made false or

misleading statements as to its products, or those of the

plaintiff; (2) there was actual deception or at least a tendency

to deceive a substantial portion of the intended audience; (3)

the deception was material in that it is likely to influence

purchasing decisions; (4) the advertised goods traveled in

interstate commerce; and (5) there is a likelihood of injury to

the plaintiff in terms of declining sales, loss of good will,

etc.  Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-

Poulenc Rorer Pharms., Inc., 19 F.3d 125, 129 (3d Cir. 1994).

Additionally, a plaintiff must demonstrate that the patent holder

acted in bad faith. Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d

1340, 1353 (Fed. Cir. 1999).

Accepting as true all allegations in Plaintiffs' Complaint

and drawing all reasonable inferences therefrom, the Court

concludes that, at this juncture, Plaintiff has stated a claim

under Section 43 of the Lanham Act sufficient to survive

Defendants' motion to dismiss.  Plaintiffs allege that Defendants

made false or misleading statements in bad faith to the effect

that Defendants' patents cover Plaintiffs' 3G products.

Plaintiffs further allege that these statements are material and

"have caused actual deception or have a tendency to deceive."

(D.I. 1 at 35).  Additionally, Plaintiffs have alleged that the

misrepresentations have injured Plaintiffs in their business and

have damaged their reputations.

The requirement that the advertised goods have traveled in

interstate commerce is not as clearly alleged as the other

requirements.  Drawing all reasonable inferences in the light

most favorable to Plaintiffs, however, the Court concludes that

the statement "Nokia is currently designing, rolling out and

further developing 3G products in the United States that will be

manufactured and sold by Nokia after 2006" means that at least

some 3G products have already been developed and entered

interstate commerce.[1] (D.I. 1 at 6). Accordingly, the Court will deny Defendants' motion to dismiss pursuant to Rule 12(b)(6).

## IV. Conclusion

For the reasons discussed, Defendants' Motion To Dismiss For Lack Of Jurisdiction Over The Subject Matter Pursuant To Federal Rules Of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3) (D.I. 10) will be granted in part and denied in part.

An appropriate Order will be entered.

---

[1]Defendants quote this statement to demonstrate that Plaintiffs are suing on future products. Read in the context of the entire paragraph and in the light most favorable to Plaintiffs, however, the Court concludes the statement means that some 3G products have already been made ("rolled out") and will continue to be made after the licensing agreement expires ("further developed").

13

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

**HARTFORD FIRE INSURANCE COMPANY,**    **:**
**et al.**    **:**
   **:**
     **Plaintiffs,**    **:**
   **:**
     **v.**    **:**     **Civ. A. No. 06-0165**
   **:**
**INTERDIGITAL**    **:**
**COMMUNICATIONS CORPORATION,**    **:**
**et al.**    **:**
   **:**
     **Defendants.**    **:**
_____

## ORDER

     AND NOW, this _____ day of _____, 2006, upon consideration of the Motion Of

Defendants InterDigital Communications Corporation And InterDigital Technology Corporation

To Dismiss Count Two Of The Complaint, and the opposition thereto, if any, it is hereby

ORDERED that Count Two of the Complaint is dismissed without prejudice.

_____
                                            J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY, et al. | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| v. | : | **Civ. A. No. 06-0165** |
| | : | |
| INTERDIGITAL COMMUNICATIONS CORPORATION, et al. | : | |
| | : | |
| **Defendants.** | : | |

## MOTION OF DEFENDANTS INTERDIGITAL COMMUNICATIONS CORPORATION AND INTERDIGITAL TECHNOLOGY CORPORATION TO DISMISS COUNT TWO OF THE COMPLAINT

Defendants InterDigital Communications Corporation and InterDigital Technology Corporation (collectively "InterDigital"), through their undersigned counsel, respectfully move the Court pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. Section 2201 for an Order dismissing Count Two of the Complaint without prejudice to its refiling following the conclusion of underlying litigation in the United States District Court for the District of Delaware. Pursuant to Local Rule 7.1(f), InterDigital respectfully requests oral argument. The reasons in support of this motion are set forth in the accompanying memorandum of law, which is incorporated herein by reference.

WHEREFORE, InterDigital respectfully requests that this Court enter an Order dismissing Count Two of the Complaint without prejudice.

Respectfully submitted,


__s/Stephen. J. Mathes_____

Stephen J. Mathes
Arleigh P. Helfer III
Thomas S. Coleman
HOYLE, FICKLER, HERSCHEL & MATHES LLP
One South Broad Street, Suite 1500
Philadelphia, PA 19103-7397
(215) 981-5700
Attorneys for Defendants

Dated:  March 13, 2006

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

**HARTFORD FIRE INSURANCE COMPANY,** :
**et al.,**                              :
                                         :
            **Plaintiffs,**              :
                                         :
            **v.**                       :        **Civ. A. No. 06-0165**
                                         :
**INTERDIGITAL**                         :
**COMMUNICATIONS CORPORATION,**          :
**et al.**                               :
                                         :
            **Defendants.**              :
_____

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF INTERDIGITAL
COMMUNICATIONS CORPORATION AND INTERDIGITAL TECHNOLOGY
CORPORATION TO DISMISS
COUNT TWO OF THE COMPLAINT**

Defendants InterDigital Communications Corporation and InterDigital Technology

Corporation (collectively "InterDigital"), respectfully submit this memorandum of law in support

of their motion pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. Section 2201

to dismiss Count Two of the Complaint.  This case is a declaratory judgment action brought by

two of InterDigital's insurers, Hartford Fire Mutual Insurance Company and the Hartford

Casualty Mutual Insurance Company (collectively "Hartford"), which in part seek a declaration

that the policies they sold to InterDigital give rise to no duty to indemnify in a pending action

that Nokia Corporation and Nokia, Inc. brought against InterDigital in the District of Delaware.

However, Hartford's claim for a declaratory judgment concerning the duty to indemnify,

embodied in Count Two of the Complaint, puts the cart before the horse: it is premature and

unripe and should be dismissed without prejudice for the reasons set forth more fully below.

## I.    __BACKGROUND__

On or about January 12, 2005, Nokia Corporation and Nokia, Inc. (collectively "Nokia") commenced litigation against InterDigital in the United States District Court for the District of Delaware by filing a twenty-one count complaint (the "Nokia action").[1]  As filed, the Nokia action sought declaratory judgments of patent invalidity and noninfringement, as well as judgments for alleged violations of the Lanham Act against InterDigital.  The claims involved certain cellular telephone technology called "3G" and patents in InterDigital's patent portfolio that pertain to 3G technology.  (Nokia Compl. ¶ 11.)  On March 15, 2005, InterDigital moved to dismiss the complaint in the Nokia action pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3) for lack of subject matter jurisdiction and for failure to state a claim.  On December 21, 2005, the court granted InterDigital's motion with respect to twenty of the twenty-one counts in the Nokia complaint, dismissing every claim except one: a claim for violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) based on statements allegedly made by InterDigital that "damaged Nokia's business and reputation in the wireless market."[2]  (Nokia Compl. ¶ 142.)

Hartford commenced this declaratory judgment action on or about January 12, 2006, filing a three count declaratory judgment complaint against InterDigital in this Court.  In Count One, Hartford seeks a declaration that certain policies of insurance it sold to InterDigital do not give rise to a duty to defend InterDigital for the remaining Lanham Act claim in the underlying Nokia action.  In Count Two, Hartford seeks a declaration that it does not have a duty to indemnify InterDigital for the pending Nokia Lanham Act claim, in which discovery has only

---

[1] The Nokia action is styled *Nokia Corp., et al. v. InterDigital Communications Corp., et al.*, Civ. A. No. 05-16-JJF.  A copy of the complaint in the Nokia action is attached to Hartford's complaint as Exhibit A.

recently commenced.  In Count Three, Hartford seeks a declaration regarding the status of a corporate entity, InterDigital Technology Corporation, in order to determine whether it is an insured.  There is, however, no dispute that InterDigital Communications Corporation is a named insured under the Hartford policies.  InterDigital's present motion is directed only at Count Two.

The main thrust of Hartford's declaratory judgment complaint centers on language in the pertinent policies that purports to exclude from coverage liability for injuries caused by statements made by the insured with knowledge of the statements' falsity.  (*See, e.g*., Complaint ¶¶ 55, 62.)  Hartford contends that the Nokia complaint alleges an injury that could not give rise to a duty to indemnify based chiefly on the fact that Nokia alleges in connection with its Lanham Act claim that InterDigital made certain statements about its own patents in bad faith and with knowledge of their falsity.  (*Id*. ¶¶ 47, 67-68; Nokia Compl. ¶ 146.)  However, as stated by the court in the opinion dismissing twenty of the twenty-one counts in the Nokia action, to recover on a Lanham Act claim involving patents, the plaintiff would have to show that the statements were false or misleading *and* that the defendant acted in *bad faith*.  (*See* December 21, 2005 Opinion at 11-12.)  The Delaware court's opinion did not decided definitively the standard of proof to establish bad faith under the Lanham Act.  Thus, a central question in both the underlying Nokia action and in this coverage action will be whether the Lanham Act requires that a showing of *bad faith* entails proof that the defendant made false statements with actual knowledge of their falsity or proof of something less, such as reckless disregard for the truth or falsity of the statements.

---

[2] A true and correct copy of the district court's December 21, 2005 Opinion is attached hereto as Exhibit A.

## II.    **ARGUMENT**

There are two reasons why Count Two of the Hartford Complaint should be dismissed without prejudice to its being renewed, if necessary, after the conclusion of the underlying Nokia action.   First, Count Two of the Hartford Complaint should be dismissed without prejudice because the underlying Nokia action is still pending.   As to the issue of the duty to indemnify, the actual facts concerning InterDigital's alleged conduct must be known before any determination can be made.   Hartford itself acknowledges that the "duty to indemnify is based on the true facts which have not yet been determined."   (Complaint ¶ 70.)   InterDigital has not suffered an adverse judgment in the Nokia action and presently has no liability to Nokia.   To be sure, InterDigital may never have liability to Nokia in the Nokia action.   Thus, the question of whether Hartford has a duty to indemnify InterDigital for any liability in the Nokia action is premature and unripe for judicial determination.

Second, assuming for the sake of argument only that Count Two presents a question that is ripe, practical considerations as well as considerations of fairness still compel dismissal of Count Two.   This is a case in which the Court may properly exercise its discretion under the Declaratory Judgment Act to dismiss Hartford's request for a declaration that will likely do far more harm than good.   Hartford's request for a declaratory judgment as to its duty to indemnify InterDigital and its attendant desire to go beyond the facts alleged on the face of the Nokia complaint may prejudice the parties in the Nokia action.   In the event that InterDigital's motion to transfer[3] this case to the United States Court for the District of Delaware is denied, any factual determinations this Court makes concerning the alleged statements that Hartford contends trigger policy exclusions in this action and which Nokia contends form the basis of its Lanham Act

---

[3] On this day, InterDigital concurrently filed a motion to transfer this action to the United States District Court for the District of Delaware pursuant to 28 U.S.C. Section 1404.

claim in the Nokia action, may preclude InterDigital from litigating those issues in the Nokia action by virtue of collateral estoppel.  What is worse, if this Court were to make such determinations on the duty to indemnify in this action, it would be possible that the Nokia action might conclude in a way that would moot this Court's declaration or otherwise be inconsistent with it.  It is conceivable that this Court might rule on the duty to indemnify only to see Nokia later change its theory of liability or otherwise amend its complaint in a way that would unquestionably bring its claims within the coverage of the Hartford policies.  Moreover, InterDigital is optimistic that it will avoid liability altogether in the Nokia action.  If that is the outcome in the Nokia action following a declaration concerning the duty to indemnify in this Court, then Hartford will have wasted substantial resources of its own, of its customer InterDigital, and of the judicial system, all in order for Hartford to receive a moot declaration concerning its duty to indemnify.

A.    **Count Two Of Hartford's Complaint Should Be Dismissed For Lack Of Subject Matter Jurisdiction Because The Duty To Indemnify Is Not Ripe For Adjudication**

Challenges to the ripeness of declaratory judgment actions involve the subject matter jurisdiction of the courts and are properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1).  *See NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001); *Save Ardmore Coallition v. Lower Merion Township*, __ F. Supp. 2d. __, __, No. 05-1688, 2005 WL 3021087, *4 (E.D. Pa. Nov. 9, 2005); *TIG Ins. Co. v. Insinger Mach. Co.*, No. Civ. A. 97-3164, 1998 WL 748287, *3 (E.D. Pa. Oct. 27, 1998); *see also Travelers Prop. Cas. Corp. v. Winterthur Int'l*, No. 02 Civ. 2406, 2002 WL 1391920, *1 n.1 (S.D.N.Y. June 25, 2002).  In the face of a Rule 12(b)(1) motion to dismiss, the burden of establishing subject matter jurisdiction always remains on the plaintiff as the party asserting jurisdiction.  *See Save Ardmore Coallition*, __ F. Supp. 2d at __, 2005 WL 3021087 at *3.  The ripeness requirement draws both

on Article III limitations on judicial power as well as from prudential limitations. *See Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 733 n.7 (1997); *NE Hub Partners, L.P.*, 239 F.3d at 341. The function of the ripeness doctrine is to prevent federal courts from engaging in premature adjudication and entangling themselves in abstract disagreement. *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995).

      1.    <u>Count Two Should Be Dismissed As Unripe Because The Underlying Litigation Has Not Concluded</u>

Courts in this Circuit follow a general ripeness rule to the effect that "a court entertaining a declaratory judgment action in an insurance coverage case should refrain from determining the insurer's duty to indemnify until the insured is found liable for damages in the underlying action." *American States Ins. Co. v. Component Techs., Inc*., No. 3:02CV1678, 2005 WL 2253583, *1 (M.D. Pa. Sept. 15, 2005), *Cincinnati Ins. Cos. v. Pestco, Inc*., 374 F. Supp. 2d 451, 464-65 (W.D. Pa. 2004); *Home Ins. Co. v. Law Offices of Jonathan DeYoung*, 107 F. Supp. 2d 647, 650 (E.D. Pa. 2000); *Home Ins. Co. v. Perlberger*, 900 F. Supp. 768, 773 (E.D. Pa. 1995); *see also Sphere Ins. Co. v. Rosen*, Civ. A. No. 85-2654, 1985 WL 3572, *3 (E.D. Pa. Nov. 6, 1985) (dismissing insurer's claim for declaration on duty to indemnify without prejudice as premature even though there was no duty to defend because there might never be liability in the underlying suit). Other jurisdictions are in accord. *See Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc*., 401 F.3d 876, 882-83 (8th Cir. 2005) (affirming district court's dismissal without prejudice of claim for declaratory judgment on duty to indemnify as premature as the duty would turn on an issue of intent that would be addressed in the underlying action); *Lear Corp. v. Johnson Elec. Holdings Ltd*., 353 F.3d 580, 583 (7th Cir. 2003) ("We regularly say that decisions about indemnity should be postponed until the underlying liability has been established."); *Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp*., 90 F.3d 671,

676 (2d Cir. 1996) (affirming dismissal without prejudice of an excess insurer's declaratory judgment action as unripe where facts concerning liability were not yet established); *Grinnell Mut. Reins. Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995) (holding it would be premature to rule on insurer's request for a declaratory judgment concerning its duty to indemnify even where the court found no duty to defend in the underlying tort case which had not yet reached its conclusion); *Landpen Co. v. The Maryland Cas. Co.*, No. 03 Civ. 3624, 2005 WL 356809, *9-10 (S.D.N.Y. Feb. 15, 2005) (noting that "courts considering the question [of an insurer's duty to defend] have generally declined to rule on the issue of indemnity until resolution of the underlying liability claim" and refusing to consider claim until the actual facts were established); *Hartford Cas. Ins. Co. v. Chase Title, Inc.*, 247 F. Supp. 2d 779, 780 n.1 (D. Md. 2003) ("It would be premature to determine whether [insurer] has a duty to indemnify until after the issues in the underlying class action have been resolved."); *Travelers Prop. Cas. Corp. v. Winterthur Int'l*, No. 02 Civ. 2406, 2002 WL 1391920, *6 (S.D.N.Y. June 25, 2002) (holding that in "cases such as this—where the key facts can and will be established in an underlying proceeding—the lack of ripeness is palpable" and citing New York state court decisions holding that liability must first be determined in the underlying action before the duty to indemnify can be addressed in a declaratory judgment action); *Allstate Indem. Co. v. Lewis*, 985 F. Supp. 1341, 1349-50 (M.D. Ala. 1997) (holding that a determination of the duty to indemnify is not ripe when it is still possible for the plaintiff in the underlying lawsuit to change the theory of liability and assert a claim that is covered by the policy in issue); *Aetna Cas. & Surety Co. v. PPG Indus., Inc.*, 554 F. Supp. 290, 296 (D. Ariz. 1983) (holding request for declaratory judgment to be unripe when the underlying action had not yet concluded and there was no assurance that the plaintiffs in that action would prevail); *Dana Corp. v. LTV Corp.*, 668 A.2d 752, 756 (Del. Ch. 1995) (observing that courts have declined to enter declaratory judgments with respect to indemnity until there is a

judgment against the party seeking it and noting that courts have refused to decide an insurer's duty to indemnify before there is a judgment against the insured); *Statt v. American Home Assurance Co*., 595 N.Y.S.2d 700, 701 (N.Y. App. Div. 1993) (dismissing declaratory judgment action where the extent of the insurer's duty to indemnify depended on the resolution of an issue that would be decided in the underlying action); *see also* 16 *Couch on Insurance* 3d § 227:37 (observing that there is "considerable authority" that determinations of the duty to indemnify must await resolution of the underlying litigation).

Moreover, Pennsylvania law will likely govern the dispute in this diversity action.[4] Pennsylvania decisional law likewise establishes that declaratory judgment actions concerning an insurer's duty to indemnify are unripe for determination before liability is established in the underlying litigation. *See Heffernan & Co. v. Hartford Ins. Co. of Am*., 614 A.2d 295, 298 (Pa. Super. Ct. 1992); *United Servs. Auto. Ass'n v. Elitzky*, 517 A.2d 982 (Pa. Super. Ct. 1986); *see also Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (applying Pennsylvania law and affirming dismissal of insurer's declaratory judgment action to the extent it sought a determination of the company's duty to indemnify prior to the conclusion of the underlying litigation).

---

[4] A federal court sitting in diversity applies the choice of law rule of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co*., 313 U.S. 487, 496 (1941). Under Pennsylvania choice of law rules, the trial court applies the law of the state where the policy was delivered. *See Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 745-46 (3d Cir. 1999). If the case is transferred to the District of Delaware, the result will likely be the same. Delaware applies the "most significant relationship" test in disputes involving insurance contracts. *See Essick v. Barksdale*, 882 F. Supp. 365, 369 (D. Del. 1995); *Chesapeake Utils. Corp. v. American Home Assurance Co*., 704 F. Supp. 551, 555 (D. Del. 1989). Under that analysis, the pertinent factors, including such factors as where the contract was made and where the insured business is located, suggest Pennsylvania law will apply as InterDigital has its principal place of business in Pennsylvania and entered into the insurance contracts there. *See Chesapeake Utils. Corp*., 704 F. Supp. at 556. Even if Delaware law were to apply, the result would not differ as Delaware agrees with Pennsylvania that findings of liability should precede a suit for a declaratory judgment concerning indemnification. *See Dana Corp. v. LTV Corp*., 668 A.2d 752, 756 (Del. Ch. 1995) (observing that courts have declined to enter declaratory judgments with respect to

Here, there is absolutely no dispute that the Nokia action has not concluded. Hartford expressly concedes in Count Two of its Complaint that the true facts germane to the duty to indemnify have yet to be established. Consequently, Count Two should be dismissed without prejudice pursuant to the general rule observed in this Circuit that declaratory judgment actions concerning the duty to indemnify should not precede the conclusion of the underlying litigation.

2.   Hartford's Request For Declaratory Relief Concerning The Duty To Indemnify Is Also Unripe Under The Three-Prong Ripeness Test Observed In This Circuit

Count Two of Hartford's Complaint also cannot withstand scrutiny under the Third Circuit's prevailing ripeness analysis. In the context of declaratory judgment actions, the ripeness analysis followed in the Third Circuit involves a three-part test: first, the court ascertains the "adversity of the parties' interests; second, the probable conclusiveness of a judgment; third, the practical utility to the parties of rendering a judgment." *NE Hub Partners, L.P.*, 239 F.3d at 342; *see Step-Saver Data Sys., Inc. v. Wyse Technology*, 912 F.2d 643, 647 (3d Cir. 1990) (setting forth the three prong ripeness test generally known in this Circuit as the "*Step-Saver* test"). A number of district courts in this Circuit have applied the *Step-Saver* ripeness test in the context of declaratory judgment actions brought by insurers seeking declarations concerning their duty to indemnify. *See, e.g.*, *American States Ins. Co.*, 2005 WL 2253583 at *1-3 (applying *Step-Saver* ripeness test and dismissing insurer's declaratory judgment action concerning its duty to indemnify as unripe where liability had not been established in the underlying case); *Westport Ins. Corp. v. Howell*, No. Civ. A. 05-351, 2005 WL 1124092, *1 (E.D. Pa. May 10, 2005) (dismissing insurance company's complaint seeking declaration concerning duty to indemnify as unripe pursuant to the *Step-Saver* test because the

---

indemnity until there is a judgment against the party seeking it and noting that courts have refused to decide an insurer's duty to indemnify before there is a judgment against the insured).

underlying action was not concluded); *TIG Ins. Co.*, 1998 WL 748287 at *3 (observing three-part test first announced in *Step-Saver* and dismissing insurer's declaratory judgment action as unripe because insured had not made claim for coverage); *Home Ins. Co. v. Perlberger*, 900 F. Supp. 768, 772 (E.D. Pa. 1995) (holding request for judicial determination of duty to indemnify prior to conclusion of underlying lawsuit unripe pursuant to *Step-Saver* three-part test).

Because there has been no finding of liability in the underlying action, and because the true facts that would permit analysis of the duty to indemnify have not been determined—as Hartford readily admits at Paragraph 90 of its Complaint—Hartford's request for a declaratory judgment cannot satisfy all three prongs of the *Step-Saver* ripeness test. Accordingly, Hartford's Complaint should be dismissed for lack of subject matter jurisdiction to the extent it seeks a declaration concerning its duty to indemnify.

<p style="padding-left:2em"> a. <u>Because There Has Been No Determination Of Facts Concerning Liability In The Underlying Action, The Parties' Interests Are Not Presently Concretely Adverse With Respect To The Duty To Indemnify</u></p>

First, the adversity of the parties' interests is not yet concrete with respect to the duty to indemnify. Parties' interests are adverse where actual harm will result if the declaratory judgment is not granted. *See Step-Saver Data Sys., Inc.*, 912 F.2d at 647-48. As the court stated in *Perlberger*, the "adversity of the parties' interests as to the duty to indemnify will not be complete until after the resolution of the [underlying] action, when it will be clear whether [the insured] can assert a claim for indemnity from [his insurer]." *Perlberger*, 900 F. Supp. at 773; *accord Westport Ins. Corp.*, 2005 WL 1124092 at *2 (holding insurer's and insured's interests concerning the duty to defend are not adverse prior to judgment on the underlying claim).

It is indisputable that there has been no finding of liability and no judgment entered in the Nokia action. There may never be a judgment attributing liability to InterDigital, in which case

the parties' interests will never become adverse.  Furthermore, because InterDigital has not been

found liable or sought indemnity from Hartford, no harm will come to Hartford if a declaratory

judgment is not presently entered with respect to the duty to indemnify.[5]  Consequently, the

parties' potentially adverse interests are not sufficiently concrete to render the duty to indemnify

ripe for determination.

### b.  A Declaratory Judgment Would Not Be Conclusive

The second prong of the *Step-Saver* ripeness test requires the Court to determine whether

a decree would be sufficiently conclusive to define and clarify the legal rights or relations of the

parties.  *Step-Saver Data Sys., Inc.*, 912 F.2d at 648.  Whether a declaratory judgment will be

conclusive depends in part on whether the issues presented are purely legal or whether further

factual development would be useful.  *See NE Hub Partners, L.P.*, 239 F.3d at 342 n.9.  An

integral part of this analysis is the whether the court has a concrete set of facts before it from

which it can make appropriate findings.  *See Travelers Ins. Co.*, 72 F.3d at 1155.  Here, however,

Hartford is asking the Court to enter a judgment declaring "that Hartford has no obligation to

indemnify InterDigital in connection with the *Nokia* complaint."  (Complaint, Count Two

Wherefore Clause.)  Short of litigating the entire underlying action before this Court, it would

not be possible for any decree concerning the duty to indemnify to be conclusive.  Hartford itself

acknowledges the speculative nature of its request: "Even if Hartford were to have an obligation

---

[5] Hartford's more pressing concern involves its duty to *defend* the Nokia action. The duty to defend and the duty to indemnify present entirely separate ripeness issues. *See Sphere Drake, P.L.C. v. 101 Variety, Inc.*, 35 F. Supp. 2d 421, 430-31 (E.D. Pa. 1999) (noting that where claims in the underlying action have not been decided, the inquiry of a court hearing a declaratory judgment action "is limited to an analysis of an insurer's duty to defend because '[t]he indemnification issue, by contrast, requires the resolution of the merits of the underlying dispute.'"); *Nationwide Mut. Fire Co. v. Shank*, 951 F. Supp. 68, 71-72 (noting that duty to defend usually must be decided early vis-à-vis an underlying case whereas duty to indemnify generally should not be determined until after the underlying litigation has resolved the facts and liability).

to defend the Nokia complaint . . . Hartford *may* not ultimately owe any indemnity to InterDigital because the duty to indemnify is not based on the allegations of the complaint." (*Id.*, ¶ 69). Instead, Hartford acknowledges that the "duty to indemnify is based on the true facts *which have not yet been determined*." (*Id.*, ¶ 70) (emphasis added).

