IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

**HARTFORD FIRE INSURANCE COMPANY,**   **:**
**et al.**                              **:**
                                        **:**
            **Plaintiffs,**             **:**
                                        **:**
        **v.**                          **:**      **Civ. A. No. 06-0165**
                                        **:**
**INTERDIGITAL**                        **:**
**COMMUNICATIONS CORPORATION,**         **:**
**et al.**                              **:**
                                        **:**
            **Defendants.**             **:**
_____

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2006, upon consideration of the Motion Of

Defendants InterDigital Communications Corporation And InterDigital Technology Corporation

To Dismiss Count Two Of The Complaint, and the opposition thereto, if any, it is hereby

ORDERED that Count Two of the Complaint is dismissed without prejudice.

_____
                                                                              J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HARTFORD FIRE INSURANCE COMPANY,** : | |
| **et al.** : | |
| : | |
| **Plaintiffs,** : | |
| : | |
| **v.** : | **Civ. A. No. 06-0165** |
| : | |
| **INTERDIGITAL** : | |
| **COMMUNICATIONS CORPORATION,** : | |
| **et al.** : | |
| : | |
| **Defendants.** : | |

**MOTION OF DEFENDANTS INTERDIGITAL COMMUNICATIONS CORPORATION
AND INTERDIGITAL TECHNOLOGY CORPORATION TO DISMISS
<u>COUNT TWO OF THE COMPLAINT</u>**

Defendants InterDigital Communications Corporation and InterDigital Technology Corporation (collectively "InterDigital"), through their undersigned counsel, respectfully move the Court pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. Section 2201 for an Order dismissing Count Two of the Complaint without prejudice to its refiling following the conclusion of underlying litigation in the United States District Court for the District of Delaware. Pursuant to Local Rule 7.1(f), InterDigital respectfully requests oral argument. The reasons in support of this motion are set forth in the accompanying memorandum of law, which is incorporated herein by reference.

WHEREFORE, InterDigital respectfully requests that this Court enter an Order dismissing Count Two of the Complaint without prejudice.

Respectfully submitted,


__s/Stephen. J. Mathes_____

Stephen J. Mathes
Arleigh P. Helfer III
Thomas S. Coleman
HOYLE, FICKLER, HERSCHEL & MATHES LLP
One South Broad Street, Suite 1500
Philadelphia, PA 19103-7397
(215) 981-5700
Attorneys for Defendants

Dated:  March 13, 2006

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | |
|---|---|
| **HARTFORD FIRE INSURANCE COMPANY,** | : |
| **et al.,** | : |
| | : |
| **Plaintiffs,** | : |
| | : |
| **v.** | :     **Civ. A. No. 06-0165** |
| | : |
| **INTERDIGITAL** | : |
| **COMMUNICATIONS CORPORATION,** | : |
| **et al.** | : |
| | : |
| **Defendants.** | : |

---

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF INTERDIGITAL
COMMUNICATIONS CORPORATION AND INTERDIGITAL TECHNOLOGY
CORPORATION TO DISMISS
<u>COUNT TWO OF THE COMPLAINT</u>**

Defendants InterDigital Communications Corporation and InterDigital Technology Corporation (collectively "InterDigital"), respectfully submit this memorandum of law in support of their motion pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. Section 2201 to dismiss Count Two of the Complaint.  This case is a declaratory judgment action brought by two of InterDigital's insurers, Hartford Fire Mutual Insurance Company and the Hartford Casualty Mutual Insurance Company (collectively "Hartford"), which in part seek a declaration that the policies they sold to InterDigital give rise to no duty to indemnify in a pending action that Nokia Corporation and Nokia, Inc. brought against InterDigital in the District of Delaware. However, Hartford's claim for a declaratory judgment concerning the duty to indemnify, embodied in Count Two of the Complaint, puts the cart before the horse: it is premature and unripe and should be dismissed without prejudice for the reasons set forth more fully below.

## I.   <u>BACKGROUND</u>

On or about January 12, 2005, Nokia Corporation and Nokia, Inc. (collectively "Nokia") commenced litigation against InterDigital in the United States District Court for the District of Delaware by filing a twenty-one count complaint (the "Nokia action").[1]   As filed, the Nokia action sought declaratory judgments of patent invalidity and noninfringement, as well as judgments for alleged violations of the Lanham Act against InterDigital.   The claims involved certain cellular telephone technology called "3G" and patents in InterDigital's patent portfolio that pertain to 3G technology.   (Nokia Compl. ¶ 11.)   On March 15, 2005, InterDigital moved to dismiss the complaint in the Nokia action pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3) for lack of subject matter jurisdiction and for failure to state a claim.   On December 21, 2005, the court granted InterDigital's motion with respect to twenty of the twenty-one counts in the Nokia complaint, dismissing every claim except one: a claim for violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) based on statements allegedly made by InterDigital that "damaged Nokia's business and reputation in the wireless market."[2]   (Nokia Compl. ¶ 142.)

Hartford commenced this declaratory judgment action on or about January 12, 2006, filing a three count declaratory judgment complaint against InterDigital in this Court.   In Count One, Hartford seeks a declaration that certain policies of insurance it sold to InterDigital do not give rise to a duty to defend InterDigital for the remaining Lanham Act claim in the underlying Nokia action.   In Count Two, Hartford seeks a declaration that it does not have a duty to indemnify InterDigital for the pending Nokia Lanham Act claim, in which discovery has only

---

[1] The Nokia action is styled *Nokia Corp., et al. v. InterDigital Communications Corp., et al.*, Civ. A. No. 05-16-JJF.   A copy of the complaint in the Nokia action is attached to Hartford's complaint as Exhibit A.

recently commenced.  In Count Three, Hartford seeks a declaration regarding the status of a corporate entity, InterDigital Technology Corporation, in order to determine whether it is an insured.  There is, however, no dispute that InterDigital Communications Corporation is a named insured under the Hartford policies.  InterDigital's present motion is directed only at Count Two.

The main thrust of Hartford's declaratory judgment complaint centers on language in the pertinent policies that purports to exclude from coverage liability for injuries caused by statements made by the insured with knowledge of the statements' falsity.  (*See, e.g*., Complaint ¶¶ 55, 62.)  Hartford contends that the Nokia complaint alleges an injury that could not give rise to a duty to indemnify based chiefly on the fact that Nokia alleges in connection with its Lanham Act claim that InterDigital made certain statements about its own patents in bad faith and with knowledge of their falsity.  (*Id*. ¶¶ 47, 67-68; Nokia Compl. ¶ 146.)  However, as stated by the court in the opinion dismissing twenty of the twenty-one counts in the Nokia action, to recover on a Lanham Act claim involving patents, the plaintiff would have to show that the statements were false or misleading *and* that the defendant acted in *bad faith*.  (*See* December 21, 2005 Opinion at 11-12.)  The Delaware court's opinion did not decided definitively the standard of proof to establish bad faith under the Lanham Act.  Thus, a central question in both the underlying Nokia action and in this coverage action will be whether the Lanham Act requires that a showing of *bad faith* entails proof that the defendant made false statements with actual knowledge of their falsity or proof of something less, such as reckless disregard for the truth or falsity of the statements.

---

[2] A true and correct copy of the district court's December 21, 2005 Opinion is attached hereto as Exhibit A.

