**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, et al., | : <br> : <br> : Civil Action No. 06-0165 <br> : |
| Plaintiffs, | : <br> : |
| v. | : |
| INTERDIGITAL COMMUNICATIONS CORPORATION, et al., | : <br> : <br> : |
| Defendants. | : <br> : |

## <u>ORDER</u>

AND NOW, this      day of                  , 2006, upon consideration of the

Motion of Defendants, InterDigital Communications Corporation and InterDigital Technology

Corporation to Dismiss Count Two of the Complaint, without prejudice, and the opposition

thereto filed by Plaintiffs, Hartford Fire Insurance Company and Hartford Casualty Insurance

Company, it is hereby ORDERED that Defendants' Motion to Dismiss Count Two is DENIED.

Defendants shall answer Plaintiffs' Complaint within thirty (30) days of the date of this Order.

IT IS SO ORDERED:

_____
                                                                                    J.

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY, et al., | : : : | |
| | : | Civil Action No. 06-0165 |
| Plaintiffs, | : : | |
| v. | : | Case 2:06-cv-00165-JG    Document 13-1    Filed 04/10/2006    Page 2 of 28 |
| INTERDIGITAL COMMUNICATIONS CORPORATION, et al., | : : : | |
| Defendants. | : : : | |

**RESPONSE OF PLAINTIFFS, HARTFORD FIRE INSURANCE COMPANY AND HARTFORD CASUALTY INSURANCE COMPANY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNT TWO OF THE COMPLAINT**

Plaintiffs, Hartford Fire Insurance Company and Hartford Casualty Insurance Company (collectively "Hartford"), by and through their undersigned counsel, hereby oppose Defendants' Motion to Dismiss Count Two of Hartford's Complaint. The case law and reasons supporting Hartford's Opposition to Defendants' Motion are set forth in the accompanying Memorandum of Law, which is incorporated herein by reference. Pursuant to Local Rule 7.1(f), Hartford requests oral argument.

**WHEREFORE**, Hartford requests that this Court enter an Order in the form proposed herewith denying Defendants' Motion to Dismiss Count Two of the Complaint.

Respectfully submitted,
**WHITE AND WILLIAMS LLP**

By: _____

Gale White, Esquire
Anthony L. Miscioscia, Esquire
1800 One Liberty Place
Philadelphia, PA 19103-7395
Phone: 215.864.6234
Attorneys for Plaintiffs

Dated: April 10, 2006

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, et al., | : : : |
|  | : Civil Action No. 06-0165 |
| Plaintiffs, | : : |
| v. | : |
|  | : |
| INTERDIGITAL COMMUNICATIONS CORPORATION, et al., | : : : |
|  | : |
| Defendants. | : |
|  | : |

### HARTFORD FIRE INSURANCE COMPANY AND HARTFORD CASUALTY INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNT TWO OF THE COMPLAINT

In this insurance coverage action, Hartford Fire Insurance Company and Hartford Casualty Insurance Company (collectively "Hartford") seek a declaration that they have no duty to defend or indemnify InterDigital Communications Corporation ("ICC") and InterDigital Technology Corporation ("ITC") (collectively "InterDigital") for a suit brought against InterDigital by its competitors, Nokia Corporation and Nokia, Inc. (collectively "Nokia"). InterDigital does not challenge Hartford's right to a declaration as to the duty to defend, but rather claims that Hartford cannot seek a declaration that it has no duty to indemnify. InterDigital asserts that the duty to indemnify *is not ripe* and cannot be decided until *after* the underlying *Nokia* action is over. That is not so.

InterDigital also claims that "[t]his Court cannot determine Hartford's duty to indemnify without making factual determinations that are crucial to the underlying litigation." InterDigital's Memorandum at p. 20. This also is not so.

There are many facts (and legal issues) that will <u>not</u> be determined in the *Nokia* action, which could prove that Hartford has no duty to indemnify -- such as when allegedly false statements were made, and whether all of Nokia's injury arose out of violations of intellectual property rights. These facts (and other legal and factual issues discussed herein) could lead to a conclusion that Hartford has no duty to indemnify InterDigital for the *Nokia* action.

*Interestingly, many of these facts are known to InterDigital and, by this motion, InterDigital seeks to preclude Hartford from learning them.*

If the Court were to conclude that Hartford cannot proceed to adjudicate whether it has a duty to indemnify InterDigital before the *Nokia* action is concluded (and the Court concludes that there is a duty to defend), Hartford would be in the prejudicial position of having to defend Nokia's very expensive lawsuit[1] for as long as that suit drags out, with no way to prove before judgment that there is no coverage. Pennsylvania case law[2] is clear that an insurer may cut off its defense and indemnity obligation if it can prove, *before* trial, that there is no coverage. Hartford therefore has the right to seek a determination now of whether it has a duty to indemnify InterDigital for the *Nokia* action.

---

[1]      The *Nokia* complaint avers that InterDigital has been involved in many suits, including the *Nokia* action, involving the interpretation and application of numerous patents. Such suits are very expensive to defend and in fact, in one similar case, InterDigital's defense costs were nearly $28 million. *See InterDigital Communications Corp. v. Federal Ins. Co.*, 392 F. Supp. 2d 707 (E.D. Pa. Oct. 3, 2005) (involving dispute over fee agreement entered into between InterDigital and another insurer, Federal, which agreement InterDigital later sought to avoid after Federal sought to recover nearly $27.8 million paid to defend InterDigital in the *Ericsson* case).

[2]      Hartford relies upon Pennsylvania law in this Opposition because that is the law cited by InterDigital in its Motion papers. *See* InterDigital's Memorandum of Law at p. 8 (averring "Pennsylvania law will likely govern").

## I.  BACKGROUND[3]

### A.  Hartford's Complaint Against InterDigital

Hartford seeks a declaration that it has no duty to defend (Count One) or indemnify

(Count Two) InterDigital in connection with an underlying lawsuit filed by Nokia against

InterDigital (the "*Nokia* action" or "*Nokia* complaint").[4]  InterDigital's Motion to Dismiss is

directed solely to Count Two, concerning indemnity.

### B.  The Underlying *Nokia* Complaint

On or about January 12, 2005, Nokia filed the *Nokia* complaint against ICC and ITC.

The *Nokia* complaint sets forth 21 causes of action - 20 of which seek declarations of non-

infringement and/or invalidity as to various patents purportedly held by InterDigital relating to

mobile phone technology and one of which sets forth a claim for alleged violations of the

Lanham Act.  *See Nokia* complaint, attached as Ex. A to Hartford's Complaint.

The *Nokia* complaint remains pending against InterDigital; however, by Memorandum

Opinion dated December 21, 2005, the United States District Court for the District of Delaware

dismissed Nokia's declaratory judgment claims relating to non-infringement and patent

invalidity for lack of jurisdiction.  *Nokia Corp. v. InterDigital Communications,* 2005 WL

3525696 (D. Del. Dec. 21, 2005).

Nokia's Lanham Act claim (Count XXI of the *Nokia* complaint) alleges that InterDigital

has made false or misleading representations about InterDigital's patents and Nokia's products

and the application of InterDigital's patents to Nokia's products.  Nokia asserts that these

statements have damaged Nokia's business and reputation in the wireless market.  *See Nokia*

---

[3]     The Background facts are taken from Hartford's Complaint.  *See NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001) (treating factual allegations as true in "facial" attack).

[4]     Pursuant to Count Three, Hartford seeks a declaration of whether ITC is entitled to coverage.

complaint, ¶ 142. The *Nokia* complaint further alleges that InterDigital made these false

statements in "bad faith" and with "knowledge of their falsity." *See Nokia* complaint, ¶ 146.

### C.    The Hartford Fire CGL Policies

Harford Fire issued two Commercial General Liability policies to ICC as the named

insured effective for the period December 22, 2003 to December 22, 2004 and the period

December 22, 2004 to December 22, 2005.[5]

Pursuant to these policies, Hartford Fire agreed to indemnify "those sums that the insured

becomes legally obligated to pay as damages because of 'personal and advertising injury' to

which this insurance applies" provided that the offense arises out of the insured's business and

was committed in the "coverage territory" during the policy period.[6] Hartford is not obligated,

however, to indemnify (or defend) a "suit" that does not seek covered damages.

The Hartford Fire policies define "personal and advertising injury" as injury, including

consequential "bodily injury," arising out of an offense listed in the definition, including:

> (4)    Oral, written or electronic publication of material that slanders or
> libels a person or organization or disparages a person's or
> organization's goods, products or services;

The Hartford Fire policies bar coverage for "personal and advertising injury" to the

extent precluded by the various policy exclusions, including but not limited to:

> a.    Knowing Violation of Rights of Another
>
> "Personal and advertising injury" caused by an offense committed
> by, at the direction or with the consent or acquiescence of the
> insured with the expectation of inflicting "personal and advertising
> injury."

---

[5]    Hartford Casualty also issued two umbrella policies to ICC, the relevant provisions of which policies largely, for purposes of the instant Motion, follow form to those of the Hartford Fire policies.

[6]    On information and belief, InterDigital does not contend that the *Nokia* complaint implicates "bodily injury" or "property damage" coverage and thus those coverage provisions are not discussed herein.

    b.    Material Published with Knowledge of Falsity

"Personal and advertising injury" arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.

    c.    Material Published Prior to Policy Period

"Personal and advertising injury" arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period.

Case 2:06-cv-00703-JG    Document 13-1    Filed 04/10/2006    Page 7 of 28

* * *

    g.    Quality or Performance of Goods - - Failure to Conform to Statements[7]

"Personal and advertising injury" arising out of the failure of goods, products, or services to conform with any statement of quality or performance made in your "advertisement" or on "your web site";

* * *

    i.    Infringement of Intellectual Property Rights

"Personal and advertising injury" arising out [of] any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

## II.    ARGUMENT

### A.    Declaratory Judgment Act

Pursuant to the Declaratory Judgment Act, courts have the power to make declarations regarding "the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201.  As the Supreme Court has explained, under the Declaratory Judgment Act, "the question in each case is whether the facts alleged, under all the circumstances, show[] that there is a substantial controversy, between parties having adverse legal interests, of sufficient

---

[7]    Exclusions g. and i. are added/amended to the policy by the Cyberflex endorsement, amending Coverage B.

immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941).  Moreover, "[t]he extent of an insurer's liability concerning insurance coverage may properly be resolved in a declaratory judgment action." *Ideal Mut. Ins. Co. v. Limerick Aviation Co.,* 550 F. Supp. 437, 441 (E.D. Pa. 1982).

### B.   Hartford May Cut Off *Both* Its Defense Obligation *And* Its Indemnity Obligation, If Any, *Before* The Conclusion Of The *Nokia* Action

Case 1:06-cv-00422-JJF   Document 13   Filed 04/10/2006   Page 8 of

Before turning to InterDigital's "ripeness" argument, we note as a preliminary (and dispositive) matter that InterDigital has ignored the body of Pennsylvania law which clearly allows an insurer to seek a judicial determination of its obligations (both defense and indemnity) *before* judgment is entered in the underlying case.  Under InterDigital's view of how this insurance coverage action would proceed, Hartford would be permitted to litigate whether Hartford has a duty to defend the *Nokia* suit.  If InterDigital succeeds and the Court were to conclude that Hartford had a duty to defend (which Hartford denies), Hartford would then be *denied its right* to determine the extent, if any, of coverage owed under its policies.  For instance, Hartford would be precluded from:

(1)   discovering the "true facts" that could cut off Hartford's duty to defend,

(2)   discovering facts that would show the extent of Hartford's duty to indemnify -- *i.e.* what claims might be covered and what claims are not,[8]

(3)   discovering facts that could eliminate coverage for one of the two years of policies issued by Hartford,

(4)   discovering the "true facts" that could relieve Hartford of its duty to indemnify, and

(5)   doing anything, other than paying defense costs.

