## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, et al., : <br><br> Plaintiffs, : <br><br> v. : <br><br> INTERDIGITAL COMMUNICATIONS CORPORATION, et al. : <br><br> Defendants. : | Civ. A. No. 06-0165 |

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF INTERDIGITAL COMMUNICATIONS CORPORATION AND INTERDIGITAL TECHNOLOGY CORPORATION TO DISMISS
### <u>COUNT TWO OF THE COMPLAINT</u>

Defendants InterDigital Communications Corporation and InterDigital Technology Corporation (collectively "InterDigital"), respectfully submit this reply memorandum of law in further support of their motion to dismiss Count Two of the Complaint pursuant to this Court's Order entered April 6, 2006. In opposition to InterDigital's motion, plaintiffs Hartford Fire Mutual Insurance Company and the Hartford Casualty Mutual Insurance Company (collectively "Hartford") argue that it would be proper and fair to adjudicate the duty to indemnify at this time. However, Hartford's opposition makes it clear it seeks to wage an aggressive and improper discovery campaign in this action and to have this Court rule on ultimate issues in play in the underlying litigation. Hartford is thereby seeking to litigate the underlying case a second time here, but to do so in a manner favorable to itself (*i.e.*, to establish liability on a more stringent but uncovered theory of recovery). Such a course of action may lead to an anomalous

result, with the plaintiff in the underlying action recovering on a theory within policy coverage, where this Court has determined that there can be no covered theory.

Not surprisingly, Hartford has *failed to identify a single case* in which *any* court, state or federal, has allowed an insurer to run roughshod over its insured in such fashion.  As noted in InterDigital's opening memorandum of law, where there are issues in a coverage dispute that are also important to the question of liability in the underlying litigation, courts in Pennsylvania and elsewhere have overwhelmingly stated that the duty to indemnify is premature, unripe, and unfit for determination until the conclusion of the underlying litigation.  Until those issues are addressed in the underlying case, the proper focus of this coverage litigation is on Hartford's duty to defend InterDigital, which is solely a legal issue based on Nokia's complaint and the language of the policies at issue, not the duty to indemnify.  For the reasons explained more fully below, InterDigital respectfully requests that the Court grant its motion.

## I.    NO CASE CITED BY HARTFORD CONTEMPLATES THE COURSE OF ACTION IT PROPOSES IN ITS OPPOSITION PAPERS

In its opposition papers, Hartford alleges that InterDigital has wholly ignored a body of Pennsylvania law that purportedly "allows an insurer to seek a judicial determination of its obligations (both defense and indemnity) **before** judgment is entered in the underlying case." (Hartford Mem. at 6; *see* Hartford Mem. at 20-21.)  Hartford further alleges that, even if the Court finds it has a duty to defend, it is still entitled to discovery of facts at issue in the underlying lawsuit in order to "cut off" its duty to defend by having this Court rule on those facts in connection with its duty to indemnify.  (*Id*. at 19.)

These arguments are unavailing.  Hartford fails to account for the fact that the issues presented in this case are readily distinguishable from those in the body of Pennsylvania law it relies upon.  Furthermore, although Hartford contends it has the "right" to engage in active

2

litigation against its insured to discover facts central to the underlying litigation in order to cut off its duty to defend, it offers absolutely no authority for that proposition whatsoever. To be sure, none of the cases cited by Hartford contradicts the general principles concerning the impropriety of reaching questions about the duty to indemnify where that inquiry may address issues at play in the underlying litigation.

### A. The Cases Cited By Hartford Do Not Establish That Pennsylvania Law Permits Courts To Resolve The Duty To Indemnify in All Cases Prior To Entry of Judgment in the Underlying Action

Hartford clouds the issues by first arguing that Pennsylvania law permits a court simultaneously to find that an insurer has no duty to defend and no duty to indemnify. A close reading of the cases upon which Hartford relies, however, demonstrates that this argument is a red herring.