Based on the language in Count Two of its Complaint, Hartford is inappropriately asking the Court to grant a declaration as to a contingency. That is, Hartford is asking the Court to construe the insurance policy and its exclusions prior to the establishment of the underlying facts that would determine liability in the Nokia action. However, "[c]onstruing a contract and making law without finding the necessary facts constitutes advisory opinion writing, and that is constitutionally forbidden." *Step-Saver Data Sys., Inc.*, 912 F.2d at 649. The Constitution clearly prohibits the courts from issuing opinions advising what the law would be upon hypothetical facts. *Id.* (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937)).

The *Perlberger* court addressed a situation similar to the one presented by Hartford's request for a ruling in its duty to indemnify. There, the legal malpractice insurer ("Home") sought a declaratory judgment concerning its duty to indemnify its insured, a divorce lawyer and his law firms ("Perlberger"). Perlberger had been sued by a former client who claimed he had a romantic relationship with her while he represented her. She claimed he used his position to influence her management of her substantial divorce settlement in ways that benefited him. She brought claims for legal malpractice, breach of contract, breach of fiduciary duty, fraud, and unjust enrichment against Perlberger. Home denied defense and indemnity to Perlberger. Although the former client's suit was pending, Home brought an action against Perlberger seeking a declaratory judgment that it owed no duty to defend or indemnify him in the former client's lawsuit, invoking several coverage exclusions and provisions in the policy it had issued to him. Among other things, Home relied on the following exclusions and provisions: 1) an

endorsement that excluded coverage for acts alleged to have occurred prior to a date certain; 2) a provision that stated the policy would only insure against claims made during professional services rendered; and 3) a "wrongful acts" provision that stated the policy would not apply to any judgment based on fraud or deliberately wrongful acts. *Id.* at 770-71. Applying the *Step-Saver* ripeness test, the court found that Home's request for a declaratory judgment concerning its duty to indemnify was "not ripe for judicial determination." *Id.* at 772.

The court found the conclusiveness prong of the test to be determinative because a declaratory judgment would depend on a contingency and would not resolve the dispute:

> Consider what would occur if, in the pending state-court action, a jury were to reach a verdict for [the former client] on her legal malpractice, breach of contract, breach of fiduciary duty, or unjust enrichment claims based either (a) only on a finding of negligent or reckless conduct by Perlberger, or (b) on unclear grounds. In the first case, the declaratory judgment would be irrelevant; in the second, its applicability would be uncertain, requiring further court proceedings. These are precisely the circumstances that led the *Step-Saver* court to find that a declaratory judgment in that case would not be conclusive. This court must come to the same conclusion.

*Perlberger*, 900 F. Supp. at 773.[6]

Likewise, in *Westport Insurance Corp.*, the court held that it could not render a declaratory judgment concerning indemnity that would be conclusive where the underlying litigation was still pending. *Westport Ins. Corp.*, 2005 WL 1124092 at *2. There, a malpractice insurance carrier brought a declaratory judgment action against its insured, father and son lawyers, seeking a declaration that it had no duty to indemnify them for alleged professional

---

[6] In a footnote, the *Perlberger* court stated that there was a defect in Home's request for a declaratory judgment because Home's complaint did not ask the court to find the facts that would form the basis for its declaratory judgment. *Id.* at 773 n.2. However, the court then stated: "This is not to say that Home's pursuit of a declaratory judgment [concerning its duty to indemnify] would have been more successful had Home asked the court to engage in fact

negligence.  In addressing the conclusivity prong of the *Step-Saver* ripeness test, the court ruled
that any declaration it made "would amount to an advisory opinion" because it would be based
on the "theoretical contingency that liability in the underlying claim will actually be imposed."
*Id*.

Hartford's request for a declaratory judgment similarly depends on a contingency and
would not resolve the dispute.  Unlike the duty to defend, which can generally be gleaned from
the face of a complaint without inquiring into the underlying facts, the duty to indemnify, which
is at issue in Count Two, depends on facts and is contingent on the imposition of liability.  *See*
*American States Ins. Co*., 2005 WL 2253583 at *2.  Here, even if the Court were to grant the
requested relief of a declaration that Hartford has no obligation to indemnify InterDigital in
connection with the Nokia complaint, it would be possible for Nokia to amend its complaint to
allege new facts or to change its theory of liability, which could moot this Court's declaration
about the duty to indemnify.  Just as the court observed about the effect of possible outcomes in
the underlying action in *Perlberger*, despite InterDigital's position to the contrary, a jury in the
Nokia action may eventually find that InterDigital acted recklessly with respect to the truth or
falsity of the statements it allegedly made about its patents and that the statements were false or
misleading, which arguably would create a covered claim, notwithstanding the exclusion for
knowing publication of a false statement.[7]

---

finding, however, as such a declaratory judgment request might be disfavored as interfering with
a pending state-court action."  *Id*.

[7] Leading decisions addressing the elements of a claim under Section 43(a) of the Lanham Act
when patents are involved hold that the defendant must have made a false statement in *bad faith*,
which does not necessarily require that the statements be made with actual knowledge of their
falsity  *See Zenith Electronics Corp. v. Exzec, Inc*., 182 F.3d 1340, 1353-54 (Fed. Cir. 1999)
(noting that statements about patents must have been made in bad faith to be actionable under
Lanham Act); *see also Golan v. Pingle Enter., Inc*., 310 F.3d 1360, 1370-71 (Fed. Cir. 2002)
(observing that plaintiff must show by clear and convincing evidence that statement involving
patents was made with knowledge of *or disregard for* its correctness or falsity to demonstrate

Consequently, Hartford's requested declaratory judgment on the duty to indemnify would not be conclusive of the parties rights and relationship.[8]

> c. Hartford Cannot Establish That A Declaratory Judgment Concerning Its Duty To Indemnify Would Have Practical Utility At This Time

The final prong of the *Step-Saver* ripeness test requires the Court to ascertain whether a declaratory judgment concerning the duty to indemnify would be of any use at this stage. *See Step-Saver Data Sys., Inc.*, 912 F.2d at 649-50. This prong of the inquiry may consider, among other things, whether there will be a hardship to the parties if the court withholds decision and whether the claim involves uncertain or contingent events. *See NE Hub Partners, L.P.*, 239 F.2d at 342 n.9. It may also consider whether the parties' plans of action are likely to be affected by a declaratory judgment. *See id.* at 344.

A declaratory judgment concerning the duty to indemnify would be useless here because the underlying issues concerning liability remain to be litigated in the Nokia action. Where underlying issues concerning liability remain to be determined, a declaratory judgment concerning the duty to defend has no appreciable value. *See Westport Ins. Corp.*, 2005 WL 1124092 at *2. This is logical because a finding of no liability in the underlying action would

---

bad faith). Reckless statements are not statements made with "actual knowledge of falsity" within the scope of the policy exclusions Hartford relies on here.

[8] To the extent that Hartford may be attempting to litigate issues of material fact from the underlying litigation in this Court, that gambit has been widely criticized as being unfair to an insured, who may be collaterally estopped from litigating those issues in the underlying action. *See, e.g.*, *Nationwide Mut. Fire Co. v. Shank*, 951 F. Supp. 68, 72-73; 16 *Couch on Insurance* 3d § 227:37 (noting the most important aspect of declaratory judgment actions brought before resolution of underlying litigation is the "potential that such an action has to prejudice the insured in the underlying litigation by the injured party."). Such litigation tactics by insurers are especially unfair because a company that purchases liability insurance does so in the hope of gaining the insurance company's expertise and resources in avoiding liability, not in anticipation of having the insurance company bring those same resources to bear against it in an effort to establish its liability. *See Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1225 (3d Cir.

render a declaratory judgment with respect to indemnification obligations irrelevant and would make a waste of the resources of the court and the parties consumed in litigating it. *See American States Ins. Co*., 2005 WL 2253583 at *2; *see also* 16 *Couch on Insurance* 3d § 227:37 (noting there is "considerable authority" that determinations of the duty to indemnify should await the resolution of the underlying case "usually based on the reasoning that the insured's victory in that case could render the issue moot, and render the effort and expense of the declaratory judgment unnecessary).

Moreover, the parties will suffer no hardship if the Court does not issue a declaratory judgment concerning the duty to indemnify before it becomes clear whether InterDigital is liable to Nokia. Of course, InterDigital denies any liability. Hartford will not be harmed if the Court dismisses Count Two of its Complaint with leave to refile upon the conclusion of the Nokia action. *See Terra Nova Ins. Co*., 887 F.2d at 1227 ("The delay in resolving the duty to indemnify does not destroy the utility of declaratory relief in the same way that a delay in resolving the duty to defend does."). If the Nokia action ends without any verdict of liability, Hartford will not face a claim on the policy for indemnification in the Nokia action. If the Nokia action ends any other way, Hartford will potentially have factual findings from the Nokia action that indicate there would be or would not be coverage or it would have an opportunity to refile its declaratory judgment complaint with respect to its duty to indemnify. It is highly doubtful that insurance companies as large as Hartford are going to alter their plans in any material way in light of a potential delay in the determination of their duty to indemnify.

On the other hand, such a declaration may impose hardships on InterDigital. If the outcome of the Nokia case is unfavorable to InterDigital and this Court has already issued a

---

1989). This issue is discussed more fully in part B, *infra*, concerning the Court's discretion to decline to hear a declaratory judgment action.

judgment concerning Hartford's duty to indemnify, it is conceivable that there would be further litigation concerning whether the facts on which the Nokia action was disposed were contemplated by this Court. Judgments that engender further litigation rather than resolving it are of little use.

In the final analysis, the allegations of Hartford's Complaint do not and cannot establish that the duty to indemnify is ripe for decision. To the contrary, they expressly admit that it depends on factual determinations that have not yet occurred.

Because a declaratory judgment concerning Hartford's duty to indemnify would have no practical utility, its Complaint should be dismissed insofar as it seeks such a declaration.

### B. This Court Should Exercise Its Discretion Under The Declaratory Judgment Act To Decline To Hear Count Two Of The Plaintiffs Complaint At This Time

Even if a suit under the Declaratory Judgment Act otherwise satisfies jurisdictional requirements—which this case does not—a district court has the discretion to decide whether and when to hear a declaratory judgment action. *See Nationwide Mut. Fire Co. v. Shank*, 951 F. Supp. 68, 70 (E.D. Pa. 1997) (citing *Wilton v. Seven Falls Co*., 515 U.S. 277 (1995)); *see also Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1222 (3d Cir. 1989). The Federal Declaratory Judgment Act states, in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201 (emphasis added). This section of the Declaratory Judgment Act "gives district courts statutory discretion to decide whether to entertain actions for declaratory judgments." *Terra Nova Ins. Co.*, 887 F.2d at 1222; *see also Wilton*, 515 U.S. at 286 (noting the Declaratory Judgment Act gives district courts "unique and substantial discretion in deciding to

declare the rights of litigants").[9]  That discretion is guided by considerations of practicality and

wise judicial administration.  *See Wilton*, 515 U.S. at 288.

Declaratory judgment actions brought by insurers are an especially appropriate subject

for the courts' scrutiny in determining whether to exercise their discretion not to hear a case

because of "frequent, attempted abuses of the declaratory action in this area."  *Shank*, 951 F.

Supp. at 71 (quoting *Terra Nova Ins. Co.*, 887 F.2d at 1225).  Importantly, the Third Circuit,

expressing a concern that an insured may be collaterally estopped from litigating issues in the

underlying lawsuit, noted that a federal declaratory judgment action may defeat the reasonable

expectations of the insured:

> [T]he superior resources and expertise of the insurance company in
> litigating these matters are one aspect of the protection an insured
> purchases with his policy.  Here, the policy language was
> sufficiently clear to preclude any reasonable expectation of a
> defense to claims for damages caused intentionally.  At the same
> time, the insured could not possibly have anticipated that the very
> resources for which he bargained would be turned against him and
> used to establish his liability whenever intentional tort was alleged.
> An early declaratory judgment in these circumstances would serve
> as a procedural mechanism to defeat the reasonable expectations of
> the insured, which state courts have so zealously guarded through
> contract interpretation.

*Terra Nova Ins. Co.*, 887 F.2d at 1225 (quoting *Allstate Ins. Co. v. Harris*, 445 F. Supp. 847

(N.D. Cal. 1978)).

---

[9] Although both *Wilton* and *Terra Nova Insurance Co.* addressed situations in which there were
parallel state court proceedings pending, the presence of parallel state court proceedings is not
determinative of the district courts' discretion to decline to hear cases seeking relief under the
Declaratory Judgment Act.  *See Nationwide Mut. Ins. Co. v. Svitesic*, No. Civ. A. 05-0369, 2005
WL 3070941, *2 (W.D. Pa. Nov. 16, 2005); *see also United States v. City of Las Cruces*, 289
F.3d 1170, 1183 (10th Cir. 2002); *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419,
423 (4th Cir. 1998) ("There is no requirement that a parallel proceeding be pending in state court
before a federal court should decline to exercise jurisdiction over a declaratory judgment
action.").

*Shank* is a particularly instructive case.  At issue was whether the insured's conduct fell within the policy's "intentional acts" coverage exclusion where he was accused of sexually abusing a minor.  The court declined to hear the declaratory judgment claim concerning the insurer's duty to indemnify because the factual issues germane to the analysis had not yet been determined in the underlying case.  *Shank*, 951 F. Supp. at 71-72.  The court expressed a great deal of concern as to whether proceeding with the declaratory judgment action would prejudice the insured in the underlying litigation:

> If we were to infer intent in the instant case based solely upon the allegation of sexual assault, we would effectively relieve the . . . plaintiffs in the underlying suit, from their burden of proving intentional sexual assault. . . . We would collaterally estop another determination on whether the act occurred, and whether it was intentional without any review of the facts.  . . . [I]t is clear that any action by us at this point would overly prejudice one of the litigants in the state case."

*Id*. at 72-73. Accordingly, the court declined to proceed with declaratory judgment action insofar as it concerned the duty to indemnify until the relevant facts were established in the underlying litigation.

In *Nationwide Insurance v. Zavalis*, the Seventh Circuit, applying Pennsylvania law, reached a similar conclusion.  There, the insurer sought a declaratory judgment concerning its duty to indemnify a University of Illinois student who allegedly burned astroturf at the University's football field.  The University was suing the student, among others, to recover for the damage.  Nationwide had issued a homeowner's policy to the student's parents in Pennsylvania; however, it brought a declaratory judgment action seeking declarations that it had no duties to defend or to indemnify the student.  Nationwide invoked the policy's exclusion for expected or intentional property damage, alleging that the student had knowingly and intentionally set fire to the stadium astroturf and expected the resulting damage.  The district

court noted it had discretion to decline to hear an action brought under the Declaratory Judgments Act and dismissed the case without prejudice pending the resolution of the underlying litigation. It reasoned that the issues to be resolved, while not identical to those in the underlying litigation, were closely related. The Seventh Circuit agreed that the district court properly exercised its discretion insofar as it dismissed the action with respect to the duty to indemnify. Applying Pennsylvania law, the court determined that resolving the duty to defend and whether the student's conduct was intentional would require the court to address a factual question at the center of the underlying litigation. That question, the court held, was "properly left, in the first instance, to the court deciding the underlying lawsuit." *Zavalis*, 52 F.3d at 693.

The risks here are similar. This Court cannot determine Hartford's duty to indemnify without making factual determinations that are crucial to the underlying litigation. Such determinations would have to resolve what statements InterDigital made about its patent portfolio, whether such statements were false, and whether InterDigital made such statements with actual knowledge of their falsity. Those determinations overlap with the determinations central to the underlying Nokia action, where they should be decided in the first instance through adversarial litigation between InterDigital and Nokia, not between InterDigital and its insurer.

Here, because the "true facts" concerning the duty to indemnify have not been established, and because there are serious risks that fact finding in this Court might prejudice InterDigital in the underlying Nokia action, InterDigital respectfully submits that the Court may properly exercise its discretion and decline to hear Count Two of Hartford's complaint until the underlying facts are fully established in the underlying litigation.

## III.    <u>CONCLUSION</u>

For the foregoing reasons, InterDigital respectfully requests that the Court enter an Order

dismissing Count Two of the Complaint without prejudice.

Respectfully submitted,


____s/Stephen J. Mathes_____
Stephen J. Mathes
Arleigh P. Helfer III
Thomas S. Coleman
HOYLE, FICKLER, HERSCHEL & MATHES LLP
One South Broad Street, Suite 1500
Philadelphia, PA 19103-7397
(215) 981-5700
Attorneys for Defendants

Dated:  March 13, 2006

## <u>CERTIFICATE OF SERVICE</u>

I, Arleigh P. Helfer III, hereby certify that I caused the foregoing Motion Of Defendants InterDigital Communications Corporation And InterDigital Technology Corporation To Dismiss Count Two Of The Complaint to be filed and served this day by the Electronic Court Filing system, where it is available for viewing, and also served by U.S. Mail, postage prepaid, upon the following:

> Gale White, Esquire
> Anthony L. Miscioscia, Esquire
> White and Williams
> 1800 One Liberty Place
> Philadelphia, PA 19103-7395
>
> Attorneys for Plaintiffs

<div style="text-align: right">/s/ Arleigh P. Helfer III<br>Arleigh P. Helfer III</div>

Dated: March 13, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and NOKIA,    :
INC.,                           :
                                :
        Plaintiffs,             :
                                :
    v.                          :    Civil Action No. 05-16-JJF
                                :
INTERDIGITAL COMMUNICATIONS     :
and INTERDIGITAL TECHNOLOGY     :
CORPORATION,                    :
                                :
        Defendants.             :

_____

Jack B. Blumenfeld, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL,
Wilmington, Delaware.
Attorney for Plaintiffs.

Richard L. Horowitz, Esquire and David Ellis Moore, Esquire of
POTTER ANDERSON & CORROON, LLP, Wilmington, Delaware.
Of Counsel: D. Dudley Oldham, Esquire, Robert S. Harrell,
Esquire, and Richard S. Zembek, Esquire of FULBRIGHT & JAWORSKI,
LLP, Houston, Texas.
Of Counsel: Dan D. Davison, Esquire of FULBRIGHT & JAWORSKI, LLP,
Dallas, Texas.
Attorneys for Defendants.

_____

**MEMORANDUM OPINION**

December 2̲1̲, 2005
Wilmington, Delaware

**Farnan, District Judge.**

Pending before the Court is Defendants' Motion To Dismiss
For Lack Of Jurisdiction Over The Subject Matter Pursuant To
Federal Rules Of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3)
(D.I. 10).  For the reasons discussed, the Motion will be granted
in part and denied in part.

## I.    Background

On January 12, 2005, Plaintiffs filed a Complaint seeking a
declaratory judgment that several of Defendants' third generation
wireless technology patents ("3G patents") are either invalid or
not infringed by Plaintiffs' products.  The patents at issue are
the subject of three licensing agreements, whereby Plaintiffs are
licensed to practice all of Defendants' patents until the end of
2006.  Plaintiffs brought the instant action, alleging reasonable
apprehension that Defendants would bring suit at the end of the
licensing agreements.  Additionally, Plaintiffs alleged that
Defendants violated Section 43 of the Lanham Act by using false
or misleading information in bad faith, thereby inhibiting
Plaintiffs' ability to develop technology and damaging
Plaintiffs' reputation in the market.  Defendants filed the
instant Motion, requesting that the Court dismiss Plaintiffs'
claims pursuant to Federal Rules of Civil Procedure 12(b)(1),
12(b)(6), and 12(h)(3).

1

**II.  Parties' Contentions**

By their Motion, Defendants contend that Plaintiffs'
Complaint should be dismissed pursuant to Rules 12(b)(1) and
12(h)(3) for failure to plead and prove an actual controversy.
Defendants contend that there is no actual controversy because
Plaintiffs could not be in reasonable apprehension of a lawsuit
when there is a licensing agreement between the parties.
Alternatively, Defendants request that the Court exercise its
"unique and substantial" discretion and refuse to hear the case
because Plaintiffs brought the case for improper purposes.
Finally, Defendants contend that Plaintiffs' Lanham Act claim
should be dismissed pursuant to Rule 12(b)(6), because Plaintiffs
have failed to state a claim under Section 43(a).

In response, Plaintiffs contend that reasonable apprehension
of suit exists because the parties' licensing agreement expires
at the end of 2006, Defendants have a history of threatening
other wireless technology manufacturers with litigation, and
Defendants have threatened to sue Plaintiffs.  Alternatively,
Plaintiffs contend that the Court should consider a ripeness test
or that the Court should exercise its discretion to resolve the
dispute because the case is fit for resolution and a declaratory
judgment would be useful.  Finally, Plaintiffs contend that they
have sufficiently stated a claim under Section 43 of the Lanham
Act to survive Defendants' motion to dismiss.

## III. Discussion

A. <u>Whether Plaintiffs' Claims For Declaratory Judgment Should Be Dismissed Pursuant To Federal Rules Of Civil Procedure 12(b)(1) and 12(h)(3)</u>

1. *Standard of Review*

A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of a court to address the merits of a plaintiff's complaint. The motion should be granted where the asserted claim is "insubstantial, implausible, foreclosed by prior decisions of [the] Court, or otherwise completely devoid of merit as not to involve a federal controversy." <u>Coxson v. Commonwealth of Pennsylvania</u>, 935 F.Supp. 624, 626 (W.D. Pa. 1996)(citations omitted).

A motion to dismiss under 12(b)(1) may present either a facial or a factual challenge to subject matter jurisdiction. <u>See</u> <u>Mortensen v. First Fed. Sav. and Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977). A factual challenge to subject matter jurisdiction exists where there is an attack on "the existence of subject matter jurisdiction in fact, quite apart from any pleadings." <u>Id</u>.

When a Court considers a factual challenge to jurisdiction, it does not presume the truth of the plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims. <u>Id</u>. Moreover, the plaintiff has the burden of proof

3

that jurisdiction does in fact exist.  Id.

The Court concludes that the instant case presents a factual challenge because Defendants dispute the existence of the jurisdictional facts alleged in the Complaint.  Thus, the Court is not required to presume the truth of Plaintiffs' allegations, and Plaintiffs bear the burden of proving that jurisdiction exists.

2.  *Analysis*

The Declaratory Judgment Act "requires an actual controversy between the parties before a federal court may exercise jurisdiction."  28 U.S.C. § 2201(a); EMC Corp. v. Norand Corp., 89 F.3d 807, 801 (Fed. Cir. 2004).  An actual controversy exists when there is both "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity."  Gen-Probe, Inc. v. Vysis, Inc., 359 F.3d 1376, 1380 (Fed. Cir. 2004) (quoting BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993)).  A court must look to the circumstances and facts at the time the complaint is filed to determine whether there is an actual controversy.  MedImmune, Inc. v. Centocor, Inc., 409 F.3d 1376, 1381 (Fed. Cir. 2005).

4

The parties do not dispute that the second prong, present infringing activity, of the two-part test is satisfied.  Rather, the motion turns on the first prong, reasonable apprehension of suit.  "When the defendant's conduct, including its statements, falls short of an express charge, one must consider the 'totality of the circumstances' in determining whether that conduct meets the first prong of the test."  Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988) (quoting Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953, 955 (Fed. Cir. 1987)).

The Court concludes that, under the totality of the circumstances, Plaintiffs have not demonstrated reasonable apprehension of suit.  First, and most damaging to Plaintiffs, is the existence of a licensing agreement that does not expire until the end of 2006.  While the existence of a licensing agreement is not conclusive as to the Court's jurisdiction, C.R. Bard, Inc. v. Schwartz, 716 F.2d 874, 880 (Fed. Cir. 1983), the Federal Circuit has been reluctant to find reasonable apprehension where a licensing agreement exists.  See Gen-Probe, 359 F.3d 1376; MedImmune, 409 F.3d 1376.  Furthermore, the Federal Circuit has recently distinguished those cases finding reasonable apprehension despite a licensing agreement from the type of case at bar; in the cases finding reasonable apprehension, there was a breach of the licensing agreement or the plaintiff sought to

5

prevent such a breach. See Gen-Probe, 359 F.3d at 1380 (finding no reasonable apprehension of suit due to the existence of a licensing agreement and the absence of two "critical circumstances" from C.R. Bard: a material breach of the licensing agreement and a suit brought by the defendant); MedImmune, 409 F.3d at 1381 (distinguishing the case from Cordis Corp. v. Medtronic, Inc., 835 F.2d 859 (Fed. Cir. 1987) in which the licensee also "sought to pay royalties into escrow pendente lite, and to enjoin the licensor from canceling the license agreement"). In this case, there is a licensing agreement between Plaintiffs and Defendants, there has been no breach or threat of breach, and Defendants have not brought any lawsuits against Plaintiffs.