## II.   __ARGUMENT__

There are two reasons why Count Two of the Hartford Complaint should be dismissed without prejudice to its being renewed, if necessary, after the conclusion of the underlying Nokia action.   First, Count Two of the Hartford Complaint should be dismissed without prejudice because the underlying Nokia action is still pending.   As to the issue of the duty to indemnify, the actual facts concerning InterDigital's alleged conduct must be known before any determination can be made.   Hartford itself acknowledges that the "duty to indemnify is based on the true facts which have not yet been determined."   (Complaint ¶ 70.)   InterDigital has not suffered an adverse judgment in the Nokia action and presently has no liability to Nokia.   To be sure, InterDigital may never have liability to Nokia in the Nokia action.   Thus, the question of whether Hartford has a duty to indemnify InterDigital for any liability in the Nokia action is premature and unripe for judicial determination.

Second, assuming for the sake of argument only that Count Two presents a question that is ripe, practical considerations as well as considerations of fairness still compel dismissal of Count Two.   This is a case in which the Court may properly exercise its discretion under the Declaratory Judgment Act to dismiss Hartford's request for a declaration that will likely do far more harm than good.   Hartford's request for a declaratory judgment as to its duty to indemnify InterDigital and its attendant desire to go beyond the facts alleged on the face of the Nokia complaint may prejudice the parties in the Nokia action.   In the event that InterDigital's motion to transfer[3] this case to the United States Court for the District of Delaware is denied, any factual determinations this Court makes concerning the alleged statements that Hartford contends trigger policy exclusions in this action and which Nokia contends form the basis of its Lanham Act

---

[3] On this day, InterDigital concurrently filed a motion to transfer this action to the United States District Court for the District of Delaware pursuant to 28 U.S.C. Section 1404.

claim in the Nokia action, may preclude InterDigital from litigating those issues in the Nokia action by virtue of collateral estoppel.   What is worse, if this Court were to make such determinations on the duty to indemnify in this action, it would be possible that the Nokia action might conclude in a way that would moot this Court's declaration or otherwise be inconsistent with it.   It is conceivable that this Court might rule on the duty to indemnify only to see Nokia later change its theory of liability or otherwise amend its complaint in a way that would unquestionably bring its claims within the coverage of the Hartford policies.   Moreover, InterDigital is optimistic that it will avoid liability altogether in the Nokia action.   If that is the outcome in the Nokia action following a declaration concerning the duty to indemnify in this Court, then Hartford will have wasted substantial resources of its own, of its customer InterDigital, and of the judicial system, all in order for Hartford to receive a moot declaration concerning its duty to indemnify.

     **A.**    **Count Two Of Hartford's Complaint Should Be Dismissed For Lack Of Subject Matter Jurisdiction Because The Duty To Indemnify Is Not Ripe For Adjudication**

Challenges to the ripeness of declaratory judgment actions involve the subject matter jurisdiction of the courts and are properly brought pursuant to Federal Rule of Civil Procedure 12(b)(1).   *See NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001); *Save Ardmore Coallition v. Lower Merion Township*, __ F. Supp. 2d. __, __, No. 05-1688, 2005 WL 3021087, *4 (E.D. Pa. Nov. 9, 2005); *TIG Ins. Co. v. Insinger Mach. Co.*, No. Civ. A. 97-3164, 1998 WL 748287, *3 (E.D. Pa. Oct. 27, 1998); *see also Travelers Prop. Cas. Corp. v. Winterthur Int'l*, No. 02 Civ. 2406, 2002 WL 1391920, *1 n.1 (S.D.N.Y. June 25, 2002).   In the face of a Rule 12(b)(1) motion to dismiss, the burden of establishing subject matter jurisdiction always remains on the plaintiff as the party asserting jurisdiction.   *See Save Ardmore Coallition*, __ F. Supp. 2d at __, 2005 WL 3021087 at *3.   The ripeness requirement draws both

on Article III limitations on judicial power as well as from prudential limitations. *See Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 733 n.7 (1997); *NE Hub Partners, L.P.*, 239 F.3d at 341. The function of the ripeness doctrine is to prevent federal courts from engaging in premature adjudication and entangling themselves in abstract disagreement. *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995).

       1.    <u>Count Two Should Be Dismissed As Unripe Because The Underlying Litigation Has Not Concluded</u>

Courts in this Circuit follow a general ripeness rule to the effect that "a court entertaining a declaratory judgment action in an insurance coverage case should refrain from determining the insurer's duty to indemnify until the insured is found liable for damages in the underlying action." *American States Ins. Co. v. Component Techs., Inc*., No. 3:02CV1678, 2005 WL 2253583, *1 (M.D. Pa. Sept. 15, 2005), *Cincinnati Ins. Cos. v. Pestco, Inc*., 374 F. Supp. 2d 451, 464-65 (W.D. Pa. 2004); *Home Ins. Co. v. Law Offices of Jonathan DeYoung*, 107 F. Supp. 2d 647, 650 (E.D. Pa. 2000); *Home Ins. Co. v. Perlberger*, 900 F. Supp. 768, 773 (E.D. Pa. 1995); *see also Sphere Ins. Co. v. Rosen*, Civ. A. No. 85-2654, 1985 WL 3572, *3 (E.D. Pa. Nov. 6, 1985) (dismissing insurer's claim for declaration on duty to indemnify without prejudice as premature even though there was no duty to defend because there might never be liability in the underlying suit). Other jurisdictions are in accord. *See Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc*., 401 F.3d 876, 882-83 (8th Cir. 2005) (affirming district court's dismissal without prejudice of claim for declaratory judgment on duty to indemnify as premature as the duty would turn on an issue of intent that would be addressed in the underlying action); *Lear Corp. v. Johnson Elec. Holdings Ltd*., 353 F.3d 580, 583 (7th Cir. 2003) ("We regularly say that decisions about indemnity should be postponed until the underlying liability has been established."); *Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp*., 90 F.3d 671,

676 (2d Cir. 1996) (affirming dismissal without prejudice of an excess insurer's declaratory judgment action as unripe where facts concerning liability were not yet established); *Grinnell Mut. Reins. Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995) (holding it would be premature to rule on insurer's request for a declaratory judgment concerning its duty to indemnify even where the court found no duty to defend in the underlying tort case which had not yet reached its conclusion); *Landpen Co. v. The Maryland Cas. Co.*, No. 03 Civ. 3624, 2005 WL 356809, *9-10 (S.D.N.Y. Feb. 15, 2005) (noting that "courts considering the question [of an insurer's duty to defend] have generally declined to rule on the issue of indemnity until resolution of the underlying liability claim" and refusing to consider claim until the actual facts were established); *Hartford Cas. Ins. Co. v. Chase Title, Inc.*, 247 F. Supp. 2d 779, 780 n.1 (D. Md. 2003) ("It would be premature to determine whether [insurer] has a duty to indemnify until after the issues in the underlying class action have been resolved."); *Travelers Prop. Cas. Corp. v. Winterthur Int'l*, No. 02 Civ. 2406, 2002 WL 1391920, *6 (S.D.N.Y. June 25, 2002) (holding that in "cases such as this—where the key facts can and will be established in an underlying proceeding—the lack of ripeness is palpable" and citing New York state court decisions holding that liability must first be determined in the underlying action before the duty to indemnify can be addressed in a declaratory judgment action); *Allstate Indem. Co. v. Lewis*, 985 F. Supp. 1341, 1349-50 (M.D. Ala. 1997) (holding that a determination of the duty to indemnify is not ripe when it is still possible for the plaintiff in the underlying lawsuit to change the theory of liability and assert a claim that is covered by the policy in issue); *Aetna Cas. & Surety Co. v. PPG Indus., Inc.*, 554 F. Supp. 290, 296 (D. Ariz. 1983) (holding request for declaratory judgment to be unripe when the underlying action had not yet concluded and there was no assurance that the plaintiffs in that action would prevail); *Dana Corp. v. LTV Corp.*, 668 A.2d 752, 756 (Del. Ch. 1995) (observing that courts have declined to enter declaratory judgments with respect to indemnity until there is a

judgment against the party seeking it and noting that courts have refused to decide an insurer's duty to indemnify before there is a judgment against the insured); *Statt v. American Home Assurance Co.*, 595 N.Y.S.2d 700, 701 (N.Y. App. Div. 1993) (dismissing declaratory judgment action where the extent of the insurer's duty to indemnify depended on the resolution of an issue that would be decided in the underlying action); *see also* 16 *Couch on Insurance* 3d § 227:37 (observing that there is "considerable authority" that determinations of the duty to indemnify must await resolution of the underlying litigation).