---

[8]   For example, the Hartford policies do not cover damages arising out of publication of material first published before the Hartford policies incepted.  Hartford would not be able to determine this.

This result is contrary to Pennsylvania law and is prejudicial to Hartford. Courts applying Pennsylvania law *have permitted* an insurer to cut off *both* its defense *and* its indemnity obligation, if any, *before* final resolution of the underlying action for which coverage is sought.

> **a.    Hartford cannot owe indemnity if it has no duty to defend**

Certainly, an insurer may obtain a declaration *prior to* the conclusion of an underlying action that the insurer lacks *both* a duty to defend and any duty to indemnify based upon a comparison of the allegations in the underlying complaint to the terms of the applicable insurance policy. *E.g. First Oak Brook Corp. Syndicate v. Comly Holding Corp.*, 93 F.3d 92 (3d Cir. 1996) (finding no duty to defend or indemnify).

Under Pennsylvania law, "once it is determined that there is no obligation to provide the broader duty to defend, the more narrow duty to indemnify is also extinguished." *Brandt v. U.S. Liab. Ins. Group*, 70 Pa. D. & C. 4th 449, 458 (Comm. Pleas Lancaster Cty. 2005) (finding that it was proper to award declaration pursuant to Pennsylvania's Declaratory Judgments Act that insurer owned no duty to defend or indemnify due to policy exclusion). Thus, if Hartford has no duty to defend, there can be no duty to indemnify. *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994); *see also Mutual Benefit Ins. Co. v. Haver*, 555 Pa. 534, 539 n. 1, 725 A.2d 743, 746 n. 1 (1999) (rejecting claimants' contention that their complaint alleged negligence; Pennsylvania Supreme Court held that factual allegations in underlying complaint fell within knowing endangerment exclusion and thus ruled that insurer had no duty to defend or indemnify underlying action).[9]

---

[9]    Presumably, InterDigital does not dispute that this Court may rule that Hartford has no duty to indemnify if Hartford succeeds on Count One and proves that it has no duty to defend the *Nokia* action, as the duty to defend is broader than the duty to indemnify. *See Lucker* 23 F.3d at 821 ("summarily" disposing of duty to indemnify where court found no duty to defend). As such, at a minimum, until such time as this Court decides Count One and

### b.    Even if Hartford is initially found to owe a defense, Hartford still may have no duty to indemnify InterDigital

An insurer that is *initially* found to owe a duty to defend (which Hartford denies) still

may obtain declaratory relief limiting, or terminating, any defense obligation.  In Pennsylvania,

as explained by the Third Circuit, the "duty to defend remains with the insurer *until facts*

sufficient to confine the claims to liability not within the scope of the policy *become known to*

Case 1:06-cv-00422-JJF    Document 22    Filed 07/07/2006    Page 10 of 28

*the insurer*." *Lucker*, 23 F.3d at 813 (emphasis added).  Similarly, *even if* Hartford has a duty to

defend as InterDigital avers (and Hartford denies), Hartford ultimately may not owe any

indemnity because the duty to indemnify is narrower than the duty to defend and is not based

solely upon the allegations of the underlying complaint.  *First Oak Brook Corp.*, 93 F.3d at 95

(finding that district court correctly noted that "indemnification is based on actual liability" not

allegations in complaint).

In *General Accident Ins. Co. of Am. v. Allen*, 547 Pa. 693, 692 A.2d 1089 (1997), an

insured argued (like InterDigital does here) that the court could not determine the duty to

indemnify until the underlying action was fully resolved, including the exhaustion of all appeals.

The Pennsylvania Supreme Court rejected the insureds' contentions.  Recognizing the

appropriateness of the insurer's pre-judgment/settlement declaratory judgment action brought

pursuant to Pennsylvania's declaratory judgment statute, the court noted:

> The question before a court in a declaratory judgment action is not
> whether the insurer owes indemnification in a specific amount,
> which would be a premature inquiry absent a full resolution of the
> underlying action.  Instead, the question is whether the insurer has
> a duty to indemnify the insured in the event of liability in the
> underlying action.

---

determines whether Hartford has a duty to defend, Count Two not only is ripe but also may be decided in Hartford's favor.  Thus, InterDigital's Motion to Dismiss is really only directed to the situation where Hartford is found initially to owe a duty to defend, but then seeks to terminate/cut-off that duty (or limit the scope thereof) and/or seeks to deny any duty to indemnify.

*Id.*, 547 Pa. at 707, 692 A.2d at 1095. The *Allen* court thus held that "[a] court can answer such a question because it is within the scope of a court's power pursuant to the [Pennsylvania] Declaratory Judgments Act." *Id.; see also Harleysville Mut. Ins. Co. v. Madison*, 415 Pa. Super. 361, 609 A.2d 564 (1992) (insurer can seek determination of obligations to insured before conclusion of underlying action).

While *Allen* and *Madison* concern state courts applying the Pennsylvania Declaratory Judgment Act, the result here should be no different merely because a federal court is deciding a claim pursuant to the federal declaratory judgment statute. *See Corporate Aviation*, 2005 WL 1693931 at *3 (noting that federal "Declaratory Judgment Act permits litigants to determine the validity of a security interest ... 'before the dispute grows into a contract violation or a foreclosure proceeding'").

*Even if* InterDigital defeats Hartford's request for a declaration that it has no duty to defend, Hartford may not owe indemnity for a number of reasons – many of which depend upon resolution of legal issues or factual issues which Hartford is entitled to pursue now. Hartford should not be forced to await the conclusion of the *Nokia* action before having this Court decide those legal and factual issues. Instead, this Court should allow Hartford to pursue a declaration that it has no duty to indemnify by discovering, *inter alia*:

- what statements, if any, InterDigital made about Nokia or its products -- to determine whether InterDigital libeled, slandered or disparaged Nokia or its products) and thus whether the Nokia action involves an enumerated personal or advertising injury offense,

- when any such statements were made and by whom -- to determine whether an insured made such statements during the Hartford policy periods,

- the circumstances surrounding those statements -- to determine whether a policy exclusion applies because, for example, the insured knew its statements were false, the insured expected to inflict personal or

- 9 -

> advertising injury or the injury alleged arises out of any violation of
> intellectual property rights, and

- whether InterDigital has any other insurance applicable to this matter.

Should this Court grant InterDigital's Motion to Dismiss, this Court not only will simply

delay the inevitable need to resolve these legal and factual issues but also will deny Hartford the

ability to cut short any duty to defend that the Court may find and/or force Hartford to consider

settlement demands which this Court otherwise may hold that Hartford is not obligated to pay.

Case 2:06-cv-00165-JG     Document 13-1     Filed 04/10/2006     Page 12 of 28

### C.    Rule 12(b)(1) Standard

InterDigital challenges this Court's subject matter jurisdiction under Rule 12(b)(1) by

arguing that Hartford's claim for a declaration that it has no duty to indemnify InterDigital is not

ripe for judicial review.  InterDigital thus makes a "facial attack"[10] on Hartford's complaint. *See*

*Corporate Aviation Concepts, Inc. v. Multi-Service Aviation Corp.*, 2005 WL 1693931 at *2 n.6

(E.D. Pa. July 19, 2005) (concluding that ripeness attack was a "facial" challenge).

"When ruling on a 'facial' attack to subject matter jurisdiction under Rule 12(b)(1),

courts must 'treat the allegations of the Complaint as true and afford the plaintiff the favorable

inferences to be drawn from the Complaint.'" *Corporate Aviation*, 2005 WL 1693931 at *2

(citing *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001)).

Hartford's complaint avers, *inter alia*, that the *Nokia* action does not implicate indemnity

to the extent Nokia's claims do not involve an enumerated "personal and advertising injury"

offense committed during the Hartford policy period and to the extent that coverage is precluded

by a Hartford policy exclusion.  Hartford's complaint further notes that Nokia expressly alleges

in its Lanham Act claim that InterDigital made the false statements at issue with "knowledge of

---

[10]        A party makes a "facial" challenge to subject matter jurisdiction, as opposed to a "factual" challenge, when
it attacks the complaint on its face.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

their falsity." *See* Hartford's Complaint at ¶ *18; see also Nokia* complaint at ¶ 146. If Hartford's

allegations are proven true, they preclude any possibility of coverage and thus entitle Hartford to

a declaration that it has no duty to indemnify InterDigital.

### D.    Standard for Determining Whether an Action Is Ripe

The Supreme Court has established two fundamental considerations to determine whether

a suit is ripe for adjudication:  (1) "the fitness of the issues for judicial determination," and

(2) "the hardship to the parties of withholding court consideration." *Corporate Aviation*, 2005

WL 1693931 at *3 (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on*

*other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).[11]

As the Third Circuit has explained, "[t]he problem of justiciability is especially

troublesome in a declaratory judgment action, where the court may be asked to decide a case

based on events that have not yet and may not occur. ... ***Where, however, the essential facts***

***establishing a right to relief, including declaratory relief, have already occurred, the case is***

***justiciable.***" *Riehl v. Travelers Ins. Co.*, 772 F.2d 19, 22 (3d Cir. 1985) (emphasis added).

Here, the essential facts have already occurred – namely, InterDigital's alleged making of

knowingly false statements.  Thus, declaratory relief may be granted notwithstanding the fact

that the insured's liability has not yet been fixed in a sum certain.  *See id.* ("[t]he only events

which have yet to occur are the expenditure of funds by Riehl for clean-up and the entry of

judgment imposing liability on Riehl for the toxic waste damage").  "[N]either immediate

---

[11]    To the extent that InterDigital applies the three factor ripeness test in *Step-Saver Data Sys., Inc. v. WYSE Tech*, 912 F.2d 643 (3d Cir. 1990), this Court need not consider such test separately.  "[T]he Third Circuit has made it clear that the *Step-Saver* test merely 'alters the heading under which various factors are grouped.'" *Id.*, 2005 WL 1693931 at *3 n.7 (quoting *Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 323 n.4 (3d Cir. 1998)).  Since *Step-Saver*, the Third Circuit has "employed both tests." *Philadelphia Fed'n of Teachers*, 150 F.3d at 323 n.4; *see also Corporate Aviation*, 2005 WL 1693931 at *3 n.7 (quoting same).  Nonetheless, for the reasons explained herein, Count Two also survives the *Step-Saver* test.

- 11 -

liability for damages, nor a liquidation to the extent of an insurer's indemnification obligation, is

necessary in this Circuit to establish a justiciable controversy." *Id.* at 22-23.

### E.   Hartford's Claim for Indemnity Is "Fit" For Judicial Determination Now

Under the first part of the ripeness test -- the "fitness" inquiry, courts look to "whether

the issue is purely legal (as against factual), the degree to which the challenged action is final,

whether the claim involves uncertain and contingent events that may not occur as anticipated or

at all, the extent to which further factual development would aid decision, and whether the

parties to the action are sufficiently adverse." *NE Hub Partners,* 239 F.3d at 342 n.8.  Under this

standard, Hartford's indemnity claim is fit for determination now.

### 1.   Hartford and InterDigital have adverse interests

The first prerequisite for a finding of ripeness in a declaratory judgment action is that

"the defendant [is] so situated that the parties have adverse legal interest." *Id.* at 648 (quoting

10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2757, 582-83 (2d Ed.

1983).  "Parties' interests are adverse where harm will result if the declaratory judgment is not

entered." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995).

While it is true under Pennsylvania law that claims for indemnification arise only where

the party seeking indemnity has made a payment on the underlying claim (*e.g. Ivensys, Inc. v.

Am. Mfg. Corp.,* 2005 U.S. District LEXIS 3961 (E.D. Pa. Mar. 15, 2005)), the interests of

Hartford and InterDigital are adverse notwithstanding the lack of a judgment or settlement in the

*Nokia* action.  "[W]here an insurer is denying coverage to its insured with substantial financial

exposure involved 'an actual controversy exists.'"   *Ideal Mut. Ins. Co. v. Limerick Aviation Co.*,

550 F. Supp. 437, 441 (E.D. Pa. 1982).

- 12 -

As long as the underlying claims against InterDigital remain pending and InterDigital continues to demand that it is entitled to indemnity from Hartford,[12] Hartford is being asked not only to pay InterDigital's defense costs but also to then assume the potential exposure to Hartford should it reject a settlement demand with its policy limits.