The law is clear that the duty to defend and the duty to indemnify are separate duties that an insurer may owe to its insured. *See Sphere Drake, P.L.C. v. 101 Variety, Inc.*, 35 F. Supp. 2d 421, 427 (E.D. Pa. 1999) (citing *Erie Ins. Exchange v. Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987)). It is indisputable that the duty to defend is generally described as broader than the duty to indemnify. *See Youngman v. CNA Ins. Co.*, 585 A.2d 511, 514 (Pa. Super. Ct. 1991). It is also indisputable that insurers often have a duty to defend a case in which a duty to indemnify never ripens. This is especially true when the defense in the underlying litigation is successful and no liability is ever imposed: the duty to defend is based on the threat of liability for a covered act or omission whereas the duty to indemnify is based on actual liability for that act or omission.

A federal court applying Pennsylvania law determines the duty to defend by evaluating the complaint and the language of the policy, ascertaining as a matter of law whether there is any possibility that a claim will come within the coverage afforded by the policy. *See Air Prods. &*

*Chems., Inc. v. Hartford Accident & Indemn. Co.*, 25 F.3d 177, 179 (3d Cir. 1994); *Pacific Indemn. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985).  Thus, courts generally do not consider extrinsic evidence when determining the duty to defend.  *See Air Prods. & Chems., Inc.*, 25 F.3d at 180 (noting rule that insurer is not permitted to adduce evidence to show that policy exclusions apply to bar duty to defend).

The cases upon which Hartford relies are inapplicable.  They generally fall into three categories that distinguish them from this case.  The first category comprises cases that involve purely legal issues concerning a complaint that alleges only an uncovered claim, such as where a policy excludes coverage for any assault or battery and the underlying complaint alleges injury resulting only from assault or battery.[1]  *See Nationwide Mut. Fire Ins. Co. v. Pipher*, 140 F.3d 222 (3d Cir. 1998) (noting the case involved no factual disputes and considering only a legal issue concerning construction of policy language excluding harms caused by intentional acts from coverage); *First Oak Brook Corp. Syndicate v. Comly Holding Corp.*, 93 F.3d 92 (3d Cir. 1996) (affirming district court decision construing policy language and underlying complaint to find no duty to defend or indemnify); *Classic Fire & Marine Ins. Co. v. Moe & Curly Corp.*, No. Civ. A. 97-5195, 1997 WL 727498 (E.D. Pa. Nov. 12, 1997) (addressing only duty to defend—not duty to indemnify as Hartford misrepresents—based solely on complaint and policy language excluding coverage for assault and battery); *Mutual Benefit Ins. Co. v. Haver*, 725 A.2d 743 (Pa. 1999) (assessing underlying complaint and policy language and holding that there could be no duty to defend or indemnify because the complaint alleged "knowing endangerment" as a matter

---

[1] Indeed, throughout Hartford's memorandum, it relies on coverage cases that feature no factual disputes and which feature only legal questions as to whether the complaints in the underlying actions allege potentially covered claims on their faces.  The vast majority of the cases involve insurers of bars litigating the legal scope of "liquor liability" exclusions and "assault and battery" exclusions, or insurers of homeowners litigating the scope of "intentional and expected injury" exclusions.

of law, triggering a knowing endangerment coverage exclusion); *Mechetti v. Weisberg*, No. 3102 Phila. 1996 (Pa. Super. Ct. June 10, 1997) (slip op.) (affirming finding of duty to defend as a matter of law where claims of complaint did not come within assault and battery exclusion, noting duty to defend may be a proper subject of a declaratory judgment action with no mention as to status of underlying action, and making no statements whatsoever about indemnification); *Brandt v. United States Liab. Ins. Group*, 70 Pa. D.&C.4th 449 (Pa. Ct. C.P. Lancaster Co. 2005) (assessing claims in underlying complaint and policy language excluding coverage for claims arising from pollution or contamination to find no duty to defend or indemnify).