Second, where a licensing agreement has been formed, a court must only consider a defendant's actions occurring after formation of the licensing agreement. Gen-Probe, 359 F.3d at 1381. Thus, the Court will examine whether the following facts alleged by Plaintiffs, occurring after formation, give rise to reasonable apprehension:

- "Since the early 1990s, InterDigital has been accusing *every* mobile telephone equipment manufacturer of patent infringement." (D.I. 14 at 17).

- "InterDigital was the cause of *all* of the patent proceedings to which it has been a party." (Id.).

- "InterDigital also directly filed suit against OKI America and Qualcomm in 1993 and against Lucent this past year." (Id.).

6

- "After Nokia initiated the arbitration proceeding to obtain information, InterDigital escalated the proceedings by counterclaiming against Nokia for the massive royalties it promised its shareholders in its press release." (Id. at 9).

- "For at least ten years, through correspondence, licensing presentations, meetings, and public statements, InterDigital has been claiming that Nokia's products infringed its patents." (Id. at 17).

- "In its licensing negotiations, InterDigital has repeatedly referenced its suits against other mobile telephone equipment manufacturers." (Id. at 17-18).

- "InterDigital's CEO, Howard Goldberg, recently threatened Nokia with suit, stating that InterDigital was considering litigation as a means of obtaining 'leverage' in the negotiations with Nokia." (Id. at 18).

The Court concludes that, under the totality of the circumstances, the facts alleged do not give rise to a reasonable apprehension of a lawsuit. As to Defendants' litigation tactics, in the past twelve years, Defendants have brought only three actions to defend their patents. The fact that two of them were brought in 1993, "against two other parties unconnected with [Plaintiffs, is] too remote to make [Plaintiffs'] apprehension of further litigation in [2005] reasonable." Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 883 (Fed. Cir. 1985) (finding that a seven-year difference was too remote). Furthermore, even if Defendants have claimed for ten years that Plaintiffs are infringing their patents, Plaintiffs' reasonableness is belied by the fact that not once in those ten years have Defendants sued Plaintiffs. To the contrary, Plaintiffs have filed lawsuits

against Defendants, most notably, the arbitration Plaintiffs
initiated "regarding Nokia's royalty payment obligations...under
the existing patent license agreement." (D.I. 15, Ex. G, p. 54).
It was hardly escalation of the proceedings for Defendants to
counterclaim on their right to receive those royalties. (<u>Id</u>. at
55).

Additionally, as to Defendants' conduct in negotiations for
a potential 2006 license, "the Federal Circuit has concluded that
the objective test for determining declaratory justiciability is
not met 'when a patentee does nothing more than exercise its
lawful commercial prerogatives....'" <u>DuPont Dow Elastomers, LLC
v. Greene Tweed of Del., Inc.</u>, 148 F. Supp. 2d 412, 415 (D. Del.
2001) (quoting <u>Cygnus Therapeutic Sys. v. Alza Corp.</u>, 92 F.3d
1153, 1160 (Fed. Cir. 1996)). Mere "'jawboning,' which typically
occurs in licensing negotiations," is not sufficient to give rise
to reasonable apprehension. <u>Shell Oil Co. v. Amoco Corp.</u>, 970
F.2d 885, 889 (Fed. Cir. 1992).

Finally, Plaintiffs' argument is not furthered by its
allegation that InterDigital's CEO, Howard Goldberg, recently
threatened it with a lawsuit. In the allegedly threatening
conversation, Mr. Goldberg was responding to a question in a
conference call from an analyst regarding whether Defendants had
any leverage in the arbitration that had been initiated by
Plaintiffs:

8

>FRANK MARSALA:  Then just a Nokia question on that
>issue.  Is there any leverage that you guys have today?
>Is there anything you can do to influence Nokia to
>bring this matter to a close--here I'm talking about
>things like bringing injunctions against them--shipping
>handsets--things of that sort of [sic].  So, I'm
>curious about that.

>HOWARD GOLDBERG:  Let me first say that we certainly
>will look at every point of leverage.  The dynamics in
>a situation such as this are very important.  We will
>look--and have been looking--at how we can drive this
>to a successful resolution.  Through internal and
>external resources.  One of the ways that leverage is
>best used is as a surprise or--certainly you don't want
>to create an anticipation of anything that you may do.
>So the answer is yes.  But I would be very reluctant to
>talk about it and layout our plan for dealing with this
>particular matter.

(D.I. 1, Ex. T, p. 14).  In the Court's view, Mr. Goldberg is

discussing the leverage that Defendants will use to defend their

rights in the arbitration <u>initiated by Plaintiffs</u>.  It would be

illogical to require patent owners to state that they have no

leverage in legal proceedings initiated by a competitor in order

to avoid giving rise to that competitor's reasonable

apprehension.  Thus, the Court finds that the answer by Mr.

Goldberg was "reflexive and obligatory."  <u>Shell</u>, 970 F.2d at 889.

The Federal Circuit has stated that satisfaction of the two-

part test is not a requirement for every declaratory judgment

action.  <u>Fina Oil & Chem. Co. v. Ewen</u>, 123 F.3d 1466, 1470 (Fed.

Cir. 2003).  Plaintiffs, therefore, contend that the Court should

also consider a ripeness test to determine whether there is a

sufficient controversy.  Plaintiffs cite several cases in support

of this standard, but in each of those cases, the court still applied the two-prong test. See Teva Pharm. USA, Inc. v. Pfizer, Inc., 395 F.3d 1324 (Fed. Cir. 2005); Fina Oil, 123 F.3d 1466; GAF Bldg. Materials Corp. v. Elk Corp., 90 F.3d 479 (Fed. Cir. 1996); EMC Corp., 89 F.3d 807. Other cases cited in Plaintiffs' analysis either did not discuss the Declaratory Judgment Act or did not discuss whether an actual controversy existed. See Dow Chem. Co. v. Exxon Corp., 30 F. Supp. 2d 673 (D. Del. 1998); Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573 (Fed. Cir. 1993). Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs, 330 F.3d 1345 (Fed. Cir. 2003)  Moreover, even if the case were ripe for review, the Court still could not hear the case unless an actual controversy existed, which the Court has concluded does not. Accordingly, the Court declines to apply a test different from the two-prong test applied above.

In sum, the Court concludes that Plaintiffs did not have a reasonable apprehension of litigation at the time the Complaint was filed. Therefore, there is no actual controversy to support the Court's jurisdiction over the declaratory judgment claims under the Declaratory Judgment Act. Accordingly, the Court will dismiss Plaintiffs' declaratory judgment claims for lack of subject matter jurisdiction.

10

B.   <u>Whether Plaintiffs' Claim Under Section 43 Of the
Lanham Act Should Be Dismissed Pursuant to Rule
12(b)(6) For Failure To State A Claim</u>

1.   *Legal Standard*

Defendants also request that the Court dismiss Plaintiffs'
claim under Section 43 of the Lanham Act pursuant to Rule
12(b)(6) for failure to state a claim upon which relief may be
granted.  Fed. R. Civ. P. 12(b)(6).  The purpose of a motion to
dismiss is to test the sufficiency of a complaint, not to resolve
disputed facts or decide the merits of the case.  <u>Kost v.
Kozakiewicz</u>, 1 F.3d 176, 183 (3d Cir. 1993).  Dismissal is only
appropriate when "it appears beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957).

2.   *Analysis*

To state a claim under § 43(a) of the Lanham Act, a
plaintiff must allege that: (1) defendant made false or
misleading statements as to its products, or those of the
plaintiff; (2) there was actual deception or at least a tendency
to deceive a substantial portion of the intended audience; (3)
the deception was material in that it is likely to influence
purchasing decisions; (4) the advertised goods traveled in
interstate commerce; and (5) there is a likelihood of injury to
the plaintiff in terms of declining sales, loss of good will,
etc.  <u>Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-</u>

11

Poulenc Rorer Pharms., Inc., 19 F.3d 125, 129 (3d Cir. 1994).

Additionally, a plaintiff must demonstrate that the patent holder

acted in bad faith. Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d

1340, 1353 (Fed. Cir. 1999).

Accepting as true all allegations in Plaintiffs' Complaint

and drawing all reasonable inferences therefrom, the Court

concludes that, at this juncture, Plaintiff has stated a claim

under Section 43 of the Lanham Act sufficient to survive

Defendants' motion to dismiss. Plaintiffs allege that Defendants

made false or misleading statements in bad faith to the effect

that Defendants' patents cover Plaintiffs' 3G products.

Plaintiffs further allege that these statements are material and

"have caused actual deception or have a tendency to deceive."

(D.I. 1 at 35). Additionally, Plaintiffs have alleged that the

misrepresentations have injured Plaintiffs in their business and

have damaged their reputations.

The requirement that the advertised goods have traveled in

interstate commerce is not as clearly alleged as the other

requirements. Drawing all reasonable inferences in the light

most favorable to Plaintiffs, however, the Court concludes that

the statement "Nokia is currently designing, rolling out and

further developing 3G products in the United States that will be

manufactured and sold by Nokia after 2006" means that at least

some 3G products have already been developed and entered

interstate commerce.[1]  (D.I. 1 at 6).  Accordingly, the Court

will deny Defendants' motion to dismiss pursuant to Rule

12(b)(6).

## IV.  Conclusion

For the reasons discussed, Defendants' Motion To Dismiss For

Lack Of Jurisdiction Over The Subject Matter Pursuant To Federal

Rules Of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3) (D.I.

10) will be granted in part and denied in part.

An appropriate Order will be entered.

---

[1]Defendants quote this statement to demonstrate that
Plaintiffs are suing on future products.  Read in the context of
the entire paragraph and in the light most favorable to
Plaintiffs, however, the Court concludes the statement means that
some 3G products have already been made ("rolled out") and will
continue to be made after the licensing agreement expires
("further developed").

13

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

**HARTFORD FIRE INSURANCE COMPANY,**   :
**et al.**   :
  :
        **Plaintiffs,**   :
  :
      **v.**   :     **Civ. A. No. 06-0165**
  :
**INTERDIGITAL**   :
**COMMUNICATIONS CORPORATION,**   :
**et al.**   :
  :
      **Defendants.**   :
_____:

## DEFENDANTS' RULE 7.1 DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1, defendant InterDigital Communications Corporation states that it is a publicly held corporation, that it has no parent corporation, and that no publicly held corporation owns 10% or more of its stock. Defendant InterDigital Technology Corporation states that it is a wholly-owned subsidiary of InterDigital Communications Corporation, which owns 100% of its stock.

Respectfully submitted,


      __s/Arleigh P. Helfer III_____
      Stephen J. Mathes
      Arleigh P. Helfer III
      Thomas S. Coleman
      HOYLE, FICKLER, HERSCHEL & MATHES LLP
      One South Broad Street, Suite 1500
      Philadelphia, PA 19103-7397
      (215) 981-5700
      Attorneys for Defendants


Dated: April 5, 2006

## <u>CERTIFICATE OF SERVICE</u>

I, Arleigh P. Helfer III, hereby certify that I caused the foregoing Rule 7.1 Disclosure

Statement to be filed and served this day by the Electronic Court Filing system, where it is

available for viewing, and also served by U.S. Mail, postage prepaid, upon the following:

Gale White, Esquire
Anthony L. Miscioscia, Esquire
White and Williams
1800 One Liberty Place
Philadelphia, PA 19103-7395

Attorneys for Plaintiffs

      s/ Arleigh P. Helfer III
Arleigh P. Helfer III

Dated: April 5, 2006





## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HARTFORD FIRE INSURANCE
COMPANY, et al.,

          Plaintiffs,

v.

INTERDIGITAL COMMUNICATIONS
CORPORATION, et al.,

          Defendants.

Civil Action No. 06-0165        0 6 ⋯ 4 2 2 ⋯

# FILED

APR   5 2006

MICHAEL E. KUNZ, Clerk
By _____ Dep. Clerk

## JOINT STIPULATION CONCERNING MOTION PAPER DEADLINES

WHEREAS defendants, InterDigital Communications Corporation and InterDigital

Technology Corporation (collectively, "InterDigital"), recently have filed both a Motion to

Transfer this case to the United States District Court for the District of Delaware and a Motion to

Dismiss Count Two of Plaintiffs' Complaint without prejudice, the parties hereto stipulate and

agree as follows, and respectfully request that the Court agree as follows:

1.     Plaintiffs, Hartford Fire Insurance Company and Hartford Casualty Insurance

Company (collectively, "Hartford"), although not concurring in InterDigital's Motion to

Transfer, will not be opposing InterDigital's Motion to Transfer;

2.     Hartford shall have an extension until and including **Monday, April 10, 2006** to

file its opposition in response to InterDigital's Motion to Dismiss Count Two without prejudice,

no extension of such deadline having previously been granted; and

3.    InterDigital shall be entitled to file a reply memorandum of law to Hartford's

opposition to InterDigital's Motion to Dismiss Count Two, which reply shall be filed by

**Monday, April 24, 2006**.

WHITE AND WILLIAMS LLP                    HOYLE, FICKLER, HERSCHEL &
                                          MATHES LLP

By: _____      By: _____
    Anthony L. Miscioscia, Esquire          Arleigh P. Helfer III, Esquire
    Attorney for Plaintiffs                 Attorney for Defendants

Dated: March 22, 2006

Upon consideration of the foregoing Stipulation of the parties, said Stipulation is

acceptable to the Court and it is hereby so ORDERED.

_____
The Honorable James T. Giles
4/4/06

4-6-06
Copies to:
B. Collier
A. Helf
A. Miscioscia
G. White

4-6-06
faxed to:
G. White
S. Mathes

- 2 -

2:06-cv-00165-JG

GALE    WHITE                                    FAX 215-864-7123
WHITE & WILLIAMS                                 whiteg@whiteandwilliams.com
1650 MARKET STREET
ONE LIBERTY PLACE, STE. 1800
PHILADELPHIA  PA  19103-7395

— — — — — — — — — — — — — —

2:06-cv-00165-JG

STEPHEN J. MATHES
HOYLE, FLICKER, HERSCHEL & MATHES, LLP
ONE SOUTH BROAD STREET
SUITE 1500
PHILADELPHIA  PA  19107

215-981-5959
smathes@hoylelawfirm.com

— — — — — — — — — —— — — — —

```
*************** -COMM. JOURNAL- ***************** DATE APR-06-2005 ***** TIME 10:18 ********

         MODE = MEMORY TRANSMISSION              START=APR-06 10:16    END=APR-06 10:18

         FILE NO.=784

STN NO.   COMM.    ABBR NO.      STATION NAME/TEL NO.    PAGES    DURATION

  001      OK    ☎            92159647123              004/004 00:00:23
  002      OK    ☎            92159815959              004/004 00:00:43


                                                    -US DISTRICT COURT EDPA   -

*************************************** -CLERK'S OFFICE  - ***** -               - *********
```

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HARTFORD FIRE INSURANCE
COMPANY, et al.,

                       :   Civil Action No. 06-0165

        Plaintiffs,

   v.

INTERDIGITAL COMMUNICATIONS
CORPORATION, et al.,

                       I   **FILED APR 5 2006.**

       Defendants.

## JOINT STIPULATION CONCERNING MOTION PAPER DEADLINES

WHEREAS defendants, InterDigital Communications Corporation and InterDigital Technology Corporation (collectively, "InterDigital"), recently have filed both a Motion to Transfer this case to the United States District Court for the District of Delaware and a Motion to Dismiss Count Two of Plaintiffs' Complaint without prejudice, the parties hereto stipulate and agree as follows, and respectfully request that the Court agree as follows:

1.    Plaintiffs, Hartford Fire Insurance Company and Hartford Casualty Insurance Company (collectively, "Hartford"), although not concurring in InterDigital's Motion to Transfer, will not be opposing InterDigital's Motion to Transfer;

2.    Hartford shall have an extension until and including **Monday, April 10, 2006** to file its opposition in response to InterDigital's Motion to Dismiss Count Two without prejudice, no extension of such deadline having previously been granted; and

ENTERED

**APR** 6 2006

CLERK OF COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY, et al., | : | |
| | : | Civil Action No. 06-0165 |
| Plaintiffs, | : | |
| | : | |
| v. | : | Case 2:06-cv-00165-JG     Document 13-1     Filed 04/10/2006     Page 1 of 28 |
| | : | |
| INTERDIGITAL COMMUNICATIONS CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

**ORDER**

AND NOW, this     day of                     , 2006, upon consideration of the

Motion of Defendants, InterDigital Communications Corporation and InterDigital Technology

Corporation to Dismiss Count Two of the Complaint, without prejudice, and the opposition

thereto filed by Plaintiffs, Hartford Fire Insurance Company and Hartford Casualty Insurance

Company, it is hereby ORDERED that Defendants' Motion to Dismiss Count Two is DENIED.

Defendants shall answer Plaintiffs' Complaint within thirty (30) days of the date of this Order.

IT IS SO ORDERED:

_____
                                                            J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HARTFORD FIRE INSURANCE
COMPANY, et al.,

                Plaintiffs,

     v.

INTERDIGITAL COMMUNICATIONS
CORPORATION, et al.,

                Defendants.

:
:
:
:
:    Civil Action No. 06-0165
:
:
:    
:
:
:
:
:
:

**RESPONSE OF PLAINTIFFS, HARTFORD FIRE INSURANCE COMPANY AND
HARTFORD CASUALTY INSURANCE COMPANY IN OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS COUNT TWO OF THE COMPLAINT**

Plaintiffs, Hartford Fire Insurance Company and Hartford Casualty Insurance Company

(collectively "Hartford"), by and through their undersigned counsel, hereby oppose Defendants'

Motion to Dismiss Count Two of Hartford's Complaint. The case law and reasons supporting

Hartford's Opposition to Defendants' Motion are set forth in the accompanying Memorandum of

Law, which is incorporated herein by reference. Pursuant to Local Rule 7.1(f), Hartford requests

oral argument.

**WHEREFORE,** Hartford requests that this Court enter an Order in the form proposed

herewith denying Defendants' Motion to Dismiss Count Two of the Complaint.

Respectfully submitted,
**WHITE AND WILLIAMS LLP**

By: _____

Gale White, Esquire
Anthony L. Miscioscia, Esquire
1800 One Liberty Place
Philadelphia, PA 19103-7395
Phone: 215.864.6234
Attorneys for Plaintiffs

Dated: April 10, 2006

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, et al., | : : : |
|  | : Civil Action No. 06-0165 |
| Plaintiffs, | : |
|  | : |
| v. Case 2:06-cv-00165-JG    Document 13-1    Filed 04/10/2006    Page 3 of 28 | : : |
| INTERDIGITAL COMMUNICATIONS CORPORATION, et al., | : : |
|  | : |
| Defendants. | : |
|  | : |

**HARTFORD FIRE INSURANCE COMPANY AND HARTFORD CASUALTY
INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS COUNT TWO OF THE COMPLAINT**

In this insurance coverage action, Hartford Fire Insurance Company and Hartford

Casualty Insurance Company (collectively "Hartford") seek a declaration that they have no duty

to defend or indemnify InterDigital Communications Corporation ("ICC") and InterDigital

Technology Corporation ("ITC") (collectively "InterDigital") for a suit brought against

InterDigital by its competitors, Nokia Corporation and Nokia, Inc. (collectively "Nokia").

InterDigital does not challenge Hartford's right to a declaration as to the duty to defend, but

rather claims that Hartford cannot seek a declaration that it has no duty to indemnify.

InterDigital asserts that the duty to indemnify *is not ripe* and cannot be decided until *after* the

underlying *Nokia* action is over.  That is not so.

InterDigital also claims that "[t]his Court cannot determine Hartford's duty to indemnify

without making factual determinations that are crucial to the underlying litigation."

InterDigital's Memorandum at p. 20.  This also is not so.

There are many facts (and legal issues) that will <u>not</u> be determined in the *Nokia* action, which could prove that Hartford has no duty to indemnify -- such as when allegedly false statements were made, and whether all of Nokia's injury arose out of violations of intellectual property rights. These facts (and other legal and factual issues discussed herein) could lead to a conclusion that Hartford has no duty to indemnify InterDigital for the *Nokia* action.

***Interestingly, many of these facts are known to InterDigital and, by this motion, InterDigital seeks to preclude Hartford from learning them.***

If the Court were to conclude that Hartford cannot proceed to adjudicate whether it has a duty to indemnify InterDigital before the *Nokia* action is concluded (and the Court concludes that there is a duty to defend), Hartford would be in the prejudicial position of having to defend Nokia's very expensive lawsuit[1] for as long as that suit drags out, with no way to prove before judgment that there is no coverage. Pennsylvania case law[2] is clear that an insurer may cut off its defense and indemnity obligation if it can prove, ***before*** trial, that there is no coverage. Hartford therefore has the right to seek a determination now of whether it has a duty to indemnify InterDigital for the *Nokia* action.

---

[1]     The *Nokia* complaint avers that InterDigital has been involved in many suits, including the *Nokia* action, involving the interpretation and application of numerous patents. Such suits are very expensive to defend and in fact, in one similar case, InterDigital's defense costs were nearly $28 million. *See InterDigital Communications Corp. v. Federal Ins. Co.*, 392 F. Supp. 2d 707 (E.D. Pa. Oct. 3, 2005) (involving dispute over fee agreement entered into between InterDigital and another insurer, Federal, which agreement InterDigital later sought to avoid after Federal sought to recover nearly $27.8 million paid to defend InterDigital in the *Ericsson* case).

[2]     Hartford relies upon Pennsylvania law in this Opposition because that is the law cited by InterDigital in its Motion papers. *See* InterDigital's Memorandum of Law at p. 8 (averring "Pennsylvania law will likely govern").

## I.    BACKGROUND[3]

### A.    Hartford's Complaint Against InterDigital

Hartford seeks a declaration that it has no duty to defend (Count One) or indemnify

(Count Two) InterDigital in connection with an underlying lawsuit filed by Nokia against

InterDigital (the "*Nokia* action" or "*Nokia* complaint").[4]  InterDigital's Motion to Dismiss is

directed solely to Count Two, concerning indemnity.

### B.    The Underlying *Nokia* Complaint

On or about January 12, 2005, Nokia filed the *Nokia* complaint against ICC and ITC.

The *Nokia* complaint sets forth 21 causes of action - 20 of which seek declarations of non-

infringement and/or invalidity as to various patents purportedly held by InterDigital relating to

mobile phone technology and one of which sets forth a claim for alleged violations of the

Lanham Act. *See Nokia* complaint, attached as Ex. A to Hartford's Complaint.

The *Nokia* complaint remains pending against InterDigital; however, by Memorandum

Opinion dated December 21, 2005, the United States District Court for the District of Delaware

dismissed Nokia's declaratory judgment claims relating to non-infringement and patent

invalidity for lack of jurisdiction. *Nokia Corp. v. InterDigital Communications,* 2005 WL

3525696 (D. Del. Dec. 21, 2005).

Nokia's Lanham Act claim (Count XXI of the *Nokia* complaint) alleges that InterDigital

has made false or misleading representations about InterDigital's patents and Nokia's products

and the application of InterDigital's patents to Nokia's products.  Nokia asserts that these

statements have damaged Nokia's business and reputation in the wireless market.  *See Nokia*

---

[3]    The Background facts are taken from Hartford's Complaint.  *See NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001) (treating factual allegations as true in "facial" attack).

[4]    Pursuant to Count Three, Hartford seeks a declaration of whether ITC is entitled to coverage.

complaint, ¶ 142.  The *Nokia* complaint further alleges that InterDigital made these false

statements in "bad faith" and with "knowledge of their falsity."  *See Nokia* complaint, ¶ 146.

### C.    The Hartford Fire CGL Policies

Harford Fire issued two Commercial General Liability policies to ICC as the named

insured effective for the period December 22, 2003 to December 22, 2004 and the period

December 22, 2004 to December 22, 2005.[5]

Pursuant to these policies, Hartford Fire agreed to indemnify "those sums that the insured

becomes legally obligated to pay as damages because of 'personal and advertising injury' to

which this insurance applies" provided that the offense arises out of the insured's business and

was committed in the "coverage territory" during the policy period.[6]  Hartford is not obligated,

however, to indemnify (or defend) a "suit" that does not seek covered damages.

The Hartford Fire policies define "personal and advertising injury" as injury, including

consequential "bodily injury," arising out of an offense listed in the definition, including:

> (4)    Oral, written or electronic publication of material that slanders or
> libels a person or organization or disparages a person's or
> organization's goods, products or services;

The Hartford Fire policies bar coverage for "personal and advertising injury" to the

extent precluded by the various policy exclusions, including but not limited to:

> a.    Knowing Violation of Rights of Another
>
> "Personal and advertising injury" caused by an offense committed
> by, at the direction or with the consent or acquiescence of the
> insured with the expectation of inflicting "personal and advertising
> injury."

---

[5]    Hartford Casualty also issued two umbrella policies to ICC, the relevant provisions of which policies largely, for purposes of the instant Motion, follow form to those of the Hartford Fire policies.

[6]    On information and belief, InterDigital does not contend that the *Nokia* complaint implicates "bodily injury" or "property damage" coverage and thus those coverage provisions are not discussed herein.

b.    Material Published with Knowledge of Falsity

"Personal and advertising injury" arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c.    Material Published Prior to Policy Period

"Personal and advertising injury" arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period.