Moreover, Pennsylvania law will likely govern the dispute in this diversity action.[4] Pennsylvania decisional law likewise establishes that declaratory judgment actions concerning an insurer's duty to indemnify are unripe for determination before liability is established in the underlying litigation. *See Heffernan & Co. v. Hartford Ins. Co. of Am.*, 614 A.2d 295, 298 (Pa. Super. Ct. 1992); *United Servs. Auto. Ass'n v. Elitzky*, 517 A.2d 982 (Pa. Super. Ct. 1986); *see also Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 (applying Pennsylvania law and affirming dismissal of insurer's declaratory judgment action to the extent it sought a determination of the company's duty to indemnify prior to the conclusion of the underlying litigation).

---

[4] A federal court sitting in diversity applies the choice of law rule of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under Pennsylvania choice of law rules, the trial court applies the law of the state where the policy was delivered. *See Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 745-46 (3d Cir. 1999). If the case is transferred to the District of Delaware, the result will likely be the same. Delaware applies the "most significant relationship" test in disputes involving insurance contracts. *See Essick v. Barksdale*, 882 F. Supp. 365, 369 (D. Del. 1995); *Chesapeake Utils. Corp. v. American Home Assurance Co.*, 704 F. Supp. 551, 555 (D. Del. 1989). Under that analysis, the pertinent factors, including such factors as where the contract was made and where the insured business is located, suggest Pennsylvania law will apply as InterDigital has its principal place of business in Pennsylvania and entered into the insurance contracts there. *See Chesapeake Utils. Corp.*, 704 F. Supp. at 556. Even if Delaware law were to apply, the result would not differ as Delaware agrees with Pennsylvania that findings of liability should precede a suit for a declaratory judgment concerning indemnification. *See Dana Corp. v. LTV Corp.*, 668 A.2d 752, 756 (Del. Ch. 1995) (observing that courts have declined to enter declaratory judgments with respect to

8

Here, there is absolutely no dispute that the Nokia action has not concluded.  Hartford expressly concedes in Count Two of its Complaint that the true facts germane to the duty to indemnify have yet to be established.  Consequently, Count Two should be dismissed without prejudice pursuant to the general rule observed in this Circuit that declaratory judgment actions concerning the duty to indemnify should not precede the conclusion of the underlying litigation.

> 2.   Hartford's Request For Declaratory Relief Concerning The Duty To Indemnify Is Also Unripe Under The Three-Prong Ripeness Test Observed In This Circuit

Count Two of Hartford's Complaint also cannot withstand scrutiny under the Third Circuit's prevailing ripeness analysis.  In the context of declaratory judgment actions, the ripeness analysis followed in the Third Circuit involves a three-part test:  first, the court ascertains the "adversity of the parties' interests; second, the probable conclusiveness of a judgment; third, the practical utility to the parties of rendering a judgment."  *NE Hub Partners, L.P.*, 239 F.3d at 342; *see Step-Saver Data Sys., Inc. v. Wyse Technology*, 912 F.2d 643, 647 (3d Cir. 1990) (setting forth the three prong ripeness test generally known in this Circuit as the "*Step-Saver* test").  A number of district courts in this Circuit have applied the *Step-Saver* ripeness test in the context of declaratory judgment actions brought by insurers seeking declarations concerning their duty to indemnify.  *See, e.g.*, *American States Ins. Co.*, 2005 WL 2253583 at *1-3 (applying *Step-Saver* ripeness test and dismissing insurer's declaratory judgment action concerning its duty to indemnify as unripe where liability had not been established in the underlying case); *Westport Ins. Corp. v. Howell*, No. Civ. A. 05-351, 2005 WL 1124092, *1 (E.D. Pa. May 10, 2005) (dismissing insurance company's complaint seeking declaration concerning duty to indemnify as unripe pursuant to the *Step-Saver* test because the

---

indemnity until there is a judgment against the party seeking it and noting that courts have refused to decide an insurer's duty to indemnify before there is a judgment against the insured).

9

underlying action was not concluded); *TIG Ins. Co.*, 1998 WL 748287 at *3 (observing three-part test first announced in *Step-Saver* and dismissing insurer's declaratory judgment action as unripe because insured had not made claim for coverage); *Home Ins. Co. v. Perlberger*, 900 F. Supp. 768, 772 (E.D. Pa. 1995) (holding request for judicial determination of duty to indemnify prior to conclusion of underlying lawsuit unripe pursuant to *Step-Saver* three-part test).

Because there has been no finding of liability in the underlying action, and because the true facts that would permit analysis of the duty to indemnify have not been determined—as Hartford readily admits at Paragraph 90 of its Complaint—Hartford's request for a declaratory judgment cannot satisfy all three prongs of the *Step-Saver* ripeness test. Accordingly, Hartford's Complaint should be dismissed for lack of subject matter jurisdiction to the extent it seeks a declaration concerning its duty to indemnify.

> a. Because There Has Been No Determination Of Facts Concerning Liability In The Underlying Action, The Parties' Interests Are Not Presently Concretely Adverse With Respect To The Duty To Indemnify

First, the adversity of the parties' interests is not yet concrete with respect to the duty to indemnify. Parties' interests are adverse where actual harm will result if the declaratory judgment is not granted. *See Step-Saver Data Sys., Inc.*, 912 F.2d at 647-48. As the court stated in *Perlberger*, the "adversity of the parties' interests as to the duty to indemnify will not be complete until after the resolution of the [underlying] action, when it will be clear whether [the insured] can assert a claim for indemnity from [his insurer]." *Perlberger*, 900 F. Supp. at 773; *accord Westport Ins. Corp.*, 2005 WL 1124092 at *2 (holding insurer's and insured's interests concerning the duty to defend are not adverse prior to judgment on the underlying claim).