"One of the primary purposes behind the Declaratory Judgment Act was to enable

plaintiffs to preserve the status quo before irreparable damage was done." *Step-Saver*, 912 F.2d at 648, 649. Given the likelihood that Hartford will be asked to fund a judgment or settlement against InterDigital and the potential adverse consequences to Hartford in the event it is deemed to have refused, in bad faith, to settle within policy limits when presented with the opportunity to do so, it is necessary for this Court to rule on Count Two to preserve the status quo.

In *River Thames Ins. Co. v. 5329 West, Inc.*, 1995 WL 241490 (E.D. Pa. April 21, 1995), this Court granted in part and denied in part an insured's Rule 12(b)(1) motion to dismiss a declaratory judgment action. The insurer, Thames, had agreed to defend its insured, Big Jim's, under a reservation of rights. While that defense was being provided and the underlying action was still pending, Thames also filed a coverage action, asking this Court to declare that Thames had no legal duty to defend or indemnify Big Jim's because the underlying lawsuit fell within the assault and battery and liquor liability exclusion clauses. Thames also claimed that even if it must defend and indemnify the underlying lawsuit, it had no duty to indemnify Big Jim's for punitive damages. Big Jim's moved to dismiss those counts, arguing that they were not ripe.

---

[12]    InterDigital's repeated demands for coverage further evidence the adverse interests of the parties. After InterDigital initially tender the *Nokia* complaint to Hartford for defense and indemnity, Hartford denied coverage by letter dated April 5, 2005. *See* Hartford Complaint at ¶ 41. Thereafter, InterDigital challenged Hartford's declination, arguing that the Lanham Act allegations within the *Nokia* complaint constitute a "personal and advertising injury." *See id.* at ¶ 43. On June 6, 2005, Hartford reaffirmed its declination of coverage. *See id.* at ¶ 44. On October 12, 2005, InterDigital again challenged Hartford's declination. *See id.* at ¶ 45. Following InterDigital's repeated demands for defense and indemnity and its repeatedly disputing Hartford's coverage denial, Hartford filed this lawsuit seeking a judicial determination concerning the scope of its rights and obligations, if any, under the Hartford policies with respect to the *Nokia* action. *See* Hartford Complaint.

- 13 -

Applying the *Step-Saver* test, this Court agreed to dismiss Thames's request for a declaration that it had no duty to indemnify punitive damages because "[t]he underlying lawsuit … does not seek punitive damages. Accordingly, a declaration concerning Thames's duty to pay punitive damages would be an abstract advisory opinion." *Id.* at *2.

This Court then **denied** the insured's request to dismiss the insurer's count seeking a

declaration that it had no duty to indemnify based upon the policy exclusions. *Id.* This Court reasoned that the applicability of the liquor liability exclusion was a matter of genuine controversy and concluded that, while the question of whether the insured had served alcohol to the shooter was still undetermined, the liquor liability exclusion could apply to the underlying lawsuit. *Id.* Finding that the "exclusion's applicability is therefore a matter of substantial dispute, resolution of which will immediately impact the parties' respective legal interests", this Court held that the question was ripe for adjudication. *Id.*

The situation here is no different. Count Two of Hartford's Complaint raises issues concerning the scope of the policies' Insuring Agreements and the applicability of policy exclusions – which matters are in substantial dispute between Hartford and InterDigital and the resolution of which will immediately impact the parties' respective legal interests. Should this Court not rule on Hartford's indemnity claim now, Hartford will be harmed by being precluded from conducting discovery needed to determine whether it would owe indemnity and whether Hartford thus has an obligation to consider a settlement demand within policy limits.[13]

---

[13]    Further, the potential costs in dispute are staggering. While Hartford is not certain of the amounts in dispute in the *Nokia* action, it has been reported that that InterDigital has been awarded nearly $250 million in an arbitration with Nokia concerning what may be either the same or similar patents (in response to InterDigital's demand of Nokia for $500 million in royalties). *See* Ex. A hereto.

While Hartford acknowledges that some courts have ruled to the contrary and found parties' interests were not adverse,[14] those cases are either improperly decided or distinguishable. Since Hartford's duty to indemnify may ultimately turn upon the resolution of legal and/or factual issues which will not be decided in the *Nokia* action, Hartford should be permitted to pursue its claim that it has no duty to indemnify InterDigital and to conduct that discovery now

so that its indemnity obligation, if any, can be clarified before any settlement demand or judgment is presented to Hartford for payment.

### 2.    This Court can definitively determine that Hartford owes no duty to indemnify InterDigital

For a declaratory judgment to be conclusive, the dispute must be based on a "real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 241 (1937).

In Count Two, Hartford seeks a definitive declaration concerning whether it has any indemnity obligation. Notwithstanding InterDigital's arguments to the contrary, a declaration by this Court would not amount to a mere advisory opinion. The declaration sought by Hartford is based on legal and factual issues from which the Court can make definite findings. Hartford's indemnity claim is not based upon contingent events that may not occur.

### a.    Hartford's indemnity claim presents several purely legal issues

First, Hartford's indemnity claim presents several *purely legal inquiries* – such as:

- whether, based upon the allegations in the *Nokia* complaint, the intellectual property exclusion bars all coverage, and

---

[14]    *E.g. Westport Ins. Corp. v. Howell*, 2005 WL 1124092 at *2 (E.D. Pa. May 10, 2005) (finding the parties interests were not adverse).

- 15 -

- whether Nokia's *express* allegation that InterDigital made false statements in "bad faith" and with "knowledge of their falsity" bars coverage as a matter of law.

These issues concern purely legal questions which this Court may decide now.

### b. Hartford's indemnity claim also raises factual issues that will not be decided in the *Nokia* action

Should this Court not decide the legal issues in Hartford's favor, then this Court will need

to consider several *factual issues* which may preclude coverage – many of which will not be

decided in the *Nokia* action.

"Ordinarily, a claim is unfit due to insufficient factual development when a plaintiff

cannot allege facts with sufficient specificity because no concrete factual setting exists."

*Corporate Aviation*, 2005 WL 1693931 at *4. Here, however, a concrete factual setting does

exist. InterDigital's alleged actions giving rise to Nokia's claims have already occurred. **What**

**InterDigital fails to acknowledge, however, is that while *it* may know the true facts, those**

**facts have not yet been made known to *Hartford*.** Through its Motion, InterDigital

impermissibly seeks to preclude Hartford from learning the facts already known to InterDigital.

Count Two should be allowed to proceed so Hartford can discover the true, "concrete"

facts surrounding Nokia's claims and thus determine whether the claims fall outside the Insuring

Agreements and/or fall within one of the policy exclusions. Hartford is entitled to learn now,

*inter alia*:

- whether InterDigital made any libelous, slanderous or disparaging statements during the Hartford policy period,[15]

---

[15]    This discovery is needed for several reasons. First, the Nokia complaint does not allege when any injurious statements were published. Statements published before or after the Hartford policy periods cannot give rise to a duty to indemnify. Second, Nokia does not expressly assert a claim for libel, slander or disparagement. Rather, Nokia alleges that InterDigital violated the Lanham Act. While the Lanham Act makes certain "false" statements actionable, it is not necessary that such statement be libelous, slanderous or disparaging – which is all that the Hartford policy covers under the personal and advertising injury offense at issue.

- whether any such statements were first published prior to the Hartford policy period,

- whether InterDigital knew such statements to be false or expected to injure Nokia,

- whether Nokia's alleged injury arises out of any intellectual property rights,[16] and

- whether InterDigital has other insurance that applies to some or all of the amounts claimed by Nokia.

Case 2:06-cv-00165-JG     Document 13-1     Filed 04/10/2006     Page 19 of 28

These facts relevant to indemnity may be discerned by Hartford "with greater specificity without the occurrence of some future event." *See Corporate Aviation*, 2005 WL 1693931 at *4.

### F.   Hartford Will Suffer Harm Should Its Indemnity Claim Not Be Adjudicated Now

Under the second part of the Supreme Court's ripeness test – the "hardship" inquiry, courts evaluate "whether a plaintiff faces a direct and immediate dilemma, such that lack of review would put it to costly choices." *NE Hub Partners,* 239 F.3d at 342 n.8.

This Court's ruling on the indemnity issues would be of significant practical help to the parties as there are a number of direct and immediate dilemmas which Hartford will face should this Court refrain from deciding now whether Hartford has a duty to indemnify InterDigital. For example, should this Court find that Hartford has a duty to defend based upon the allegations in the *Nokia* complaint, but then rule that Hartford may not seek to determine its duty to indemnify now, Hartford will then be forced to defend the *Nokia* action to its conclusion, without being permitted an opportunity to terminate that defense as is permitted under Pennsylvania law. Given that Pennsylvania courts have not yet recognized an insurer's right to reimbursement of

---

[16]   Pursuant to the Infringement of Intellectual Property Rights exclusion, Hartford has no duty to indemnify InterDigital to the extent that the *Nokia* action alleges injury arising out of any violation of any intellectual property rights. Unless InterDigital is willing to stipulate that there is nothing at issue in the Nokia action which does not relate to intellectual property violations, Hartford is entitled to discovery what intellectual property violations are at issue and whether Nokia's injury arises of out any such violations.

defense costs incurred defending an uncovered claim, precluding discovery and adjudication of those issues now in essence forced Hartford to pay for the full defense.[17]

Additionally, should Hartford not be permitted to terminate its defense or indemnity obligations prior to the conclusion of the *Nokia* action, Hartford will be forced to decide whether to attempt settlement with InterDigital to cut off future defense costs or to risk the possibility of

an adverse verdict (which ultimately may not be covered). Similarly, if Hartford's duty to indemnify is not resolved now, Hartford will need to determine whether to post reserves for any indemnity exposure. Finally, given Pennsylvania law potentially exposing an insurer to liability in excess of its policy limits where it in bad faith refuses an opportunity to settle a claim within policy limits,[18] Hartford risks significant extra-contractual liability should it be presented with a settlement demand within limits and it not know whether the Court will agree that Hartford lacks any duty to indemnify InterDigital.[19]

Such a Catch 22 is precisely the very type of situation that the Declaratory Judgment Act is designed to remedy. *See, e.g., Abbot Labs. v. Gardner*, 387 U.S. 136, 152-53 (1967) (concluding that the plaintiff was entitled to a judicial determination as to the validity of certain regulations that forced the plaintiff to chose between complying with potentially suspect

---

[17]    While courts in a number of other jurisdictions have found that an insurer may recover defense costs from its insured where the insurer agrees to provide the insured a defense pursuant to an express reservation of rights which includes the right to recoup defense costs, the insured accepts the defense, and a court subsequently finds that the insurer did not owe the insured a defense (*see LA Weight Loss Ctrs., Inc. v. Lexington Ins. Co.*, 2006 WL 689109, *5 (Pa. Com. Pl. Mar 1, 2006) (citing cases)), "Pennsylvania state appellate courts have not spoken on the issue." *Id.* at *6. However, one recent state trial court opinion chose to follow the "minority" position and ruled that an insurer has no right to reimbursement absent a provision in its policy. *Id.* at *6. The Third Circuit has predicted a similar result. *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213 (3d Cir. 1989) (predicting that Pennsylvania appellate courts would not permit an insurer to recover defense costs even when it defends under a reservation of rights if it is later determined there is no coverage).

[18]    *See Birth Center v. St. Paul Cos.*, 567 Pa. 386, 787 A.2d 376 (2001).

[19]    Additionally, depending upon the Court's ruling, the parties may identify other sources of potential indemnity, such as other insurance policies, which may be implicated by the *Nokia* action.