A second category of cases involves coverage claims, unlike the present situation, that were in fact determined *after the resolution* of the underlying litigation. *See Lucker Mfg. v. Home Ins. Co.*, 23 F.3d 808 (3d Cir. 1994) (addressing duty to defend and duty to indemnify in appeal of coverage and bad faith action brought by plaintiff *after* conclusion of underlying litigation); *First Fid. Bancorporation v. National Union Fire Ins. Co.*, Civ. A. No. 90-1866, 1990 WL 165937 (E.D. Pa. Oct. 25, 1990) (addressing insurer's failure to consent to settlement and indemnification liability on summary judgment after final settlement was approved and paid in the underlying lawsuit); *Butterfield v. Giuntoli*, 670 A.2d 646 (Pa. Super. Ct. 1996) (addressing coverage issues in garnishment action against judgment debtors' insurer brought after judgment where second-level excess insurer had associated in the control and defense of the underlying case but failed to direct special interrogatories to the jury as to the basis for their punitive damages award against the insured).

The third category encompasses authority that supports InterDigital's position that it would be proper to refrain from litigating the duty to indemnify until the underlying litigation is resolved. *See Home Ins. Co. v. Law Offices of Jonathan DeYoung, P.C.*, 107 F. Supp. 2d 647 (E.D. Pa. 2000) (addressing "purely legal" question of whether Pennsylvania law permits joinder

5

of a defendant by reissuance of a writ of summons and noting general rule that declaratory judgment court should refrain from determining insurer's duty to indemnify until the insured's liability is established in the underlying litigation).

Additionally, none of these cases cited by Hartford involves a situation in which a court found a duty to defend and then addressed whether it would be proper to consider the duty to indemnify prior to resolution of the underlying litigation. In such cases, as discussed in InterDigital's opening memorandum, courts have found it would be improper to reach the duty to indemnify because that duty would be unripe for adjudication prior to the conclusion of the underlying litigation. *See United Servs. Auto. Ass'n v. Elitzky*, 517 A.2d 982, 992 (Pa. Super. Ct. 1986). Furthermore, virtually none of the insureds in the cases cited by Hartford raised ripeness challenges to consideration of the duty to indemnify.

In addition to the fact that Hartford relies on uninstructive decisional law, its argument that a court may simultaneously rule that an insurer has no duty to defend or to indemnify is a red herring in any event. A declaratory judgment that Hartford has no duty to defend the underlying action would effectively end the dispute between the parties.[2] Hartford would suffer no conceivable damage or prejudice if the Court declined to enter a judgment on its duty to indemnify at the same time. As the Seventh Circuit cogently explained:

> Courts which conclude that there is no duty to defend will often add that there is no duty to indemnify, given that the former duty is broader than the latter. That may be appropriate when it is clear that the insured cannot be held liable under any theory that could potentially fall within the coverage of the policy. Where such a possibility exists, however (e.g., through amendment of the complaint in the underlying suit), the prudent thing for the court to do is to refrain from comment on the duty to indemnify.

---

[2] Hartford later contends that its indemnity claim presents some "purely legal inquiries." (Hartford Mem. at 15.) To the extent there are no factual issues implicated in the putative indemnity claim, they are duplicative of claims that will be resolved by addressing the duty to defend based on the complaint and the policy language.

*Nationwide Ins. v. Zavalis*, 52 F.3d 689, 693 n.5 (7th Cir. 1995).  Thus, if this Court were to

determine that Hartford has no duty to defend, a declaratory judgment that there is also no duty

to indemnify would have no utility: such a judgment would not presently benefit Hartford and

could easily be mooted if Nokia amended its complaint.  Consequently, Hartford's requested

declaratory judgment on the duty to indemnify would be premature and inconclusive of the

parties' rights and relationship under the law of the Third Circuit.

### B. Hartford Offers No Authority Whatsoever That Countenances The Aggressive Litigation Plans It Has Against Its Insured

Hartford contends that, even if the Court determines that it has a duty to defend the

underlying action based on analysis of the complaint and the policy, it has the "right" to engage

in aggressive litigation and discovery vis-à-vis InterDigital in order to "cut off" that duty.  It

believes it has such a right under the guise of litigating its duty to indemnify.  However, Hartford

does not cite a single case in any jurisdiction that contemplates such a result, let alone one that

would permit an insurer to establish its insured's "actual liability" in coverage litigation

concerning the duty to indemnify that would prejudice the insured in the underlying litigation.