Case 2:06-cv-00703-JJ    Document 13-1    Filed 04/10/2006    Page 7 of 28

* * *

g.    Quality or Performance of Goods - - Failure to Conform to Statements[7]

"Personal and advertising injury" arising out of the failure of goods, products, or services to conform with any statement of quality or performance made in your "advertisement" or on "your web site";

* * *

i.    Infringement of Intellectual Property Rights

"Personal and advertising injury" arising out [of] any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

## II.    **ARGUMENT**

### A.    **Declaratory Judgment Act**

Pursuant to the Declaratory Judgment Act, courts have the power to make declarations regarding "the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201.  As the Supreme Court has explained, under the Declaratory Judgment Act, "the question in each case is whether the facts alleged, under all the circumstances, show[] that there is a substantial controversy, between parties having adverse legal interests, of sufficient

---

[7]    Exclusions g. and i. are added/amended to the policy by the Cyberflex endorsement, amending Coverage B.

immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941). Moreover, "[t]he extent of an insurer's liability concerning insurance coverage may properly be resolved in a declaratory judgment action." *Ideal Mut. Ins. Co. v. Limerick Aviation Co.,* 550 F. Supp. 437, 441 (E.D. Pa. 1982).

**B.**  **Hartford May Cut Off *Both* Its Defense Obligation *And* Its Indemnity Obligation, If Any, *Before* The Conclusion Of The *Nokia* Action**

Case 1:06-cv-00422-JJF    Document 13    Filed 04/10/2006    Page 8 of

Before turning to InterDigital's "ripeness" argument, we note as a preliminary (and dispositive) matter that InterDigital has ignored the body of Pennsylvania law which clearly allows an insurer to seek a judicial determination of its obligations (both defense and indemnity) *before* judgment is entered in the underlying case. Under InterDigital's view of how this insurance coverage action would proceed, Hartford would be permitted to litigate whether Hartford has a duty to defend the *Nokia* suit. If InterDigital succeeds and the Court were to conclude that Hartford had a duty to defend (which Hartford denies), Hartford would then be *denied its right* to determine the extent, if any, of coverage owed under its policies. For instance, Hartford would be precluded from:

(1)  discovering the "true facts" that could cut off Hartford's duty to defend,

(2)  discovering facts that would show the extent of Hartford's duty to indemnify -- *i.e.* what claims might be covered and what claims are not,[8]

(3)  discovering facts that could eliminate coverage for one of the two years of policies issued by Hartford,

(4)  discovering the "true facts" that could relieve Hartford of its duty to indemnify, and

(5)  doing anything, other than paying defense costs.

---

[8]  For example, the Hartford policies do not cover damages arising out of publication of material first published before the Hartford policies incepted. Hartford would not be able to determine this.

This result is contrary to Pennsylvania law and is prejudicial to Hartford. Courts applying Pennsylvania law *have permitted* an insurer to cut off *both* its defense *and* its indemnity obligation, if any, *before* final resolution of the underlying action for which coverage is sought.

   a.    **Hartford cannot owe indemnity if it has no duty to defend**

Certainly, an insurer may obtain a declaration *prior to* the conclusion of an underlying action that the insurer lacks *both* a duty to defend and any duty to indemnify based upon a comparison of the allegations in the underlying complaint to the terms of the applicable insurance policy. *E.g. First Oak Brook Corp. Syndicate v. Comly Holding Corp.*, 93 F.3d 92 (3d Cir. 1996) (finding no duty to defend or indemnify).

Under Pennsylvania law, "once it is determined that there is no obligation to provide the broader duty to defend, the more narrow duty to indemnify is also extinguished." *Brandt v. U.S. Liab. Ins. Group*, 70 Pa. D. & C. 4th 449, 458 (Comm. Pleas Lancaster Cty. 2005) (finding that it was proper to award declaration pursuant to Pennsylvania's Declaratory Judgments Act that insurer owned no duty to defend or indemnify due to policy exclusion). Thus, if Hartford has no duty to defend, there can be no duty to indemnify. *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994); *see also Mutual Benefit Ins. Co. v. Haver*, 555 Pa. 534, 539 n. 1, 725 A.2d 743, 746 n. 1 (1999) (rejecting claimants' contention that their complaint alleged negligence; Pennsylvania Supreme Court held that factual allegations in underlying complaint fell within knowing endangerment exclusion and thus ruled that insurer had no duty to defend or indemnify underlying action).[9]

---

[9]    Presumably, InterDigital does not dispute that this Court may rule that Hartford has no duty to indemnify if Hartford succeeds on Count One and proves that it has no duty to defend the *Nokia* action, as the duty to defend is broader than the duty to indemnify. *See Lucker* 23 F.3d at 821 ("summarily" disposing of duty to indemnify where court found no duty to defend). As such, at a minimum, until such time as this Court decides Count One and

**b.    Even if Hartford is initially found to owe a defense, Hartford still may have no duty to indemnify InterDigital**

An insurer that is *initially* found to owe a duty to defend (which Hartford denies) still may obtain declaratory relief limiting, or terminating, any defense obligation.  In Pennsylvania, as explained by the Third Circuit, the "duty to defend remains with the insurer *until facts sufficient to confine the claims to liability not within the scope of the policy become known to the insurer*." *Lucker*, 23 F.3d at 813 (emphasis added).  Similarly, *even if* Hartford has a duty to defend as InterDigital avers (and Hartford denies), Hartford ultimately may not owe any indemnity because the duty to indemnify is narrower than the duty to defend and is not based solely upon the allegations of the underlying complaint.  *First Oak Brook Corp.*, 93 F.3d at 95 (finding that district court correctly noted that "indemnification is based on actual liability" not allegations in complaint).

In *General Accident Ins. Co. of Am. v. Allen*, 547 Pa. 693, 692 A.2d 1089 (1997), an insured argued (like InterDigital does here) that the court could not determine the duty to indemnify until the underlying action was fully resolved, including the exhaustion of all appeals. The Pennsylvania Supreme Court rejected the insureds' contentions.  Recognizing the appropriateness of the insurer's pre-judgment/settlement declaratory judgment action brought pursuant to Pennsylvania's declaratory judgment statute, the court noted:

> The question before a court in a declaratory judgment action is not whether the insurer owes indemnification in a specific amount, which would be a premature inquiry absent a full resolution of the underlying action.  Instead, the question is whether the insurer has a duty to indemnify the insured in the event of liability in the underlying action.

---

determines whether Hartford has a duty to defend, Count Two not only is ripe but also may be decided in Hartford's favor.  Thus, InterDigital's Motion to Dismiss is really only directed to the situation where Hartford is found initially to owe a duty to defend, but then seeks to terminate/cut-off that duty (or limit the scope thereof) and/or seeks to deny any duty to indemnify.

- 8 -

*Id.*, 547 Pa. at 707, 692 A.2d at 1095. The *Allen* court thus held that "[a] court can answer such a

question because it is within the scope of a court's power pursuant to the [Pennsylvania]

Declaratory Judgments Act." *Id.; see also Harleysville Mut. Ins. Co. v. Madison*, 415 Pa. Super.

361, 609 A.2d 564 (1992) (insurer can seek determination of obligations to insured before

conclusion of underlying action).

While *Allen* and *Madison* concern state courts applying the Pennsylvania Declaratory

Judgment Act, the result here should be no different merely because a federal court is deciding a

claim pursuant to the federal declaratory judgment statute. *See Corporate Aviation*, 2005 WL

1693931 at *3 (noting that federal "Declaratory Judgment Act permits litigants to determine the

validity of a security interest ... 'before the dispute grows into a contract violation or a

foreclosure proceeding'").

*Even if* InterDigital defeats Hartford's request for a declaration that it has no duty to

defend, Hartford may not owe indemnity for a number of reasons – many of which depend upon

resolution of legal issues or factual issues which Hartford is entitled to pursue now. Hartford

should not be forced to await the conclusion of the *Nokia* action before having this Court decide

those legal and factual issues. Instead, this Court should allow Hartford to pursue a declaration

that it has no duty to indemnify by discovering, *inter alia*:

- what statements, if any, InterDigital made about Nokia or its products -- to
  determine whether InterDigital libeled, slandered or disparaged Nokia or
  its products) and thus whether the Nokia action involves an enumerated
  personal or advertising injury offense,

- when any such statements were made and by whom -- to determine
  whether an insured made such statements during the Hartford policy
  periods,

- the circumstances surrounding those statements -- to determine whether a
  policy exclusion applies because, for example, the insured knew its
  statements were false, the insured expected to inflict personal or

- 9 -

advertising injury or the injury alleged arises out of any violation of intellectual property rights, and

- whether InterDigital has any other insurance applicable to this matter.

Should this Court grant InterDigital's Motion to Dismiss, this Court not only will simply delay the inevitable need to resolve these legal and factual issues but also will deny Hartford the ability to cut short any Case 2:06-cv-00165-JG    Document 13-1    Filed 04/10/2006    Page 12 of 28 duty to defend that the Court may find and/or force Hartford to consider settlement demands which this Court otherwise may hold that Hartford is not obligated to pay.

### C.    Rule 12(b)(1) Standard

InterDigital challenges this Court's subject matter jurisdiction under Rule 12(b)(1) by arguing that Hartford's claim for a declaration that it has no duty to indemnify InterDigital is not ripe for judicial review.  InterDigital thus makes a "facial attack"[10] on Hartford's complaint. *See Corporate Aviation Concepts, Inc. v. Multi-Service Aviation Corp.*, 2005 WL 1693931 at *2 n.6 (E.D. Pa. July 19, 2005) (concluding that ripeness attack was a "facial" challenge).

"When ruling on a 'facial' attack to subject matter jurisdiction under Rule 12(b)(1), courts must 'treat the allegations of the Complaint as true and afford the plaintiff the favorable inferences to be drawn from the Complaint.'"  *Corporate Aviation*, 2005 WL 1693931 at *2 (citing *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001)).

Hartford's complaint avers, *inter alia*, that the *Nokia* action does not implicate indemnity to the extent Nokia's claims do not involve an enumerated "personal and advertising injury" offense committed during the Hartford policy period and to the extent that coverage is precluded by a Hartford policy exclusion.  Hartford's complaint further notes that Nokia expressly alleges in its Lanham Act claim that InterDigital made the false statements at issue with "knowledge of

---

[10]    A party makes a "facial" challenge to subject matter jurisdiction, as opposed to a "factual" challenge, when it attacks the complaint on its face. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

- 10 -

their falsity." *See* Hartford's Complaint at ¶ *18; see also Nokia* complaint at ¶ 146.  If Hartford's

allegations are proven true, they preclude any possibility of coverage and thus entitle Hartford to

a declaration that it has no duty to indemnify InterDigital.

### D. Standard for Determining Whether an Action Is Ripe

The Supreme Court has established two fundamental considerations to determine whether

a suit is ripe for adjudication:  (1) "the fitness of the issues for judicial determination," and

(2) "the hardship to the parties of withholding court consideration." *Corporate Aviation*, 2005

WL 1693931 at *3 (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on*

*other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).[11]

As the Third Circuit has explained, "[t]he problem of justiciability is especially

troublesome in a declaratory judgment action, where the court may be asked to decide a case

based on events that have not yet and may not occur. ... ***Where, however, the essential facts***

***establishing a right to relief, including declaratory relief, have already occurred, the case is***

***justiciable.***" *Riehl v. Travelers Ins. Co.*, 772 F.2d 19, 22 (3d Cir. 1985) (emphasis added).

Here, the essential facts have already occurred – namely, InterDigital's alleged making of

knowingly false statements.  Thus, declaratory relief may be granted notwithstanding the fact

that the insured's liability has not yet been fixed in a sum certain. *See id.* ("[t]he only events

which have yet to occur are the expenditure of funds by Riehl for clean-up and the entry of

judgment imposing liability on Riehl for the toxic waste damage").  "[N]either immediate

---

[11]        To the extent that InterDigital applies the three factor ripeness test in *Step-Saver Data Sys., Inc. v. WYSE Tech*, 912 F.2d 643 (3d Cir. 1990), this Court need not consider such test separately.  "[T]he Third Circuit has made it clear that the *Step-Saver* test merely 'alters the heading under which various factors are grouped.'" *Id.*, 2005 WL 1693931 at *3 n.7 (quoting *Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 323 n.4 (3d Cir. 1998)).  Since *Step-Saver*, the Third Circuit has "employed both tests." *Philadelphia Fed'n of Teachers*, 150 F.3d at 323 n.4; *see also Corporate Aviation*, 2005 WL 1693931 at *3 n.7 (quoting same).  Nonetheless, for the reasons explained herein, Count Two also survives the *Step-Saver* test.

liability for damages, nor a liquidation to the extent of an insurer's indemnification obligation, is

necessary in this Circuit to establish a justiciable controversy." *Id.* at 22-23.

### E.     Hartford's Claim for Indemnity Is "Fit" For Judicial Determination Now

Under the first part of the ripeness test -- the "fitness" inquiry, courts look to "whether

the issue is purely legal (as against factual), the degree to which the challenged action is final,

whether the claim involves uncertain and contingent events that may not occur as anticipated or

at all, the extent to which further factual development would aid decision, and whether the

parties to the action are sufficiently adverse." *NE Hub Partners,* 239 F.3d at 342 n.8.  Under this

standard, Hartford's indemnity claim is fit for determination now.

### 1.     Hartford and InterDigital have adverse interests

The first prerequisite for a finding of ripeness in a declaratory judgment action is that

"the defendant [is] so situated that the parties have adverse legal interest." *Id.* at 648 (quoting

10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2757, 582-83 (2d Ed.

1983).  "Parties' interests are adverse where harm will result if the declaratory judgment is not

entered." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995).

While it is true under Pennsylvania law that claims for indemnification arise only where

the party seeking indemnity has made a payment on the underlying claim (*e.g. Ivensys, Inc. v.

Am. Mfg. Corp.,* 2005 U.S. District LEXIS 3961 (E.D. Pa. Mar. 15, 2005)), the interests of

Hartford and InterDigital are adverse notwithstanding the lack of a judgment or settlement in the

*Nokia* action.  "[W]here an insurer is denying coverage to its insured with substantial financial

exposure involved 'an actual controversy exists.'"  *Ideal Mut. Ins. Co. v. Limerick Aviation Co.*,

550 F. Supp. 437, 441 (E.D. Pa. 1982).

As long as the underlying claims against InterDigital remain pending and InterDigital continues to demand that it is entitled to indemnity from Hartford,[12] Hartford is being asked not only to pay InterDigital's defense costs but also to then assume the potential exposure to Hartford should it reject a settlement demand with its policy limits.

"One of the primary purposes behind the Declaratory Judgment Act was to enable

plaintiffs to preserve the status quo before irreparable damage was done." *Step-Saver*, 912 F.2d at 648, 649. Given the likelihood that Hartford will be asked to fund a judgment or settlement against InterDigital and the potential adverse consequences to Hartford in the event it is deemed to have refused, in bad faith, to settle within policy limits when presented with the opportunity to do so, it is necessary for this Court to rule on Count Two to preserve the status quo.

In *River Thames Ins. Co. v. 5329 West, Inc.*, 1995 WL 241490 (E.D. Pa. April 21, 1995), this Court granted in part and denied in part an insured's Rule 12(b)(1) motion to dismiss a declaratory judgment action. The insurer, Thames, had agreed to defend its insured, Big Jim's, under a reservation of rights. While that defense was being provided and the underlying action was still pending, Thames also filed a coverage action, asking this Court to declare that Thames had no legal duty to defend or indemnify Big Jim's because the underlying lawsuit fell within the assault and battery and liquor liability exclusion clauses. Thames also claimed that even if it must defend and indemnify the underlying lawsuit, it had no duty to indemnify Big Jim's for punitive damages. Big Jim's moved to dismiss those counts, arguing that they were not ripe.

---

[12]     InterDigital's repeated demands for coverage further evidence the adverse interests of the parties. After InterDigital initially tender the *Nokia* complaint to Hartford for defense and indemnity, Hartford denied coverage by letter dated April 5, 2005. *See* Hartford Complaint at ¶ 41. Thereafter, InterDigital challenged Hartford's declination, arguing that the Lanham Act allegations within the *Nokia* complaint constitute a "personal and advertising injury." *See id.* at ¶ 43. On June 6, 2005, Hartford reaffirmed its declination of coverage. *See id.* at ¶ 44. On October 12, 2005, InterDigital again challenged Hartford's declination. *See id.* at ¶ 45. Following InterDigital's repeated demands for defense and indemnity and its repeatedly disputing Hartford's coverage denial, Hartford filed this lawsuit seeking a judicial determination concerning the scope of its rights and obligations, if any, under the Hartford policies with respect to the *Nokia* action. *See* Hartford Complaint.

- 13 -

Applying the *Step-Saver* test, this Court agreed to dismiss Thames's request for a declaration that it had no duty to indemnify punitive damages because "[t]he underlying lawsuit … does not seek punitive damages. Accordingly, a declaration concerning Thames's duty to pay punitive damages would be an abstract advisory opinion." *Id.* at *2.

This Court then ***denied*** the insured's request to dismiss the insurer's count seeking a

declaration that it had no duty to indemnify based upon the policy exclusions. *Id.* This Court reasoned that the applicability of the liquor liability exclusion was a matter of genuine controversy and concluded that, while the question of whether the insured had served alcohol to the shooter was still undetermined, the liquor liability exclusion could apply to the underlying lawsuit. *Id.* Finding that the "exclusion's applicability is therefore a matter of substantial dispute, resolution of which will immediately impact the parties' respective legal interests", this Court held that the question was ripe for adjudication. *Id.*

The situation here is no different. Count Two of Hartford's Complaint raises issues concerning the scope of the policies' Insuring Agreements and the applicability of policy exclusions – which matters are in substantial dispute between Hartford and InterDigital and the resolution of which will immediately impact the parties' respective legal interests. Should this Court not rule on Hartford's indemnity claim now, Hartford will be harmed by being precluded from conducting discovery needed to determine whether it would owe indemnity and whether Hartford thus has an obligation to consider a settlement demand within policy limits.[13]

---

[13]    Further, the potential costs in dispute are staggering. While Hartford is not certain of the amounts in dispute in the *Nokia* action, it has been reported that that InterDigital has been awarded nearly $250 million in an arbitration with Nokia concerning what may be either the same or similar patents (in response to InterDigital's demand of Nokia for $500 million in royalties). *See* Ex. A hereto.

While Hartford acknowledges that some courts have ruled to the contrary and found

parties' interests were not adverse,[14] those cases are either improperly decided or distinguishable.

Since Hartford's duty to indemnify may ultimately turn upon the resolution of legal and/or

factual issues which will not be decided in the *Nokia* action, Hartford should be permitted to

pursue its claim that it has no duty to indemnify InterDigital and to conduct that discovery now

so that its indemnity obligation, if any, can be clarified before any settlement demand or

judgment is presented to Hartford for payment.

### 2.    This Court can definitively determine that Hartford owes no duty to indemnify InterDigital

For a declaratory judgment to be conclusive, the dispute must be based on a "real and

substantial controversy admitting of specific relief through a decree of a conclusive character, as

distinguished from an opinion advising what the law would be upon a hypothetical state of

facts." *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 241 (1937).

In Count Two, Hartford seeks a definitive declaration concerning whether it has any

indemnity obligation.  Notwithstanding InterDigital's arguments to the contrary, a declaration by

this Court would not amount to a mere advisory opinion.  The declaration sought by Hartford is

based on legal and factual issues from which the Court can make definite findings.  Hartford's

indemnity claim is not based upon contingent events that may not occur.

### a.    Hartford's indemnity claim presents several purely legal issues

First, Hartford's indemnity claim presents several ***purely legal inquiries*** – such as:

- whether, based upon the allegations in the *Nokia* complaint, the intellectual
  property exclusion bars all coverage, and

---

[14]     *E.g. Westport Ins. Corp. v. Howell*, 2005 WL 1124092 at *2 (E.D. Pa. May 10, 2005) (finding the parties interests were not adverse).

- 15 -

- whether Nokia's *express* allegation that InterDigital made false statements in "bad faith" and with "knowledge of their falsity" bars coverage as a matter of law.

These issues concern purely legal questions which this Court may decide now.

### b. Hartford's indemnity claim also raises factual issues that will not be decided in the *Nokia* action

Should this Court not decide the legal issues in Hartford's favor, then this Court will need

to consider several *factual issues* which may preclude coverage – many of which will not be

decided in the *Nokia* action.

"Ordinarily, a claim is unfit due to insufficient factual development when a plaintiff

cannot allege facts with sufficient specificity because no concrete factual setting exists."

*Corporate Aviation*, 2005 WL 1693931 at *4. Here, however, a concrete factual setting does

exist. InterDigital's alleged actions giving rise to Nokia's claims have already occurred. **What**

**InterDigital fails to acknowledge, however, is that while *it* may know the true facts, those**

**facts have not yet been made known to *Hartford*.** Through its Motion, InterDigital

impermissibly seeks to preclude Hartford from learning the facts already known to InterDigital.

Count Two should be allowed to proceed so Hartford can discover the true, "concrete"

facts surrounding Nokia's claims and thus determine whether the claims fall outside the Insuring

Agreements and/or fall within one of the policy exclusions. Hartford is entitled to learn now,

*inter alia*:

- whether InterDigital made any libelous, slanderous or disparaging statements during the Hartford policy period,[15]

---

[15]    This discovery is needed for several reasons. First, the Nokia complaint does not allege when any injurious statements were published. Statements published before or after the Hartford policy periods cannot give rise to a duty to indemnify. Second, Nokia does not expressly assert a claim for libel, slander or disparagement. Rather, Nokia alleges that InterDigital violated the Lanham Act. While the Lanham Act makes certain "false" statements actionable, it is not necessary that such statement be libelous, slanderous or disparaging – which is all that the Hartford policy covers under the personal and advertising injury offense at issue.

- whether any such statements were first published prior to the Hartford policy period,

- whether InterDigital knew such statements to be false or expected to injure Nokia,

- whether Nokia's alleged injury arises out of any intellectual property rights,[16] and

- whether InterDigital has other insurance that applies to some or all of the amounts claimed by Nokia.

Case 2:06-cv-00165-JG     Document 13-1     Filed 04/10/2006     Page 19 of 28

These facts relevant to indemnity may be discerned by Hartford "with greater specificity without the occurrence of some future event."  *See Corporate Aviation*, 2005 WL 1693931 at *4.

### F.    Hartford Will Suffer Harm Should Its Indemnity Claim Not Be Adjudicated Now

Under the second part of the Supreme Court's ripeness test – the "hardship" inquiry, courts evaluate "whether a plaintiff faces a direct and immediate dilemma, such that lack of review would put it to costly choices." *NE Hub Partners,* 239 F.3d at 342 n.8.

This Court's ruling on the indemnity issues would be of significant practical help to the parties as there are a number of direct and immediate dilemmas which Hartford will face should this Court refrain from deciding now whether Hartford has a duty to indemnify InterDigital.  For example, should this Court find that Hartford has a duty to defend based upon the allegations in the *Nokia* complaint, but then rule that Hartford may not seek to determine its duty to indemnify now, Hartford will then be forced to defend the *Nokia* action to its conclusion, without being permitted an opportunity to terminate that defense as is permitted under Pennsylvania law. Given that Pennsylvania courts have not yet recognized an insurer's right to reimbursement of

---

[16]    Pursuant to the Infringement of Intellectual Property Rights exclusion, Hartford has no duty to indemnify InterDigital to the extent that the *Nokia* action alleges injury arising out of any violation of any intellectual property rights.  Unless InterDigital is willing to stipulate that there is nothing at issue in the Nokia action which does not relate to intellectual property violations, Hartford is entitled to discovery what intellectual property violations are at issue and whether Nokia's injury arises of out any such violations.

defense costs incurred defending an uncovered claim, precluding discovery and adjudication of those issues now in essence forced Hartford to pay for the full defense.[17]

Additionally, should Hartford not be permitted to terminate its defense or indemnity obligations prior to the conclusion of the *Nokia* action, Hartford will be forced to decide whether to attempt settlement with InterDigital to cut off future defense costs or to risk the possibility of

an adverse verdict (which ultimately may not be covered). Similarly, if Hartford's duty to indemnify is not resolved now, Hartford will need to determine whether to post reserves for any indemnity exposure. Finally, given Pennsylvania law potentially exposing an insurer to liability in excess of its policy limits where it in bad faith refuses an opportunity to settle a claim within policy limits,[18] Hartford risks significant extra-contractual liability should it be presented with a settlement demand within limits and it not know whether the Court will agree that Hartford lacks any duty to indemnify InterDigital.[19]

Such a Catch 22 is precisely the very type of situation that the Declaratory Judgment Act is designed to remedy. *See, e.g., Abbot Labs. v. Gardner*, 387 U.S. 136, 152-53 (1967) (concluding that the plaintiff was entitled to a judicial determination as to the validity of certain regulations that forced the plaintiff to chose between complying with potentially suspect

---

[17]    While courts in a number of other jurisdictions have found that an insurer may recover defense costs from its insured where the insurer agrees to provide the insured a defense pursuant to an express reservation of rights which includes the right to recoup defense costs, the insured accepts the defense, and a court subsequently finds that the insurer did not owe the insured a defense (*see LA Weight Loss Ctrs., Inc. v. Lexington Ins. Co.*, 2006 WL 689109, *5 (Pa. Com. Pl. Mar 1, 2006) (citing cases)), "Pennsylvania state appellate courts have not spoken on the issue." *Id.* at *6. However, one recent state trial court opinion chose to follow the "minority" position and ruled that an insurer has no right to reimbursement absent a provision in its policy. *Id.* at *6. The Third Circuit has predicted a similar result. *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213 (3d Cir. 1989) (predicting that Pennsylvania appellate courts would not permit an insurer to recover defense costs even when it defends under a reservation of rights if it is later determined there is no coverage).