It is indisputable that there has been no finding of liability and no judgment entered in the Nokia action. There may never be a judgment attributing liability to InterDigital, in which case

the parties' interests will never become adverse.  Furthermore, because InterDigital has not been found liable or sought indemnity from Hartford, no harm will come to Hartford if a declaratory judgment is not presently entered with respect to the duty to indemnify.[5]  Consequently, the parties' potentially adverse interests are not sufficiently concrete to render the duty to indemnify ripe for determination.

b.    A Declaratory Judgment Would Not Be Conclusive

The second prong of the *Step-Saver* ripeness test requires the Court to determine whether a decree would be sufficiently conclusive to define and clarify the legal rights or relations of the parties.  *Step-Saver Data Sys., Inc.*, 912 F.2d at 648.  Whether a declaratory judgment will be conclusive depends in part on whether the issues presented are purely legal or whether further factual development would be useful.  *See NE Hub Partners, L.P.*, 239 F.3d at 342 n.9.  An integral part of this analysis is the whether the court has a concrete set of facts before it from which it can make appropriate findings.  *See Travelers Ins. Co.*, 72 F.3d at 1155.  Here, however, Hartford is asking the Court to enter a judgment declaring "that Hartford has no obligation to indemnify InterDigital in connection with the *Nokia* complaint."  (Complaint, Count Two Wherefore Clause.)  Short of litigating the entire underlying action before this Court, it would not be possible for any decree concerning the duty to indemnify to be conclusive.  Hartford itself acknowledges the speculative nature of its request: "Even if Hartford were to have an obligation

---

[5] Hartford's more pressing concern involves its duty to *defend* the Nokia action. The duty to defend and the duty to indemnify present entirely separate ripeness issues.  *See Sphere Drake, P.L.C. v. 101 Variety, Inc.*, 35 F. Supp. 2d 421, 430-31 (E.D. Pa. 1999) (noting that where claims in the underlying action have not been decided, the inquiry of a court hearing a declaratory judgment action "is limited to an analysis of an insurer's duty to defend because '[t]he indemnification issue, by contrast, requires the resolution of the merits of the underlying dispute.'"); *Nationwide Mut. Fire Co. v. Shank*, 951 F. Supp. 68, 71-72 (noting that duty to defend usually must be decided early vis-à-vis an underlying case whereas duty to indemnify generally should not be determined until after the underlying litigation has resolved the facts and liability).

to defend the Nokia complaint . . . Hartford *may* not ultimately owe any indemnity to InterDigital because the duty to indemnify is not based on the allegations of the complaint." (*Id.*, ¶ 69). Instead, Hartford acknowledges that the "duty to indemnify is based on the true facts *which have not yet been determined*." (*Id.*, ¶ 70) (emphasis added).

Based on the language in Count Two of its Complaint, Hartford is inappropriately asking the Court to grant a declaration as to a contingency. That is, Hartford is asking the Court to construe the insurance policy and its exclusions prior to the establishment of the underlying facts that would determine liability in the Nokia action. However, "[c]onstruing a contract and making law without finding the necessary facts constitutes advisory opinion writing, and that is constitutionally forbidden." *Step-Saver Data Sys., Inc.*, 912 F.2d at 649. The Constitution clearly prohibits the courts from issuing opinions advising what the law would be upon hypothetical facts. *Id.* (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227 (1937)).

The *Perlberger* court addressed a situation similar to the one presented by Hartford's request for a ruling in its duty to indemnify. There, the legal malpractice insurer ("Home") sought a declaratory judgment concerning its duty to indemnify its insured, a divorce lawyer and his law firms ("Perlberger"). Perlberger had been sued by a former client who claimed he had a romantic relationship with her while he represented her. She claimed he used his position to influence her management of her substantial divorce settlement in ways that benefited him. She brought claims for legal malpractice, breach of contract, breach of fiduciary duty, fraud, and unjust enrichment against Perlberger. Home denied defense and indemnity to Perlberger. Although the former client's suit was pending, Home brought an action against Perlberger seeking a declaratory judgment that it owed no duty to defend or indemnify him in the former client's lawsuit, invoking several coverage exclusions and provisions in the policy it had issued to him. Among other things, Home relied on the following exclusions and provisions: 1) an

endorsement that excluded coverage for acts alleged to have occurred prior to a date certain; 2) a provision that stated the policy would only insure against claims made during professional services rendered; and 3) a "wrongful acts" provision that stated the policy would not apply to any judgment based on fraud or deliberately wrongful acts. *Id*. at 770-71. Applying the *Step-Saver* ripeness test, the court found that Home's request for a declaratory judgment concerning its duty to indemnify was "not ripe for judicial determination." *Id*. at 772.

The court found the conclusiveness prong of the test to be determinative because a declaratory judgment would depend on a contingency and would not resolve the dispute:

> Consider what would occur if, in the pending state-court action, a jury were to reach a verdict for [the former client] on her legal malpractice, breach of contract, breach of fiduciary duty, or unjust enrichment claims based either (a) only on a finding of negligent or reckless conduct by Perlberger, or (b) on unclear grounds. In the first case, the declaratory judgment would be irrelevant; in the second, its applicability would be uncertain, requiring further court proceedings. These are precisely the circumstances that led the *Step-Saver* court to find that a declaratory judgment in that case would not be conclusive. This court must come to the same conclusion.

*Perlberger*, 900 F. Supp. at 773.[6]

Likewise, in *Westport Insurance Corp*., the court held that it could not render a declaratory judgment concerning indemnity that would be conclusive where the underlying litigation was still pending. *Westport Ins. Corp*., 2005 WL 1124092 at *2. There, a malpractice insurance carrier brought a declaratory judgment action against its insured, father and son lawyers, seeking a declaration that it had no duty to indemnify them for alleged professional

---

[6] In a footnote, the *Perlberger* court stated that there was a defect in Home's request for a declaratory judgment because Home's complaint did not ask the court to find the facts that would form the basis for its declaratory judgment. *Id*. at 773 n.2. However, the court then stated: "This is not to say that Home's pursuit of a declaratory judgment [concerning its duty to indemnify] would have been more successful had Home asked the court to engage in fact

negligence.  In addressing the conclusivity prong of the *Step-Saver* ripeness test, the court ruled

that any declaration it made "would amount to an advisory opinion" because it would be based

on the "theoretical contingency that liability in the underlying claim will actually be imposed."

*Id*.

Hartford's request for a declaratory judgment similarly depends on a contingency and

would not resolve the dispute.  Unlike the duty to defend, which can generally be gleaned from

the face of a complaint without inquiring into the underlying facts, the duty to indemnify, which

is at issue in Count Two, depends on facts and is contingent on the imposition of liability.  *See*

*American States Ins. Co*., 2005 WL 2253583 at *2.  Here, even if the Court were to grant the

requested relief of a declaration that Hartford has no obligation to indemnify InterDigital in

connection with the Nokia complaint, it would be possible for Nokia to amend its complaint to

allege new facts or to change its theory of liability, which could moot this Court's declaration

about the duty to indemnify.  Just as the court observed about the effect of possible outcomes in

the underlying action in *Perlberger*, despite InterDigital's position to the contrary, a jury in the

Nokia action may eventually find that InterDigital acted recklessly with respect to the truth or

falsity of the statements it allegedly made about its patents and that the statements were false or

misleading, which arguably would create a covered claim, notwithstanding the exclusion for

knowing publication of a false statement.[7]

---

finding, however, as such a declaratory judgment request might be disfavored as interfering with
a pending state-court action."  *Id*.

[7] Leading decisions addressing the elements of a claim under Section 43(a) of the Lanham Act
when patents are involved hold that the defendant must have made a false statement in *bad faith*,
which does not necessarily require that the statements be made with actual knowledge of their
falsity  *See Zenith Electronics Corp. v. Exzec, Inc*., 182 F.3d 1340, 1353-54 (Fed. Cir. 1999)
(noting that statements about patents must have been made in bad faith to be actionable under
Lanham Act); *see also Golan v. Pingle Enter., Inc*., 310 F.3d 1360, 1370-71 (Fed. Cir. 2002)
(observing that plaintiff must show by clear and convincing evidence that statement involving
patents was made with knowledge of *or disregard for* its correctness or falsity to demonstrate

Consequently, Hartford's requested declaratory judgment on the duty to indemnify would not be conclusive of the parties rights and relationship.[8]

>    c.    Hartford Cannot Establish That A Declaratory Judgment Concerning Its Duty To Indemnify Would Have Practical Utility At This Time

The final prong of the *Step-Saver* ripeness test requires the Court to ascertain whether a declaratory judgment concerning the duty to indemnify would be of any use at this stage. *See Step-Saver Data Sys., Inc.*, 912 F.2d at 649-50. This prong of the inquiry may consider, among other things, whether there will be a hardship to the parties if the court withholds decision and whether the claim involves uncertain or contingent events. *See NE Hub Partners, L.P.*, 239 F.2d at 342 n.9. It may also consider whether the parties' plans of action are likely to be affected by a declaratory judgment. *See id.* at 344.