- 18 -

regulations and incurring substantial costs, or refusing to comply and risking serious criminal and civil sanctions), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

Conversely, InterDigital will suffer no hardship should Hartford's indemnity claims be permitted to proceed.[20]  Should this Court agree with Hartford that the *Nokia* complaint does not implicate coverage, Hartford will not have a duty to defend nor a duty to indemnify.

Alternatively, should this Court agree with InterDigital that the *Nokia* complaint potentially states a claim covered by the Hartford policies, then Hartford will still be entitled to discovery concerning Nokia's claim and the statements at issue to determine whether those claims are limited to claims which do not and cannot implicate coverage.  That discovery will impact not only Hartford's duty to defend but also its duty to indemnify.  As such, the discovery which InterDigital seeks to cut off by dismissing Count Two will still need to occur and may still enable this Court to conclude that Hartford has no duty to indemnify InterDigital.

### G.    Hartford's Indemnity Claims Are Ripe For Adjudication

InterDigital advances two reasons for dismissing Count Two without prejudice:  (1) the fact that the *Nokia* action is still pending, and (2) alleged "practical" and "fairness" considerations.  *See* InterDigital's Brief at p. 4.  Neither of InterDigital's two reasons for dismissing Hartford's complaint is compelling.

---

[20]     To the extent that InterDigital relies upon cases such as *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876 (8th Cir. 2005) to argue that Hartford's claims are not ripe because the issue of InterDigital's knowledge of the falsity of its alleged misstatements remains an open fact that could be adjudicated in the Nokia action, InterDigital overstates its objection.  First, the initial question presented by Hartford is a legal one – whether Nokia's allegation that InterDigital made knowingly false statements is enough to preclude coverage. Second, InterDigital ignores the numerous other bases which Hartford has asserted as possible grounds for denying coverage – which have nothing to do with this one, narrow issue.  As such, even if the "knowledge" issue were not ripe at this time, the remainder of Hartford' indemnity claim is.

- 19 -

### 1.    This Court may decide Hartford's indemnity claim while the *Nokia* action is pending

While InterDigital has cited cases in which courts refrained from deciding indemnity while an underlying action was pending, courts deciding indemnity claims certainly have and can award declaratory relief in favor of an insurance carrier while an underlying case is still pending. *E.g. First Oak Brook Corp. Syndicate v. Comsup Commodities*, 93 F.3d 92 (2d Cir. 1996); *Classic Fire & Marine Ins. Co. v. Moe and Curly Corp.*, 1997 WL 727498, *2 (E.D. Pa. Nov. 12, 1997); *see also Nationwide Mut. Fire Ins. Co. of Columbus v. Pipher*, 140 F.3d 222 (3d Cir. 1998) (reversing district court's order relieving Nationwide of its duty to defend and potentially indemnify insured).  As this Court has observed, "the Court of Appeals and district courts in this Circuit have held that disputes between an insured and his insurer are ripe for adjudication even though a judgment triggering the insured's liability has not yet occurred." *First Fid. Bancorporation v. Nat'l Union Fire Ins. Co.*, 1990 WL 165937 at *9 (E.D. Pa. Oct. 25, 1990).

In *Home Ins. Co. v. Law Offices of Jonathan DeYoung, P.C.*, 107 F. Supp. 2d 647 (E.D. Pa. 2000), this Court permitted a declaratory judgment action concerning coverage to go forward where, among other things, (a) the coverage action raised "purely legal" issues which did not require the Court to make factual determinations which would otherwise best be left to the jury in the underlying action, and (b) the existence or lack of insurance coverage would likely impact whether the underlying litigation would go forward. *Id.* at 650.

Similarly, several decisions applying Pennsylvania law have stated that, rather than denying coverage outright, an insurer should file a declaratory judgment action while the underlying action *is still pending* to determine whether a policy exclusion bars coverage.  In the unpublished case of *Mechetti v. Weisberg*, No. 3102 Phila. 1996 (Pa. Super., June 10, 1997), a

panel of the Superior Court expressly faulted the insurer in that case for refusing to defend

without first obtaining a declaratory judgment:

> Mechetti's complaint ... contained allegations of general
> negligence and potentially fell within the coverage of the policy.
> [The insurer], at a minimum, should have pursued the available
> declaratory judgment procedure at the outset to determine its duty
> to defend the insured. Unfortunately, however, [it] failed to do so.
> Thus, we conclude that the trial court properly found that [the
> insurer] was obligated to defend because the factual allegations of
> the complaint were potentially within the scope of the policy.

Case 1:06-cv-00422-JJF     Document 20     Filed 04/10/2006     Page 23 of 28

*See Classic Fire & Marine Ins. Co. v. Moe & Curly Corp.*, 1997 WL 727498, *2 (E.D. Pa. Nov.

12, 1997) (quoting *Mechetti*).

While both *Mechetti* and *Classic Fire* are unpublished decisions and thus not binding

precedent on this Court, and while those cases are primarily concerned with the duty to defend,

the *Classic Fire* court ultimately followed *Mechetti* and held that the insurer at issue "owes no

duty to defend *or indemnify* defendant in the underlying action", where the underlying action

was still pending. *Id.* at *2 (emphasis added). As such, those decisions hold that it is not only

possible for an insurer to obtain declaratory relief concerning the scope of its indemnity rights

while an underlying action is pending, but also that it may be preferable to do so.

Similarly, in *Butterfield v. Giuntoli*, 448 Pa. Super. 1, 670 A.2d 646 (1995), the court not

only concluded that certain indemnity issues should be determined while the underlying action

was pending but also that the insurer may, in certain cases, need to intervene in the underlying

action to ensure that matters relevant to indemnity are clearly decided by the jury. In *Butterfield*,

a hospital's excess liability insurer sought to deny coverage for an award of punitive damages,

arguing in part that Pennsylvania public policy precluded coverage for punitive damages. The

court held that the excess liability policy was ambiguous as to whether it covered punitive

damages for malpractice liability. Finding that Pennsylvania's public policy only barred

- 21 -

coverage for directly imposed, as opposed to vicariously imposed, punitive damages, the

*Butterfield* court held that the excess insurer failed to carry its burden of establishing that the jury

awarded punitive damages in the underlying malpractice action against the hospital solely on

basis of direct liability, for which public policy bars insurance coverage, rather than on basis of

vicarious liability for acts of doctors, for which public policy does not bar coverage. The court

emphasized that under the jury instructions submitted, the jury could have found hospital either

directly negligent or vicariously negligent or both, and further emphasized that the insurer had

right to participate in case but neither requested specific instructions nor sought to intervene.

If, in some cases an insurer is required to intervene in an underlying action and submit

special jury interrogatories or otherwise risk later being found to have failed to sustain its burden

of denying coverage, an insurer also should be permitted to file a declaratory judgment action

during the pendency of the underlying action to clarify issues relevant to indemnity and to obtain

discovery which may be relevant to both coverage and possible special jury interrogatories.

      **2.**      **It is not only practical, but fair, for this Court to decide Hartford's indemnity claim now**

Practical and fairness considerations similarly merit consideration of Hartford's

indemnity claims now. Should this Court agree that based upon the face of the *Nokia* complaint

Hartford has no duty to defend, Hartford would also prevail on Count Two. *E.g. Lucker Mfg. v.*

*Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994). Plus, as discussed above, the very discovery

that Hartford will seek in connection with Count One (duty to defend) also will impact the

resolution of Count Two. Thus, as a practical matter, delaying resolution of the indemnity issue

will not result in any significant savings to either the parties or this Court.

As to fairness considerations, it is eminently fair to determine now whether Hartford may

deny any duty to indemnify InterDigital – before Hartford is forced to defend the entire *Nokia*

action and before Hartford is forced to decide whether to settle or litigate Nokia's claims. This Court can determine now that Hartford owes no duty to indemnify InterDigital – either because of one of the legal issues raised by Hartford or based upon a determination of the actual facts surrounding InterDigital's coverage claim. While perhaps one of these facts may be decided in the *Nokia* action (namely, whether InterDigital made a knowingly false statement), many other

facts relevant to indemnity will <u>not</u>. For instance, the *Nokia* court need not determine when InterDigital committed any "personal or advertising injury" offense or when any publication at issue was first made. The *Nokia* court also need not determine if other insurance exists which should pay or share in the indemnity of InterDigital.

**III.    CONCLUSION**

Count Two of Hartford's Complaint presents a ripe controversy concerning Hartford's alleged duty to indemnify InterDigital. As such, InterDigital's Motion to Dismiss should be denied and this matter permitted to proceed forthwith.

Respectfully submitted,

WHITE AND WILLIAMS LLP

By:  _____

Gale White, Esquire
Anthony L. Miscioscia, Esquire
1800 One Liberty Place
Philadelphia, PA  19103-7395
Phone: 215.864.6234
Attorneys for Plaintiffs

Dated:  April 10, 2006

- 23 -

## <u>CERTIFICATE OF SERVICE</u>

I, Anthony L. Miscioscia Esquire, hereby certify that I have caused a true and correct

copy of the Response of Plaintiffs, Hartford Fire Insurance Company and Hartford Casualty

Insurance Company in Opposition to Defendants' Motion to Dismiss Count Two of the

Complaint and the related Memorandum of Law to be electronically filed with the Court (which

is available for viewing and downloading) and to be served by regular mail, on April 10, 2006,

upon the following:

> Stephen J. Mathes, Esquire
> Arleigh P. Helfer, III, Esquire
> Hoyle, Fickler, Herschel & Mathes, LLP
> One South Broad Street – Suite 1500
> Philadelphia, PA  19103-7397

> WHITE AND WILLIAMS LLP

> Anthony L. Miscioscia, Esq.

# EXHIBIT

# A

**InterDigital Wins Ruling In Nokia Royalty Dispute**

**By CHAD BRAY**
**DOW JONES NEWSWIRES**
**December 29, 2005 4:17 a.m.**

NEW YORK – A federal judge confirmed an arbitration award of about $250 million for InterDigital Communications Corp., which is in a dispute with cellphone maker Nokia Corp. over royalties.

In an order filed Wednesday in the Southern District of New York, Judge William H. Pauley III upheld the award granted by an arbitration panel in June and denied Nokia's motion to vacate it.

"While this court does not necessarily agree with every finding of the panel, there is nothing so aberrant about the award to require vacatur," Judge Pauley said in his order. "This court confirms the award in its entirety."

The dispute revolves around royalties agreed to as part of licensing agreements entered into by InterDigital Communications and Nokia in January 1999.

A Nokia spokesman didn't immediately have a comment when reached Wednesday afternoon.

Under the agreements, Nokia paid InterDigital $31.5 million in royalties for all handset sales using InterDigital technology prior to January 2002, according to the judge's order.

Nokia's royalty obligations for sales between January 2002 and December 2006 would then be contingent on InterDigital entering into licensing agreements with one of Nokia's three "major competitors" — Lucent Technologies Inc., Telefon AB L.M. Ericsson or Motorola Inc., according to the order.

In March 2003, InterDigital entered into two patent licensing agreements with Ericsson and Sony Ericsson Mobile Communications — a joint venture between Sony Corp. and Ericsson. In creating the joint venture, Ericsson sold its handset business to Sony Ericsson for cash consideration, according to the judge's order.

After entering into the Ericsson agreements, InterDigital requested about $500 million in royalty payments from Nokia, which disputed the obligations and invoked its right to arbitration.

In a filing with the Securities and Exchange Commission on Tuesday, InterDigital said it has taken action to utilize the dispute resolution process under its licensing agreement with Nokia in order to compel Nokia to abide by the arbitration panel's ruling.