Hartford's argument stems principally from an isolated statement in a single federal case.

It contends that *Lucker Manufacturing* stands for the proposition that the duty to defend remains

with an insurer "until facts sufficient to confine the claims to liability not within the scope of the

policy become known to the insurer."  23 F.3d at 813.  However, nothing in *Lucker*

*Manufacturing* remotely suggests that the insurer is therefore entitled to bring a declaratory

judgment coverage action and to obtain discovery in order to establish its insured's "actual

liability" in the underlying action and thereby cut short its duty to defend that action.  In *Lucker*

*Manufacturing*, the insured, Grede Foundries, Inc., settled the underlying action with the

plaintiff, Lucker Manufacturing, after its insurer refused to defend or indemnify Grede in the

7

underlying action.  Grede assigned Lucker all of its rights against its insurer.  Lucker then brought suit against the insurer for its bad faith failure to defend or indemnify.  The issue before the Third Circuit was solely legal: whether the claims in the underlying complaint for defective components to be incorporated in a product that was designed but not yet manufactured were potentially within coverage under a clause governing "loss of use of tangible property that has not been physically injured."  *Id*. at 810.  The Third Circuit ruled that, as a matter of contract construction, the claim was not a covered claim because a system design is not tangible property.  *Id*. at 821.[3]

Hartford cites two more cases in an attempt apparently to support its claim that it may aggressively pursue discovery and litigate the duty to indemnify to cut off any duty to defend it may have.  However, these cases do not advance Hartford's argument in light of the facts of this case.  They do not address a situation in which an insurer that has been found to have a duty to defend then actively sought to litigate its duty to indemnify, let alone to discover evidence that would enable it to establish its insured's liability in the underlying action.

In the first case, *General Accident Insurance Co. of America v. Allen*, 692 A.2d 1089 (Pa. 1997), the underlying civil action involved allegations of sexual abuse of minors by their grandfather and allegations that their grandmother failed to protect the grandchildren.  The grandparents' insurer filed an action for declaratory relief, seeking a declaration pursuant to the Pennsylvania Declaratory Judgments Act that it would have no duty to defend or indemnify them based solely on the complaint and specific policy exclusions concerning expected and intended

---

[3] Hartford claims that *Lucker Manufacturing* establishes that the Third Circuit permits summary disposition of the duty to indemnify if there is no duty to defend. (Hartford Mem. at 7 n.9). Hartford overlooks a critical distinction: in *Lucker Manufacturing*, the underlying litigation had already concluded.  Therefore, the complaint in *Lucker Manufacturing* was not going to be amended, rendering a declaratory judgment on the issue of the duty of indemnification ripe and proper.

injuries.  The underlying civil litigation was tried to a jury and resulted in a verdict against the

grandparents *before* dispositive motions were filed in the coverage action.  (Before the coverage

case reached the Supreme Court of Pennsylvania, the judgment against the grandfather in the

underlying case was affirmed by the Superior Court and his petitions for allowance of appeal and

certiorari were denied.  The Superior Court reversed the judgment against the grandmother and

entered judgment n.o.v. in her favor.)  With the verdict in the underlying litigation in hand, the

trial court entertained summary judgment motions and determined as a matter of law that the

insurer had a duty to defend the grandparents.  The insurer appealed that order.  Issues arose as to

whether the order was a final order for purposes of appeal.  The Superior Court quashed the

appeal.  Thus, the Supreme Court of Pennsylvania granted "allocatur limited to the question of

'whether a trial court's determination of an insurer's duty to defend is appealable, particularly

where the trial court had not yet determined the insurer's duty of indemnification.'"  *Allen*, 692

A.2d at 1092.[4]  The court determined that the trial court's order concerning the duty to defend

was necessarily based on its determination that "as a matter of law the claims made against the

Allens were covered by the policies" and was thus "a final determination as to the legal rights

and obligations of the parties arising under the policies" for purposes of the appellate rules.  *Id.*

at 1094.  When the insureds argued that the trial court order was not final because, although the

---

[4] In a footnote concerning the framing of the issue it was reviewing, the court stated:

> The issue as framed may be read to unfairly suggest that the
> appealability of the common pleas court's order granting summary
> judgment to the children as to [the insurer's] duty to defend is
> dependent upon whether a determination had also been made as to
> its duty to indemnify.  To eliminate any confusion, we emphasize
> at the outset of our discussion that the timing of the appeal is not
> determinative of the issue before us.