[18]    *See Birth Center v. St. Paul Cos.*, 567 Pa. 386, 787 A.2d 376 (2001).

[19]    Additionally, depending upon the Court's ruling, the parties may identify other sources of potential indemnity, such as other insurance policies, which may be implicated by the *Nokia* action.

- 18 -

regulations and incurring substantial costs, or refusing to comply and risking serious criminal and civil sanctions), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

Conversely, InterDigital will suffer no hardship should Hartford's indemnity claims be permitted to proceed.[20]  Should this Court agree with Hartford that the *Nokia* complaint does not implicate coverage, Hartford will not have a duty to defend nor a duty to indemnify.

Alternatively, should this Court agree with InterDigital that the *Nokia* complaint potentially states a claim covered by the Hartford policies, then Hartford will still be entitled to discovery concerning Nokia's claim and the statements at issue to determine whether those claims are limited to claims which do not and cannot implicate coverage.  That discovery will impact not only Hartford's duty to defend but also its duty to indemnify.  As such, the discovery which InterDigital seeks to cut off by dismissing Count Two will still need to occur and may still enable this Court to conclude that Hartford has no duty to indemnify InterDigital.

### G.    Hartford's Indemnity Claims Are Ripe For Adjudication

InterDigital advances two reasons for dismissing Count Two without prejudice:  (1) the fact that the *Nokia* action is still pending, and (2) alleged "practical" and "fairness" considerations.  *See* InterDigital's Brief at p. 4.  Neither of InterDigital's two reasons for dismissing Hartford's complaint is compelling.

---

[20]    To the extent that InterDigital relies upon cases such as *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876 (8th Cir. 2005) to argue that Hartford's claims are not ripe because the issue of InterDigital's knowledge of the falsity of its alleged misstatements remains an open fact that could be adjudicated in the Nokia action, InterDigital overstates its objection. First, the initial question presented by Hartford is a legal one – whether Nokia's allegation that InterDigital made knowingly false statements is enough to preclude coverage. Second, InterDigital ignores the numerous other bases which Hartford has asserted as possible grounds for denying coverage – which have nothing to do with this one, narrow issue.  As such, even if the "knowledge" issue were not ripe at this time, the remainder of Hartford' indemnity claim is.

1.    **This Court may decide Hartford's indemnity claim while the *Nokia* action is pending**

While InterDigital has cited cases in which courts refrained from deciding indemnity while an underlying action was pending, courts deciding indemnity claims certainly have and can award declaratory relief in favor of an insurance carrier while an underlying case is still pending. *E.g. First Oak Brook Corp. Syndicate v. Comhill Holding Company,* 93 F.3d 92 (3d Cir. 1996); *Classic Fire & Marine Ins. Co. v. Moe and Curly Corp.,* 1997 WL 727498, *2 (E.D. Pa. Nov. 12, 1997); *see also Nationwide Mut. Fire Ins. Co. of Columbus v. Pipher,* 140 F.3d 222 (3d Cir. 1998) (reversing district court's order relieving Nationwide of its duty to defend and potentially indemnify insured). As this Court has observed, "the Court of Appeals and district courts in this Circuit have held that disputes between an insured and his insurer are ripe for adjudication even though a judgment triggering the insured's liability has not yet occurred." *First Fid. Bancorporation v. Nat'l Union Fire Ins. Co.,* 1990 WL 165937 at *9 (E.D. Pa. Oct. 25, 1990).

In *Home Ins. Co. v. Law Offices of Jonathan DeYoung, P.C.,* 107 F. Supp. 2d 647 (E.D. Pa. 2000), this Court permitted a declaratory judgment action concerning coverage to go forward where, among other things, (a) the coverage action raised "purely legal" issues which did not require the Court to make factual determinations which would otherwise best be left to the jury in the underlying action, and (b) the existence or lack of insurance coverage would likely impact whether the underlying litigation would go forward. *Id.* at 650.

Similarly, several decisions applying Pennsylvania law have stated that, rather than denying coverage outright, an insurer should file a declaratory judgment action while the underlying action *is still pending* to determine whether a policy exclusion bars coverage. In the unpublished case of *Mechetti v. Weisberg,* No. 3102 Phila. 1996 (Pa. Super., June 10, 1997), a

- 20 -

panel of the Superior Court expressly faulted the insurer in that case for refusing to defend

without first obtaining a declaratory judgment:

> Mechetti's complaint … contained allegations of general
> negligence and potentially fell within the coverage of the policy.
> [The insurer], at a minimum, should have pursued the available
> declaratory judgment procedure at the outset to determine its duty
> to defend the insured. Unfortunately, however, [it] failed to do so.
> Thus, we conclude that the trial court properly found that [the
> insurer] was obligated to defend because the factual allegations of
> the complaint were potentially within the scope of the policy.

*See Classic Fire & Marine Ins. Co. v. Moe & Curly Corp.*, 1997 WL 727498, *2 (E.D. Pa. Nov.

12, 1997) (quoting *Mechetti*).

While both *Mechetti* and *Classic Fire* are unpublished decisions and thus not binding

precedent on this Court, and while those cases are primarily concerned with the duty to defend,

the *Classic Fire* court ultimately followed *Mechetti* and held that the insurer at issue "owes no

duty to defend *or indemnify* defendant in the underlying action", where the underlying action

was still pending. *Id.* at *2 (emphasis added). As such, those decisions hold that it is not only

possible for an insurer to obtain declaratory relief concerning the scope of its indemnity rights

while an underlying action is pending, but also that it may be preferable to do so.

Similarly, in *Butterfield v. Giuntoli*, 448 Pa. Super. 1, 670 A.2d 646 (1995), the court not

only concluded that certain indemnity issues should be determined while the underlying action

was pending but also that the insurer may, in certain cases, need to intervene in the underlying

action to ensure that matters relevant to indemnity are clearly decided by the jury. In *Butterfield*,

a hospital's excess liability insurer sought to deny coverage for an award of punitive damages,

arguing in part that Pennsylvania public policy precluded coverage for punitive damages. The

court held that the excess liability policy was ambiguous as to whether it covered punitive

damages for malpractice liability. Finding that Pennsylvania's public policy only barred

- 21 -

coverage for directly imposed, as opposed to vicariously imposed, punitive damages, the *Butterfield* court held that the excess insurer failed to carry its burden of establishing that the jury awarded punitive damages in the underlying malpractice action against the hospital solely on basis of direct liability, for which public policy bars insurance coverage, rather than on basis of vicarious liability for acts of doctors, for which public policy does not bar coverage.  The court

emphasized that under the jury instructions submitted, the jury could have found hospital either directly negligent or vicariously negligent or both, and further emphasized that the insurer had right to participate in case but neither requested specific instructions nor sought to intervene.

If, in some cases an insurer is required to intervene in an underlying action and submit special jury interrogatories or otherwise risk later being found to have failed to sustain its burden of denying coverage, an insurer also should be permitted to file a declaratory judgment action during the pendency of the underlying action to clarify issues relevant to indemnity and to obtain discovery which may be relevant to both coverage and possible special jury interrogatories.

## 2.    It is not only practical, but fair, for this Court to decide Hartford's indemnity claim now

Practical and fairness considerations similarly merit consideration of Hartford's indemnity claims now.  Should this Court agree that based upon the face of the *Nokia* complaint Hartford has no duty to defend, Hartford would also prevail on Count Two.  *E.g. Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994).  Plus, as discussed above, the very discovery that Hartford will seek in connection with Count One (duty to defend) also will impact the resolution of Count Two.  Thus, as a practical matter, delaying resolution of the indemnity issue will not result in any significant savings to either the parties or this Court.

As to fairness considerations, it is eminently fair to determine now whether Hartford may deny any duty to indemnify InterDigital – before Hartford is forced to defend the entire *Nokia*

- 22 -

action and before Hartford is forced to decide whether to settle or litigate Nokia's claims. This Court can determine now that Hartford owes no duty to indemnify InterDigital – either because of one of the legal issues raised by Hartford or based upon a determination of the actual facts surrounding InterDigital's coverage claim. While perhaps one of these facts may be decided in the *Nokia* action (namely, whether InterDigital made a knowingly false statement), many other

facts relevant to indemnity will <u>not</u>. For instance, the *Nokia* court need not determine when InterDigital committed any "personal or advertising injury" offense or when any publication at issue was first made. The *Nokia* court also need not determine if other insurance exists which should pay or share in the indemnity of InterDigital.

## III.    **CONCLUSION**

Count Two of Hartford's Complaint presents a ripe controversy concerning Hartford's alleged duty to indemnify InterDigital. As such, InterDigital's Motion to Dismiss should be denied and this matter permitted to proceed forthwith.

Respectfully submitted,

WHITE AND WILLIAMS LLP

By: _____

Gale White, Esquire
Anthony L. Miscioscia, Esquire
1800 One Liberty Place
Philadelphia, PA  19103-7395
Phone: 215.864.6234
Attorneys for Plaintiffs

Dated:  April 10, 2006

- 23 -

## <u>CERTIFICATE OF SERVICE</u>

I, Anthony L. Miscioscia Esquire, hereby certify that I have caused a true and correct

copy of the Response of Plaintiffs, Hartford Fire Insurance Company and Hartford Casualty

Insurance Company in Opposition to Defendants' Motion to Dismiss Count Two of the

Complaint and the related Memorandum of Law to be electronically filed with the Court (which

is available for viewing and downloading) and to be served by regular mail, on April 10, 2006,

upon the following:

> Stephen J. Mathes, Esquire
> Arleigh P. Helfer, III, Esquire
> Hoyle, Fickler, Herschel & Mathes, LLP
> One South Broad Street – Suite 1500
> Philadelphia, PA  19103-7397

WHITE AND WILLIAMS LLP

Anthony L. Miscioscia, Esq.

# EXHIBIT

# A

## InterDigital Wins Ruling In Nokia Royalty Dispute

**By CHAD BRAY**
DOW JONES NEWSWIRES
December 29, 2005 4:17 a.m.

NEW YORK – A federal judge confirmed an arbitration award of about $250 million for InterDigital Communications Corp., which is in a dispute with cellphone maker Nokia Corp. over royalties.

In an order filed Wednesday in the Southern District of New York, Judge William H. Pauley III upheld the award granted by an arbitration panel in June and denied Nokia's motion to vacate it.

"While this court does not necessarily agree with every finding of the panel, there is nothing so aberrant about the award to require vacatur," Judge Pauley said in his order. "This court confirms the award in its entirety."

The dispute revolves around royalties agreed to as part of licensing agreements entered into by InterDigital Communications and Nokia in January 1999.

A Nokia spokesman didn't immediately have a comment when reached Wednesday afternoon.

Under the agreements, Nokia paid InterDigital $31.5 million in royalties for all handset sales using InterDigital technology prior to January 2002, according to the judge's order.

Nokia's royalty obligations for sales between January 2002 and December 2006 would then be contingent on InterDigital entering into licensing agreements with one of Nokia's three "major competitors" — Lucent Technologies Inc., Telefon AB L.M. Ericsson or Motorola Inc., according to the order.

In March 2003, InterDigital entered into two patent licensing agreements with Ericsson and Sony Ericsson Mobile Communications — a joint venture between Sony Corp. and Ericsson. In creating the joint venture, Ericsson sold its handset business to Sony Ericsson for cash consideration, according to the judge's order.

After entering into the Ericsson agreements, InterDigital requested about $500 million in royalty payments from Nokia, which disputed the obligations and invoked its right to arbitration.

In a filing with the Securities and Exchange Commission on Tuesday, InterDigital said it has taken action to utilize the dispute resolution process under its licensing agreement with Nokia in order to compel Nokia to abide by the arbitration panel's ruling.

The dispute resolution process would establish a timetable for discussions, senior representative meetings and any future initiation of arbitration, if necessary, according to the filing.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, et al., | : |
| | : |
| | : |
| | : Civil Action No. 06-0165 |
| Plaintiffs, | : |
| | : |
| v. | Case 2:06-cv-00165-JG    Document 13-2    Filed 04/10/2006    Page 1 of 28 |
| | : |
| INTERDIGITAL COMMUNICATIONS CORPORATION, et al., | : |
| | : |
| Defendants. | : |
| | : |

**ORDER**

AND NOW, this      day of                    , 2006, upon consideration of the

Motion of Defendants, InterDigital Communications Corporation and InterDigital Technology

Corporation to Dismiss Count Two of the Complaint, without prejudice, and the opposition

thereto filed by Plaintiffs, Hartford Fire Insurance Company and Hartford Casualty Insurance

Company, it is hereby ORDERED that Defendants' Motion to Dismiss Count Two is DENIED.

Defendants shall answer Plaintiffs' Complaint within thirty (30) days of the date of this Order.

IT IS SO ORDERED:

_____
                                                                                                    J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HARTFORD FIRE INSURANCE             :
COMPANY, et al.,                    :
                                    :
                                    :   Civil Action No. 06-0165
            Plaintiffs,             :
                                    :
    v.
                                    :
INTERDIGITAL COMMUNICATIONS         :
CORPORATION, et al.,                :
                                    :
            Defendants.             :
                                    :

## RESPONSE OF PLAINTIFFS, HARTFORD FIRE INSURANCE COMPANY AND HARTFORD CASUALTY INSURANCE COMPANY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNT TWO OF THE COMPLAINT

Plaintiffs, Hartford Fire Insurance Company and Hartford Casualty Insurance Company (collectively "Hartford"), by and through their undersigned counsel, hereby oppose Defendants' Motion to Dismiss Count Two of Hartford's Complaint. The case law and reasons supporting Hartford's Opposition to Defendants' Motion are set forth in the accompanying Memorandum of Law, which is incorporated herein by reference. Pursuant to Local Rule 7.1(f), Hartford requests oral argument.

**WHEREFORE**, Hartford requests that this Court enter an Order in the form proposed herewith denying Defendants' Motion to Dismiss Count Two of the Complaint.

Respectfully submitted,
**WHITE AND WILLIAMS LLP**

By: _____

Gale White, Esquire
Anthony L. Miscioscia, Esquire
1800 One Liberty Place
Philadelphia, PA  19103-7395
Phone: 215.864.6234
Attorneys for Plaintiffs

Dated:  April 10, 2006

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, et al., | : : : : |
| Plaintiffs, | Civil Action No. 06-0165 : : |
| v.    Case 2:06-cv-00165-JG    Document 13-2    Filed 04/10/2006    Page 3 of 28 | : : |
| INTERDIGITAL COMMUNICATIONS CORPORATION, et al., | : : : |
| Defendants. | : : |

## HARTFORD FIRE INSURANCE COMPANY AND HARTFORD CASUALTY INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNT TWO OF THE COMPLAINT

In this insurance coverage action, Hartford Fire Insurance Company and Hartford Casualty Insurance Company (collectively "Hartford") seek a declaration that they have no duty to defend or indemnify InterDigital Communications Corporation ("ICC") and InterDigital Technology Corporation ("ITC") (collectively "InterDigital") for a suit brought against InterDigital by its competitors, Nokia Corporation and Nokia, Inc. (collectively "Nokia"). InterDigital does not challenge Hartford's right to a declaration as to the duty to defend, but rather claims that Hartford cannot seek a declaration that it has no duty to indemnify. InterDigital asserts that the duty to indemnify *is not ripe* and cannot be decided until *after* the underlying *Nokia* action is over.  That is not so.

InterDigital also claims that "[t]his Court cannot determine Hartford's duty to indemnify without making factual determinations that are crucial to the underlying litigation." InterDigital's Memorandum at p. 20.  This also is not so.

There are many facts (and legal issues) that will <u>not</u> be determined in the *Nokia* action, which could prove that Hartford has no duty to indemnify -- such as when allegedly false statements were made, and whether all of Nokia's injury arose out of violations of intellectual property rights. These facts (and other legal and factual issues discussed herein) could lead to a conclusion that Hartford has no duty to indemnify InterDigital for the *Nokia* action.

*Interestingly, many of these facts are known to InterDigital and, by this motion, InterDigital seeks to preclude Hartford from learning them.*

If the Court were to conclude that Hartford cannot proceed to adjudicate whether it has a duty to indemnify InterDigital before the *Nokia* action is concluded (and the Court concludes that there is a duty to defend), Hartford would be in the prejudicial position of having to defend Nokia's very expensive lawsuit[1] for as long as that suit drags out, with no way to prove before judgment that there is no coverage. Pennsylvania case law[2] is clear that an insurer may cut off its defense and indemnity obligation if it can prove, *before* trial, that there is no coverage. Hartford therefore has the right to seek a determination now of whether it has a duty to indemnify InterDigital for the *Nokia* action.

---

[1]    The *Nokia* complaint avers that InterDigital has been involved in many suits, including the *Nokia* action, involving the interpretation and application of numerous patents. Such suits are very expensive to defend and in fact, in one similar case, InterDigital's defense costs were nearly $28 million. *See InterDigital Communications Corp. v. Federal Ins. Co.*, 392 F. Supp. 2d 707 (E.D. Pa. Oct. 3, 2005) (involving dispute over fee agreement entered into between InterDigital and another insurer, Federal, which agreement InterDigital later sought to avoid after Federal sought to recover nearly $27.8 million paid to defend InterDigital in the *Ericsson* case).

[2]    Hartford relies upon Pennsylvania law in this Opposition because that is the law cited by InterDigital in its Motion papers. *See* InterDigital's Memorandum of Law at p. 8 (averring "Pennsylvania law will likely govern").

- 2 -

## I.     BACKGROUND[3]

### A.     Hartford's Complaint Against InterDigital

Hartford seeks a declaration that it has no duty to defend (Count One) or indemnify

(Count Two) InterDigital in connection with an underlying lawsuit filed by Nokia against

InterDigital (the "*Nokia* action" or "*Nokia* complaint").[4]   InterDigital's Motion to Dismiss is

directed solely to Count Two, concerning indemnity.

### B.     The Underlying *Nokia* Complaint

On or about January 12, 2005, Nokia filed the *Nokia* complaint against ICC and ITC.

The *Nokia* complaint sets forth 21 causes of action - 20 of which seek declarations of non-

infringement and/or invalidity as to various patents purportedly held by InterDigital relating to

mobile phone technology and one of which sets forth a claim for alleged violations of the

Lanham Act. *See Nokia* complaint, attached as Ex. A to Hartford's Complaint.

The *Nokia* complaint remains pending against InterDigital; however, by Memorandum

Opinion dated December 21, 2005, the United States District Court for the District of Delaware

dismissed Nokia's declaratory judgment claims relating to non-infringement and patent

invalidity for lack of jurisdiction.  *Nokia Corp. v. InterDigital Communications,* 2005 WL

3525696 (D. Del. Dec. 21, 2005).

Nokia's Lanham Act claim (Count XXI of the *Nokia* complaint) alleges that InterDigital

has made false or misleading representations about InterDigital's patents and Nokia's products

and the application of InterDigital's patents to Nokia's products.  Nokia asserts that these

statements have damaged Nokia's business and reputation in the wireless market.  *See Nokia*

---

[3]      The Background facts are taken from Hartford's Complaint.  *See NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001) (treating factual allegations as true in "facial" attack).

[4]      Pursuant to Count Three, Hartford seeks a declaration of whether ITC is entitled to coverage.

complaint, ¶ 142. The *Nokia* complaint further alleges that InterDigital made these false

statements in "bad faith" and with "knowledge of their falsity." *See Nokia* complaint, ¶ 146.

### C.    The Hartford Fire CGL Policies

Harford Fire issued two Commercial General Liability policies to ICC as the named

insured effective for the period December 22, 2003 to December 22, 2004 and the period

December 22, 2004 to December 22, 2005.[5]

Pursuant to these policies, Hartford Fire agreed to indemnify "those sums that the insured

becomes legally obligated to pay as damages because of 'personal and advertising injury' to

which this insurance applies" provided that the offense arises out of the insured's business and

was committed in the "coverage territory" during the policy period.[6]  Hartford is not obligated,

however, to indemnify (or defend) a "suit" that does not seek covered damages.

The Hartford Fire policies define "personal and advertising injury" as injury, including

consequential "bodily injury," arising out of an offense listed in the definition, including:

> (4)    Oral, written or electronic publication of material that slanders or
> libels a person or organization or disparages a person's or
> organization's goods, products or services;

The Hartford Fire policies bar coverage for "personal and advertising injury" to the

extent precluded by the various policy exclusions, including but not limited to:

> a.    Knowing Violation of Rights of Another
>
> "Personal and advertising injury" caused by an offense committed
> by, at the direction or with the consent or acquiescence of the
> insured with the expectation of inflicting "personal and advertising
> injury."

---

[5]    Hartford Casualty also issued two umbrella policies to ICC, the relevant provisions of which policies largely, for purposes of the instant Motion, follow form to those of the Hartford Fire policies.

[6]    On information and belief, InterDigital does not contend that the *Nokia* complaint implicates "bodily injury" or "property damage" coverage and thus those coverage provisions are not discussed herein.

- 4 -

b.    Material Published with Knowledge of Falsity

"Personal and advertising injury" arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c.    Material Published Prior to Policy Period

"Personal and advertising injury" arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period.

* * *

g.    Quality or Performance of Goods - - Failure to Conform to Statements[7]

"Personal and advertising injury" arising out of the failure of goods, products, or services to conform with any statement of quality or performance made in your "advertisement" or on "your web site";

* * *

i.    Infringement of Intellectual Property Rights

"Personal and advertising injury" arising out [of] any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

## II.    ARGUMENT

### A.    Declaratory Judgment Act

Pursuant to the Declaratory Judgment Act, courts have the power to make declarations regarding "the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201.  As the Supreme Court has explained, under the Declaratory Judgment Act, "the question in each case is whether the facts alleged, under all the circumstances, show[] that there is a substantial controversy, between parties having adverse legal interests, of sufficient

---

[7]    Exclusions g. and i. are added/amended to the policy by the Cyberflex endorsement, amending Coverage B.

- 5 -

immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941).  Moreover, "[t]he extent of an insurer's liability concerning insurance coverage may properly be resolved in a declaratory judgment action." *Ideal Mut. Ins. Co. v. Limerick Aviation Co.,* 550 F. Supp. 437, 441 (E.D. Pa. 1982).

**B.**    **Hartford May Cut Off *Both* Its Defense Obligation *And* Its Indemnity Obligation, If Any, *Before* The Conclusion Of The *Nokia* Action**

Case 1:06-cv-00422-SLR    Document 13    Filed 04/10/2006    Page 8 of 28

Before turning to InterDigital's "ripeness" argument, we note as a preliminary (and dispositive) matter that InterDigital has ignored the body of Pennsylvania law which clearly allows an insurer to seek a judicial determination of its obligations (both defense and indemnity) *before* judgment is entered in the underlying case.  Under InterDigital's view of how this insurance coverage action would proceed, Hartford would be permitted to litigate whether Hartford has a duty to defend the *Nokia* suit.  If InterDigital succeeds and the Court were to conclude that Hartford had a duty to defend (which Hartford denies), Hartford would then be *denied its right* to determine the extent, if any, of coverage owed under its policies.  For instance, Hartford would be precluded from:

(1)    discovering the "true facts" that could cut off Hartford's duty to defend,

(2)    discovering facts that would show the extent of Hartford's duty to indemnify -- *i.e.* what claims might be covered and what claims are not,[8]

(3)    discovering facts that could eliminate coverage for one of the two years of policies issued by Hartford,

(4)    discovering the "true facts" that could relieve Hartford of its duty to indemnify, and

(5)    doing anything, other than paying defense costs.

---

[8]    For example, the Hartford policies do not cover damages arising out of publication of material first published before the Hartford policies incepted.  Hartford would not be able to determine this.

This result is contrary to Pennsylvania law and is prejudicial to Hartford. Courts applying Pennsylvania law *have permitted* an insurer to cut off *both* its defense *and* its indemnity obligation, if any, *before* final resolution of the underlying action for which coverage is sought.

### a.    Hartford cannot owe indemnity if it has no duty to defend

Certainly, an insurer may obtain a declaration *prior to* the conclusion of an underlying action that the insurer lacks *both* a duty to defend and any duty to indemnify based upon a comparison of the allegations in the underlying complaint to the terms of the applicable insurance policy. *E.g. First Oak Brook Corp. Syndicate v. Comly Holding Corp.*, 93 F.3d 92 (3d Cir. 1996) (finding no duty to defend or indemnify).