A declaratory judgment concerning the duty to indemnify would be useless here because the underlying issues concerning liability remain to be litigated in the Nokia action. Where underlying issues concerning liability remain to be determined, a declaratory judgment concerning the duty to defend has no appreciable value. *See Westport Ins. Corp.*, 2005 WL 1124092 at *2. This is logical because a finding of no liability in the underlying action would

---

bad faith). Reckless statements are not statements made with "actual knowledge of falsity" within the scope of the policy exclusions Hartford relies on here.

[8] To the extent that Hartford may be attempting to litigate issues of material fact from the underlying litigation in this Court, that gambit has been widely criticized as being unfair to an insured, who may be collaterally estopped from litigating those issues in the underlying action. *See, e.g.*, *Nationwide Mut. Fire Co. v. Shank*, 951 F. Supp. 68, 72-73; 16 *Couch on Insurance* 3d § 227:37 (noting the most important aspect of declaratory judgment actions brought before resolution of underlying litigation is the "potential that such an action has to prejudice the insured in the underlying litigation by the injured party."). Such litigation tactics by insurers are especially unfair because a company that purchases liability insurance does so in the hope of gaining the insurance company's expertise and resources in avoiding liability, not in anticipation of having the insurance company bring those same resources to bear against it in an effort to establish its liability. *See Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1225 (3d Cir.

render a declaratory judgment with respect to indemnification obligations irrelevant and would make a waste of the resources of the court and the parties consumed in litigating it.  *See American States Ins. Co*., 2005 WL 2253583 at *2; *see also* 16 *Couch on Insurance* 3d § 227:37 (noting there is "considerable authority" that determinations of the duty to indemnify should await the resolution of the underlying case "usually based on the reasoning that the insured's victory in that case could render the issue moot, and render the effort and expense of the declaratory judgment unnecessary).

Moreover, the parties will suffer no hardship if the Court does not issue a declaratory judgment concerning the duty to indemnify before it becomes clear whether InterDigital is liable to Nokia.  Of course, InterDigital denies any liability.  Hartford will not be harmed if the Court dismisses Count Two of its Complaint with leave to refile upon the conclusion of the Nokia action.  *See Terra Nova Ins. Co*., 887 F.2d at 1227 ("The delay in resolving the duty to indemnify does not destroy the utility of declaratory relief in the same way that a delay in resolving the duty to defend does.").  If the Nokia action ends without any verdict of liability, Hartford will not face a claim on the policy for indemnification in the Nokia action.  If the Nokia action ends any other way, Hartford will potentially have factual findings from the Nokia action that indicate there would be or would not be coverage or it would have an opportunity to refile its declaratory judgment complaint with respect to its duty to indemnify.  It is highly doubtful that insurance companies as large as Hartford are going to alter their plans in any material way in light of a potential delay in the determination of their duty to indemnify.

On the other hand, such a declaration may impose hardships on InterDigital.  If the outcome of the Nokia case is unfavorable to InterDigital and this Court has already issued a

---

1989).  This issue is discussed more fully in part B, *infra*, concerning the Court's discretion to decline to hear a declaratory judgment action.

judgment concerning Hartford's duty to indemnify, it is conceivable that there would be further litigation concerning whether the facts on which the Nokia action was disposed were contemplated by this Court. Judgments that engender further litigation rather than resolving it are of little use.

In the final analysis, the allegations of Hartford's Complaint do not and cannot establish that the duty to indemnify is ripe for decision. To the contrary, they expressly admit that it depends on factual determinations that have not yet occurred.

Because a declaratory judgment concerning Hartford's duty to indemnify would have no practical utility, its Complaint should be dismissed insofar as it seeks such a declaration.

**B.      This Court Should Exercise Its Discretion Under The Declaratory Judgment Act To Decline To Hear Count Two Of The Plaintiffs Complaint At This Time**

Even if a suit under the Declaratory Judgment Act otherwise satisfies jurisdictional requirements—which this case does not—a district court has the discretion to decide whether and when to hear a declaratory judgment action. *See Nationwide Mut. Fire Co. v. Shank*, 951 F. Supp. 68, 70 (E.D. Pa. 1997) (citing *Wilton v. Seven Falls Co*., 515 U.S. 277 (1995)); *see also Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213, 1222 (3d Cir. 1989). The Federal Declaratory Judgment Act states, in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

28 U.S.C. § 2201 (emphasis added). This section of the Declaratory Judgment Act "gives district courts statutory discretion to decide whether to entertain actions for declaratory judgments." *Terra Nova Ins. Co.*, 887 F.2d at 1222; *see also Wilton*, 515 U.S. at 286 (noting the Declaratory Judgment Act gives district courts "unique and substantial discretion in deciding to

declare the rights of litigants").[9]  That discretion is guided by considerations of practicality and

wise judicial administration.  *See Wilton*, 515 U.S. at 288.

Declaratory judgment actions brought by insurers are an especially appropriate subject

for the courts' scrutiny in determining whether to exercise their discretion not to hear a case

because of "frequent, attempted abuses of the declaratory action in this area."  *Shank*, 951 F.

Supp. at 71 (quoting *Terra Nova Ins. Co.*, 887 F.2d at 1225).  Importantly, the Third Circuit,

expressing a concern that an insured may be collaterally estopped from litigating issues in the

underlying lawsuit, noted that a federal declaratory judgment action may defeat the reasonable

expectations of the insured:

> [T]he superior resources and expertise of the insurance company in
> litigating these matters are one aspect of the protection an insured
> purchases with his policy.  Here, the policy language was
> sufficiently clear to preclude any reasonable expectation of a
> defense to claims for damages caused intentionally.  At the same
> time, the insured could not possibly have anticipated that the very
> resources for which he bargained would be turned against him and
> used to establish his liability whenever intentional tort was alleged.
> An early declaratory judgment in these circumstances would serve
> as a procedural mechanism to defeat the reasonable expectations of
> the insured, which state courts have so zealously guarded through
> contract interpretation.

*Terra Nova Ins. Co.*, 887 F.2d at 1225 (quoting *Allstate Ins. Co. v. Harris*, 445 F. Supp. 847

(N.D. Cal. 1978)).

---

[9] Although both *Wilton* and *Terra Nova Insurance Co.* addressed situations in which there were parallel state court proceedings pending, the presence of parallel state court proceedings is not determinative of the district courts' discretion to decline to hear cases seeking relief under the Declaratory Judgment Act.  *See Nationwide Mut. Ins. Co. v. Svitesic*, No. Civ. A. 05-0369, 2005 WL 3070941, *2 (W.D. Pa. Nov. 16, 2005); *see also United States v. City of Las Cruces*, 289 F.3d 1170, 1183 (10th Cir. 2002); *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 423 (4th Cir. 1998) ("There is no requirement that a parallel proceeding be pending in state court before a federal court should decline to exercise jurisdiction over a declaratory judgment action.").