The dispute resolution process would establish a timetable for discussions, senior representative meetings and any future initiation of arbitration, if necessary, according to the filing.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, et al., | : |
| | : |
| | : |
| Plaintiffs, | :    Civil Action No. 06-0165 |
| | : |
| v. | : |
| | : |
| INTERDIGITAL COMMUNICATIONS CORPORATION, et al., | : |
| | : |
| | : |
| Defendants. | : |
| | : |

## ORDER

AND NOW, this      day of                    , 2006, upon consideration of the

Motion of Defendants, InterDigital Communications Corporation and InterDigital Technology

Corporation to Dismiss Count Two of the Complaint, without prejudice, and the opposition

thereto filed by Plaintiffs, Hartford Fire Insurance Company and Hartford Casualty Insurance

Company, it is hereby ORDERED that Defendants' Motion to Dismiss Count Two is DENIED.

Defendants shall answer Plaintiffs' Complaint within thirty (30) days of the date of this Order.

IT IS SO ORDERED:

_____
                                                          J.

DOCS_PH 1871996v.1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY, et al., | : : : | |
| | : | Civil Action No. 06-0165 |
| Plaintiffs, | : : | |
| v. Case 2:06-cv-00165-JG     Document 13-2     Filed 04/10/2006     Page 2 of 28 | : : | |
| INTERDIGITAL COMMUNICATIONS CORPORATION, et al., | : : : | |
| Defendants. | : : | |

## RESPONSE OF PLAINTIFFS, HARTFORD FIRE INSURANCE COMPANY AND HARTFORD CASUALTY INSURANCE COMPANY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNT TWO OF THE COMPLAINT

Plaintiffs, Hartford Fire Insurance Company and Hartford Casualty Insurance Company (collectively "Hartford"), by and through their undersigned counsel, hereby oppose Defendants' Motion to Dismiss Count Two of Hartford's Complaint. The case law and reasons supporting Hartford's Opposition to Defendants' Motion are set forth in the accompanying Memorandum of Law, which is incorporated herein by reference. Pursuant to Local Rule 7.1(f), Hartford requests oral argument.

**WHEREFORE**, Hartford requests that this Court enter an Order in the form proposed herewith denying Defendants' Motion to Dismiss Count Two of the Complaint.

Respectfully submitted,
**WHITE AND WILLIAMS LLP**

By: _____

Gale White, Esquire
Anthony L. Miscioscia, Esquire
1800 One Liberty Place
Philadelphia, PA 19103-7395
Phone: 215.864.6234
Attorneys for Plaintiffs

Dated: April 10, 2006

DOCS_PH 1871996v.1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY, et al., | : : : : | |
| Plaintiffs, | : : | Civil Action No. 06-0165 |
| v. | : : | Case 2:06-cv-00165-JG    Document 13-2    Filed 04/10/2006    Page 3 of 28 |
| INTERDIGITAL COMMUNICATIONS CORPORATION, et al., | : : : | |
| Defendants. | : : | |

### HARTFORD FIRE INSURANCE COMPANY AND HARTFORD CASUALTY INSURANCE COMPANY'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNT TWO OF THE COMPLAINT

In this insurance coverage action, Hartford Fire Insurance Company and Hartford Casualty Insurance Company (collectively "Hartford") seek a declaration that they have no duty to defend or indemnify InterDigital Communications Corporation ("ICC") and InterDigital Technology Corporation ("ITC") (collectively "InterDigital") for a suit brought against InterDigital by its competitors, Nokia Corporation and Nokia, Inc. (collectively "Nokia"). InterDigital does not challenge Hartford's right to a declaration as to the duty to defend, but rather claims that Hartford cannot seek a declaration that it has no duty to indemnify. InterDigital asserts that the duty to indemnify *is not ripe* and cannot be decided until *after* the underlying *Nokia* action is over.  That is not so.

InterDigital also claims that "[t]his Court cannot determine Hartford's duty to indemnify without making factual determinations that are crucial to the underlying litigation." InterDigital's Memorandum at p. 20.  This also is not so.

There are many facts (and legal issues) that will <u>not</u> be determined in the *Nokia* action, which could prove that Hartford has no duty to indemnify -- such as when allegedly false statements were made, and whether all of Nokia's injury arose out of violations of intellectual property rights. These facts (and other legal and factual issues discussed herein) could lead to a conclusion that Hartford has no duty to indemnify InterDigital for the *Nokia* action.

*Interestingly, many of these facts are known to InterDigital and, by this motion, InterDigital seeks to preclude Hartford from learning them.*

If the Court were to conclude that Hartford cannot proceed to adjudicate whether it has a duty to indemnify InterDigital before the *Nokia* action is concluded (and the Court concludes that there is a duty to defend), Hartford would be in the prejudicial position of having to defend Nokia's very expensive lawsuit[1] for as long as that suit drags out, with no way to prove before judgment that there is no coverage. Pennsylvania case law[2] is clear that an insurer may cut off its defense and indemnity obligation if it can prove, *before* trial, that there is no coverage. Hartford therefore has the right to seek a determination now of whether it has a duty to indemnify InterDigital for the *Nokia* action.

---

[1]    The *Nokia* complaint avers that InterDigital has been involved in many suits, including the *Nokia* action, involving the interpretation and application of numerous patents. Such suits are very expensive to defend and in fact, in one similar case, InterDigital's defense costs were nearly $28 million. *See InterDigital Communications Corp. v. Federal Ins. Co.,* 392 F. Supp. 2d 707 (E.D. Pa. Oct. 3, 2005) (involving dispute over fee agreement entered into between InterDigital and another insurer, Federal, which agreement InterDigital later sought to avoid after Federal sought to recover nearly $27.8 million paid to defend InterDigital in the *Ericsson* case).

[2]    Hartford relies upon Pennsylvania law in this Opposition because that is the law cited by InterDigital in its Motion papers. *See* InterDigital's Memorandum of Law at p. 8 (averring "Pennsylvania law will likely govern").

- 2 -

I.    **BACKGROUND**[3]

A.    **Hartford's Complaint Against InterDigital**

Hartford seeks a declaration that it has no duty to defend (Count One) or indemnify

(Count Two) InterDigital in connection with an underlying lawsuit filed by Nokia against

InterDigital (the "*Nokia* action" or "*Nokia* complaint").[4]    InterDigital's Motion to Dismiss is

directed solely to Count Two, concerning indemnity.

B.    **The Underlying *Nokia* Complaint**

On or about January 12, 2005, Nokia filed the *Nokia* complaint against ICC and ITC.

The *Nokia* complaint sets forth 21 causes of action - 20 of which seek declarations of non-

infringement and/or invalidity as to various patents purportedly held by InterDigital relating to

mobile phone technology and one of which sets forth a claim for alleged violations of the

Lanham Act.  *See Nokia* complaint, attached as Ex. A to Hartford's Complaint.

The *Nokia* complaint remains pending against InterDigital; however, by Memorandum

Opinion dated December 21, 2005, the United States District Court for the District of Delaware

dismissed Nokia's declaratory judgment claims relating to non-infringement and patent

invalidity for lack of jurisdiction.  *Nokia Corp. v. InterDigital Communications,* 2005 WL

3525696 (D. Del. Dec. 21, 2005).

Nokia's Lanham Act claim (Count XXI of the *Nokia* complaint) alleges that InterDigital

has made false or misleading representations about InterDigital's patents and Nokia's products

and the application of InterDigital's patents to Nokia's products.  Nokia asserts that these

statements have damaged Nokia's business and reputation in the wireless market.  *See Nokia*

---

[3]    The Background facts are taken from Hartford's Complaint.  *See NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001) (treating factual allegations as true in "facial" attack).

[4]    Pursuant to Count Three, Hartford seeks a declaration of whether ITC is entitled to coverage.

complaint, ¶ 142. The *Nokia* complaint further alleges that InterDigital made these false

statements in "bad faith" and with "knowledge of their falsity." *See Nokia* complaint, ¶ 146.

### C.    The Hartford Fire CGL Policies

Harford Fire issued two Commercial General Liability policies to ICC as the named

insured effective for the period December 22, 2003 to December 22, 2004 and the period

December 22, 2004 to December 22, 2005.[5]

Pursuant to these policies, Hartford Fire agreed to indemnify "those sums that the insured

becomes legally obligated to pay as damages because of 'personal and advertising injury' to

which this insurance applies" provided that the offense arises out of the insured's business and

was committed in the "coverage territory" during the policy period.[6] Hartford is not obligated,

however, to indemnify (or defend) a "suit" that does not seek covered damages.

The Hartford Fire policies define "personal and advertising injury" as injury, including

consequential "bodily injury," arising out of an offense listed in the definition, including:

> (4)    Oral, written or electronic publication of material that slanders or
> libels a person or organization or disparages a person's or
> organization's goods, products or services;

The Hartford Fire policies bar coverage for "personal and advertising injury" to the

extent precluded by the various policy exclusions, including but not limited to:

> a.    Knowing Violation of Rights of Another
>
> "Personal and advertising injury" caused by an offense committed
> by, at the direction or with the consent or acquiescence of the
> insured with the expectation of inflicting "personal and advertising
> injury."

---

[5]    Hartford Casualty also issued two umbrella policies to ICC, the relevant provisions of which policies largely, for purposes of the instant Motion, follow form to those of the Hartford Fire policies.

[6]    On information and belief, InterDigital does not contend that the *Nokia* complaint implicates "bodily injury" or "property damage" coverage and thus those coverage provisions are not discussed herein.

b.    Material Published with Knowledge of Falsity

"Personal and advertising injury" arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c.    Material Published Prior to Policy Period

"Personal and advertising injury" arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period.

Case 2:06-cv-00703-JJF    Document 13-2    Filed 04/10/2006    Page 7 of 28

\* \* \*

g.    Quality or Performance of Goods - - Failure to Conform to Statements[7]

"Personal and advertising injury" arising out of the failure of goods, products, or services to conform with any statement of quality or performance made in your "advertisement" or on "your web site";

\* \* \*

i.    Infringement of Intellectual Property Rights

"Personal and advertising injury" arising out [of] any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

## II.    **ARGUMENT**

### A.    **Declaratory Judgment Act**

Pursuant to the Declaratory Judgment Act, courts have the power to make declarations regarding "the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. As the Supreme Court has explained, under the Declaratory Judgment Act, "the question in each case is whether the facts alleged, under all the circumstances, show[] that there is a substantial controversy, between parties having adverse legal interests, of sufficient

---

[7]    Exclusions g. and i. are added/amended to the policy by the Cyberflex endorsement, amending Coverage B.

- 5 -

immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v.*

*Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941).  Moreover, "[t]he extent of an insurer's

liability concerning insurance coverage may properly be resolved in a declaratory judgment

action." *Ideal Mut. Ins. Co. v. Limerick Aviation Co.,* 550 F. Supp. 437, 441 (E.D. Pa. 1982).

**B.**    **Hartford May Cut Off *Both* Its Defense Obligation *And* Its Indemnity Obligation, If Any, *Before* The Conclusion Of The *Nokia* Action**

Case 1:06-cv-00422-JJF    Document 13    Filed 04/10/2006    Page 8 of 28

Before turning to InterDigital's "ripeness" argument, we note as a preliminary (and

dispositive) matter that InterDigital has ignored the body of Pennsylvania law which clearly

allows an insurer to seek a judicial determination of its obligations (both defense and indemnity)

*before* judgment is entered in the underlying case.  Under InterDigital's view of how this

insurance coverage action would proceed, Hartford would be permitted to litigate whether

Hartford has a duty to defend the *Nokia* suit.  If InterDigital succeeds and the Court were to

conclude that Hartford had a duty to defend (which Hartford denies), Hartford would then be

*denied its right* to determine the extent, if any, of coverage owed under its policies.  For

instance, Hartford would be precluded from:

    (1)   discovering the "true facts" that could cut off Hartford's duty to defend,

    (2)   discovering facts that would show the extent of Hartford's duty to indemnify -- *i.e.* what claims might be covered and what claims are not,[8]

    (3)   discovering facts that could eliminate coverage for one of the two years of policies issued by Hartford,

    (4)   discovering the "true facts" that could relieve Hartford of its duty to indemnify, and

    (5)   doing anything, other than paying defense costs.