*Allen*, 692 A.2d at 1092 n.9.

9

underlying action reached judgment, it could not address the duty to indemnify prior to exhaustion of all appeals, the court held that the trial court's order necessarily determined that the insurer had a duty to indemnify the insureds, who were found liable in the underlying litigation, rendering the order final for purposes of appeal. *See id*. at 1096. Thus, *Allen* presents a wholly different set of facts and issues than are before the Court in this case.[5]

In addition, Hartford relies on *Harleysville Mutual Insurance Co. v. Madison*, 609 A.2d 564 (Pa. Super. Ct. 1992). *Madison* involved an automobile accident. The insurer had issued a policy to Mills, the owner of the car. At the time of the accident, Madison was driving the car. Those passengers who were injured brought civil actions against Mills and Madison, among others. The insurer brought a declaratory judgment action seeking a declaration that it owed no duty of defense or indemnification to Madison, invoking a policy exclusion based on the fact that Mills had not given Madison permission to operate the car on the day of the accident. (The insurer did not dispute that it had a duty to defend and indemnify Mills, its insured.) The trial court dismissed the coverage action as unripe. Significantly, on appeal the Superior Court determined in a 2-1 decision that the coverage action concerning the duties to defend and indemnify could go forward in part because it did not seek to litigate any of the issues that would be addressed in the third-party action against the insured. *See id*. at 566. Unlike the insurer in *Madison*, however, Hartford is seeking extensive discovery concerning the duty to indemnify[6]

---

[5] Hartford's claim that *Allen* "held" that the Pennsylvania Declaratory Judgment Act empowers a court to answer questions about indemnity before resolution of all appeals is inaccurate. *Allen* held that an order that was expressly defined by Pennsylvania's declaratory judgment statute to be a final order was appealable as of right pursuant to Pa. R.A.P. 341(b)(2). *Allen*, 692 A.2d at 1095. The court further observed, as alternative grounds, that a court order that necessarily determined all the issues in a lawsuit was final for purposes of appeal pursuant to Pa. R.A.P. 341(b)(1). *Id*. at 1096.

[6] At the time Hartford served the complaint in this action, it also served numerous interrogatories and burdensome document requests without leave of court in plain violation of Federal Rules of

and is attempting to have this Court rule on issues of fact that are at the heart of the underlying litigation.

None of these decisions contradicts the voluminous authority to the contrary InterDigital cited in its opening memorandum.  Courts confronting the issue overwhelmingly hold it would be improper to permit an insurer to litigate issues concerning its duty to indemnify in a coverage action where those issues are germane to the question of the insured's liability in the pending underlying litigation.  (*See* InterDigital Mem. at 6-8 & 18-20.)  Here, Hartford announces that, even if it has a duty to defend, it will seek in this action to determine what statements InterDigital made about Nokia, whether those statements libeled or disparaged Nokia or its products, who made the statements and when, what circumstances surrounded those statements, and whether InterDigital has any other applicable insurance.  (Hartford Mem. at 9-10 & 16-17.)  Resolution of these factual issues would most certainly prejudice InterDigital in the underlying litigation, where the vast majority of them are likely to be answered in any event.  Nokia certainly will have to demonstrate whether and when InterDigital allegedly made the false statements about its products that it claims harmed its reputation and business.  To prove its Lanham Act claim, Nokia also will have to address whether the alleged false statements were made recklessly or with knowledge of their falsity.  It is inconceivable how this Court could determine that InterDigital published "disparaging" remarks about Nokia's products without

---

Civil Procedure 33(a) and 34(b).  Contrary to Hartford's claim that it is entitled to this discovery in connection with Count I of its complaint (Hartford Mem. at 22.), which addresses the duty to defend, this discovery cannot have any effect on the question of the duty to defend because courts will not consider extrinsic evidence from an insurer in determining the duty to defend. *See Air Prods. & Chems., Inc.*, 25 F.3d at 180.  Thus, Hartford's claim that it will obtain all of the discovery it seeks even if resolution of the duty to indemnify is delayed is wrong.  (Hartford Mem. at 22.)