Under Pennsylvania law, "once it is determined that there is no obligation to provide the broader duty to defend, the more narrow duty to indemnify is also extinguished." *Brandt v. U.S. Liab. Ins. Group*, 70 Pa. D. & C. 4th 449, 458 (Comm. Pleas Lancaster Cty. 2005) (finding that it was proper to award declaration pursuant to Pennsylvania's Declaratory Judgments Act that insurer owned no duty to defend or indemnify due to policy exclusion). Thus, if Hartford has no duty to defend, there can be no duty to indemnify. *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994); *see also Mutual Benefit Ins. Co. v. Haver*, 555 Pa. 534, 539 n. 1, 725 A.2d 743, 746 n. 1 (1999) (rejecting claimants' contention that their complaint alleged negligence; Pennsylvania Supreme Court held that factual allegations in underlying complaint fell within knowing endangerment exclusion and thus ruled that insurer had no duty to defend or indemnify underlying action).[9]

---

[9]    Presumably, InterDigital does not dispute that this Court may rule that Hartford has no duty to indemnify if Hartford succeeds on Count One and proves that it has no duty to defend the *Nokia* action, as the duty to defend is broader than the duty to indemnify. *See Lucker* 23 F.3d at 821 ("summarily" disposing of duty to indemnify where court found no duty to defend). As such, at a minimum, until such time as this Court decides Count One and

### b.    Even if Hartford is initially found to owe a defense, Hartford still may have no duty to indemnify InterDigital

An insurer that is *initially* found to owe a duty to defend (which Hartford denies) still may obtain declaratory relief limiting, or terminating, any defense obligation.  In Pennsylvania, as explained by the Third Circuit, the "duty to defend remains with the insurer *until facts sufficient to confine the claims to liability not within the scope of the policy become known to the insurer*." *Lucker*, 23 F.3d at 813 (emphasis added).  Similarly, *even if* Hartford has a duty to defend as InterDigital avers (and Hartford denies), Hartford ultimately may not owe any indemnity because the duty to indemnify is narrower than the duty to defend and is not based solely upon the allegations of the underlying complaint. *First Oak Brook Corp.*, 93 F.3d at 95 (finding that district court correctly noted that "indemnification is based on actual liability" not allegations in complaint).

In *General Accident Ins. Co. of Am. v. Allen*, 547 Pa. 693, 692 A.2d 1089 (1997), an insured argued (like InterDigital does here) that the court could not determine the duty to indemnify until the underlying action was fully resolved, including the exhaustion of all appeals. The Pennsylvania Supreme Court rejected the insureds' contentions.  Recognizing the appropriateness of the insurer's pre-judgment/settlement declaratory judgment action brought pursuant to Pennsylvania's declaratory judgment statute, the court noted:

> The question before a court in a declaratory judgment action is not whether the insurer owes indemnification in a specific amount, which would be a premature inquiry absent a full resolution of the underlying action.  Instead, the question is whether the insurer has a duty to indemnify the insured in the event of liability in the underlying action.

---

determines whether Hartford has a duty to defend, Count Two not only is ripe but also may be decided in Hartford's favor.  Thus, InterDigital's Motion to Dismiss is really only directed to the situation where Hartford is found initially to owe a duty to defend, but then seeks to terminate/cut-off that duty (or limit the scope thereof) and/or seeks to deny any duty to indemnify.

*Id.*, 547 Pa. at 707, 692 A.2d at 1095. The *Allen* court thus held that "[a] court can answer such a

question because it is within the scope of a court's power pursuant to the [Pennsylvania]

Declaratory Judgments Act." *Id.; see also Harleysville Mut. Ins. Co. v. Madison*, 415 Pa. Super.

361, 609 A.2d 564 (1992) (insurer can seek determination of obligations to insured before

conclusion of underlying action).

While *Allen* and *Madison* concern state courts applying the Pennsylvania Declaratory

Judgment Act, the result here should be no different merely because a federal court is deciding a

claim pursuant to the federal declaratory judgment statute. *See Corporate Aviation*, 2005 WL

1693931 at *3 (noting that federal "Declaratory Judgment Act permits litigants to determine the

validity of a security interest ... 'before the dispute grows into a contract violation or a

foreclosure proceeding'").

*Even if* InterDigital defeats Hartford's request for a declaration that it has no duty to

defend, Hartford may not owe indemnity for a number of reasons – many of which depend upon

resolution of legal issues or factual issues which Hartford is entitled to pursue now. Hartford

should not be forced to await the conclusion of the *Nokia* action before having this Court decide

those legal and factual issues. Instead, this Court should allow Hartford to pursue a declaration

that it has no duty to indemnify by discovering, *inter alia*:

- what statements, if any, InterDigital made about Nokia or its products -- to
  determine whether InterDigital libeled, slandered or disparaged Nokia or
  its products) and thus whether the Nokia action involves an enumerated
  personal or advertising injury offense,

- when any such statements were made and by whom -- to determine
  whether an insured made such statements during the Hartford policy
  periods,

- the circumstances surrounding those statements -- to determine whether a
  policy exclusion applies because, for example, the insured knew its
  statements were false, the insured expected to inflict personal or

- 9 -

advertising injury or the injury alleged arises out of any violation of intellectual property rights, and

- whether InterDigital has any other insurance applicable to this matter.

Should this Court grant InterDigital's Motion to Dismiss, this Court not only will simply delay the inevitable need to resolve these legal and factual issues but also will deny Hartford the ability to cut short any Case 2:06-cv-00165-JG     Document 13-2     Filed 04/10/2006     Page 12 of 28 duty to defend that the Court may find and/or force Hartford to consider settlement demands which this Court otherwise may hold that Hartford is not obligated to pay.

## C.  Rule 12(b)(1) Standard

InterDigital challenges this Court's subject matter jurisdiction under Rule 12(b)(1) by arguing that Hartford's claim for a declaration that it has no duty to indemnify InterDigital is not ripe for judicial review. InterDigital thus makes a "facial attack"[10] on Hartford's complaint. *See Corporate Aviation Concepts, Inc. v. Multi-Service Aviation Corp.*, 2005 WL 1693931 at *2 n.6 (E.D. Pa. July 19, 2005) (concluding that ripeness attack was a "facial" challenge).

"When ruling on a 'facial' attack to subject matter jurisdiction under Rule 12(b)(1), courts must 'treat the allegations of the Complaint as true and afford the plaintiff the favorable inferences to be drawn from the Complaint.'" *Corporate Aviation*, 2005 WL 1693931 at *2 (citing *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001)).

Hartford's complaint avers, *inter alia*, that the *Nokia* action does not implicate indemnity to the extent Nokia's claims do not involve an enumerated "personal and advertising injury" offense committed during the Hartford policy period and to the extent that coverage is precluded by a Hartford policy exclusion. Hartford's complaint further notes that Nokia expressly alleges in its Lanham Act claim that InterDigital made the false statements at issue with "knowledge of

---

[10]     A party makes a "facial" challenge to subject matter jurisdiction, as opposed to a "factual" challenge, when it attacks the complaint on its face. *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

- 10 -

their falsity." *See* Hartford's Complaint at ¶ *18; see also Nokia* complaint at ¶ 146. If Hartford's

allegations are proven true, they preclude any possibility of coverage and thus entitle Hartford to

a declaration that it has no duty to indemnify InterDigital.

### D.    Standard for Determining Whether an Action Is Ripe

The Supreme Court has established two fundamental considerations to determine whether

a suit is ripe for adjudication: (1) "the fitness of the issues for judicial determination," and

(2) "the hardship to the parties of withholding court consideration." *Corporate Aviation*, 2005

WL 1693931 at *3 (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on

other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).[11]

As the Third Circuit has explained, "[t]he problem of justiciability is especially

troublesome in a declaratory judgment action, where the court may be asked to decide a case

based on events that have not yet and may not occur. … ***Where, however, the essential facts

establishing a right to relief, including declaratory relief, have already occurred, the case is

justiciable.***" *Riehl v. Travelers Ins. Co.*, 772 F.2d 19, 22 (3d Cir. 1985) (emphasis added).

Here, the essential facts have already occurred – namely, InterDigital's alleged making of

knowingly false statements. Thus, declaratory relief may be granted notwithstanding the fact

that the insured's liability has not yet been fixed in a sum certain. *See id.* ("[t]he only events

which have yet to occur are the expenditure of funds by Riehl for clean-up and the entry of

judgment imposing liability on Riehl for the toxic waste damage"). "[N]either immediate

---

[11]    To the extent that InterDigital applies the three factor ripeness test in *Step-Saver Data Sys., Inc. v. WYSE Tech*, 912 F.2d 643 (3d Cir. 1990), this Court need not consider such test separately. "[T]he Third Circuit has made it clear that the *Step-Saver* test merely 'alters the heading under which various factors are grouped.'" *Id.*, 2005 WL 1693931 at *3 n.7 (quoting *Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 323 n.4 (3d Cir. 1998)). Since *Step-Saver*, the Third Circuit has "employed both tests." *Philadelphia Fed'n of Teachers*, 150 F.3d at 323 n.4; *see also Corporate Aviation*, 2005 WL 1693931 at *3 n.7 (quoting same). Nonetheless, for the reasons explained herein, Count Two also survives the *Step-Saver* test.

liability for damages, nor a liquidation to the extent of an insurer's indemnification obligation, is

necessary in this Circuit to establish a justiciable controversy." *Id.* at 22-23.

### E.    Hartford's Claim for Indemnity Is "Fit" For Judicial Determination Now

Under the first part of the ripeness test -- the "fitness" inquiry, courts look to "whether

the issue is purely legal (as against factual), the degree to which the challenged action is final,

whether the claim involves uncertain and contingent events that may not occur as anticipated or

at all, the extent to which further factual development would aid decision, and whether the

parties to the action are sufficiently adverse." *NE Hub Partners,* 239 F.3d at 342 n.8.  Under this

standard, Hartford's indemnity claim is fit for determination now.

### 1.    Hartford and InterDigital have adverse interests

The first prerequisite for a finding of ripeness in a declaratory judgment action is that

"the defendant [is] so situated that the parties have adverse legal interest." *Id.* at 648 (quoting

10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2757, 582-83 (2d Ed.

1983).  "Parties' interests are adverse where harm will result if the declaratory judgment is not

entered." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995).

While it is true under Pennsylvania law that claims for indemnification arise only where

the party seeking indemnity has made a payment on the underlying claim (*e.g. Ivensys, Inc. v.

Am. Mfg. Corp.,* 2005 U.S. District LEXIS 3961 (E.D. Pa. Mar. 15, 2005)), the interests of

Hartford and InterDigital are adverse notwithstanding the lack of a judgment or settlement in the

*Nokia* action.  "[W]here an insurer is denying coverage to its insured with substantial financial

exposure involved 'an actual controversy exists.'"  *Ideal Mut. Ins. Co. v. Limerick Aviation Co.*,

550 F. Supp. 437, 441 (E.D. Pa. 1982).

- 12 -

As long as the underlying claims against InterDigital remain pending and InterDigital continues to demand that it is entitled to indemnity from Hartford,[12] Hartford is being asked not only to pay InterDigital's defense costs but also to then assume the potential exposure to Hartford should it reject a settlement demand with its policy limits.

"One of the primary purposes behind the Declaratory Judgment Act was to enable

plaintiffs to preserve the status quo before irreparable damage was done." *Step-Saver*, 912 F.2d at 648, 649. Given the likelihood that Hartford will be asked to fund a judgment or settlement against InterDigital and the potential adverse consequences to Hartford in the event it is deemed to have refused, in bad faith, to settle within policy limits when presented with the opportunity to do so, it is necessary for this Court to rule on Count Two to preserve the status quo.

In *River Thames Ins. Co. v. 5329 West, Inc.*, 1995 WL 241490 (E.D. Pa. April 21, 1995), this Court granted in part and denied in part an insured's Rule 12(b)(1) motion to dismiss a declaratory judgment action. The insurer, Thames, had agreed to defend its insured, Big Jim's, under a reservation of rights. While that defense was being provided and the underlying action was still pending, Thames also filed a coverage action, asking this Court to declare that Thames had no legal duty to defend or indemnify Big Jim's because the underlying lawsuit fell within the assault and battery and liquor liability exclusion clauses. Thames also claimed that even if it must defend and indemnify the underlying lawsuit, it had no duty to indemnify Big Jim's for punitive damages. Big Jim's moved to dismiss those counts, arguing that they were not ripe.

---

[12]     InterDigital's repeated demands for coverage further evidence the adverse interests of the parties. After InterDigital initially tender the *Nokia* complaint to Hartford for defense and indemnity, Hartford denied coverage by letter dated April 5, 2005. *See* Hartford Complaint at ¶ 41. Thereafter, InterDigital challenged Hartford's declination, arguing that the Lanham Act allegations within the *Nokia* complaint constitute a "personal and advertising injury." *See id.* at ¶ 43. On June 6, 2005, Hartford reaffirmed its declination of coverage. *See id.* at ¶ 44. On October 12, 2005, InterDigital again challenged Hartford's declination. *See id.* at ¶ 45. Following InterDigital's repeated demands for defense and indemnity and its repeatedly disputing Hartford's coverage denial, Hartford filed this lawsuit seeking a judicial determination concerning the scope of its rights and obligations, if any, under the Hartford policies with respect to the *Nokia* action. *See* Hartford Complaint.

- 13 -

Applying the *Step-Saver* test, this Court agreed to dismiss Thames's request for a declaration that it had no duty to indemnify punitive damages because "[t]he underlying lawsuit ... does not seek punitive damages. Accordingly, a declaration concerning Thames's duty to pay punitive damages would be an abstract advisory opinion." *Id.* at *2.

This Court then ***denied*** the insured's request to dismiss the insurer's count seeking a

declaration that it had no duty to indemnify based upon the policy exclusions. *Id.* This Court reasoned that the applicability of the liquor liability exclusion was a matter of genuine controversy and concluded that, while the question of whether the insured had served alcohol to the shooter was still undetermined, the liquor liability exclusion could apply to the underlying lawsuit. *Id.* Finding that the "exclusion's applicability is therefore a matter of substantial dispute, resolution of which will immediately impact the parties' respective legal interests", this Court held that the question was ripe for adjudication. *Id.*

The situation here is no different. Count Two of Hartford's Complaint raises issues concerning the scope of the policies' Insuring Agreements and the applicability of policy exclusions – which matters are in substantial dispute between Hartford and InterDigital and the resolution of which will immediately impact the parties' respective legal interests. Should this Court not rule on Hartford's indemnity claim now, Hartford will be harmed by being precluded from conducting discovery needed to determine whether it would owe indemnity and whether Hartford thus has an obligation to consider a settlement demand within policy limits.[13]

---

[13]    Further, the potential costs in dispute are staggering. While Hartford is not certain of the amounts in dispute in the *Nokia* action, it has been reported that that InterDigital has been awarded nearly $250 million in an arbitration with Nokia concerning what may be either the same or similar patents (in response to InterDigital's demand of Nokia for $500 million in royalties). *See* Ex. A hereto.

- 14 -`

While Hartford acknowledges that some courts have ruled to the contrary and found parties' interests were not adverse,[14] those cases are either improperly decided or distinguishable. Since Hartford's duty to indemnify may ultimately turn upon the resolution of legal and/or factual issues which will not be decided in the *Nokia* action, Hartford should be permitted to pursue its claim that it has no duty to indemnify InterDigital and to conduct that discovery now

so that its indemnity obligation, if any, can be clarified before any settlement demand or judgment is presented to Hartford for payment.

### 2. This Court can definitively determine that Hartford owes no duty to indemnify InterDigital

For a declaratory judgment to be conclusive, the dispute must be based on a "real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 241 (1937).

In Count Two, Hartford seeks a definitive declaration concerning whether it has any indemnity obligation. Notwithstanding InterDigital's arguments to the contrary, a declaration by this Court would not amount to a mere advisory opinion. The declaration sought by Hartford is based on legal and factual issues from which the Court can make definite findings. Hartford's indemnity claim is not based upon contingent events that may not occur.

### a. Hartford's indemnity claim presents several purely legal issues

First, Hartford's indemnity claim presents several *purely legal inquiries* – such as:

- whether, based upon the allegations in the *Nokia* complaint, the intellectual property exclusion bars all coverage, and

---

[14]    *E.g. Westport Ins. Corp. v. Howell*, 2005 WL 1124092 at *2 (E.D. Pa. May 10, 2005) (finding the parties interests were not adverse).

- whether Nokia's *express* allegation that InterDigital made false statements in "bad faith" and with "knowledge of their falsity" bars coverage as a matter of law.

These issues concern purely legal questions which this Court may decide now.

### b. Hartford's indemnity claim also raises factual issues that will not be decided in the *Nokia* action

Should this Court not decide the legal issues in Hartford's favor, then this Court will need to consider several *factual issues* which may preclude coverage – many of which will not be decided in the *Nokia* action.

"Ordinarily, a claim is unfit due to insufficient factual development when a plaintiff cannot allege facts with sufficient specificity because no concrete factual setting exists." *Corporate Aviation*, 2005 WL 1693931 at *4. Here, however, a concrete factual setting does exist. InterDigital's alleged actions giving rise to Nokia's claims have already occurred. **What InterDigital fails to acknowledge, however, is that while *it* may know the true facts, those facts have not yet been made known to *Hartford*.** Through its Motion, InterDigital impermissibly seeks to preclude Hartford from learning the facts already known to InterDigital.

Count Two should be allowed to proceed so Hartford can discover the true, "concrete" facts surrounding Nokia's claims and thus determine whether the claims fall outside the Insuring Agreements and/or fall within one of the policy exclusions. Hartford is entitled to learn now, *inter alia*:

- whether InterDigital made any libelous, slanderous or disparaging statements during the Hartford policy period,[15]

---

[15]    This discovery is needed for several reasons. First, the Nokia complaint does not allege when any injurious statements were published. Statements published before or after the Hartford policy periods cannot give rise to a duty to indemnify. Second, Nokia does not expressly assert a claim for libel, slander or disparagement. Rather, Nokia alleges that InterDigital violated the Lanham Act. While the Lanham Act makes certain "false" statements actionable, it is not necessary that such statement be libelous, slanderous or disparaging – which is all that the Hartford policy covers under the personal and advertising injury offense at issue.

- whether any such statements were first published prior to the Hartford policy period,

- whether InterDigital knew such statements to be false or expected to injure Nokia,

- whether Nokia's alleged injury arises out of any intellectual property rights,[16] and

- whether InterDigital has other insurance that applies to some or all of the amounts claimed by Nokia.

These facts relevant to indemnity may be discerned by Hartford "with greater specificity without the occurrence of some future event." *See Corporate Aviation*, 2005 WL 1693931 at *4.

### F.    Hartford Will Suffer Harm Should Its Indemnity Claim Not Be Adjudicated Now

Under the second part of the Supreme Court's ripeness test – the "hardship" inquiry, courts evaluate "whether a plaintiff faces a direct and immediate dilemma, such that lack of review would put it to costly choices." *NE Hub Partners,* 239 F.3d at 342 n.8.

This Court's ruling on the indemnity issues would be of significant practical help to the parties as there are a number of direct and immediate dilemmas which Hartford will face should this Court refrain from deciding now whether Hartford has a duty to indemnify InterDigital.  For example, should this Court find that Hartford has a duty to defend based upon the allegations in the *Nokia* complaint, but then rule that Hartford may not seek to determine its duty to indemnify now, Hartford will then be forced to defend the *Nokia* action to its conclusion, without being permitted an opportunity to terminate that defense as is permitted under Pennsylvania law. Given that Pennsylvania courts have not yet recognized an insurer's right to reimbursement of

---

[16]    Pursuant to the Infringement of Intellectual Property Rights exclusion, Hartford has no duty to indemnify InterDigital to the extent that the *Nokia* action alleges injury arising out of any violation of any intellectual property rights.  Unless InterDigital is willing to stipulate that there is nothing at issue in the Nokia action which does not relate to intellectual property violations, Hartford is entitled to discovery what intellectual property violations are at issue and whether Nokia's injury arises of out any such violations.

- 17 -

defense costs incurred defending an uncovered claim, precluding discovery and adjudication of those issues now in essence forced Hartford to pay for the full defense.[17]

Additionally, should Hartford not be permitted to terminate its defense or indemnity obligations prior to the conclusion of the *Nokia* action, Hartford will be forced to decide whether to attempt settlement with InterDigital to cut off future defense costs or to risk the possibility of

an adverse verdict (which ultimately may not be covered). Similarly, if Hartford's duty to indemnify is not resolved now, Hartford will need to determine whether to post reserves for any indemnity exposure. Finally, given Pennsylvania law potentially exposing an insurer to liability in excess of its policy limits where it in bad faith refuses an opportunity to settle a claim within policy limits,[18] Hartford risks significant extra-contractual liability should it be presented with a settlement demand within limits and it not know whether the Court will agree that Hartford lacks any duty to indemnify InterDigital.[19]

Such a Catch 22 is precisely the very type of situation that the Declaratory Judgment Act is designed to remedy. *See, e.g., Abbot Labs. v. Gardner*, 387 U.S. 136, 152-53 (1967) (concluding that the plaintiff was entitled to a judicial determination as to the validity of certain regulations that forced the plaintiff to chose between complying with potentially suspect

---

[17] While courts in a number of other jurisdictions have found that an insurer may recover defense costs from its insured where the insurer agrees to provide the insured a defense pursuant to an express reservation of rights which includes the right to recoup defense costs, the insured accepts the defense, and a court subsequently finds that the insurer did not owe the insured a defense (*see LA Weight Loss Ctrs., Inc. v. Lexington Ins. Co.*, 2006 WL 689109, *5 (Pa. Com. Pl. Mar 1, 2006) (citing cases)), "Pennsylvania state appellate courts have not spoken on the issue." *Id.* at *6. However, one recent state trial court opinion chose to follow the "minority" position and ruled that an insurer has no right to reimbursement absent a provision in its policy. *Id.* at *6. The Third Circuit has predicted a similar result. *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213 (3d Cir. 1989) (predicting that Pennsylvania appellate courts would not permit an insurer to recover defense costs even when it defends under a reservation of rights if it is later determined there is no coverage).

[18] *See Birth Center v. St. Paul Cos.*, 567 Pa. 386, 787 A.2d 376 (2001).

[19] Additionally, depending upon the Court's ruling, the parties may identify other sources of potential indemnity, such as other insurance policies, which may be implicated by the *Nokia* action.

- 18 -

regulations and incurring substantial costs, or refusing to comply and risking serious criminal

and civil sanctions), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

Conversely, InterDigital will suffer no hardship should Hartford's indemnity claims be

permitted to proceed.[20]  Should this Court agree with Hartford that the *Nokia* complaint does not

implicate coverage, Hartford will not have a duty to defend nor a duty to indemnify.

Alternatively, should this Court agree with InterDigital that the *Nokia* complaint potentially

states a claim covered by the Hartford policies, then Hartford will still be entitled to discovery

concerning Nokia's claim and the statements at issue to determine whether those claims are

limited to claims which do not and cannot implicate coverage.  That discovery will impact not

only Hartford's duty to defend but also its duty to indemnify.  As such, the discovery which

InterDigital seeks to cut off by dismissing Count Two will still need to occur and may still

enable this Court to conclude that Hartford has no duty to indemnify InterDigital.

### G.    Hartford's Indemnity Claims Are Ripe For Adjudication

InterDigital advances two reasons for dismissing Count Two without prejudice:  (1) the

fact that the *Nokia* action is still pending, and (2) alleged "practical" and "fairness"

considerations.  *See* InterDigital's Brief at p. 4.  Neither of InterDigital's two reasons for

dismissing Hartford's complaint is compelling.

---

[20]    To the extent that InterDigital relies upon cases such as *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876 (8th Cir. 2005) to argue that Hartford's claims are not ripe because the issue of InterDigital's knowledge of the falsity of its alleged misstatements remains an open fact that could be adjudicated in the Nokia action, InterDigital overstates its objection. First, the initial question presented by Hartford is a legal one – whether Nokia's allegation that InterDigital made knowingly false statements is enough to preclude coverage. Second, InterDigital ignores the numerous other bases which Hartford has asserted as possible grounds for denying coverage – which have nothing to do with this one, narrow issue.  As such, even if the "knowledge" issue were not ripe at this time, the remainder of Hartford' indemnity claim is.

1.  **This Court may decide Hartford's indemnity claim while the *Nokia* action is pending**

While InterDigital has cited cases in which courts refrained from deciding indemnity while an underlying action was pending, courts deciding indemnity claims certainly have and can award declaratory relief in favor of an insurance carrier while an underlying case is still pending. *E.g. First Oak Brook Corp. Syndicate v. Comity Holding Corp.*, 93 F.3d 92 (2d Cir. 1996);

Case 1:06-cv-00422-JJF    Document 19-19    Filed 07/07/2006    Page 22 of 28

*Classic Fire & Marine Ins. Co. v. Moe and Curly Corp.*, 1997 WL 727498, *2 (E.D. Pa. Nov. 12, 1997); *see also Nationwide Mut. Fire Ins. Co. of Columbus v. Pipher*, 140 F.3d 222 (3d Cir. 1998) (reversing district court's order relieving Nationwide of its duty to defend and potentially indemnify insured).  As this Court has observed, "the Court of Appeals and district courts in this Circuit have held that disputes between an insured and his insurer are ripe for adjudication even though a judgment triggering the insured's liability has not yet occurred." *First Fid. Bancorporation v. Nat'l Union Fire Ins. Co.*, 1990 WL 165937 at *9 (E.D. Pa. Oct. 25, 1990).