*Shank* is a particularly instructive case. At issue was whether the insured's conduct fell within the policy's "intentional acts" coverage exclusion where he was accused of sexually abusing a minor. The court declined to hear the declaratory judgment claim concerning the insurer's duty to indemnify because the factual issues germane to the analysis had not yet been determined in the underlying case. *Shank*, 951 F. Supp. at 71-72. The court expressed a great deal of concern as to whether proceeding with the declaratory judgment action would prejudice the insured in the underlying litigation:

> If we were to infer intent in the instant case based solely upon the allegation of sexual assault, we would effectively relieve the . . . plaintiffs in the underlying suit, from their burden of proving intentional sexual assault. . . . We would collaterally estop another determination on whether the act occurred, and whether it was intentional without any review of the facts. . . . [I]t is clear that any action by us at this point would overly prejudice one of the litigants in the state case."

*Id*. at 72-73. Accordingly, the court declined to proceed with declaratory judgment action insofar as it concerned the duty to indemnify until the relevant facts were established in the underlying litigation.

In *Nationwide Insurance v. Zavalis*, the Seventh Circuit, applying Pennsylvania law, reached a similar conclusion. There, the insurer sought a declaratory judgment concerning its duty to indemnify a University of Illinois student who allegedly burned astroturf at the University's football field. The University was suing the student, among others, to recover for the damage. Nationwide had issued a homeowner's policy to the student's parents in Pennsylvania; however, it brought a declaratory judgment action seeking declarations that it had no duties to defend or to indemnify the student. Nationwide invoked the policy's exclusion for expected or intentional property damage, alleging that the student had knowingly and intentionally set fire to the stadium astroturf and expected the resulting damage. The district

court noted it had discretion to decline to hear an action brought under the Declaratory Judgments Act and dismissed the case without prejudice pending the resolution of the underlying litigation.  It reasoned that the issues to be resolved, while not identical to those in the underlying litigation, were closely related.  The Seventh Circuit agreed that the district court properly exercised its discretion insofar as it dismissed the action with respect to the duty to indemnify.  Applying Pennsylvania law, the court determined that resolving the duty to defend and whether the student's conduct was intentional would require the court to address a factual question at the center of the underlying litigation.  That question, the court held, was "properly left, in the first instance, to the court deciding the underlying lawsuit."  *Zavalis*, 52 F.3d at 693.

The risks here are similar.  This Court cannot determine Hartford's duty to indemnify without making factual determinations that are crucial to the underlying litigation.  Such determinations would have to resolve what statements InterDigital made about its patent portfolio, whether such statements were false, and whether InterDigital made such statements with actual knowledge of their falsity.  Those determinations overlap with the determinations central to the underlying Nokia action, where they should be decided in the first instance through adversarial litigation between InterDigital and Nokia, not between InterDigital and its insurer.

Here, because the "true facts" concerning the duty to indemnify have not been established, and because there are serious risks that fact finding in this Court might prejudice InterDigital in the underlying Nokia action, InterDigital respectfully submits that the Court may properly exercise its discretion and decline to hear Count Two of Hartford's complaint until the underlying facts are fully established in the underlying litigation.

## III.     <u>CONCLUSION</u>

For the foregoing reasons, InterDigital respectfully requests that the Court enter an Order

dismissing Count Two of the Complaint without prejudice.

Respectfully submitted,


      s/Stephen J. Mathes
_____
Stephen J. Mathes
Arleigh P. Helfer III
Thomas S. Coleman
HOYLE, FICKLER, HERSCHEL & MATHES LLP
One South Broad Street, Suite 1500
Philadelphia, PA 19103-7397
(215) 981-5700
Attorneys for Defendants

Dated:  March 13, 2006

## <u>CERTIFICATE OF SERVICE</u>

I, Arleigh P. Helfer III, hereby certify that I caused the foregoing Motion Of Defendants InterDigital Communications Corporation And InterDigital Technology Corporation To Dismiss Count Two Of The Complaint to be filed and served this day by the Electronic Court Filing system, where it is available for viewing, and also served by U.S. Mail, postage prepaid, upon the following:

> Gale White, Esquire
> Anthony L. Miscioscia, Esquire
> White and Williams
> 1800 One Liberty Place
> Philadelphia, PA 19103-7395
>
> Attorneys for Plaintiffs

/s/ Arleigh P. Helfer III_____
Arleigh P. Helfer III

Dated: March 13, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NOKIA CORPORATION and NOKIA,　:
INC.,　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　:
　　　　　　Plaintiffs,　　　　:
　　　　　　　　　　　　　　　　:
　　　v.　　　　　　　　　　　　:　　Civil Action No. 05-16-JJF
　　　　　　　　　　　　　　　　:
INTERDIGITAL COMMUNICATIONS　 :
and INTERDIGITAL TECHNOLOGY　 :
CORPORATION,　　　　　　　　　 :
　　　　　　　　　　　　　　　　:
　　　　　　Defendants.　　　　 :

---

Jack B. Blumenfeld, Esquire of MORRIS, NICHOLS, ARSHT & TUNNELL,
Wilmington, Delaware.
Attorney for Plaintiffs.

Richard L. Horowitz, Esquire and David Ellis Moore, Esquire of
POTTER ANDERSON & CORROON, LLP, Wilmington, Delaware.
Of Counsel: D. Dudley Oldham, Esquire, Robert S. Harrell,
Esquire, and Richard S. Zembek, Esquire of FULBRIGHT & JAWORSKI,
LLP, Houston, Texas.
Of Counsel: Dan D. Davison, Esquire of FULBRIGHT & JAWORSKI, LLP,
Dallas, Texas.
Attorneys for Defendants.

---

**MEMORANDUM OPINION**

December 21, 2005
Wilmington, Delaware

**Farnan, District Judge.**

Pending before the Court is Defendants' Motion To Dismiss For Lack Of Jurisdiction Over The Subject Matter Pursuant To Federal Rules Of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3) (D.I. 10). For the reasons discussed, the Motion will be granted in part and denied in part.

**I.  Background**

On January 12, 2005, Plaintiffs filed a Complaint seeking a declaratory judgment that several of Defendants' third generation wireless technology patents ("3G patents") are either invalid or not infringed by Plaintiffs' products. The patents at issue are the subject of three licensing agreements, whereby Plaintiffs are licensed to practice all of Defendants' patents until the end of 2006. Plaintiffs brought the instant action, alleging reasonable apprehension that Defendants would bring suit at the end of the licensing agreements. Additionally, Plaintiffs alleged that Defendants violated Section 43 of the Lanham Act by using false or misleading information in bad faith, thereby inhibiting Plaintiffs' ability to develop technology and damaging Plaintiffs' reputation in the market. Defendants filed the instant Motion, requesting that the Court dismiss Plaintiffs' claims pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3).

1

## II.  Parties' Contentions

By their Motion, Defendants contend that Plaintiffs' Complaint should be dismissed pursuant to Rules 12(b)(1) and 12(h)(3) for failure to plead and prove an actual controversy. Defendants contend that there is no actual controversy because Plaintiffs could not be in reasonable apprehension of a lawsuit when there is a licensing agreement between the parties. Alternatively, Defendants request that the Court exercise its "unique and substantial" discretion and refuse to hear the case because Plaintiffs brought the case for improper purposes. Finally, Defendants contend that Plaintiffs' Lanham Act claim should be dismissed pursuant to Rule 12(b)(6), because Plaintiffs have failed to state a claim under Section 43(a).