---

[8]    For example, the Hartford policies do not cover damages arising out of publication of material first published before the Hartford policies incepted.  Hartford would not be able to determine this.

This result is contrary to Pennsylvania law and is prejudicial to Hartford. Courts applying Pennsylvania law *have permitted* an insurer to cut off *both* its defense *and* its indemnity obligation, if any, *before* final resolution of the underlying action for which coverage is sought.

        **a.     Hartford cannot owe indemnity if it has no duty to defend**

Certainly, an insurer may obtain a declaration *prior to* the conclusion of an underlying action that the insurer lacks *both* a duty to defend and any duty to indemnify based upon a comparison of the allegations in the underlying complaint to the terms of the applicable insurance policy. *E.g. First Oak Brook Corp. Syndicate v. Comly Holding Corp.*, 93 F.3d 92 (3d Cir. 1996) (finding no duty to defend or indemnify).

Under Pennsylvania law, "once it is determined that there is no obligation to provide the broader duty to defend, the more narrow duty to indemnify is also extinguished." *Brandt v. U.S. Liab. Ins. Group*, 70 Pa. D. & C. 4th 449, 458 (Comm. Pleas Lancaster Cty. 2005) (finding that it was proper to award declaration pursuant to Pennsylvania's Declaratory Judgments Act that insurer owned no duty to defend or indemnify due to policy exclusion). Thus, if Hartford has no duty to defend, there can be no duty to indemnify. *Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994); *see also Mutual Benefit Ins. Co. v. Haver*, 555 Pa. 534, 539 n. 1, 725 A.2d 743, 746 n. 1 (1999) (rejecting claimants' contention that their complaint alleged negligence; Pennsylvania Supreme Court held that factual allegations in underlying complaint fell within knowing endangerment exclusion and thus ruled that insurer had no duty to defend or indemnify underlying action).[9]

---

[9]      Presumably, InterDigital does not dispute that this Court may rule that Hartford has no duty to indemnify if Hartford succeeds on Count One and proves that it has no duty to defend the *Nokia* action, as the duty to defend is broader than the duty to indemnify. *See Lucker* 23 F.3d at 821 ("summarily" disposing of duty to indemnify where court found no duty to defend). As such, at a minimum, until such time as this Court decides Count One and

### b.    Even if Hartford is initially found to owe a defense, Hartford still may have no duty to indemnify InterDigital

An insurer that is *initially* found to owe a duty to defend (which Hartford denies) still may obtain declaratory relief limiting, or terminating, any defense obligation. In Pennsylvania, as explained by the Third Circuit, the "duty to defend remains with the insurer ***until facts*** Case 2:06-cv-00165-JG    Document 12-2    Filed 04/10/2006    Page 10 of 28 sufficient to confine the claims to liability not within the scope of the policy ***become known to the insurer.***" *Lucker*, 23 F.3d at 813 (emphasis added). Similarly, *even if* Hartford has a duty to defend as InterDigital avers (and Hartford denies), Hartford ultimately may not owe any indemnity because the duty to indemnify is narrower than the duty to defend and is not based solely upon the allegations of the underlying complaint. *First Oak Brook Corp.*, 93 F.3d at 95 (finding that district court correctly noted that "indemnification is based on actual liability" not allegations in complaint).

In *General Accident Ins. Co. of Am. v. Allen*, 547 Pa. 693, 692 A.2d 1089 (1997), an insured argued (like InterDigital does here) that the court could not determine the duty to indemnify until the underlying action was fully resolved, including the exhaustion of all appeals. The Pennsylvania Supreme Court rejected the insureds' contentions. Recognizing the appropriateness of the insurer's pre-judgment/settlement declaratory judgment action brought pursuant to Pennsylvania's declaratory judgment statute, the court noted:

> The question before a court in a declaratory judgment action is not whether the insurer owes indemnification in a specific amount, which would be a premature inquiry absent a full resolution of the underlying action. Instead, the question is whether the insurer has a duty to indemnify the insured in the event of liability in the underlying action.

---

determines whether Hartford has a duty to defend, Count Two not only is ripe but also may be decided in Hartford's favor. Thus, InterDigital's Motion to Dismiss is really only directed to the situation where Hartford is found initially to owe a duty to defend, but then seeks to terminate/cut-off that duty (or limit the scope thereof) and/or seeks to deny any duty to indemnify.

*Id.*, 547 Pa. at 707, 692 A.2d at 1095. The *Allen* court thus held that "[a] court can answer such a question because it is within the scope of a court's power pursuant to the [Pennsylvania] Declaratory Judgments Act." *Id.; see also Harleysville Mut. Ins. Co. v. Madison*, 415 Pa. Super. 361, 609 A.2d 564 (1992) (insurer can seek determination of obligations to insured before conclusion of underlying action).

While *Allen* and *Madison* concern state courts applying the Pennsylvania Declaratory Judgment Act, the result here should be no different merely because a federal court is deciding a claim pursuant to the federal declaratory judgment statute. *See Corporate Aviation*, 2005 WL 1693931 at *3 (noting that federal "Declaratory Judgment Act permits litigants to determine the validity of a security interest … 'before the dispute grows into a contract violation or a foreclosure proceeding'").

*Even if* InterDigital defeats Hartford's request for a declaration that it has no duty to defend, Hartford may not owe indemnity for a number of reasons – many of which depend upon resolution of legal issues or factual issues which Hartford is entitled to pursue now. Hartford should not be forced to await the conclusion of the *Nokia* action before having this Court decide those legal and factual issues. Instead, this Court should allow Hartford to pursue a declaration that it has no duty to indemnify by discovering, *inter alia*:

- what statements, if any, InterDigital made about Nokia or its products -- to determine whether InterDigital libeled, slandered or disparaged Nokia or its products) and thus whether the Nokia action involves an enumerated personal or advertising injury offense,

- when any such statements were made and by whom -- to determine whether an insured made such statements during the Hartford policy periods,

- the circumstances surrounding those statements -- to determine whether a policy exclusion applies because, for example, the insured knew its statements were false, the insured expected to inflict personal or

advertising injury or the injury alleged arises out of any violation of intellectual property rights, and

- whether InterDigital has any other insurance applicable to this matter.

Should this Court grant InterDigital's Motion to Dismiss, this Court not only will simply delay the inevitable need to resolve these legal and factual issues but also will deny Hartford the ability to cut short any Case 2:06-cv-00165-JG   Document 13-2   Filed 04/10/2006   Page 12 of 28 duty to defend that the Court may find and/or force Hartford to consider settlement demands which this Court otherwise may hold that Hartford is not obligated to pay.

### C.   Rule 12(b)(1) Standard

InterDigital challenges this Court's subject matter jurisdiction under Rule 12(b)(1) by arguing that Hartford's claim for a declaration that it has no duty to indemnify InterDigital is not ripe for judicial review.  InterDigital thus makes a "facial attack"[10] on Hartford's complaint.  *See Corporate Aviation Concepts, Inc. v. Multi-Service Aviation Corp.*, 2005 WL 1693931 at *2 n.6 (E.D. Pa. July 19, 2005) (concluding that ripeness attack was a "facial" challenge).

"When ruling on a 'facial' attack to subject matter jurisdiction under Rule 12(b)(1), courts must 'treat the allegations of the Complaint as true and afford the plaintiff the favorable inferences to be drawn from the Complaint.'"  *Corporate Aviation*, 2005 WL 1693931 at *2 (citing *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 (3d Cir. 2001)).

Hartford's complaint avers, *inter alia*, that the *Nokia* action does not implicate indemnity to the extent Nokia's claims do not involve an enumerated "personal and advertising injury" offense committed during the Hartford policy period and to the extent that coverage is precluded by a Hartford policy exclusion.  Hartford's complaint further notes that Nokia expressly alleges in its Lanham Act claim that InterDigital made the false statements at issue with "knowledge of

---

[10]     A party makes a "facial" challenge to subject matter jurisdiction, as opposed to a "factual" challenge, when it attacks the complaint on its face.  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

their falsity." *See* Hartford's Complaint at ¶ *18; see also Nokia* complaint at ¶ 146. If Hartford's

allegations are proven true, they preclude any possibility of coverage and thus entitle Hartford to

a declaration that it has no duty to indemnify InterDigital.

### D.    Standard for Determining Whether an Action Is Ripe

The Supreme Court has established two fundamental considerations to determine whether

a suit is ripe for adjudication:  (1) "the fitness of the issues for judicial determination," and

(2) "the hardship to the parties of withholding court consideration." *Corporate Aviation*, 2005

WL 1693931 at *3 (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967), *overruled on*

*other grounds by Califano v. Sanders*, 430 U.S. 99 (1977)).[11]

As the Third Circuit has explained, "[t]he problem of justiciability is especially

troublesome in a declaratory judgment action, where the court may be asked to decide a case

based on events that have not yet and may not occur. ... ***Where, however, the essential facts***

***establishing a right to relief, including declaratory relief, have already occurred, the case is***

***justiciable.***" *Riehl v. Travelers Ins. Co.*, 772 F.2d 19, 22 (3d Cir. 1985) (emphasis added).

Here, the essential facts have already occurred – namely, InterDigital's alleged making of

knowingly false statements.  Thus, declaratory relief may be granted notwithstanding the fact

that the insured's liability has not yet been fixed in a sum certain. *See id.* ("[t]he only events

which have yet to occur are the expenditure of funds by Riehl for clean-up and the entry of

judgment imposing liability on Riehl for the toxic waste damage").  "[N]either immediate

---

[11]    To the extent that InterDigital applies the three factor ripeness test in *Step-Saver Data Sys., Inc. v. WYSE Tech*, 912 F.2d 643 (3d Cir. 1990), this Court need not consider such test separately.  "[T]he Third Circuit has made it clear that the *Step-Saver* test merely 'alters the heading under which various factors are grouped.'" *Id.*, 2005 WL 1693931 at *3 n.7 (quoting *Philadelphia Fed'n of Teachers v. Ridge*, 150 F.3d 319, 323 n.4 (3d Cir. 1998)).  Since *Step-Saver*, the Third Circuit has "employed both tests." *Philadelphia Fed'n of Teachers*, 150 F.3d at 323 n.4; *see also Corporate Aviation*, 2005 WL 1693931 at *3 n.7 (quoting same).  Nonetheless, for the reasons explained herein, Count Two also survives the *Step-Saver* test.

liability for damages, nor a liquidation to the extent of an insurer's indemnification obligation, is

necessary in this Circuit to establish a justiciable controversy." *Id.* at 22-23.

E.    **Hartford's Claim for Indemnity Is "Fit" For Judicial Determination Now**

Under the first part of the ripeness test -- the "fitness" inquiry, courts look to "whether

the issue is purely legal (as against factual), the degree to which the challenged action is final,

whether the claim involves uncertain and contingent events that may not occur as anticipated or

at all, the extent to which further factual development would aid decision, and whether the

parties to the action are sufficiently adverse." *NE Hub Partners,* 239 F.3d at 342 n.8.  Under this

standard, Hartford's indemnity claim is fit for determination now.

1.    **Hartford and InterDigital have adverse interests**

The first prerequisite for a finding of ripeness in a declaratory judgment action is that

"the defendant [is] so situated that the parties have adverse legal interest." *Id.* at 648 (quoting

10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2757, 582-83 (2d Ed.

1983).  "Parties' interests are adverse where harm will result if the declaratory judgment is not

entered." *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995).

While it is true under Pennsylvania law that claims for indemnification arise only where

the party seeking indemnity has made a payment on the underlying claim (*e.g. Ivensys, Inc. v.