11

making findings that would affect the underlying action, where Nokia is seeking to establish that InterDigital made false statements about its products.

The fact that Hartford may have the duty to defend and therefore to consider possible settlement proposals within policy limits before the underlying case reaches its conclusion is fully consistent with the law, including a number of cases InterDigital cited in its opening memorandum.  Hartford has cited nothing to the contrary, especially not cases permitting an insurer to harm its insured by establishing facts in a coverage action that would collaterally estop the insured from defending itself on key issues in the underlying case.

## II.    IN A 12(B)(1) MOTION CONSTITUTING A "FACIAL ATTACK" THE COURT IS NOT BOUND BY LEGAL CONCLUSIONS IN THE NON-MOVING PARTY'S COMPLAINT

Hartford argues that the factual allegations of its complaint must be taken as true in light of InterDigital's "facial attack" on Count Two of its complaint, citing *Corporate Aviation Concepts, Inc. v. Multi-Service Aviation Corp*., No. Civ. A. 03-3020, 2005 WL 1693931 (E.D. Pa. July 19, 2005).  While Hartford may be right about the law, it is dead wrong about the effect that it contends must be given to the legal conclusions in its complaint.  Hartford contends that its complaint alleges that the underlying action "does not implicate indemnity to the extent that Nokia's claims do not involve an enumerated 'personal and advertising injury' offense committed during the Hartford policy period and to the extent that coverage is precluded by a Hartford policy exclusion."  (Hartford Mem. at 10.)  Hartford further contends that its complaint "notes" that "Nokia expressly alleges in its Lanham Act claim that InterDigital made the false statements at issue with 'knowledge of their falsity.'"[7]  (*Id*. at 10-11.)  It is unclear what

---

[7] Although Hartford is ostensibly discussing Count Two of its complaint, concerning its duty to indemnify, the claims in the underlying complaint are germane to the duty to defend.  Notably, courts applying Pennsylvania law will look to the allegations of the complaint to determine whether there is any possibility that they will result in a covered claim.  *See Air Prods. &*

significance Hartford believes these allegations have in light of the standard for evaluating a

"facial attack" concerning subject matter jurisdiction; however, it is well-settled that a court

bound to accept only the factual allegations of a complaint as true is not bound to accept the legal

conclusions in the complaint. *See Pennsylvania Prot. & Advocacy, Inc. v. Houston*, 136 F. Supp.

2d 353, 359 (E.D. Pa. 2001) (noting the presumption of truthfulness applicable in evaluating

"facial attacks" does not force the court to credit legal conclusions masquerading as factual

conclusions).

### III.   CONSIDERATION OF THE RIPENESS FACTORS DEMONSTRATES THE DUTY TO INDEMNIFY IS UNRIPE

InterDigital stands by its analysis of the factors relevant to the ripeness analysis set forth

in its opening memorandum.  However, InterDigital is constrained to point out that Hartford

misrepresents the import of *River Thames Insurance Co. v. 5329 West, Inc*., Civ. A. No. 95-

0751, 1995 WL 241490 (E.D. Pa. April 21, 1995), the principal case it relies upon in claiming

that its interests are adverse to InterDigital's interests.  In that case, the insurer brought a

coverage action seeking declarations that it had no duty to defend or indemnify its insured in the

underlying lawsuit on the basis of assault and battery, liquor liability, and punitive damages

exclusions.  The insured moved to dismiss for lack of ripeness, claiming that the claims based on

the liquor liability and punitive damages exclusions were unripe (although the opinion does not