In *Home Ins. Co. v. Law Offices of Jonathan DeYoung, P.C.*, 107 F. Supp. 2d 647 (E.D. Pa. 2000), this Court permitted a declaratory judgment action concerning coverage to go forward where, among other things, (a) the coverage action raised "purely legal" issues which did not require the Court to make factual determinations which would otherwise best be left to the jury in the underlying action, and (b) the existence or lack of insurance coverage would likely impact whether the underlying litigation would go forward. *Id.* at 650.

Similarly, several decisions applying Pennsylvania law have stated that, rather than denying coverage outright, an insurer should file a declaratory judgment action while the underlying action *is still pending* to determine whether a policy exclusion bars coverage.  In the unpublished case of *Mechetti v. Weisberg*, No. 3102 Phila. 1996 (Pa. Super., June 10, 1997), a

- 20 -

panel of the Superior Court expressly faulted the insurer in that case for refusing to defend

without first obtaining a declaratory judgment:

> Mechetti's complaint … contained allegations of general
> negligence and potentially fell within the coverage of the policy.
> [The insurer], at a minimum, should have pursued the available
> declaratory judgment procedure at the outset to determine its duty
> to defend the insured. Unfortunately, however, [it] failed to do so.
> Thus, we conclude that the trial court properly found that [the
> insurer] was obligated to defend because the factual allegations of
> the complaint were potentially within the scope of the policy.

*See Classic Fire & Marine Ins. Co. v. Moe & Curly Corp.*, 1997 WL 727498, *2 (E.D. Pa. Nov.

12, 1997) (quoting *Mechetti*).

While both *Mechetti* and *Classic Fire* are unpublished decisions and thus not binding

precedent on this Court, and while those cases are primarily concerned with the duty to defend,

the *Classic Fire* court ultimately followed *Mechetti* and held that the insurer at issue "owes no

duty to defend *or indemnify* defendant in the underlying action", where the underlying action

was still pending. *Id.* at *2 (emphasis added). As such, those decisions hold that it is not only

possible for an insurer to obtain declaratory relief concerning the scope of its indemnity rights

while an underlying action is pending, but also that it may be preferable to do so.

Similarly, in *Butterfield v. Giuntoli*, 448 Pa. Super. 1, 670 A.2d 646 (1995), the court not

only concluded that certain indemnity issues should be determined while the underlying action

was pending but also that the insurer may, in certain cases, need to intervene in the underlying

action to ensure that matters relevant to indemnity are clearly decided by the jury. In *Butterfield*,

a hospital's excess liability insurer sought to deny coverage for an award of punitive damages,

arguing in part that Pennsylvania public policy precluded coverage for punitive damages. The

court held that the excess liability policy was ambiguous as to whether it covered punitive

damages for malpractice liability. Finding that Pennsylvania's public policy only barred

- 21 -

coverage for directly imposed, as opposed to vicariously imposed, punitive damages, the

*Butterfield* court held that the excess insurer failed to carry its burden of establishing that the jury

awarded punitive damages in the underlying malpractice action against the hospital solely on

basis of direct liability, for which public policy bars insurance coverage, rather than on basis of

vicarious liability for acts of doctors, for which public policy does not bar coverage.  The court

emphasized that under the jury instructions submitted, the jury could have found hospital either

directly negligent or vicariously negligent or both, and further emphasized that the insurer had

right to participate in case but neither requested specific instructions nor sought to intervene.

If, in some cases an insurer is required to intervene in an underlying action and submit

special jury interrogatories or otherwise risk later being found to have failed to sustain its burden

of denying coverage, an insurer also should be permitted to file a declaratory judgment action

during the pendency of the underlying action to clarify issues relevant to indemnity and to obtain

discovery which may be relevant to both coverage and possible special jury interrogatories.

### 2.    It is not only practical, but fair, for this Court to decide Hartford's indemnity claim now

Practical and fairness considerations similarly merit consideration of Hartford's

indemnity claims now.  Should this Court agree that based upon the face of the *Nokia* complaint

Hartford has no duty to defend, Hartford would also prevail on Count Two.  *E.g. Lucker Mfg. v.*

*Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994).  Plus, as discussed above, the very discovery

that Hartford will seek in connection with Count One (duty to defend) also will impact the

resolution of Count Two.  Thus, as a practical matter, delaying resolution of the indemnity issue

will not result in any significant savings to either the parties or this Court.

As to fairness considerations, it is eminently fair to determine now whether Hartford may

deny any duty to indemnify InterDigital – before Hartford is forced to defend the entire *Nokia*

- 22 -

action and before Hartford is forced to decide whether to settle or litigate Nokia's claims. This Court can determine now that Hartford owes no duty to indemnify InterDigital – either because of one of the legal issues raised by Hartford or based upon a determination of the actual facts surrounding InterDigital's coverage claim. While perhaps one of these facts may be decided in the *Nokia* action (namely, whether InterDigital made a knowingly false statement), many other

facts relevant to indemnity will <u>not</u>. For instance, the *Nokia* court need not determine when InterDigital committed any "personal or advertising injury" offense or when any publication at issue was first made. The *Nokia* court also need not determine if other insurance exists which should pay or share in the indemnity of InterDigital.

## III.    **CONCLUSION**

Count Two of Hartford's Complaint presents a ripe controversy concerning Hartford's alleged duty to indemnify InterDigital. As such, InterDigital's Motion to Dismiss should be denied and this matter permitted to proceed forthwith.

Respectfully submitted,

WHITE AND WILLIAMS LLP

By: _____

Gale White, Esquire
Anthony L. Miscioscia, Esquire
1800 One Liberty Place
Philadelphia, PA  19103-7395
Phone: 215.864.6234
Attorneys for Plaintiffs

Dated:  April 10, 2006

- 23 -

## <u>CERTIFICATE OF SERVICE</u>

I, Anthony L. Miscioscia Esquire, hereby certify that I have caused a true and correct

copy of the Response of Plaintiffs, Hartford Fire Insurance Company and Hartford Casualty

Insurance Company in Opposition to Defendants' Motion to Dismiss Count Two of the

Complaint and the related Memorandum of Law to be electronically filed with the Court (which

is available for viewing and downloading) and to be served by regular mail, on April 10, 2006,

upon the following:

> Stephen J. Mathes, Esquire
> Arleigh P. Helfer, III, Esquire
> Hoyle, Fickler, Herschel & Mathes, LLP
> One South Broad Street – Suite 1500
> Philadelphia, PA  19103-7397

> WHITE AND WILLIAMS LLP

> Anthony L. Miscioscia, Esq.

# EXHIBIT

# A

**InterDigital Wins Ruling In Nokia Royalty Dispute**

By CHAD BRAY
DOW JONES NEWSWIRES
December 29, 2005 4:17 a.m.

NEW YORK – A federal judge confirmed an arbitration award of about $250 million for InterDigital Communications Corp., which is in a dispute with cellphone maker Nokia Corp. over royalties.

In an order filed Wednesday in the Southern District of New York, Judge William H. Pauley III upheld the award granted by an arbitration panel in June and denied Nokia's motion to vacate it.

Case 2:06-cv-00165-JG    Document 13-2    Filed 04/10/2006    Page 28 of 28

"While this court does not necessarily agree with every finding of the panel, there is nothing so aberrant about the award to require vacatur," Judge Pauley said in his order. "This court confirms the award in its entirety."

The dispute revolves around royalties agreed to as part of licensing agreements entered into by InterDigital Communications and Nokia in January 1999.

A Nokia spokesman didn't immediately have a comment when reached Wednesday afternoon.

Under the agreements, Nokia paid InterDigital $31.5 million in royalties for all handset sales using InterDigital technology prior to January 2002, according to the judge's order.

Nokia's royalty obligations for sales between January 2002 and December 2006 would then be contingent on InterDigital entering into licensing agreements with one of Nokia's three "major competitors" — Lucent Technologies Inc., Telefon AB L.M. Ericsson or Motorola Inc., according to the order.

In March 2003, InterDigital entered into two patent licensing agreements with Ericsson and Sony Ericsson Mobile Communications — a joint venture between Sony Corp. and Ericsson. In creating the joint venture, Ericsson sold its handset business to Sony Ericsson for cash consideration, according to the judge's order.

After entering into the Ericsson agreements, InterDigital requested about $500 million in royalty payments from Nokia, which disputed the obligations and invoked its right to arbitration.

In a filing with the Securities and Exchange Commission on Tuesday, InterDigital said it has taken action to utilize the dispute resolution process under its licensing agreement with Nokia in order to compel Nokia to abide by the arbitration panel's ruling.

The dispute resolution process would establish a timetable for discussions, senior representative meetings and any future initiation of arbitration, if necessary, according to the filing.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civ. A. No. 06-0165 |
| | : | |
| INTERDIGITAL COMMUNICATIONS CORPORATION, et al. | : | |
| | : | |
| Defendants. | : | |

_____

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF INTERDIGITAL COMMUNICATIONS CORPORATION AND INTERDIGITAL TECHNOLOGY CORPORATION TO DISMISS
## COUNT TWO OF THE COMPLAINT

Defendants InterDigital Communications Corporation and InterDigital Technology Corporation (collectively "InterDigital"), respectfully submit this reply memorandum of law in further support of their motion to dismiss Count Two of the Complaint pursuant to this Court's Order entered April 6, 2006. In opposition to InterDigital's motion, plaintiffs Hartford Fire Mutual Insurance Company and the Hartford Casualty Mutual Insurance Company (collectively "Hartford") argue that it would be proper and fair to adjudicate the duty to indemnify at this time. However, Hartford's opposition makes it clear it seeks to wage an aggressive and improper discovery campaign in this action and to have this Court rule on ultimate issues in play in the underlying litigation. Hartford is thereby seeking to litigate the underlying case a second time here, but to do so in a manner favorable to itself (*i.e.*, to establish liability on a more stringent but uncovered theory of recovery). Such a course of action may lead to an anomalous

result, with the plaintiff in the underlying action recovering on a theory within policy coverage, where this Court has determined that there can be no covered theory.

Not surprisingly, Hartford has *failed to identify a single case* in which *any* court, state or federal, has allowed an insurer to run roughshod over its insured in such fashion. As noted in InterDigital's opening memorandum of law, where there are issues in a coverage dispute that are also important to the question of liability in the underlying litigation, courts in Pennsylvania and elsewhere have overwhelmingly stated that the duty to indemnify is premature, unripe, and unfit for determination until the conclusion of the underlying litigation. Until those issues are addressed in the underlying case, the proper focus of this coverage litigation is on Hartford's duty to defend InterDigital, which is solely a legal issue based on Nokia's complaint and the language of the policies at issue, not the duty to indemnify. For the reasons explained more fully below, InterDigital respectfully requests that the Court grant its motion.

## I. NO CASE CITED BY HARTFORD CONTEMPLATES THE COURSE OF ACTION IT PROPOSES IN ITS OPPOSITION PAPERS

In its opposition papers, Hartford alleges that InterDigital has wholly ignored a body of Pennsylvania law that purportedly "allows an insurer to seek a judicial determination of its obligations (both defense and indemnity) *before* judgment is entered in the underlying case." (Hartford Mem. at 6; *see* Hartford Mem. at 20-21.) Hartford further alleges that, even if the Court finds it has a duty to defend, it is still entitled to discovery of facts at issue in the underlying lawsuit in order to "cut off" its duty to defend by having this Court rule on those facts in connection with its duty to indemnify. (*Id.* at 19.)

These arguments are unavailing. Hartford fails to account for the fact that the issues presented in this case are readily distinguishable from those in the body of Pennsylvania law it relies upon. Furthermore, although Hartford contends it has the "right" to engage in active

litigation against its insured to discover facts central to the underlying litigation in order to cut off its duty to defend, it offers absolutely no authority for that proposition whatsoever. To be sure, none of the cases cited by Hartford contradicts the general principles concerning the impropriety of reaching questions about the duty to indemnify where that inquiry may address issues at play in the underlying litigation.

### A. The Cases Cited By Hartford Do Not Establish That Pennsylvania Law Permits Courts To Resolve The Duty To Indemnify in All Cases Prior To Entry of Judgment in the Underlying Action

Hartford clouds the issues by first arguing that Pennsylvania law permits a court simultaneously to find that an insurer has no duty to defend and no duty to indemnify. A close reading of the cases upon which Hartford relies, however, demonstrates that this argument is a red herring.

The law is clear that the duty to defend and the duty to indemnify are separate duties that an insurer may owe to its insured. *See Sphere Drake, P.L.C. v. 101 Variety, Inc.*, 35 F. Supp. 2d 421, 427 (E.D. Pa. 1999) (citing *Erie Ins. Exchange v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987)). It is indisputable that the duty to defend is generally described as broader than the duty to indemnify. *See Youngman v. CNA Ins. Co.*, 585 A.2d 511, 514 (Pa. Super. Ct. 1991). It is also indisputable that insurers often have a duty to defend a case in which a duty to indemnify never ripens. This is especially true when the defense in the underlying litigation is successful and no liability is ever imposed: the duty to defend is based on the threat of liability for a covered act or omission whereas the duty to indemnify is based on actual liability for that act or omission.

A federal court applying Pennsylvania law determines the duty to defend by evaluating the complaint and the language of the policy, ascertaining as a matter of law whether there is any possibility that a claim will come within the coverage afforded by the policy. *See Air Prods. &*

*Chems., Inc. v. Hartford Accident & Indemn. Co.*, 25 F.3d 177, 179 (3d Cir. 1994); *Pacific Indemn. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985). Thus, courts generally do not consider extrinsic evidence when determining the duty to defend. *See Air Prods. & Chems., Inc.*, 25 F.3d at 180 (noting rule that insurer is not permitted to adduce evidence to show that policy exclusions apply to bar duty to defend).

The cases upon which Hartford relies are inapplicable. They generally fall into three categories that distinguish them from this case. The first category comprises cases that involve purely legal issues concerning a complaint that alleges only an uncovered claim, such as where a policy excludes coverage for any assault or battery and the underlying complaint alleges injury resulting only from assault or battery.[1]  *See Nationwide Mut. Fire Ins. Co. v. Pipher*, 140 F.3d 222 (3d Cir. 1998) (noting the case involved no factual disputes and considering only a legal issue concerning construction of policy language excluding harms caused by intentional acts from coverage); *First Oak Brook Corp. Syndicate v. Comly Holding Corp.*, 93 F.3d 92 (3d Cir. 1996) (affirming district court decision construing policy language and underlying complaint to find no duty to defend or indemnify); *Classic Fire & Marine Ins. Co. v. Moe & Curly Corp.*, No. Civ. A. 97-5195, 1997 WL 727498 (E.D. Pa. Nov. 12, 1997) (addressing only duty to defend— not duty to indemnify as Hartford misrepresents—based solely on complaint and policy language excluding coverage for assault and battery); *Mutual Benefit Ins. Co. v. Haver*, 725 A.2d 743 (Pa. 1999) (assessing underlying complaint and policy language and holding that there could be no duty to defend or indemnify because the complaint alleged "knowing endangerment" as a matter

---

[1] Indeed, throughout Hartford's memorandum, it relies on coverage cases that feature no factual disputes and which feature only legal questions as to whether the complaints in the underlying actions allege potentially covered claims on their faces. The vast majority of the cases involve insurers of bars litigating the legal scope of "liquor liability" exclusions and "assault and battery" exclusions, or insurers of homeowners litigating the scope of "intentional and expected injury" exclusions.

4

of law, triggering a knowing endangerment coverage exclusion); *Mechetti v. Weisberg*, No. 3102 Phila. 1996 (Pa. Super. Ct. June 10, 1997) (slip op.) (affirming finding of duty to defend as a matter of law where claims of complaint did not come within assault and battery exclusion, noting duty to defend may be a proper subject of a declaratory judgment action with no mention as to status of underlying action, and making no statements whatsoever about indemnification); *Brandt v. United States Liab. Ins. Group*, 70 Pa. D.&C.4th 449 (Pa. Ct. C.P. Lancaster Co. 2005) (assessing claims in underlying complaint and policy language excluding coverage for claims arising from pollution or contamination to find no duty to defend or indemnify).

A second category of cases involves coverage claims, unlike the present situation, that were in fact determined *after the resolution* of the underlying litigation.  *See Lucker Mfg. v. Home Ins. Co*., 23 F.3d 808 (3d Cir. 1994) (addressing duty to defend and duty to indemnify in appeal of coverage and bad faith action brought by plaintiff *after* conclusion of underlying litigation); *First Fid. Bancorporation v. National Union Fire Ins. Co*., Civ. A. No. 90-1866, 1990 WL 165937 (E.D. Pa. Oct. 25, 1990) (addressing insurer's failure to consent to settlement and indemnification liability on summary judgment after final settlement was approved and paid in the underlying lawsuit); *Butterfield v. Giuntoli*, 670 A.2d 646 (Pa. Super. Ct. 1996) (addressing coverage issues in garnishment action against judgment debtors' insurer brought after judgment where second-level excess insurer had associated in the control and defense of the underlying case but failed to direct special interrogatories to the jury as to the basis for their punitive damages award against the insured).

The third category encompasses authority that supports InterDigital's position that it would be proper to refrain from litigating the duty to indemnify until the underlying litigation is resolved.  *See Home Ins. Co. v. Law Offices of Jonathan DeYoung, P.C*., 107 F. Supp. 2d 647 (E.D. Pa. 2000) (addressing "purely legal" question of whether Pennsylvania law permits joinder

of a defendant by reissuance of a writ of summons and noting general rule that declaratory judgment court should refrain from determining insurer's duty to indemnify until the insured's liability is established in the underlying litigation).

Additionally, none of these cases cited by Hartford involves a situation in which a court found a duty to defend and then addressed whether it would be proper to consider the duty to indemnify prior to resolution of the underlying litigation.  In such cases, as discussed in InterDigital's opening memorandum, courts have found it would be improper to reach the duty to indemnify because that duty would be unripe for adjudication prior to the conclusion of the underlying litigation.  *See United Servs. Auto. Ass'n v. Elitzky*, 517 A.2d 982, 992 (Pa. Super. Ct. 1986).  Furthermore, virtually none of the insureds in the cases cited by Hartford raised ripeness challenges to consideration of the duty to indemnify.

In addition to the fact that Hartford relies on uninstructive decisional law, its argument that a court may simultaneously rule that an insurer has no duty to defend or to indemnify is a red herring in any event.  A declaratory judgment that Hartford has no duty to defend the underlying action would effectively end the dispute between the parties.[2]  Hartford would suffer no conceivable damage or prejudice if the Court declined to enter a judgment on its duty to indemnify at the same time.  As the Seventh Circuit cogently explained:

> Courts which conclude that there is no duty to defend will often add that there is no duty to indemnify, given that the former duty is broader than the latter.  That may be appropriate when it is clear that the insured cannot be held liable under any theory that could potentially fall within the coverage of the policy.  Where such a possibility exists, however (e.g., through amendment of the complaint in the underlying suit), the prudent thing for the court to do is to refrain from comment on the duty to indemnify.

---

[2] Hartford later contends that its indemnity claim presents some "purely legal inquiries." (Hartford Mem. at 15.)  To the extent there are no factual issues implicated in the putative indemnity claim, they are duplicative of claims that will be resolved by addressing the duty to defend based on the complaint and the policy language.

*Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 n.5 (7th Cir. 1995). Thus, if this Court were to determine that Hartford has no duty to defend, a declaratory judgment that there is also no duty to indemnify would have no utility: such a judgment would not presently benefit Hartford and could easily be mooted if Nokia amended its complaint. Consequently, Hartford's requested declaratory judgment on the duty to indemnify would be premature and inconclusive of the parties' rights and relationship under the law of the Third Circuit.

### B.  Hartford Offers No Authority Whatsoever That Countenances The Aggressive Litigation Plans It Has Against Its Insured

Hartford contends that, even if the Court determines that it has a duty to defend the underlying action based on analysis of the complaint and the policy, it has the "right" to engage in aggressive litigation and discovery vis-à-vis InterDigital in order to "cut off" that duty. It believes it has such a right under the guise of litigating its duty to indemnify. However, Hartford does not cite a single case in any jurisdiction that contemplates such a result, let alone one that would permit an insurer to establish its insured's "actual liability" in coverage litigation concerning the duty to indemnify that would prejudice the insured in the underlying litigation.

Hartford's argument stems principally from an isolated statement in a single federal case. It contends that *Lucker Manufacturing* stands for the proposition that the duty to defend remains with an insurer "until facts sufficient to confine the claims to liability not within the scope of the policy become known to the insurer." 23 F.3d at 813. However, nothing in *Lucker Manufacturing* remotely suggests that the insurer is therefore entitled to bring a declaratory judgment coverage action and to obtain discovery in order to establish its insured's "actual liability" in the underlying action and thereby cut short its duty to defend that action. In *Lucker Manufacturing*, the insured, Grede Foundries, Inc., settled the underlying action with the plaintiff, Lucker Manufacturing, after its insurer refused to defend or indemnify Grede in the

underlying action.  Grede assigned Lucker all of its rights against its insurer.  Lucker then brought suit against the insurer for its bad faith failure to defend or indemnify.  The issue before the Third Circuit was solely legal: whether the claims in the underlying complaint for defective components to be incorporated in a product that was designed but not yet manufactured were potentially within coverage under a clause governing "loss of use of tangible property that has not been physically injured."  *Id*. at 810.  The Third Circuit ruled that, as a matter of contract construction, the claim was not a covered claim because a system design is not tangible property. *Id*. at 821.[3]

Hartford cites two more cases in an attempt apparently to support its claim that it may aggressively pursue discovery and litigate the duty to indemnify to cut off any duty to defend it may have.  However, these cases do not advance Hartford's argument in light of the facts of this case.  They do not address a situation in which an insurer that has been found to have a duty to defend then actively sought to litigate its duty to indemnify, let alone to discover evidence that would enable it to establish its insured's liability in the underlying action.

In the first case, *General Accident Insurance Co. of America v. Allen*, 692 A.2d 1089 (Pa. 1997), the underlying civil action involved allegations of sexual abuse of minors by their grandfather and allegations that their grandmother failed to protect the grandchildren.  The grandparents' insurer filed an action for declaratory relief, seeking a declaration pursuant to the Pennsylvania Declaratory Judgments Act that it would have no duty to defend or indemnify them based solely on the complaint and specific policy exclusions concerning expected and intended

---

[3] Hartford claims that *Lucker Manufacturing* establishes that the Third Circuit permits summary disposition of the duty to indemnify if there is no duty to defend.  (Hartford Mem. at 7 n.9). Hartford overlooks a critical distinction: in *Lucker Manufacturing*, the underlying litigation had already concluded.  Therefore, the complaint in *Lucker Manufacturing* was not going to be amended, rendering a declaratory judgment on the issue of the duty of indemnification ripe and proper.

injuries.  The underlying civil litigation was tried to a jury and resulted in a verdict against the grandparents *before* dispositive motions were filed in the coverage action.  (Before the coverage case reached the Supreme Court of Pennsylvania, the judgment against the grandfather in the underlying case was affirmed by the Superior Court and his petitions for allowance of appeal and certiorari were denied.  The Superior Court reversed the judgment against the grandmother and entered judgment n.o.v. in her favor.)  With the verdict in the underlying litigation in hand, the trial court entertained summary judgment motions and determined as a matter of law that the insurer had a duty to defend the grandparents.  The insurer appealed that order.  Issues arose as to whether the order was a final order for purposes of appeal.  The Superior Court quashed the appeal.  Thus, the Supreme Court of Pennsylvania granted "allocatur limited to the question of 'whether a trial court's determination of an insurer's duty to defend is appealable, particularly where the trial court had not yet determined the insurer's duty of indemnification.'"  *Allen*, 692 A.2d at 1092.[4]  The court determined that the trial court's order concerning the duty to defend was necessarily based on its determination that "as a matter of law the claims made against the Allens were covered by the policies" and was thus "a final determination as to the legal rights and obligations of the parties arising under the policies" for purposes of the appellate rules.  *Id.* at 1094.  When the insureds argued that the trial court order was not final because, although the

---

[4] In a footnote concerning the framing of the issue it was reviewing, the court stated:

> The issue as framed may be read to unfairly suggest that the appealability of the common pleas court's order granting summary judgment to the children as to [the insurer's] duty to defend is dependent upon whether a determination had also been made as to its duty to indemnify.  To eliminate any confusion, we emphasize at the outset of our discussion that the timing of the appeal is not determinative of the issue before us.