In response, Plaintiffs contend that reasonable apprehension of suit exists because the parties' licensing agreement expires at the end of 2006, Defendants have a history of threatening other wireless technology manufacturers with litigation, and Defendants have threatened to sue Plaintiffs.  Alternatively, Plaintiffs contend that the Court should consider a ripeness test or that the Court should exercise its discretion to resolve the dispute because the case is fit for resolution and a declaratory judgment would be useful.  Finally, Plaintiffs contend that they have sufficiently stated a claim under Section 43 of the Lanham Act to survive Defendants' motion to dismiss.

## III. Discussion

A. <u>Whether Plaintiffs' Claims For Declaratory Judgment Should Be Dismissed Pursuant To Federal Rules Of Civil Procedure 12(b)(1) and 12(h)(3)</u>

1. *Standard of Review*

A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of a court to address the merits of a plaintiff's complaint. The motion should be granted where the asserted claim is "insubstantial, implausible, foreclosed by prior decisions of [the] Court, or otherwise completely devoid of merit as not to involve a federal controversy." <u>Coxson v. Commonwealth of Pennsylvania</u>, 935 F.Supp. 624, 626 (W.D. Pa. 1996)(citations omitted).

A motion to dismiss under 12(b)(1) may present either a facial or a factual challenge to subject matter jurisdiction. <u>See</u> <u>Mortensen v. First Fed. Sav. and Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977). A factual challenge to subject matter jurisdiction exists where there is an attack on "the existence of subject matter jurisdiction in fact, quite apart from any pleadings." <u>Id</u>.

When a Court considers a factual challenge to jurisdiction, it does not presume the truth of the plaintiff's allegations, and the existence of disputed material facts will not preclude the court from evaluating for itself the merits of jurisdictional claims. <u>Id</u>. Moreover, the plaintiff has the burden of proof

3

that jurisdiction does in fact exist.  <u>Id</u>.

The Court concludes that the instant case presents a factual challenge because Defendants dispute the existence of the jurisdictional facts alleged in the Complaint.  Thus, the Court is not required to presume the truth of Plaintiffs' allegations, and Plaintiffs bear the burden of proving that jurisdiction exists.

      2.  *Analysis*

The Declaratory Judgment Act "requires an actual controversy between the parties before a federal court may exercise jurisdiction."  28 U.S.C. § 2201(a); <u>EMC Corp. v. Norand Corp.</u>, 89 F.3d 807, 801 (Fed. Cir. 2004).  An actual controversy exists when there is both "(1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity."  <u>Gen-Probe, Inc. v. Vysis, Inc.</u>, 359 F.3d 1376, 1380 (Fed. Cir. 2004) (quoting <u>BP Chems. Ltd. v. Union Carbide Corp.</u>, 4 F.3d 975, 978 (Fed. Cir. 1993)).  A court must look to the circumstances and facts at the time the complaint is filed to determine whether there is an actual controversy.  <u>MedImmune, Inc. v. Centocor, Inc.</u>, 409 F.3d 1376, 1381 (Fed. Cir. 2005).

The parties do not dispute that the second prong, present infringing activity, of the two-part test is satisfied. Rather, the motion turns on the first prong, reasonable apprehension of suit. "When the defendant's conduct, including its statements, falls short of an express charge, one must consider the 'totality of the circumstances' in determining whether that conduct meets the first prong of the test." Arrowhead Indus. Water, Inc. v. Ecolochem, Inc., 846 F.2d 731, 736 (Fed. Cir. 1988) (quoting Goodyear Tire & Rubber Co. v. Releasomers, Inc., 824 F.2d 953, 955 (Fed. Cir. 1987)).

The Court concludes that, under the totality of the circumstances, Plaintiffs have not demonstrated reasonable apprehension of suit. First, and most damaging to Plaintiffs, is the existence of a licensing agreement that does not expire until the end of 2006. While the existence of a licensing agreement is not conclusive as to the Court's jurisdiction, C.R. Bard, Inc. v. Schwartz, 716 F.2d 874, 880 (Fed. Cir. 1983), the Federal Circuit has been reluctant to find reasonable apprehension where a licensing agreement exists. See Gen-Probe, 359 F.3d 1376; MedImmune, 409 F.3d 1376. Furthermore, the Federal Circuit has recently distinguished those cases finding reasonable apprehension despite a licensing agreement from the type of case at bar; in the cases finding reasonable apprehension, there was a breach of the licensing agreement or the plaintiff sought to

5

prevent such a breach. <u>See</u> <u>Gen-Probe</u>, 359 F.3d at 1380 (finding
no reasonable apprehension of suit due to the existence of a
licensing agreement and the absence of two "critical
circumstances" from <u>C.R. Bard</u>: a material breach of the licensing
agreement and a suit brought by the defendant); <u>MedImmune</u>, 409
F.3d at 1381 (distinguishing the case from <u>Cordis Corp. v.</u>
<u>Medtronic, Inc.</u>, 835 F.2d 859 (Fed. Cir. 1987) in which the
licensee also "sought to pay royalties into escrow pendente lite,
and to enjoin the licensor from canceling the license
agreement"). In this case, there is a licensing agreement
between Plaintiffs and Defendants, there has been no breach or
threat of breach, and Defendants have not brought any lawsuits
against Plaintiffs.

Second, where a licensing agreement has been formed, a court
must only consider a defendant's actions occurring after
formation of the licensing agreement. <u>Gen-Probe</u>, 359 F.3d at
1381. Thus, the Court will examine whether the following facts
alleged by Plaintiffs, occurring after formation, give rise to
reasonable apprehension:

- "Since the early 1990s, InterDigital has been accusing
  *every* mobile telephone equipment manufacturer of patent
  infringement." (D.I. 14 at 17).

- "InterDigital was the cause of *all* of the patent
  proceedings to which it has been a party." (<u>Id</u>.).

- "InterDigital also directly filed suit against OKI
  America and Qualcomm in 1993 and against Lucent this
  past year." (<u>Id</u>.).

- "After Nokia initiated the arbitration proceeding to obtain information, InterDigital escalated the proceedings by counterclaiming against Nokia for the massive royalties it promised its shareholders in its press release." (Id. at 9).

- "For at least ten years, through correspondence, licensing presentations, meetings, and public statements, InterDigital has been claiming that Nokia's products infringed its patents." (Id. at 17).

- "In its licensing negotiations, InterDigital has repeatedly referenced its suits against other mobile telephone equipment manufacturers." (Id. at 17-18).

- "InterDigital's CEO, Howard Goldberg, recently threatened Nokia with suit, stating that InterDigital was considering litigation as a means of obtaining 'leverage' in the negotiations with Nokia." (Id. at 18).

The Court concludes that, under the totality of the circumstances, the facts alleged do not give rise to a reasonable apprehension of a lawsuit. As to Defendants' litigation tactics, in the past twelve years, Defendants have brought only three actions to defend their patents. The fact that two of them were brought in 1993, "against two other parties unconnected with [Plaintiffs, is] too remote to make [Plaintiffs'] apprehension of further litigation in [2005] reasonable." Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 883 (Fed. Cir. 1985) (finding that a seven-year difference was too remote). Furthermore, even if Defendants have claimed for ten years that Plaintiffs are infringing their patents, Plaintiffs' reasonableness is belied by the fact that not once in those ten years have Defendants sued Plaintiffs. To the contrary, Plaintiffs have filed lawsuits

against Defendants, most notably, the arbitration Plaintiffs initiated "regarding Nokia's royalty payment obligations...under the existing patent license agreement." (D.I. 15, Ex. G, p. 54). It was hardly escalation of the proceedings for Defendants to counterclaim on their right to receive those royalties. (Id. at 55).