Am. Mfg. Corp.*, 2005 U.S. District LEXIS 3961 (E.D. Pa. Mar. 15, 2005)), the interests of

Hartford and InterDigital are adverse notwithstanding the lack of a judgment or settlement in the

*Nokia* action.  "[W]here an insurer is denying coverage to its insured with substantial financial

exposure involved 'an actual controversy exists.'"    *Ideal Mut. Ins. Co. v. Limerick Aviation Co.*,

550 F. Supp. 437, 441 (E.D. Pa. 1982).

As long as the underlying claims against InterDigital remain pending and InterDigital continues to demand that it is entitled to indemnity from Hartford,[12] Hartford is being asked not only to pay InterDigital's defense costs but also to then assume the potential exposure to Hartford should it reject a settlement demand with its policy limits.

"One of the primary purposes behind the Declaratory Judgment Act was to enable

plaintiffs to preserve the status quo before irreparable damage was done." *Step-Saver*, 912 F.2d at 648, 649. Given the likelihood that Hartford will be asked to fund a judgment or settlement against InterDigital and the potential adverse consequences to Hartford in the event it is deemed to have refused, in bad faith, to settle within policy limits when presented with the opportunity to do so, it is necessary for this Court to rule on Count Two to preserve the status quo.

In *River Thames Ins. Co. v. 5329 West, Inc.*, 1995 WL 241490 (E.D. Pa. April 21, 1995), this Court granted in part and denied in part an insured's Rule 12(b)(1) motion to dismiss a declaratory judgment action. The insurer, Thames, had agreed to defend its insured, Big Jim's, under a reservation of rights. While that defense was being provided and the underlying action was still pending, Thames also filed a coverage action, asking this Court to declare that Thames had no legal duty to defend or indemnify Big Jim's because the underlying lawsuit fell within the assault and battery and liquor liability exclusion clauses. Thames also claimed that even if it must defend and indemnify the underlying lawsuit, it had no duty to indemnify Big Jim's for punitive damages. Big Jim's moved to dismiss those counts, arguing that they were not ripe.

---

[12] InterDigital's repeated demands for coverage further evidence the adverse interests of the parties. After InterDigital initially tender the *Nokia* complaint to Hartford for defense and indemnity, Hartford denied coverage by letter dated April 5, 2005. *See* Hartford Complaint at ¶ 41. Thereafter, InterDigital challenged Hartford's declination, arguing that the Lanham Act allegations within the *Nokia* complaint constitute a "personal and advertising injury." *See id.* at ¶ 43. On June 6, 2005, Hartford reaffirmed its declination of coverage. *See id.* at ¶ 44. On October 12, 2005, InterDigital again challenged Hartford's declination. *See id.* at ¶ 45. Following InterDigital's repeated demands for defense and indemnity and its repeatedly disputing Hartford's coverage denial, Hartford filed this lawsuit seeking a judicial determination concerning the scope of its rights and obligations, if any, under the Hartford policies with respect to the *Nokia* action. *See* Hartford Complaint.

- 13 -

Applying the *Step-Saver* test, this Court agreed to dismiss Thames's request for a declaration that it had no duty to indemnify punitive damages because "[t]he underlying lawsuit ... does not seek punitive damages. Accordingly, a declaration concerning Thames's duty to pay punitive damages would be an abstract advisory opinion." *Id.* at *2.

This Court then **denied** the insured's request to dismiss the insurer's count seeking a

declaration that it had no duty to indemnify based upon the policy exclusions. *Id.* This Court reasoned that the applicability of the liquor liability exclusion was a matter of genuine controversy and concluded that, while the question of whether the insured had served alcohol to the shooter was still undetermined, the liquor liability exclusion could apply to the underlying lawsuit. *Id.* Finding that the "exclusion's applicability is therefore a matter of substantial dispute, resolution of which will immediately impact the parties' respective legal interests", this Court held that the question was ripe for adjudication. *Id.*

The situation here is no different. Count Two of Hartford's Complaint raises issues concerning the scope of the policies' Insuring Agreements and the applicability of policy exclusions – which matters are in substantial dispute between Hartford and InterDigital and the resolution of which will immediately impact the parties' respective legal interests. Should this Court not rule on Hartford's indemnity claim now, Hartford will be harmed by being precluded from conducting discovery needed to determine whether it would owe indemnity and whether Hartford thus has an obligation to consider a settlement demand within policy limits.[13]

---

[13]    Further, the potential costs in dispute are staggering. While Hartford is not certain of the amounts in dispute in the *Nokia* action, it has been reported that that InterDigital has been awarded nearly $250 million in an arbitration with Nokia concerning what may be either the same or similar patents (in response to InterDigital's demand of Nokia for $500 million in royalties). *See* Ex. A hereto.

While Hartford acknowledges that some courts have ruled to the contrary and found parties' interests were not adverse,[14] those cases are either improperly decided or distinguishable. Since Hartford's duty to indemnify may ultimately turn upon the resolution of legal and/or factual issues which will not be decided in the *Nokia* action, Hartford should be permitted to pursue its claim that it has no duty to indemnify InterDigital and to conduct that discovery now

so that its indemnity obligation, if any, can be clarified before any settlement demand or judgment is presented to Hartford for payment.

### 2. This Court can definitively determine that Hartford owes no duty to indemnify InterDigital

For a declaratory judgment to be conclusive, the dispute must be based on a "real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 241 (1937).

In Count Two, Hartford seeks a definitive declaration concerning whether it has any indemnity obligation. Notwithstanding InterDigital's arguments to the contrary, a declaration by this Court would not amount to a mere advisory opinion. The declaration sought by Hartford is based on legal and factual issues from which the Court can make definite findings. Hartford's indemnity claim is not based upon contingent events that may not occur.

### a. Hartford's indemnity claim presents several purely legal issues

First, Hartford's indemnity claim presents several *purely legal inquiries* – such as:

- whether, based upon the allegations in the *Nokia* complaint, the intellectual property exclusion bars all coverage, and

---

[14]    *E.g. Westport Ins. Corp. v. Howell*, 2005 WL 1124092 at *2 (E.D. Pa. May 10, 2005) (finding the parties interests were not adverse).

- 15 -

- whether Nokia's *express* allegation that InterDigital made false statements in "bad faith" and with "knowledge of their falsity" bars coverage as a matter of law.

These issues concern purely legal questions which this Court may decide now.

### b. Hartford's indemnity claim also raises factual issues that will not be decided in the *Nokia* action

Should this Court not decide the legal issues in Hartford's favor, then this Court will need
to consider several *factual issues* which may preclude coverage – many of which will not be decided in the *Nokia* action.

"Ordinarily, a claim is unfit due to insufficient factual development when a plaintiff cannot allege facts with sufficient specificity because no concrete factual setting exists." *Corporate Aviation*, 2005 WL 1693931 at *4. Here, however, a concrete factual setting does exist. InterDigital's alleged actions giving rise to Nokia's claims have already occurred. **What InterDigital fails to acknowledge, however, is that while *it* may know the true facts, those facts have not yet been made known to *Hartford*.** Through its Motion, InterDigital impermissibly seeks to preclude Hartford from learning the facts already known to InterDigital.

Count Two should be allowed to proceed so Hartford can discover the true, "concrete" facts surrounding Nokia's claims and thus determine whether the claims fall outside the Insuring Agreements and/or fall within one of the policy exclusions. Hartford is entitled to learn now, *inter alia*:

- whether InterDigital made any libelous, slanderous or disparaging statements during the Hartford policy period,[15]

---

[15]    This discovery is needed for several reasons. First, the Nokia complaint does not allege when any injurious statements were published. Statements published before or after the Hartford policy periods cannot give rise to a duty to indemnify. Second, Nokia does not expressly assert a claim for libel, slander or disparagement. Rather, Nokia alleges that InterDigital violated the Lanham Act. While the Lanham Act makes certain "false" statements actionable, it is not necessary that such statement be libelous, slanderous or disparaging – which is all that the Hartford policy covers under the personal and advertising injury offense at issue.

- whether any such statements were first published prior to the Hartford policy period,

- whether InterDigital knew such statements to be false or expected to injure Nokia,

- whether Nokia's alleged injury arises out of any intellectual property rights,[16] and

- whether InterDigital has other insurance that applies to some or all of the amounts claimed by Nokia.

These facts relevant to indemnity may be discerned by Hartford "with greater specificity without the occurrence of some future event." *See Corporate Aviation*, 2005 WL 1693931 at *4.

## F. Hartford Will Suffer Harm Should Its Indemnity Claim Not Be Adjudicated Now

Under the second part of the Supreme Court's ripeness test – the "hardship" inquiry, courts evaluate "whether a plaintiff faces a direct and immediate dilemma, such that lack of review would put it to costly choices." *NE Hub Partners,* 239 F.3d at 342 n.8.

This Court's ruling on the indemnity issues would be of significant practical help to the parties as there are a number of direct and immediate dilemmas which Hartford will face should this Court refrain from deciding now whether Hartford has a duty to indemnify InterDigital. For example, should this Court find that Hartford has a duty to defend based upon the allegations in the *Nokia* complaint, but then rule that Hartford may not seek to determine its duty to indemnify now, Hartford will then be forced to defend the *Nokia* action to its conclusion, without being permitted an opportunity to terminate that defense as is permitted under Pennsylvania law. Given that Pennsylvania courts have not yet recognized an insurer's right to reimbursement of

---

[16] Pursuant to the Infringement of Intellectual Property Rights exclusion, Hartford has no duty to indemnify InterDigital to the extent that the *Nokia* action alleges injury arising out of any violation of any intellectual property rights. Unless InterDigital is willing to stipulate that there is nothing at issue in the Nokia action which does not relate to intellectual property violations, Hartford is entitled to discovery what intellectual property violations are at issue and whether Nokia's injury arises of out any such violations.

- 17 -

defense costs incurred defending an uncovered claim, precluding discovery and adjudication of those issues now in essence forced Hartford to pay for the full defense.[17]

Additionally, should Hartford not be permitted to terminate its defense or indemnity obligations prior to the conclusion of the *Nokia* action, Hartford will be forced to decide whether to attempt settlement with InterDigital to cut off future defense costs or to risk the possibility of

an adverse verdict (which ultimately may not be covered). Similarly, if Hartford's duty to indemnify is not resolved now, Hartford will need to determine whether to post reserves for any indemnity exposure. Finally, given Pennsylvania law potentially exposing an insurer to liability in excess of its policy limits where it in bad faith refuses an opportunity to settle a claim within policy limits,[18] Hartford risks significant extra-contractual liability should it be presented with a settlement demand within limits and it not know whether the Court will agree that Hartford lacks any duty to indemnify InterDigital.[19]

Such a Catch 22 is precisely the very type of situation that the Declaratory Judgment Act is designed to remedy. *See, e.g., Abbot Labs. v. Gardner*, 387 U.S. 136, 152-53 (1967) (concluding that the plaintiff was entitled to a judicial determination as to the validity of certain regulations that forced the plaintiff to chose between complying with potentially suspect

---

[17]     While courts in a number of other jurisdictions have found that an insurer may recover defense costs from its insured where the insurer agrees to provide the insured a defense pursuant to an express reservation of rights which includes the right to recoup defense costs, the insured accepts the defense, and a court subsequently finds that the insurer did not owe the insured a defense (see *LA Weight Loss Ctrs., Inc. v. Lexington Ins. Co.*, 2006 WL 689109, *5 (Pa. Com. Pl. Mar 1, 2006) (citing cases)), "Pennsylvania state appellate courts have not spoken on the issue." *Id.* at *6. However, one recent state trial court opinion chose to follow the "minority" position and ruled that an insurer has no right to reimbursement absent a provision in its policy. *Id.* at *6. The Third Circuit has predicted a similar result. *Terra Nova Ins. Co. v. 900 Bar, Inc.*, 887 F.2d 1213 (3d Cir. 1989) (predicting that Pennsylvania appellate courts would not permit an insurer to recover defense costs even when it defends under a reservation of rights if it is later determined there is no coverage).

[18]     *See Birth Center v. St. Paul Cos.*, 567 Pa. 386, 787 A.2d 376 (2001).