---

*Chems., Inc.*, 25 F.3d at 179.  As InterDigital stated in its opening memorandum, the elements of a Section 43(a) Lanham Act claim are that the defendant must have made a false statement in bad faith, which does not necessarily require that the statements be made with actual knowledge of their falsity. (InterDigital Mem. at 14 n.7.)  An additional reason to transfer this matter to the District of Delaware pursuant to InterDigital's pending (and unopposed) motion to transfer is that having the court hearing the underlying action also rule on the duty to defend would avoid the possibility that this court would determine the legal standard required a showing of actual knowledge of falsity, precluding coverage, and that the court hearing the underlying action would determine that recovery could be had on a showing of reckless disregard for the truth or falsity of the statements, resulting in an ostensibly covered claim.

reveal on what grounds), including the extent to which they affected the duty to defend the underlying action. Without analysis, the court determined that the claim concerning the duty to defend and indemnify under the liquor liability exclusion could proceed.[8] *River Thames* does not present an identical situation as Hartford contends. (Hartford Mem. at 14.) Moreover, that opinion says nothing at all about permitting discovery or resolving issues at the core of the underlying case.

InterDigital also must point out that the case of *Butterfield v. Giuntoli*, 670 A.2d 646 (Pa. Super. Ct. 1996), is readily distinguishable and does not stand for the proposition urged by Hartford (*i.e.*, that insurers should intervene in underlying actions to have indemnity issues addressed). In that case, the second-level excess insurer of a hospital, its trustees, and its physicians associated in the control and defense of a medical malpractice claim, attending all proceedings, including conferences with the court and the full trial, but failed to direct special interrogatories to the jury. Thus, the insurer was unable to establish the basis of the punitive damages award the jury rendered against its insureds. (In any event, the insurer's principal position was that indemnification of punitive damages awards was against public policy in Pennsylvania, which turned out to be an erroneous legal conclusion.) The Superior Court held as a matter of law that the insurer therefore could not meet its burden to prove no indemnification was due. The court further faulted the insurer for failing to take advantage of the opportunity to direct specific interrogatories after the punitive damages verdict was rendered and before the jury

---

[8] Hartford mischaracterizes this holding, claiming that the court refused to dismiss the "insurer's count seeking a declaration that it had no duty to indemnify based upon the policy exclusions." (Hartford Mem. at 14.) In fact, the court was addressing a single policy exclusion and coverage generally, including the duty to defend. In addition, the opinion does not state on what grounds the insured contended that the claims involving the liquor liability exclusion were unripe, rendering this decision uninstructive.

was dismissed.  *See id*. at 658.  In any event, there is no intervention issue in this case; if there were, this is not the court to which Hartford should direct its application to intervene.

## IV.  CONCLUSION

For the foregoing reasons and the reasons explained in its opening memorandum, InterDigital respectfully requests that the Court grant its motion and enter an Order dismissing Count Two of the complaint without prejudice.

Respectfully submitted,


___s/Stephen J. Mathes_____
Stephen J. Mathes
Arleigh P. Helfer III
Thomas S. Coleman
HOYLE, FICKLER, HERSCHEL & MATHES LLP
One South Broad Street, Suite 1500
Philadelphia, PA 19103-7397
(215) 981-5700
Attorneys for Defendants

Dated:  April 24, 2006

## CERTIFICATE OF SERVICE

I, Arleigh P. Helfer III, hereby certify that I caused the foregoing Reply Memorandum of Law in Further Support Of Motion Of Defendants InterDigital Communications Corporation And InterDigital Technology Corporation To Dismiss Count Two Of The Complaint to be filed and served this day by the Electronic Case Filing system, where it is available for viewing, and also served by U.S. Mail, postage prepaid, upon the following:

Gale White, Esquire
Anthony L. Miscioscia, Esquire
White and Williams
1800 One Liberty Place
Philadelphia, PA 19103-7395

Attorneys for Plaintiffs

/s/ Arleigh P. Helfer III_____
Arleigh P. Helfer III

Dated: April 24, 2006