*Allen*, 692 A.2d at 1092 n.9.

underlying action reached judgment, it could not address the duty to indemnify prior to exhaustion of all appeals, the court held that the trial court's order necessarily determined that the insurer had a duty to indemnify the insureds, who were found liable in the underlying litigation, rendering the order final for purposes of appeal. *See id.* at 1096. Thus, *Allen* presents a wholly different set of facts and issues than are before the Court in this case.[5]

In addition, Hartford relies on *Harleysville Mutual Insurance Co. v. Madison*, 609 A.2d 564 (Pa. Super. Ct. 1992). *Madison* involved an automobile accident. The insurer had issued a policy to Mills, the owner of the car. At the time of the accident, Madison was driving the car. Those passengers who were injured brought civil actions against Mills and Madison, among others. The insurer brought a declaratory judgment action seeking a declaration that it owed no duty of defense or indemnification to Madison, invoking a policy exclusion based on the fact that Mills had not given Madison permission to operate the car on the day of the accident. (The insurer did not dispute that it had a duty to defend and indemnify Mills, its insured.) The trial court dismissed the coverage action as unripe. Significantly, on appeal the Superior Court determined in a 2-1 decision that the coverage action concerning the duties to defend and indemnify could go forward in part because it did not seek to litigate any of the issues that would be addressed in the third-party action against the insured. *See id.* at 566. Unlike the insurer in *Madison*, however, Hartford is seeking extensive discovery concerning the duty to indemnify[6]

---

[5] Hartford's claim that *Allen* "held" that the Pennsylvania Declaratory Judgment Act empowers a court to answer questions about indemnity before resolution of all appeals is inaccurate. *Allen* held that an order that was expressly defined by Pennsylvania's declaratory judgment statute to be a final order was appealable as of right pursuant to Pa. R.A.P. 341(b)(2). *Allen*, 692 A.2d at 1095. The court further observed, as alternative grounds, that a court order that necessarily determined all the issues in a lawsuit was final for purposes of appeal pursuant to Pa. R.A.P. 341(b)(1). *Id.* at 1096.

[6] At the time Hartford served the complaint in this action, it also served numerous interrogatories and burdensome document requests without leave of court in plain violation of Federal Rules of

and is attempting to have this Court rule on issues of fact that are at the heart of the underlying litigation.

None of these decisions contradicts the voluminous authority to the contrary InterDigital cited in its opening memorandum. Courts confronting the issue overwhelmingly hold it would be improper to permit an insurer to litigate issues concerning its duty to indemnify in a coverage action where those issues are germane to the question of the insured's liability in the pending underlying litigation. (*See* InterDigital Mem. at 6-8 & 18-20.) Here, Hartford announces that, even if it has a duty to defend, it will seek in this action to determine what statements InterDigital made about Nokia, whether those statements libeled or disparaged Nokia or its products, who made the statements and when, what circumstances surrounded those statements, and whether InterDigital has any other applicable insurance. (Hartford Mem. at 9-10 & 16-17.) Resolution of these factual issues would most certainly prejudice InterDigital in the underlying litigation, where the vast majority of them are likely to be answered in any event. Nokia certainly will have to demonstrate whether and when InterDigital allegedly made the false statements about its products that it claims harmed its reputation and business. To prove its Lanham Act claim, Nokia also will have to address whether the alleged false statements were made recklessly or with knowledge of their falsity. It is inconceivable how this Court could determine that InterDigital published "disparaging" remarks about Nokia's products without

---

Civil Procedure 33(a) and 34(b). Contrary to Hartford's claim that it is entitled to this discovery in connection with Count I of its complaint (Hartford Mem. at 22.), which addresses the duty to defend, this discovery cannot have any effect on the question of the duty to defend because courts will not consider extrinsic evidence from an insurer in determining the duty to defend. *See Air Prods. & Chems., Inc.*, 25 F.3d at 180. Thus, Hartford's claim that it will obtain all of the discovery it seeks even if resolution of the duty to indemnify is delayed is wrong. (Hartford Mem. at 22.)

making findings that would affect the underlying action, where Nokia is seeking to establish that InterDigital made false statements about its products.

The fact that Hartford may have the duty to defend and therefore to consider possible settlement proposals within policy limits before the underlying case reaches its conclusion is fully consistent with the law, including a number of cases InterDigital cited in its opening memorandum. Hartford has cited nothing to the contrary, especially not cases permitting an insurer to harm its insured by establishing facts in a coverage action that would collaterally estop the insured from defending itself on key issues in the underlying case.

## II. IN A 12(B)(1) MOTION CONSTITUTING A "FACIAL ATTACK" THE COURT IS NOT BOUND BY LEGAL CONCLUSIONS IN THE NON-MOVING PARTY'S COMPLAINT

Hartford argues that the factual allegations of its complaint must be taken as true in light of InterDigital's "facial attack" on Count Two of its complaint, citing *Corporate Aviation Concepts, Inc. v. Multi-Service Aviation Corp.*, No. Civ. A. 03-3020, 2005 WL 1693931 (E.D. Pa. July 19, 2005). While Hartford may be right about the law, it is dead wrong about the effect that it contends must be given to the legal conclusions in its complaint. Hartford contends that its complaint alleges that the underlying action "does not implicate indemnity to the extent that Nokia's claims do not involve an enumerated 'personal and advertising injury' offense committed during the Hartford policy period and to the extent that coverage is precluded by a Hartford policy exclusion." (Hartford Mem. at 10.) Hartford further contends that its complaint "notes" that "Nokia expressly alleges in its Lanham Act claim that InterDigital made the false statements at issue with 'knowledge of their falsity.'"[7] (*Id.* at 10-11.) It is unclear what

---

[7] Although Hartford is ostensibly discussing Count Two of its complaint, concerning its duty to indemnify, the claims in the underlying complaint are germane to the duty to defend. Notably, courts applying Pennsylvania law will look to the allegations of the complaint to determine whether there is any possibility that they will result in a covered claim. *See Air Prods. &*

significance Hartford believes these allegations have in light of the standard for evaluating a "facial attack" concerning subject matter jurisdiction; however, it is well-settled that a court bound to accept only the factual allegations of a complaint as true is not bound to accept the legal conclusions in the complaint. *See Pennsylvania Prot. & Advocacy, Inc. v. Houston*, 136 F. Supp. 2d 353, 359 (E.D. Pa. 2001) (noting the presumption of truthfulness applicable in evaluating "facial attacks" does not force the court to credit legal conclusions masquerading as factual conclusions).

## III. CONSIDERATION OF THE RIPENESS FACTORS DEMONSTRATES THE DUTY TO INDEMNIFY IS UNRIPE

InterDigital stands by its analysis of the factors relevant to the ripeness analysis set forth in its opening memorandum. However, InterDigital is constrained to point out that Hartford misrepresents the import of *River Thames Insurance Co. v. 5329 West, Inc.*, Civ. A. No. 95-0751, 1995 WL 241490 (E.D. Pa. April 21, 1995), the principal case it relies upon in claiming that its interests are adverse to InterDigital's interests. In that case, the insurer brought a coverage action seeking declarations that it had no duty to defend or indemnify its insured in the underlying lawsuit on the basis of assault and battery, liquor liability, and punitive damages exclusions. The insured moved to dismiss for lack of ripeness, claiming that the claims based on the liquor liability and punitive damages exclusions were unripe (although the opinion does not

---

*Chems., Inc.*, 25 F.3d at 179. As InterDigital stated in its opening memorandum, the elements of a Section 43(a) Lanham Act claim are that the defendant must have made a false statement in bad faith, which does not necessarily require that the statements be made with actual knowledge of their falsity. (InterDigital Mem. at 14 n.7.) An additional reason to transfer this matter to the District of Delaware pursuant to InterDigital's pending (and unopposed) motion to transfer is that having the court hearing the underlying action rule on the duty to defend would avoid the possibility that this court would determine the legal standard required a showing of actual knowledge of falsity, precluding coverage, and that the court hearing the underlying action would determine that recovery could be had on a showing of reckless disregard for the truth or falsity of the statements, resulting in an ostensibly covered claim.

reveal on what grounds), including the extent to which they affected the duty to defend the underlying action. Without analysis, the court determined that the claim concerning the duty to defend and indemnify under the liquor liability exclusion could proceed.[8] *River Thames* does not present an identical situation as Hartford contends. (Hartford Mem. at 14.) Moreover, that opinion says nothing at all about permitting discovery or resolving issues at the core of the underlying case.

InterDigital also must point out that the case of *Butterfield v. Giuntoli*, 670 A.2d 646 (Pa. Super. Ct. 1996), is readily distinguishable and does not stand for the proposition urged by Hartford (*i.e.*, that insurers should intervene in underlying actions to have indemnity issues addressed). In that case, the second-level excess insurer of a hospital, its trustees, and its physicians associated in the control and defense of a medical malpractice claim, attending all proceedings, including conferences with the court and the full trial, but failed to direct special interrogatories to the jury. Thus, the insurer was unable to establish the basis of the punitive damages award the jury rendered against its insureds. (In any event, the insurer's principal position was that indemnification of punitive damages awards was against public policy in Pennsylvania, which turned out to be an erroneous legal conclusion.) The Superior Court held as a matter of law that the insurer therefore could not meet its burden to prove no indemnification was due. The court further faulted the insurer for failing to take advantage of the opportunity to direct specific interrogatories after the punitive damages verdict was rendered and before the jury

---

[8] Hartford mischaracterizes this holding, claiming that the court refused to dismiss the "insurer's count seeking a declaration that it had no duty to indemnify based upon the policy exclusions." (Hartford Mem. at 14.) In fact, the court was addressing a single policy exclusion and coverage generally, including the duty to defend. In addition, the opinion does not state on what grounds the insured contended that the claims involving the liquor liability exclusion were unripe, rendering this decision uninstructive.

was dismissed.  *See id.* at 658.  In any event, there is no intervention issue in this case; if there were, this is not the court to which Hartford should direct its application to intervene.

IV.     **CONCLUSION**

For the foregoing reasons and the reasons explained in its opening memorandum, InterDigital respectfully requests that the Court grant its motion and enter an Order dismissing Count Two of the complaint without prejudice.

Respectfully submitted,


\_\_\_\_s/Stephen J. Mathes_____
Stephen J. Mathes
Arleigh P. Helfer III
Thomas S. Coleman
HOYLE, FICKLER, HERSCHEL & MATHES LLP
One South Broad Street, Suite 1500
Philadelphia, PA 19103-7397
(215) 981-5700
Attorneys for Defendants

Dated:  April 24, 2006

## <u>CERTIFICATE OF SERVICE</u>

I, Arleigh P. Helfer III, hereby certify that I caused the foregoing Reply Memorandum of Law in Further Support Of Motion Of Defendants InterDigital Communications Corporation And InterDigital Technology Corporation To Dismiss Count Two Of The Complaint to be filed and served this day by the Electronic Case Filing system, where it is available for viewing, and also served by U.S. Mail, postage prepaid, upon the following:

> Gale White, Esquire
> Anthony L. Miscioscia, Esquire
> White and Williams
> 1800 One Liberty Place
> Philadelphia, PA 19103-7395
>
> Attorneys for Plaintiffs

<div align="right">

/s/ Arleigh P. Helfer III_____
Arleigh P. Helfer III

</div>

Dated: April 24, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY, et al. | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO.  06-0165 |
| | : | |
| v. | : | |
| | : | |
| INTERDIGITAL COMMUNICATIONS CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

AND NOW, this 4th day of May, 2006, it hereby is ORDERED that ORAL

ARGUMENTS shall be held by telephone on all pending motions on <u>May 23, 2006</u>, at <u>5:00 p.m.</u>

BY THE COURT:


        S/ James T. Giles
                                    J.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY, et al., | : : : | |
| | : | Civil Action No. 06-0165 |
| Plaintiffs, | : : | |
| v. | : | Case 2:06-cv-00165-JG    Document 16    Filed 05/23/2006    Page 1 of 6 |
| | : | |
| INTERDIGITAL COMMUNICATIONS CORPORATION, et al., | : : : | |
| Defendants. | : : | |

## JOINT REPORT OF THE PARTIES PURSUANT TO
## FEDERAL RULE OF CIVIL PROCEDURE 26(F)

Pursuant to Federal Rule of Civil Procedure 26(f), the parties held a conference on February 22, 2006. The conference was attended by Gale White, Esquire and Anthony L. Miscioscia, Esquire for the plaintiffs, Hartford Fire Insurance Co. and Hartford Casualty Insurance Co. (collectively "Hartford"), and Stephen J. Mathes, Esquire and Arleigh P. Helfer III, Esquire for the defendants, InterDigital Communications Corporation ("ICC") and InterDigital Technology Corporation ("ITC") (collectively "InterDigital"). Because the parties do not agree on the scope of discovery or a schedule for discovery, they report their respective positions as follows:

### SCHEDULE FOR DISCOVERY

**A. Hartford's Position**

Hartford requested that parties meet and confer pursuant to Rule 26(f). As a preliminary matter, during that meeting, InterDigital advised Hartford that it intended to file both a Motion to Transfer this action to the United States District Court for the District of Delaware and a Motion

to Dismiss Count II of the Complaint without prejudice, as premature. Those motions have now

been filed, and Hartford has opposed the Motion to Dismiss.

As to discovery, while counsel was able to have a cooperative and friendly discussion

concerning discovery, the parties did not reach agreement as to a proposed discovery schedule.

Hartford contends that it is entitled to and in need of discovery now, to resolve numerous

Case 2:06-cv-00165-JG    Document 16    Filed 05/23/2006    Page 2 of 6

issues raised by its Complaint. In furtherance thereof, Hartford served InterDigital with

discovery requests simultaneously with the service of Hartford's Complaint. As noted below in

Section B detailing InterDigital's position, InterDigital believes that no discovery is necessary at

this point in time. Hartford disagrees.

Hartford's Complaint sets forth three Counts. Count I seeks a declaration of no duty to

defend, or in the alternative a declaration of Hartford's respective rights and obligations

concerning any duty to defend (should such a duty be found, which Hartford denies). Count II

seeks a declaration that Hartford has no duty to indemnify InterDigital, or in the alternative a

declaration of Hartford's respective rights and obligations concerning any duty to indemnify

(should such a duty be found, which Hartford denies). Count III seeks a declaration as to

whether one of the Defendants, ITC, qualifies as an insured to Hartford's policies for purposes of

the *Nokia* action.

Hartford is entitled to discovery as to each of these counts, and should be entitled to that

discovery now rather than waiting until after the adjudication of InterDigital's Motion to Dismiss

or even some later point in time.

InterDigital does not appear to dispute that Hartford is entitled to discovery concerning

Count III – to determine whether ITC qualifies as an insured to the Hartford policy. As such,

2

Hartford is entitled to discover whether ITC fits within the who is an insured provisions of the

Hartford policies and/or qualifies as a named insured pursuant to any policy endorsement.

As to Count I concerning the duty to defend, as InterDigital observes in its Motion to

Dismiss Count II, the duty to defend "can *generally* be gleaned from the face of a Complaint."

*See* InterDigital's Motion to Dismiss at p. 14 (emphasis added). As InterDigital acknowledges,

this is merely a general rule that is not always applicable. As such, discovery is appropriate in

some cases, such as this case, in order to adjudicate a duty to defend.

Even if ITC is an insured and even to the extent ICC is an insured, Hartford has no duty

to defend to the extent that the underlying claims either do not fall within the insuring agreement

of the Hartford policies or are excluded from coverage by one or more of the policy exclusions.

Among other things, the Hartford policy applies only to "personal and advertising injury as

defined in the policy" caused by an offense arising out of the named insured's business but only

if the offense was committed in the "coverage territory" during the policy period.

For both Count I and Count II, Hartford should be permitted to discover, *inter alia*:

- whether InterDigital has any other insurance applicable to this matter --
  which may provide for a defense and/or indemnity of InterDigital.

- what statements, if any, InterDigital made about Nokia or its products -- to
  determine whether InterDigital libeled, slandered or disparaged Nokia or
  its products) and thus whether the Nokia action involves an enumerated
  personal or advertising injury offense,

- whether any such offense arises out of the named insured's business, as
  required by the insuring agreement,

- when any such statements were made and by whom -- to determine
  whether an insured made such statements during a Hartford policy period
  and, if so, whether Hartford may eliminate the possibility of coverage
  under one (i.e., the other) of its policies,

- the circumstances surrounding those statements -- to determine whether a
  policy exclusion applies because, for example, the insured knew its

3

statements were false, the insured expected to inflict personal or advertising injury or the injury alleged arises out of any violation of intellectual property rights, and

- the terms of the reported world-wide settlement between Nokia and InterDigital – to ascertain to what extent, if any, that settlement resolves or limits the claims in the underlying *Nokia* action.

If Hartford is not allowed to seek this discovery now (as InterDigital would have the

Court rule), this Court not only will simply delay the inevitable need to conduct this discovery and resolve these issues but also will deny Hartford the ability to cut short any duty to defend that the Court may find and/or force Hartford to consider settlement demands which this Court otherwise may hold that Hartford is not obligated to pay. *See* Hartford's Memorandum in Opposition to InterDigital's Motion to Dismiss Count II at section II.B. (discussing Hartford's ability to cut short any duty to defend).

Contrary to InterDigital's claims, much of the discovery sought by Hartford involves issues that likely will not be litigated in the underlying *Nokia* action. Thus, there is no reason to require Hartford to wait until the determination of the *Nokia* action before resolving those issues.

Also, to the extent Hartford is found to owe any duty to defend, Hartford is entitled to discovery concerning the reasonableness and necessity of any legal fees at issue, and to determine which legal fees pertain to the defense of claims against Hartford, and which fees pertain to the prosecution of InterDigital's affirmative claims against Nokia. Hartford is also entitled to conduct discovery concerning any other insurance that may be available to ITC or ICC for these claims and thus may be obligated to defend or share in the defense and/or indemnity of defendants.

In sum, Hartford requests that this Court allow the parties to conduct discovery now and that the Court set an appropriate discovery schedule and deadlines.

4

**B. InterDigital's Position**

InterDigital attended the Rule 26(f) conference at the request of Hartford's counsel. However, InterDigital believes the conference itself may have been premature given that InterDigital's response to the Complaint was not due until March 13, 2006.[1]  In response to the Complaint, InterDigital has filed an unopposed motion to transfer pursuant to 28 U.S.C. § 1404

and a motion to dismiss Count Two of the Complaint without prejudice, as premature, because it seeks a declaration concerning Hartford's duty to indemnify InterDigital with respect to underlying litigation that has not been decided.  InterDigital believes that initial disclosures and discovery should not commence in this action before the Court rules upon its threshold motions.[2]

Furthermore, if the motion to dismiss is successful, InterDigital believes that the principal remaining issue in this lawsuit will be a legal, not a factual, issue.  The principal question is whether Hartford owes a duty to defend InterDigital in certain underlying litigation pending in the United States District Court for the District of Delaware, a question that must be answered by applying controlling legal standards to the allegations of the complaint in the underlying litigation.[3]  Thus, with respect to Hartford's claim regarding its duty to defend, InterDigital intends to answer and move for summary judgment.  If InterDigital prevails on its anticipated motion for summary judgment, Hartford will be bound to defend InterDigital in the underlying litigation until there is no possibility that the claim will be covered by Hartford's policies.  In

---

[1] InterDigital objected to the exchange of initial disclosures at the parties' Rule 26(f) conference.

[2] Hartford transmitted numerous discovery requests simultaneously with the Complaint, including interrogatories and requests for production.  InterDigital objected to Hartford's discovery requests as premature under the Federal Rules of Civil Procedure, which expressly prohibit interrogatories and document requests from being served prior to a Rule 26(f) conference unless the party serving the discovery previously obtained leave of court.  *See* Fed. R. Civ. P. 26(d), 33(a), & 34(b).

[3] Hartford disingenuously claims, *supra*, that InterDigital's motion to dismiss somehow acknowledges that discovery would be proper with respect to its duty to defend.  In its reply brief in further support of the motion to dismiss, which Hartford ignores, InterDigital specifically cited *Air Products & Chemicals, Inc. v. Hartford Accident & Indemnity Co.*, 25 F.3d 177 (3d Cir. 1994), for the proposition that courts applying Pennsylvania law to ascertain the duty to defend do not consider extrinsic evidence adduced by insurers.

addition, Hartford is seeking discovery on a number of issues that are central to the issue of

liability in the underlying action. InterDigital will not reiterate its arguments concerning the

impropriety of such discovery here as they have been stated in the motion to transfer and the

motion to dismiss. Thus, InterDigital believes that it would be a waste of the parties' resources

to commence discovery in this action until adjudication of its motions.

### CHANGES TO LIMITATIONS OF DISCOVERY

The parties do not request any changes to the limitations of discovery , such as the

number of interrogatories permitted, set forth in the Federal Rules of Civil Procedure.

### ORDERS PURSUANT TO RULE 26(C) AND RULE 16(B)

The parties do not request that the Court issue any order regarding either Rule 26(c) or

Rule 16(c). The parties understand that the Court may issue a Rule 16(b) scheduling order

following a scheduling conference, if one is held. The parties reserve the right to apply to the

Court upon the occurrence of any issue that may require the Court's issuance or modification of

an order under Rule 26(c), Rule 16(b), or Rule 16(c).

Respectfully submitted,

_____          ____S/Arleigh P. Helfer_____
Gale White, Esquire                Stephen J. Mathes, Esquire
Anthony L. Miscioscia, Esquire     Arleigh P. Helfer III, Esquire
White and Williams                 Hoyle, Fickler, Herschel & Mathes LLP
1800 One Liberty Place             One South Broad Street - Suite 1500
Philadelphia, PA 19103-7395        Philadelphia, PA  19107
                                   215-981-5710 telephone
Attorneys for Plaintiffs           215-981-5959 facsimile

                                   Attorneys for Defendants

6



# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANK HAUSER/ESR                                    MARGARET GALLAGHER
Court Reporter                            F I L E   Deputy Clerk

HARTFORD FIRE INSURANCE COMPANY   MAY 2 3 2006   Anthony L. Miscioscia, Esq.

                         MICHAEL E. KUNZ, Clerk
            vs.                        DCV.No. 06-165
                      By

INTERDIGITAL COMMUNICATIONS CORP.,     :       Stephen J. Mathes, esq.
                                       :

## MINUTE SHEET

0 6  4 2 2

BEFORE  JUDGE JAMES T. GILES  DATE 5/23/2006   TIME 1:00 P.M.

HEARING - ORAL ARGUMENT ON ALL OUTSTANDING MOTIONS.

## PROCEEDING

Anthony L. Miscioscia, Esq., Atty. for plaintiffs makes statements.
Gale White, Esq., Atty. for plaintiffs makes statements.
Stephen J. Mathes, Esq, Atty. for defendants makes statements.
Arleigh Pritchard Helfer, Esq., Atty. for defendants makes statements.

COURT RULES:  THE ABOVE CAPTIONED CASE SHALL BE TRANSFERRED TO THE DISTRICT
OF DELAWARE.

Court adjourned at 1:15 P.M.   To reconvene___

IN CRIMINAL PROCEEDINGS, EXCLUDABLE DELAY CODES MUST BE INSERTED BELOW IF
APPLICABLE, WITH THE EXPLICIT REASON FOR SUCH DELAY STATED HEREON.
   SPEEDY TRIAL ACT DELAY CODE( )     [ ] The Court deems this case "UNTRIABLE"

**TOTAL TIME IN COURT :  15 MINUTES**
rev. 5/2003

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY, et al. | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO. 06-0165 |
| | : | |
| v. | : | |
| | : | |
| INTERDIGITAL COMMUNICATIONS CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

**ORDER**

AND NOW, this 30th day of May, 2006, upon consideration of Defendants'

Motion to Transfer Venue to the United States District Court for the District of Delaware

Pursuant to 28 U.S.C. § 1404, and plaintiffs' response thereto, it is hereby ORDERED that the

motion is GRANTED.  The above-captioned matter shall be transferred to the United States

District Court for the District of Delaware.

It is further ORDERED that all pending motions are DENIED AS MOOT.

BY THE COURT:

_____S/ James T. Giles_____
                                                J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY, et al. | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO.  06-0165 |
| | : | |
| v. | : | |
| | : | |
| INTERDIGITAL COMMUNICATIONS CORPORATION, et al., | : | |
| | : | |
| Defendants. | : | |

**<u>ORDER</u>**

AND NOW, this 13th day of June, 2006, it is hereby ORDERED that the Court's

Order of May 30, 2006 (Docket No. 18) is VACATED inasmuch as the pending motion of

Defendants' Motion to Dismiss Count Two of the Complaint was denied as moot.  Defendants'

Motion and the responses thereto remain pending for consideration by the United States District

Court for the District of Delaware upon transfer.

BY THE COURT:

    S/ James T. Giles

                    J.

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA
### US COURTHOUSE
### 601 MARKET STREET
### PHILADELPHIA, PA 19106-1797

MICHAEL E. KUNZ
CLERK OF COURT

July 6, 2006

CLERK'S OFFICE
ROOM 2609
TELEPHONE
XXXXXXXXXXXX
267-299-7005

Peter T. Dalleo, Clerk
United States District Court
District of Delaware
J. Caleb Boggs Federal Bldg.
844 King Street, Lockbox 18
Wilmington, DE 19801-3570

06 422 —

RE:    HARTFORD FIRE INSURANCE
          VS.
          INTERDIGITAL COMMUNICATIONS
          CORPORATION, ET AL
          C.A. #06-165

Dear Clerk:

We herewith enclose the original record, together with a certified copy of the docket entries, in the above-captioned case which has been transferred to your District pursuant to Order of Judge James T. Giles, filed on 6/2/06.

Kindly acknowledge receipt on the copy of the letter provided.

Very truly yours,

MICHAEL E. KUNZ
Clerk of Court

By: *Kim Williams*
Kim Williams , Deputy Clerk

2005 JUL -7 PM 2:53
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
FILED

cc:    Anthony L. Miscioscia, Esq.
         Arleigh Pritchard Helfer, Esq.
         Bess Madway Collier, Esq.
         Gale White, Esq.
         Stephen J. Mathes, Esq.

Received above material or record file this      day of         , 20 .

Signature: _____

Date: _____

civ625.frm