Additionally, as to Defendants' conduct in negotiations for a potential 2006 license, "the Federal Circuit has concluded that the objective test for determining declaratory justiciability is not met 'when a patentee does nothing more than exercise its lawful commercial prerogatives....'" DuPont Dow Elastomers, LLC v. Greene Tweed of Del., Inc., 148 F. Supp. 2d 412, 415 (D. Del. 2001) (quoting Cygnus Therapeutic Sys. v. Alza Corp., 92 F.3d 1153, 1160 (Fed. Cir. 1996)). Mere "'jawboning,' which typically occurs in licensing negotiations," is not sufficient to give rise to reasonable apprehension. Shell Oil Co. v. Amoco Corp., 970 F.2d 885, 889 (Fed. Cir. 1992).

Finally, Plaintiffs' argument is not furthered by its allegation that InterDigital's CEO, Howard Goldberg, recently threatened it with a lawsuit. In the allegedly threatening conversation, Mr. Goldberg was responding to a question in a conference call from an analyst regarding whether Defendants had any leverage in the arbitration that had been initiated by Plaintiffs:

8

> FRANK MARSALA:  Then just a Nokia question on that
> issue.  Is there any leverage that you guys have today?
> Is there anything you can do to influence Nokia to
> bring this matter to a close--here I'm talking about
> things like bringing injunctions against them--shipping
> handsets--things of that sort of [sic].  So, I'm
> curious about that.
>
> HOWARD GOLDBERG:  Let me first say that we certainly
> will look at every point of leverage.  The dynamics in
> a situation such as this are very important.  We will
> look--and have been looking--at how we can drive this
> to a successful resolution.  Through internal and
> external resources.  One of the ways that leverage is
> best used is as a surprise or--certainly you don't want
> to create an anticipation of anything that you may do.
> So the answer is yes.  But I would be very reluctant to
> talk about it and layout our plan for dealing with this
> particular matter.

(D.I. 1, Ex. T, p. 14).  In the Court's view, Mr. Goldberg is
discussing the leverage that Defendants will use to defend their
rights in the arbitration <u>initiated by Plaintiffs</u>.  It would be
illogical to require patent owners to state that they have no
leverage in legal proceedings initiated by a competitor in order
to avoid giving rise to that competitor's reasonable
apprehension.  Thus, the Court finds that the answer by Mr.
Goldberg was "reflexive and obligatory."  <u>Shell</u>, 970 F.2d at 889.

The Federal Circuit has stated that satisfaction of the two-
part test is not a requirement for every declaratory judgment
action.  <u>Fina Oil & Chem. Co. v. Ewen</u>, 123 F.3d 1466, 1470 (Fed.
Cir. 2003).  Plaintiffs, therefore, contend that the Court should
also consider a ripeness test to determine whether there is a
sufficient controversy.  Plaintiffs cite several cases in support

of this standard, but in each of those cases, the court still applied the two-prong test. See Teva Pharm. USA, Inc. v. Pfizer, Inc., 395 F.3d 1324 (Fed. Cir. 2005); Fina Oil, 123 F.3d 1466; GAF Bldg. Materials Corp. v. Elk Corp., 90 F.3d 479 (Fed. Cir. 1996); EMC Corp., 89 F.3d 807. Other cases cited in Plaintiffs' analysis either did not discuss the Declaratory Judgment Act or did not discuss whether an actual controversy existed. See Dow Chem. Co. v. Exxon Corp., 30 F. Supp. 2d 673 (D. Del. 1998); Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573 (Fed. Cir. 1993). Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs, 330 F.3d 1345 (Fed. Cir. 2003)  Moreover, even if the case were ripe for review, the Court still could not hear the case unless an actual controversy existed, which the Court has concluded does not. Accordingly, the Court declines to apply a test different from the two-prong test applied above.

In sum, the Court concludes that Plaintiffs did not have a reasonable apprehension of litigation at the time the Complaint was filed. Therefore, there is no actual controversy to support the Court's jurisdiction over the declaratory judgment claims under the Declaratory Judgment Act. Accordingly, the Court will dismiss Plaintiffs' declaratory judgment claims for lack of subject matter jurisdiction.

10

B.   Whether Plaintiffs' Claim Under Section 43 Of the
     Lanham Act Should Be Dismissed Pursuant to Rule
     12(b)(6) For Failure To State A Claim

     1.   *Legal Standard*

Defendants also request that the Court dismiss Plaintiffs'
claim under Section 43 of the Lanham Act pursuant to Rule
12(b)(6) for failure to state a claim upon which relief may be
granted.  Fed. R. Civ. P. 12(b)(6).  The purpose of a motion to
dismiss is to test the sufficiency of a complaint, not to resolve
disputed facts or decide the merits of the case.  Kost v.
Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Dismissal is only
appropriate when "it appears beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

     2.   *Analysis*

To state a claim under § 43(a) of the Lanham Act, a
plaintiff must allege that: (1) defendant made false or
misleading statements as to its products, or those of the
plaintiff; (2) there was actual deception or at least a tendency
to deceive a substantial portion of the intended audience; (3)
the deception was material in that it is likely to influence
purchasing decisions; (4) the advertised goods traveled in
interstate commerce; and (5) there is a likelihood of injury to
the plaintiff in terms of declining sales, loss of good will,
etc.  Johnson & Johnson-Merck Consumer Pharms. Co. v. Rhone-

11

Poulenc Rorer Pharms., Inc., 19 F.3d 125, 129 (3d Cir. 1994).

Additionally, a plaintiff must demonstrate that the patent holder

acted in bad faith. Zenith Elecs. Corp. v. Exzec, Inc., 182 F.3d

1340, 1353 (Fed. Cir. 1999).

Accepting as true all allegations in Plaintiffs' Complaint

and drawing all reasonable inferences therefrom, the Court

concludes that, at this juncture, Plaintiff has stated a claim

under Section 43 of the Lanham Act sufficient to survive

Defendants' motion to dismiss.  Plaintiffs allege that Defendants

made false or misleading statements in bad faith to the effect

that Defendants' patents cover Plaintiffs' 3G products.

Plaintiffs further allege that these statements are material and

"have caused actual deception or have a tendency to deceive."

(D.I. 1 at 35).  Additionally, Plaintiffs have alleged that the

misrepresentations have injured Plaintiffs in their business and

have damaged their reputations.

The requirement that the advertised goods have traveled in

interstate commerce is not as clearly alleged as the other

requirements.  Drawing all reasonable inferences in the light

most favorable to Plaintiffs, however, the Court concludes that

the statement "Nokia is currently designing, rolling out and

further developing 3G products in the United States that will be

manufactured and sold by Nokia after 2006" means that at least

some 3G products have already been developed and entered

interstate commerce.[1]  (D.I. 1 at 6).  Accordingly, the Court
will deny Defendants' motion to dismiss pursuant to Rule
12(b)(6).

**IV.  Conclusion**

For the reasons discussed, Defendants' Motion To Dismiss For
Lack Of Jurisdiction Over The Subject Matter Pursuant To Federal
Rules Of Civil Procedure 12(b)(1), 12(b)(6), and 12(h)(3) (D.I.
10) will be granted in part and denied in part.

An appropriate Order will be entered.

---

[1]Defendants quote this statement to demonstrate that
Plaintiffs are suing on future products.  Read in the context of
the entire paragraph and in the light most favorable to
Plaintiffs, however, the Court concludes the statement means that
some 3G products have already been made ("rolled out") and will
continue to be made after the licensing agreement expires
("further developed").