[19]     Additionally, depending upon the Court's ruling, the parties may identify other sources of potential indemnity, such as other insurance policies, which may be implicated by the *Nokia* action.

- 18 -

regulations and incurring substantial costs, or refusing to comply and risking serious criminal and civil sanctions), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

Conversely, InterDigital will suffer no hardship should Hartford's indemnity claims be permitted to proceed.[20]  Should this Court agree with Hartford that the *Nokia* complaint does not implicate coverage, Hartford will not have a duty to defend nor a duty to indemnify.

Alternatively, should this Court agree with InterDigital that the *Nokia* complaint potentially states a claim covered by the Hartford policies, then Hartford will still be entitled to discovery concerning Nokia's claim and the statements at issue to determine whether those claims are limited to claims which do not and cannot implicate coverage.  That discovery will impact not only Hartford's duty to defend but also its duty to indemnify.  As such, the discovery which InterDigital seeks to cut off by dismissing Count Two will still need to occur and may still enable this Court to conclude that Hartford has no duty to indemnify InterDigital.

### G.     Hartford's Indemnity Claims Are Ripe For Adjudication

InterDigital advances two reasons for dismissing Count Two without prejudice:  (1) the fact that the *Nokia* action is still pending, and (2) alleged "practical" and "fairness" considerations.  *See* InterDigital's Brief at p. 4.  Neither of InterDigital's two reasons for dismissing Hartford's complaint is compelling.

---

[20]      To the extent that InterDigital relies upon cases such as *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 401 F.3d 876 (8th Cir. 2005) to argue that Hartford's claims are not ripe because the issue of InterDigital's knowledge of the falsity of its alleged misstatements remains an open fact that could be adjudicated in the Nokia action, InterDigital overstates its objection.  First, the initial question presented by Hartford is a legal one – whether Nokia's allegation that InterDigital made knowingly false statements is enough to preclude coverage.  Second, InterDigital ignores the numerous other bases which Hartford has asserted as possible grounds for denying coverage – which have nothing to do with this one, narrow issue.  As such, even if the "knowledge" issue were not ripe at this time, the remainder of Hartford' indemnity claim is.

- 19 -

1.    **This Court may decide Hartford's indemnity claim while the _Nokia_
      action is pending**

While InterDigital has cited cases in which courts refrained from deciding indemnity

while an underlying action was pending, courts deciding indemnity claims certainly have and can

award declaratory relief in favor of an insurance carrier while an underlying case is still pending.

_E.g. First Oak Brook Corp. Syndicate v. Comly Holding Corp._, 93 F.3d 92 (3d Cir. 1996);

_Classic Fire & Marine Ins. Co. v. Moe and Curly Corp._, 1997 WL 727498, *2 (E.D. Pa. Nov.

12, 1997); _see also Nationwide Mut. Fire Ins. Co. of Columbus v. Pipher_, 140 F.3d 222 (3d Cir.

1998) (reversing district court's order relieving Nationwide of its duty to defend and potentially

indemnify insured).  As this Court has observed, "the Court of Appeals and district courts in this

Circuit have held that disputes between an insured and his insurer are ripe for adjudication even

though a judgment triggering the insured's liability has not yet occurred."  _First Fid._

_Bancorporation v. Nat'l Union Fire Ins. Co._, 1990 WL 165937 at *9 (E.D. Pa. Oct. 25, 1990).

In _Home Ins. Co. v. Law Offices of Jonathan DeYoung, P.C._, 107 F. Supp. 2d 647 (E.D.

Pa. 2000), this Court permitted a declaratory judgment action concerning coverage to go forward

where, among other things, (a) the coverage action raised "purely legal" issues which did not

require the Court to make factual determinations which would otherwise best be left to the jury

in the underlying action, and (b) the existence or lack of insurance coverage would likely impact

whether the underlying litigation would go forward.  _Id._ at 650.

Similarly, several decisions applying Pennsylvania law have stated that, rather than

denying coverage outright, an insurer should file a declaratory judgment action while the

underlying action _is still pending_ to determine whether a policy exclusion bars coverage.  In the

unpublished case of _Mechetti v. Weisberg_, No. 3102 Phila. 1996 (Pa. Super., June 10, 1997), a

- 20 -

panel of the Superior Court expressly faulted the insurer in that case for refusing to defend

without first obtaining a declaratory judgment:

> Mechetti's complaint … contained allegations of general
> negligence and potentially fell within the coverage of the policy.
> [The insurer], at a minimum, should have pursued the available
> declaratory judgment procedure at the outset to determine its duty
> to defend the insured. Unfortunately, however, [it] failed to do so.
> Thus, we conclude that the trial court properly found that [the
> insurer] was obligated to defend because the factual allegations of
> the complaint were potentially within the scope of the policy.

Case 1:06-cv-00422-JJF     Document 30     Filed 04/10/2006     Page 23 of 28

*See Classic Fire & Marine Ins. Co. v. Moe & Curly Corp.*, 1997 WL 727498, *2 (E.D. Pa. Nov.

12, 1997) (quoting *Mechetti*).

While both *Mechetti* and *Classic Fire* are unpublished decisions and thus not binding

precedent on this Court, and while those cases are primarily concerned with the duty to defend,

the *Classic Fire* court ultimately followed *Mechetti* and held that the insurer at issue "owes no

duty to defend *or indemnify* defendant in the underlying action", where the underlying action

was still pending. *Id.* at *2 (emphasis added). As such, those decisions hold that it is not only

possible for an insurer to obtain declaratory relief concerning the scope of its indemnity rights

while an underlying action is pending, but also that it may be preferable to do so.

Similarly, in *Butterfield v. Giuntoli*, 448 Pa. Super. 1, 670 A.2d 646 (1995), the court not

only concluded that certain indemnity issues should be determined while the underlying action

was pending but also that the insurer may, in certain cases, need to intervene in the underlying

action to ensure that matters relevant to indemnity are clearly decided by the jury. In *Butterfield*,

a hospital's excess liability insurer sought to deny coverage for an award of punitive damages,

arguing in part that Pennsylvania public policy precluded coverage for punitive damages. The

court held that the excess liability policy was ambiguous as to whether it covered punitive

damages for malpractice liability. Finding that Pennsylvania's public policy only barred

coverage for directly imposed, as opposed to vicariously imposed, punitive damages, the

*Butterfield* court held that the excess insurer failed to carry its burden of establishing that the jury

awarded punitive damages in the underlying malpractice action against the hospital solely on

basis of direct liability, for which public policy bars insurance coverage, rather than on basis of

vicarious liability for acts of doctors, for which public policy does not bar coverage. The court

emphasized that under the jury instructions submitted, the jury could have found hospital either

directly negligent or vicariously negligent or both, and further emphasized that the insurer had

right to participate in case but neither requested specific instructions nor sought to intervene.

If, in some cases an insurer is required to intervene in an underlying action and submit

special jury interrogatories or otherwise risk later being found to have failed to sustain its burden

of denying coverage, an insurer also should be permitted to file a declaratory judgment action

during the pendency of the underlying action to clarify issues relevant to indemnity and to obtain

discovery which may be relevant to both coverage and possible special jury interrogatories.

2.      **It is not only practical, but fair, for this Court to decide Hartford's indemnity claim now**

Practical and fairness considerations similarly merit consideration of Hartford's

indemnity claims now. Should this Court agree that based upon the face of the *Nokia* complaint

Hartford has no duty to defend, Hartford would also prevail on Count Two. *E.g. Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808, 813 (3d Cir. 1994). Plus, as discussed above, the very discovery

that Hartford will seek in connection with Count One (duty to defend) also will impact the

resolution of Count Two. Thus, as a practical matter, delaying resolution of the indemnity issue

will not result in any significant savings to either the parties or this Court.

As to fairness considerations, it is eminently fair to determine now whether Hartford may

deny any duty to indemnify InterDigital – before Hartford is forced to defend the entire *Nokia*

- 22 -

action and before Hartford is forced to decide whether to settle or litigate Nokia's claims. This Court can determine now that Hartford owes no duty to indemnify InterDigital – either because of one of the legal issues raised by Hartford or based upon a determination of the actual facts surrounding InterDigital's coverage claim. While perhaps one of these facts may be decided in the *Nokia* action (namely, whether InterDigital made a knowingly false statement), many other

facts relevant to indemnity will <u>not</u>. For instance, the *Nokia* court need not determine when InterDigital committed any "personal or advertising injury" offense or when any publication at issue was first made. The *Nokia* court also need not determine if other insurance exists which should pay or share in the indemnity of InterDigital.

## III.    <u>CONCLUSION</u>

Count Two of Hartford's Complaint presents a ripe controversy concerning Hartford's alleged duty to indemnify InterDigital. As such, InterDigital's Motion to Dismiss should be denied and this matter permitted to proceed forthwith.

Respectfully submitted,

WHITE AND WILLIAMS LLP

By: _____

Gale White, Esquire
Anthony L. Miscioscia, Esquire
1800 One Liberty Place
Philadelphia, PA  19103-7395
Phone: 215.864.6234
Attorneys for Plaintiffs

Dated:  April 10, 2006

- 23 -

## <u>CERTIFICATE OF SERVICE</u>

I, Anthony L. Miscioscia Esquire, hereby certify that I have caused a true and correct

copy of the Response of Plaintiffs, Hartford Fire Insurance Company and Hartford Casualty

Insurance Company in Opposition to Defendants' Motion to Dismiss Count Two of the

Complaint and the related Memorandum of Law to be electronically filed with the Court (which

is available for viewing and downloading) and to be served by regular mail, on April 10, 2006,

upon the following:

> Stephen J. Mathes, Esquire
> Arleigh P. Helfer, III, Esquire
> Hoyle, Fickler, Herschel & Mathes, LLP
> One South Broad Street – Suite 1500
> Philadelphia, PA  19103-7397

> WHITE AND WILLIAMS LLP
>
> Anthony L. Miscioscia, Esq.

# EXHIBIT

# A

## InterDigital Wins Ruling In Nokia Royalty Dispute

**By CHAD BRAY**
DOW JONES NEWSWIRES
December 29, 2005 4:17 a.m.

NEW YORK – A federal judge confirmed an arbitration award of about $250 million for InterDigital Communications Corp., which is in a dispute with cellphone maker Nokia Corp. over royalties.

In an order filed Wednesday in the Southern District of New York, Judge William H. Pauley III upheld the award granted by an arbitration panel in June and denied Nokia's motion to vacate it.

"While this court does not necessarily agree with every finding of the panel, there is nothing so aberrant about the award to require vacatur," Judge Pauley said in his order. "This court confirms the award in its entirety."

The dispute revolves around royalties agreed to as part of licensing agreements entered into by InterDigital Communications and Nokia in January 1999.

A Nokia spokesman didn't immediately have a comment when reached Wednesday afternoon.

Under the agreements, Nokia paid InterDigital $31.5 million in royalties for all handset sales using InterDigital technology prior to January 2002, according to the judge's order.

Nokia's royalty obligations for sales between January 2002 and December 2006 would then be contingent on InterDigital entering into licensing agreements with one of Nokia's three "major competitors" — Lucent Technologies Inc., Telefon AB L.M. Ericsson or Motorola Inc., according to the order.

In March 2003, InterDigital entered into two patent licensing agreements with Ericsson and Sony Ericsson Mobile Communications — a joint venture between Sony Corp. and Ericsson. In creating the joint venture, Ericsson sold its handset business to Sony Ericsson for cash consideration, according to the judge's order.

After entering into the Ericsson agreements, InterDigital requested about $500 million in royalty payments from Nokia, which disputed the obligations and invoked its right to arbitration.

In a filing with the Securities and Exchange Commission on Tuesday, InterDigital said it has taken action to utilize the dispute resolution process under its licensing agreement with Nokia in order to compel Nokia to abide by the arbitration panel's ruling.

The dispute resolution process would establish a timetable for discussions, senior representative meetings and any future initiation of arbitration, if necessary, according to the filing.