**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

HARTFORD FIRE INSURANCE )
COMPANY, et al., )
                              )
           Plaintiffs, )      C.A. No. 06-422-JJF
                              )
    v. )      **PUBLIC VERSION**
                              )
INTERDIGITAL COMMUNICATIONS )
CORPORATION, et al., )
                              )
           Defendants. )

**BRIEF OF INTERDIGITAL COMMUNICATIONS CORPORATION AND
INTERDIGITAL TECHNOLOGY CORPORATION IN SUPPORT OF MOTION FOR
PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**

                                    Richard L. Horwitz (#2246)
                                    Jennifer C. Wasson (#4933)
                                    POTTER ANDERSON & CORROON LLP
OF COUNSEL:                           Hercules Plaza, 6th Floor
                                    1313 North Market Street
Stephen J. Mathes                    Wilmington, DE 19801
Arleigh P. Helfer III                (302) 984-6000
Stacy B. Heenan                  rhorwitz@potteranderson.com
HOYLE, FICKLER, HERSCHEL &     jwasson@potteranderson.com
    MATHES LLP
One South Broad Street - Suite 1500   *Attorneys for Defendants*
Philadelphia, PA 19107          *InterDigital Technology Corporation and*
(215) 981-5710                   *InterDigital Communication Corporation*

Dated: September 24, 2007
Public Version Dated: October 1, 2007
822440 / 30373

## TABLE OF CONTENTS

**PAGE**

TABLE OF CITATIONS ............................................................................... ii

I.    INTRODUCTION ................................................................................. 1

II.   STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ..................... 1

III.  SUMMARY OF ARGUMENT ................................................................. 2

IV.   CONCISE STATEMENT OF FACTS ........................................................ 3

V.    ARGUMENT ...................................................................................... 7

    A.    Legal Standards ........................................................................... 7

        1.    Summary Judgment Standard ................................................. 7

        2.    Pennsylvania Law Concerning Construction of Insurance Policies and
             Determination of the Duty to Defend ....................................... 8

    B.    The Scope of Coverage of the Hartford Policies Encompasses the Claims
       Advanced in the *Nokia* Action ...................................................... 10

        1.    The Hartford Policies and the Scope of Coverage ....................... 10

        2.    The Allegations of the Nokia Complaints Demonstrate They Advance
             Claims That Are Within or Potentially Within Coverage ............... 13

            a.    Nokia's First Amended Complaint ...................................... 14

            b.    None of the Coverage Exclusions Relied Upon by Hartford Bars
               Coverage of the First Amended Complaint ........................... 16

               (1)    The Exclusions for Knowing Violation of the Rights of Another
                     and Material Published With Knowledge of Falsity Do not
                     Apply to Bar Coverage ............................................. 18

               (2)    The Prior Publication Exclusion Does Not Bar Coverage ............ 21

               (3)    The Quality or Performance of Goods Exception Does Not Bar
                     Potential Coverage of the First Amended Complaint ................. 26

               (4)    The Infringement of Intellectual Property Rights Exclusion
                     Does Not Bar Coverage with Respect to the First Amended
                     Complaint ........................................................... 28

            c.    Hartford Had a Duty to Defend Against Nokia's Original Complaint ..... 31

VI.   CONCLUSION .................................................................................. 34

## TABLE OF CITATIONS

### Cases

*401 Fourth Street v. Investors Ins. Group,*
  879 A.2d 166 (Pa. 2005) ....................................................................................9, 30

*AES Corp. v. Dow Chem. Co.,*
  C.A. No. 99-673-JJF, 2001 WL 34367296 (D. Del. Jan. 19, 2001) ...........................8

*A.W. v. Jersey City Public Sch.,*
  486 F.3d 791 (3d Cir. 2007)......................................................................................7

*Air Products & Chems., Inc. v. Hartford Accident & Indem. Co.,*
  25 F.3d 177 (3d Cir. 1994).............................................................................. *passim*

*Berda v. CBS, Inc.,*
  881 F.2d 20 (3d Cir. 1989)........................................................................................21

*Cadwallader v. New Amsterdam Cas. Co.,*
  152 A.2d 484 (Pa. 1959) ............................................................................................8

*Canal Ins. Co. v. Underwriters at Lloyd's London,*
  435 F.3d 431 (3d Cir. 2006).....................................................................................10

*digiGAN, Inc. v. iValidate, Inc.,*
  C.A. No. 02-420, 2004 WL 203010 (S.D.N.Y. Feb. 3, 2004) ..................................27

*Forbes Inc. v. Granada Biosciences, Inc.,*
  124 S.W.3d 167 (Tex. 2003).....................................................................................19

*Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.,*
  193 F.3d 742 (3d Cir. 1999)............................................................................ *passim*

*General Accident Ins. Co. of Am. v. Allen,*
  692 A.2d 1089 (Pa. 1997)........................................................................................10

*Hans-Jürgen Lauge & Oxidwerk HJL AG v. KM Europa Metal AG,*
  C.A. No. 96-8147, 1998 WL 148427 (S.D.N.Y. Mar. 27, 1998) .............................27

*Hartford Cas. Ins. Co. v. Petrolon Mgmt.,*
  C.A. No. 95-64-JJF (D. Del. Dec. 29, 1995) .............................................................7

*International Communication Materials, Inc. v. Employer's Ins. of Wausau,*
  No. Civ. A. 94-1789, 1996 WL 1044552 (W.D. Pa. May 29, 1996)..............23, 24, 25

*Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.,*
    908 A.2d 888 (Pa. 2006) ........................................................................................ *passim*

*Maddox v. St. Paul Fire & Marine Insurance Co.,*
    179 F. Supp. 2d 527 (W.D. Pa. 2001) ........................................................................25

*Mikohn Gaming Corp. v. Acres Gaming, Inc.,*
    165 F.3d 891 (Fed. Cir. 1998) ....................................................................................21

*Nokia Corp. v. InterDigital Communications, Corp.,*
    C.A. No. 05-16-JJF, 2005 WL 3525696 (D. Del. Dec. 21, 2005) ...........................20

*Paoletto v. Beech Aircraft Corp.,*
    464 F.2d 976 (3d Cir. 1972) .........................................................................................8

*Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.,*
    809 A.2d 243 (Pa. 2002) ............................................................................................19

*Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.,*
    75 F.3d 1568 (Fed. Cir. 1996) ....................................................................................27

*Prudential Property & Cas. Ins. Co. v. Sartno,*
    903 A.2d 1170 (Pa. 2006) ..........................................................................................25

*Standard Venetian Blind Co. v. American Empire Ins. Co.,*
    469 A.2d 563 (Pa. 1983) ......................................................................................25, 29

*Sunoco, Inc. v. Illinois Natl Ins. Co.,*
    226 Fed. Appx. 104 (3d Cir. 2007) ..............................................................................9

*Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan,*
    439 F. Supp. 2d 337 (D. Del. 2006) .............................................................................7

*Tuscarora Wayne Mutual Ins. Co. v. Kadlubosky,*
    889 A.2d 557 (Pa. Super. Ct. 2005) ...........................................................................29

*U.S. Test, Inc. v. NDE Environmental Corp.,*
    196 F.3d 1376 (Fed. Cir. 1999) ..................................................................................28

*USX Corp. v. Adriatic Ins. Co.,*
    99 F. Supp. 2d 593 (W.D. Pa. 2000) ..........................................................................29

*Van Dusen v. Barrack,*
    376 U.S. 612 (1964) ......................................................................................................8

*Zenith Elecs. Corp. v. Exzec, Inc.*,
    182 F.3d 1340 (Fed. Cir. 1999)...............................................................................20

## Statutes

15 U.S.C. § 1051 *et seq.*.........................................................................................3, 14

15 U.S.C. § 1125(a) ...............................................................................................32

28 U.S.C. § 1404(a) .................................................................................................8

## I.     INTRODUCTION

This action is an insurance coverage dispute between InterDigital Communications Corporation ("ICC") and InterDigital Technology Corporation ("ITC") (collectively, "InterDigital"), on the one hand, and their insurers, Hartford Fire Insurance Company ("Hartford Fire") and Hartford Casualty Insurance Company ("Hartford Casualty") (collectively, "Hartford"), on the other. The dispute concerns InterDigital's request for a defense of the underlying action, *Nokia Corporation & Nokia, Inc. v. InterDigital Communications Corp. & InterDigital Technology Corp.*, United States District Court for the District of Delaware, C.A. No. 05-16-JJF (the "*Nokia* action"), under policies issued by Hartford.

Although the complaint in the *Nokia* action includes claims within the coverage of the policy, Hartford has flatly denied InterDigital a defense. Now Hartford seeks extensive discovery from InterDigital concerning the *Nokia* action in this lawsuit; however, as explained below, such discovery is irrelevant to a determination of Hartford's duty to defend the *Nokia* action, which is ascertained from the allegations in Nokia's complaints and the insurance policies at issue. Accordingly, the issue of whether Hartford breached its duty to defend InterDigital in the *Nokia* action is ripe for adjudication. For the reasons stated more fully below, Hartford breached that duty.

## II.     STATEMENT OF NATURE AND STAGE OF PROCEEDINGS

This action concerns an insurance coverage dispute. Hartford sued for declaratory judgments that it has no duty to defend or indemnify InterDigital. By Order and Memorandum Opinion dated December 14, 2006, this Court dismissed Hartford's complaint to the extent it sought a declaration of its duty to indemnify InterDigital as premature, leaving Hartford's duty to defend InterDigital as the sole issue in this lawsuit.

Following Nokia's amendment of its complaint in the *Nokia* action in February, 2007, Hartford amended its declaratory judgment complaint in this action. InterDigital has answered Hartford's amended complaint and has counterclaimed for declarations that Hartford has a duty to defend the *Nokia* action and that Hartford breached its insurance contract with InterDigital by denying a defense.

As shown in this brief, under controlling authority the duty to defend is determined by measuring the allegations of the complaint in the underlying action against the coverage terms of the insurance policy without regard to extrinsic evidence. Because there is no dispute that Hartford issued the insurance policies at issue to InterDigital, the issue of Hartford's liability is ripe for adjudication.

## III.    SUMMARY OF ARGUMENT

1.  Pennsylvania law controls this coverage dispute.

2.  Under Pennsylvania law, courts analyzing disputes concerning an insurer's duty to defend decide the issue as a matter of law by looking to the four corners of the underlying complaint and comparing it to the coverage afforded by the insurance policy at issue.

3.  The scope of coverage afforded by the insurance policy is a question of contractual interpretation for the Court to decide as a matter of law, with any ambiguities construed against the insurer and all doubts resolved in favor of finding coverage.

4.  Courts applying Pennsylvania law do not consider extrinsic evidence in analyzing whether the allegations of the underlying complaint come within the scope of coverage and trigger the duty to defend. The sole exception is when an insured is attempting to prove that it comes within an exception to an exclusion of coverage that appears to apply to bar coverage, and that exception does not apply in this case.

5.   Under Pennsylvania law, the duty to defend exists anytime a claim in the underlying complaint comes within *or potentially comes within* the coverage afforded by a policy.

6.   Here, there is no dispute that Hartford issued insurance policies to InterDigital.

7.   The Nokia complaints include claims that come within or potentially come within the "personal and advertising" coverage afforded by the Hartford policies.   While InterDigital vigorously contests Nokia's allegations, Nokia contends that InterDigital has made false or misleading statements that disparage Nokia and its products.

8.   Under Pennsylvania law, an insurer that denies coverage based on policy exclusions carries the burden of proving that the exclusions bar all coverage.

9.   In lawsuits concerning whether an insurer has breached a duty to defend, an insurer may not adduce extrinsic evidence to prove the applicability of policy exclusions.

10. If it is unclear whether a policy exclusion bars all coverage, then the duty to defend is not negated.

11. Hartford cannot establish that any of the policy exclusions it relies upon bars all coverage.

## IV.   CONCISE STATEMENT OF FACTS

The facts in this case are straightforward, undisputed, and mostly a matter of court record.  On or about January 12, 2005, Nokia Corporation and Nokia, Inc. (collectively "Nokia") sued InterDigital, seeking a declaration that numerous InterDigital patents are invalid and seeking damages for an alleged violation of the Lanham Act, 15 U.S.C. § 1051 *et seq*.  A true and correct copy of the original complaint from the *Nokia* action is included as Exhibit A to InterDigital's Appendix, filed herewith.[1]  Hartford Fire issued two commercial general liability

---

[1] The Appendix will be cited herein as "App. ___."  InterDigital is including only the Nokia Complaint and not its voluminous exhibits in the Appendix.

policies to ICC as the named insured: 1) Policy No. 39 UUN TS 0845 DB for the period of

December 22, 2003, to December 21, 2004; and 2) Policy No. 39 UUN TS 0845 K1 for the

period of December 22, 2004, to December 21, 2005.  Copies of pertinent parts of the Hartford

Fire policies are included in the Appendix as Exhibit B.  Hartford Casualty issued two umbrella

policies to ICC as the named insured: 1) Policy No. 39 RHU TS 0953 for the period of

December 22, 2003, to December 21, 2004; and 2) Policy No. 39 RHU TS 0953 for the period of

December 22, 2004, to December 21, 2005.[2]  Copies of pertinent parts of the Hartford Casualty

umbrella policies are included in the Appendix as Exhibit C.  On February 16, 2005, InterDigital

tendered the *Nokia* action to Hartford, seeking a defense and potential indemnity.

Hartford denied coverage and explained its denial in two letters, one dated April 5, 2005,

and the other dated June 6, 2005.



---

[2] There is no dispute that ICC, now known as InterDigital Communications, LLC, is the named
insured under all of the policies at issue.

[3] ███████████████████████████████████████████████████████████As
set forth in the Declaration of Rebecca B. Opher, included in the Appendix as Exhibit E, ITC at
the relevant times under the policies at issue (from December, 2003, through December, 2005)
was a wholly owned subsidiary of ICC, which is now known as InterDigital Communications,

[REDACTED]

On February 6, 2007, following a motion for leave to amend, Nokia amended its complaint in the *Nokia* action. Nokia's First Amended Complaint included more specific allegations and set forth fourteen claims against InterDigital. A true and correct copy of Nokia's First Amended Complaint is included in the Appendix as Exhibit F.[5] Two counts are based on the Lanham Act and Nokia added twelve state-law causes of action. InterDigital tendered the First Amended Complaint to Hartford and again requested a defense. By letter dated March 27, 2007, Hartford again denied InterDigital a defense in the *Nokia* action, on the contentions that:

(1) Nokia's First Amended Complaint alleged no "personal and advertising injury" because InterDigital allegedly was making statements about its own goods, products, or patents;

---

LLC. Under Section II.2.e of the Hartford Fire policies, any subsidiaries of ICC's of which it owned more than 50% of the voting stock are insured.

[4] Because the Nokia complaints are silent as to when the alleged statements were first made, the application of this exclusion could only be proven by extrinsic evidence, which is impermissible in an adjudication of a carrier's defense obligations.

[5] InterDigital's Appendix includes the publicly available version of Nokia's First Amended Complaint (cited as "Nokia FAC") without its exhibits.

(2) certain of InterDigital's statements alleged in Nokia's First Amended Complaint were made outside of Hartford's coverage territory;[6]

(3) coverage was barred by Exclusion 2.a because InterDigital allegedly intended to harm Nokia;[7]

(4) coverage was barred by Exclusion 2.b because the publication of the alleged disparagements Nokia complains of were made by InterDigital allegedly with knowledge of their falsity;[8]

(5) coverage was barred by Exclusion 2.c because the alleged disparagements were allegedly first made prior to the inception of the Hartford policies;[9]

(6) coverage was barred by Exclusion 2.g (as modified by the Cyberflex endorsement), because the alleged disparagements in the Nokia First Amended Complaint allegedly only related to the failure of products to conform to advertising statements about quality or performance; and

(7) coverage was barred by Exclusion 2.i (as modified by the Cyberflex endorsement) because the alleged disparagements in the Nokia complaint allegedly arose out of a dispute involving intellectual property rights.[10]

---

[6] Because the Nokia complaints are silent as to where the alleged statements were made, Hartford would look to extrinsic evidence to attempt to prove that all of the alleged statements were made outside of the coverage territory.

[7] Because the Nokia complaints do not recite every statement allegedly made by InterDigital, the application of this exclusion could only be proven by extrinsic evidence.

[8] Because the Nokia complaints do not recite every statement allegedly made by InterDigital, the application of this exclusion could only be proven by extrinsic evidence.

[9] Because the Nokia complaints are silent as to when the alleged statements were first made, the application of this exclusion could only be proven by extrinsic evidence.

[10] A true and correct copy of the March 27, 2007 denial letter is included in the Appendix as Exhibit G.

As will be discussed below, Nokia's allegations in the underlying action do not support any of Hartford's asserted grounds for denying coverage.

## V.    **ARGUMENT**

### A.    **Legal Standards**

#### 1.    Summary Judgment Standard

The summary judgment standard is familiar and well known. As this Court has stated,

> [A] party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all inferences in the light most favorable to the non-moving party.

*Toy v. Plumbers & Pipefitters Local Union No. 74 Pension Plan*, 439 F. Supp. 2d 337, 339 (D. Del. 2006) (citations omitted); *see A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791, 794 (3d Cir. 2007). A party resisting summary judgment must demonstrate something more than "some metaphysical doubt as to the material facts." *Toy*, 439 F. Supp. 2d at 339. The non-moving party must come forward with enough specific evidence to enable a jury to find reasonably for it on the issue. *Id.*

This Court has previously determined the duty to defend a Lanham Act case on summary judgment, applying similar legal principles to those that obtain here. *See Hartford Cas. Ins. Co. v. Petrolon Mgmt.*, C.A. No. 95-64-JJF (D. Del. Dec. 29, 1995) (Memorandum Opinion).[11]

---

[11] A copy of the Memorandum Opinion, D.I. 46 in the *Hartford Cas. Ins. Co. v. Petrolon Management, Inc.* action, is included in the Appendix as Exhibit H for the Court's convenience.

2.    Pennsylvania Law Concerning Construction of Insurance Policies and
Determination of the Duty to Defend

Pennsylvania law concerning coverage disputes is clear.[12]  Under Pennsylvania law, the

issuer of a general liability policy has a duty to defend its insured when the allegations of a

complaint against the insured "could *potentially* fall within the coverage of the policy." *Air*

*Prods. & Chems., Inc. v. Hartford Accident & Indem. Co.*, 25 F.3d 177, 179 (3d Cir. 1994)

(emphasis added).  The insurer's "duties under an insurance policy are triggered by the language

of the complaint against the insured." *Kvaerner Metals Div. of Kvaerner U.S., Inc. v.*

*Commercial Union Ins. Co.*, 908 A.2d 888, 896 (Pa. 2006).  Furthermore, "if a single claim in a

multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no

possibility that the underlying plaintiff could recover on a covered claim." *Frog, Switch & Mfg.*

*Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999) (citing *Erie Ins. Exch. v.*

*Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987)).  An insurer must be careful in denying

a defense to its insured at the outset of litigation because the insurer bears the risk that the claim

will turn out to be one that is within the scope of the policy. *See Cadwallader v. New*

*Amsterdam Cas. Co.*, 152 A.2d 484, 488 (Pa. 1959).

---

[12] Pennsylvania law governs this dispute respecting insurance coverage for companies
headquartered in Pennsylvania.  When InterDigital invoked Pennsylvania law in its original
motion to dismiss, Hartford acquiesced.  Furthermore, in its December 14, 2006 Opinion, this
Court applied Pennsylvania law to resolve InterDigital's motion to dismiss Count II of the
Hartford complaint.  (D.I. 31 at 5 n.1.)  Also, because Hartford commenced this action in the
Eastern District of Pennsylvania, before transfer to this district pursuant to 28 U.S.C. § 1404(a),
Pennsylvania choice of law principles will also apply. *See Van Dusen v. Barrack*, 376 U.S. 612,
639 (1964) ("A change of venue under § 1404(a) generally should be, with respect to state law,
but a change of courtrooms."); *Paoletto v. Beech Aircraft Corp.*, 464 F.2d. 976, 980 n.10 (3d Cir.
1972); *AES Corp. v. Dow Chem. Co.*, C.A. No. 99-673-JJF, 2001 WL 34367296, at *6 (D. Del.
Jan. 19, 2001) ("Following a transfer initiated by a defendant pursuant to 28 U.S.C. § 1404(a),
the transferee court must apply the choice of law rules that would have been applied by the
transferor court.").

Courts analyzing the duty to defend under Pennsylvania law will not look beyond the face of the complaint against the insured or consider any extrinsic evidence concerning its allegations. *See Air Prods.*, 25 F.3d at 180; *Kvaerner Metals Div.*, 908 A.2d at 896 (holding lower appellate court erred in looking beyond the allegations on the face of the complaint to determine whether insurer had a duty to defend); *see also Sunoco, Inc. v. Illinois Nat'l Ins. Co.*, 226 Fed. Appx. 104, 107 n.2 (3d Cir. 2007) (observing that duty to defend is determined solely by the allegations of underlying complaint and noting the district court properly refused to allow discovery into the underlying facts).[13]  If it is not clear from the face of the complaint whether an exclusion bars all coverage, the insurer is required to defend. *Air Prods.*, 25 F.3d at 180 ("[W]hen the allegations may or may not fall within the exclusion (and therefore the coverage), the insurer is required to defend.").

Under Pennsylvania law, interpretation of an insurance policy presents a question of law for the court. *See Kvaerner Metals Div.*, 908 A.2d at 987.  The goal of interpreting the policy is to give effect to the parties' intentions as manifested by the policy's terms. *See id.*  Thus, when the language is clear and unambiguous, it is given effect. *See id.*  However, if any provision in the policy is ambiguous, "the policy is to be construed in favor of the insured to further the contract's prime purpose of indemnification and against the insurer, as the insurer drafts the policy, and controls coverage." *Id.* (quoting *401 Fourth Street v. Investors Ins. Group*, 879 A.2d 166, 170 (Pa. 2005)).  In analyzing the duty to defend, the facts alleged in the underlying complaint are taken as true and are construed liberally in favor of coverage for the insured. *See Frog, Switch & Mfg. Co.*, 193 F.3d at 746. If the insurer denies a defense based on policy

---

[13] The only exception to this strict rule is that the *insured* must be given an opportunity to demonstrate that an exception to a policy exclusion applies; there is, however, no such exception for the *insurer*, which remains restricted to the allegations in the underlying complaint and may not introduce extrinsic evidence. *See Air Prods.*, 25 F.3d at 180.

exclusions, then it is the insurer's burden to prove that the exclusions bar coverage based on the allegations of the complaint. *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 435 (3d Cir. 2006) (citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co.* 735 A.2d 100, 106 (Pa. 1999)); *Air Prods.*, 25 F.3d at 180 (observing that "the rule permitting the introduction of evidence to show that an exception to an exclusion applies, while disallowing evidence to show that an exclusion applies, appears to be one sided" but that "[t]his construction against the insurer and in favor of the insured . . . is consistent with general insurance law principles and, in particular, the Pennsylvania rule that requires only a 'potential' of coverage of the allegations in the complaint for the duty to defend to be triggered").

**B.    The Scope of Coverage of the Hartford Policies Encompasses the Claims Advanced in the *Nokia* Action**

An analysis of the duty to defend under Pennsylvania law begins with an assessment of the scope of the coverage provided by the policies. *See General Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997). Once the scope of coverage is determined,

> the court must examine the complaint in the underlying action to ascertain if it triggers coverage. If the complaint against the insured avers facts that would support a recovery covered by the policy, then coverage is triggered and the insurer has a duty to defend until such time that the claim is confined to a recovery that the policy does not cover.

*Id.*

1.    The Hartford Policies and the Scope of Coverage[14]

The pertinent coverage clause of the Hartford Fire primary policies provides as follows:

COVERAGE B PERSONAL AND ADVERTISING INJURY
LIABILITY

---

[14] As stated in the Concise Statement of Facts, *supra*, at 4, there are two primary policies, each with an umbrella policy above it. The relevant language of the two primary policies is the same, as is the relevant language of the two umbrella policies.

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III -- Limits of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments -- Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.[15]

(App. 47, 68.) The policies define "personal and advertising injury" to mean:

injury, including consequential 'bodily injury', arising out of one or more of the following offenses:

. . .

d. Oral, written, or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

(*Id.* at 57, 78.) The "coverage territory" is defined to mean:

---

[15] The Hartford Fire policies are "occurrence" policies, not "claims made" policies. *See, e.g., Kvaerner Metals Div.*, 908 A.2d at 892 n.1. Consequently, each policy and its umbrella provide indemnity for any covered occurrence within their policy period. Thus, if Nokia ultimately recovers on covered claims, Hartford could be obligated to pay approximately $32 million in addition to costs of defending the suit ($1 million for each primary policy, and $15 million for each umbrella policy).

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

. . .

c. All other parts of the world if the injury or damage arises out of:

(1) Goods or products made or sold by you in the territory described in a. above;

(2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

(3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in the United States of America (including its territories and possessions), Puerto Rico or Canada, in a "suit"[16] on the merits according to the substantive law in such territory or in a settlement we agree to.

(*Id.* at 55-56, 76-77.)

The Hartford Fire policies also provide coverage to ICC's co-defendant, ITC, which, during the entire period of the Hartford policies, December 22, 2003, through December 22, 2005, was a wholly-owned subsidiary of ICC. *See* Declaration of Rebecca B. Opher ¶ 2 (App. 171). The Hartford Fire policy makes it clear that its coverage extends to "[a]ny subsidiary, and subsidiary thereof, of yours which is a legally incorporated entity of which you own a financial interest of more than 50% of the voting stock on the effective date of the Coverage Part." (App. 51, 72. (Section II.e.)) Accordingly, ITC is an insured under the Hartford Fire policies.[17]

---

[16] A "suit" is defined to include any civil proceeding in which damages attributable to "personal and advertising injury" are alleged. (App. 58, 79.)

[17] The Hartford Fire policies includes a Cyberflex endorsement that "broadens coverage." In essence, the endorsement supplements certain provisions and includes additional language that expands coverage to include activities that take place via the insured's web site. (App. 41, 62.) This endorsement does not affect the coverage analysis made in this memorandum because its application is fact intensive.

The Hartford Casualty umbrella policies provide coverage as follows:

> INSURING AGREEMENTS
>
> A. UMBRELLA LIABILITY INSURANCE
>
> We will pay those sums that the "insured" becomes legally
> obligated to pay as "damages" in excess of the "underlying
> insurance", or of the "self-insured retention" when no "underlying
> insurance" applies, because of "bodily injury," "property damage",
> or "personal and advertising injury" to which this insurance applies
> caused by an "occurrence".

(App. 116, 133.) The Hartford Casualty umbrella policies contain an exclusion that states:

> 4. Personal and Advertising Injury
>
> This policy does not apply to "personal and advertising injury".
>
> EXCEPTION
>
> The exclusion does not apply if "underlying insurance" is
> applicable to "personal and advertising injury" and to claims
> arising out of that "personal and advertising injury".

(App. 117, 134.) Accordingly, if the Hartford Fire policies (*i.e.*, the "underlying insurance")

provide coverage for "advertising injury," which they do, then the Hartford Casualty umbrella

policies must respond; in Section I.A. and B.4, as noted, the Hartford Casualty policies so

provide.

Thus, the general insuring clauses make clear that these policies afford coverage for

lawsuits that allege or arise out of allegations that InterDigital published or caused publication of

any oral, written, or electronic statements that include material that slanders or libels an

organization or disparages its goods, products, or services.

2.    The Allegations of the Nokia Complaints Demonstrate They Advance
      Claims That Are Within or Potentially Within Coverage

The next step in the inquiry concerning Hartford's duty to defend is to examine the face

of the complaints in the underlying *Nokia* action to determine if they seek damages or allege any

13

facts that potentially come within the coverage of the policies. As analysis will demonstrate, the Nokia Complaint and First Amended Complaint each allege that InterDigital has made public statements that disparaged Nokia's goods, products, or services, injuring Nokia in the United States. Accordingly, they trigger a duty to defend under the Hartford policies.[18]

a.    Nokia's First Amended Complaint

After this Court dismissed the first twenty counts of Nokia's Complaint, Nokia obtained leave to amend, which it did on February 6, 2007. Nokia's First Amended Complaint describes the *Nokia* action as being brought for alleged "violations of the Lanham Act (15 U.S.C. §1051 *et seq*.), common law unfair competition, intentional interference with business relationships or opportunities, injurious falsehood, commercial or business disparagement, and for violations of the laws of the States of Delaware, Pennsylvania, and Texas."[19]  (Nokia FAC ¶ 1 (App. 172).)

Nokia alleges that InterDigital has made false or misleading descriptions or representations in connection with Nokia's products in interstate commerce in connection with goods or services. (*Id.* ¶ 48 (App. 184).) Nokia further alleges that InterDigital's purportedly false or misleading statements concerning its products have damaged Nokia's business and its reputation in the wireless market. (*Id.* ¶ 49 (App. 185).)

Although InterDigital disputes Nokia's claims, there can be no dispute that Nokia is claiming that InterDigital published statements that disparage Nokia or its products. In fact, Nokia has included express claims for violation of the Lanham Act (Count I), Delaware's Deceptive Trade Practices Act (Count III), and for injurious falsehood (Count IX), commercial disparagement (Count X), and business disparagement (Count XI) that are predicated on such

---

[18] InterDigital will begin the analysis by addressing Nokia's First Amended Complaint, the current operative pleading in the underlying action. InterDigital will then demonstrate that Hartford also had a duty to defend InterDigital against the original Nokia Complaint.

[19] The alleged application of United States law would appear to be consistent with a claim falling within the policies' coverage territory.

alleged statements about Nokia or its products. (*Id.* ¶¶ 47-58, 67-76, 112-36 (App. 184-86, 187-88, 192-94).) Such allegations plainly come within the Hartford policies' insuring clauses for "personal or advertising injury": Nokia is seeking to recover damages arising out of alleged false statements that purportedly disparaged it or its products.

The First Amended Complaint is not precise about where all of the alleged statements were made. Thus, Nokia could attempt to prove its cause of action by evidence that statements were made in the coverage territory. Certainly, such evidence has not been excluded from the case. In fact, the unmistakable implication of Nokia's allegations is that Nokia will attempt to prove its case with evidence regarding statements made in the United States. It is clear that Nokia alleges that misleading statements were made with respect to the prevailing third generation wireless standards ("3G") practiced worldwide, including in the United States and Europe (*e.g.*, CDMA 2000 and UMTS). (*Id.* ¶¶ 15, 48 (App. 175, 184).) Moreover, Nokia alleges InterDigital undertook a campaign of publicity in the press and through other channels to ensure that all manufacturers of 3G products would believe they must pay InterDigital licensing fees for the privilege of making standards-compliant products. (*Id.* ¶ 34 (App. 179).) This includes press releases, disseminated from InterDigital's corporate headquarters in Pennsylvania, which is certainly within the "coverage territory." (*Id.* at ¶¶ 34-35 (App. 179).) Even if some statements were made outside of the coverage territory, it is clear that most, if not all, statements Nokia complains about were made within the coverage territory. Certainly, Hartford cannot credibly argue in light of the applicable "four corners" rule that the Nokia First Amended Complaint *excludes* all statements made in the coverage territory. *See Air Prods.*, 25 F.3d at 179; *Kvaerner Metals Div.*, 908 A.2d at 896. Accordingly, there is a claim potentially within the coverage afforded by the Hartford policies. As for the timing of the allegedly wrongful conduct,

Nokia is clearly basing several of its claims on actions InterDigital purportedly took during 2004, within the Hartford policy period. (Nokia FAC ¶ 40 (App. 181-83.) Construing the complaint liberally in favor of coverage for InterDigital and resolving any doubts in its favor in ascertaining whether Hartford has a duty to defend, the claims made by Nokia include covered claims within the scope of the policy. Accordingly, they trigger Hartford's duty to defend InterDigital.

b.    None of the Coverage Exclusions Relied Upon by Hartford Bars Coverage of the First Amended Complaint

In its denial letters, Hartford relied on a number of coverage exclusions. It asserted these exclusions in its declaratory judgment complaints and as affirmative defenses in its answer to InterDigital's counterclaims for a defense and Hartford's breach of contract. *See* Hartford First Amended Complaint ¶¶ 85, 91, 92, 93 (D.I. 43); Hartford Answer to InterDigital's Counterclaims at 13, Sixth Defense (D.I. 45). Under Pennsylvania law, to preclude coverage it is Hartford's burden to prove that the exclusions bar any possibility of a covered claim. In doing so, Pennsylvania law dictates that Hartford may only rely on the allegations within the four corners of the complaint and the language of the policy; it may not rely upon any extrinsic evidence.[20] *See Air Prods.*, 25 F.3d at 179-80.

In an analogous case, the insurers sought to introduce extrinsic evidence to demonstrate that the claims asserted against their insured could not have arisen during the periods of their policy coverage. *See Air Prods.*, 25 F.3d at 179. A typical plaintiff in one of the underlying actions alleged that he was injured by fumes and gases that were emitted from welding rod materials his employers had purchased from numerous defendants, including the insured, from 1951 to 1984. *See id.* at 178-79. In the coverage action, the insurer who provided coverage from

---

[20] Hartford's denial letter concerning the Nokia Amended Complaint expressly and improperly considered extrinsic evidence in formulating its rationale for denial of a defense. (App. 201-02, 207.)

16

1951 to 1953 argued that the summary judgment record showed the insured sold no welding rod

material to any underlying employer during the period of its coverage. *See id.* at 179.

Nonetheless, the District Court ruled that the insurer had breached its duty to defend. *See id.* at

178-79.

On appeal, the Third Circuit rejected the insurer's argument that evidence demonstrated

the insured had not sold any materials to the underlying employers during its coverage period as

contrary to Pennsylvania law because the district court could not look beyond the face of the

underlying complaint to determine the duty to defend. *See id.* at 179. The Third Circuit

observed that Pennsylvania law imposes a duty to defend on the insurer "when the allegations in

the complaint against [the insured] could potentially fall within the coverage of the policy." *Id.*

The Third Circuit flatly rejected the insurer's argument seeking to apply the laws of Louisiana.

*See id.* at 180-81. Instead, the court stated that extrinsic evidence is only admissible under

Pennsylvania law when adduced by an *insured* to demonstrate that it is within an enumerated

exception to a policy exclusion that otherwise appears to bar coverage based on analysis of the

complaint. *See id.* at 180. Moreover, the court observed that an *insurer* is not permitted to

adduce extrinsic evidence to meet its burden of proving the applicability of policy exclusions

under Pennsylvania law. *See id.* In affirming the district court's ruling against the insured's

other insurer, which had made the same argument, the Third Circuit stated:

> Hartford essentially takes the same position as Aetna on the duty to
> defend issue. As we said in that case, Aetna's position is contrary
> to Pennsylvania law covering the duty to defend here. If
> Pennsylvania law is to be changed, it must be for the Supreme
> Court of Pennsylvania to do so.

*Id.* at 180-81.

Here, none of the policy exclusions relied on by Hartford bars coverage. Indeed, the

allegations of the Nokia First Amended Complaint demonstrate the possibility of covered claims

notwithstanding these exclusions. *See Air Prods.*, 25 F.3d at 180 ("[W]hen the allegations may or may not fall within the exclusion (and therefore the coverage), the insurer is required to defend."). Analysis measuring each exclusion asserted by Hartford against the allegations of the First Amended Nokia Complaint demonstrates this.

> (1)    The Exclusions for Knowing Violation of the Rights of Another and Material Published With Knowledge of Falsity Do not Apply to Bar Coverage

The first coverage exclusions relied upon by Hartford are the "knowing violation" exclusion and "knowledge of falsity" exclusion to "personal and advertising injury." They read as follows:

> This insurance does not apply to:
>
> a. Knowing Violation Of Rights Of Another
>
> "Personal and advertising injury" caused by an offense committed by, at the direction or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".
>
> b. Material Published With Knowledge of Falsity
>
> "Personal and advertising injury" arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.

(Hartford Fire Policy Coverage B Exclusions 2.a & 2.b (App. 47, 68).) However, the allegations of Nokia's First Amended Complaint seek damages for acts that it alleges InterDigital may have committed with a "reckless" state of mind or in "bad faith," both of which might be sustained without proof of knowledge of falsity or an intent to cause injury.

Nokia's First Amended Complaint seeks to recover damages pursuant to state-law theories that do not require showings of intentional misconduct. For example, Counts X and XI seek to recover damages for Commercial Disparagement and Business Disparagement. As observed above, these claims are within the scope of coverage afforded by the insuring clauses in

the Hartford policies. *See* discussion, *supra*, at V.B.2. These counts allege that "InterDigital declared that its patents were essential to 3G standards even though it knew they were not, *or acted in reckless disregard of the declarations' truth or falsity.*" (Nokia FAC ¶¶ 122, 130 (App. 193, 194)) (emphasis added). Likewise, they allege that "InterDigital intended its declarations to result in pecuniary harm to Nokia, or recognized *or should have recognized harm would result,* as InterDigital knew its statements would negatively impact marketability of Nokia products." (*Id.* ¶¶ 125, 133 (App 193, 194)) (emphasis added).

Under the common law of Pennsylvania and Texas, the jurisdictions relied upon by Nokia for the claims in Count X and XI, it is not necessary for a plaintiff to establish actual knowledge of falsity to recover for commercial or business disparagement. Pennsylvania law requires that a plaintiff establish: 1) that defendant made a false statement; 2) that defendant intended to cause pecuniary loss or reasonably should have recognized that the publication would result in pecuniary loss; 3) that loss occurred; and 4) that defendant either knew the statement was false *or* acted in reckless disregard of its truth or falsity. *See Pro Golf Mfg., Inc. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 246 (Pa. 2002). Texas law requires that a plaintiff establish: 1) that defendant published false and disparaging information about it; 2) with malice; 3) without privilege; and 4) that the publication resulted in special damages to the plaintiff. *See Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003). In Texas, it is also essential for the plaintiff to show that the defendant knew that the statement was false *or* that he acted with reckless disregard for its truth or falsity. *See id.*

Consequently, Nokia is advancing state law claims that may permit recovery without requiring it to show that InterDigital published any statements with knowledge of their falsity. Moreover, Nokia may recover on these claims without showing that InterDigital expected or

intended its statements to cause advertising injury. Simply put, the "knowing violation" and

"knowledge of falsity" exclusions do not exclude all potential state claims. Accordingly,

Hartford has a duty to defend.

Moreover, recovery under the Lanham Act may not require proof of knowledge of falsity

or the expectation or intent to cause injury.

As the Third Circuit has explained:

> When a complaint alleges intentional misconduct (which insurance
> policies exclude from coverage) but might be amended to allege
> some other state of mind that would both trigger coverage and
> show liability, then the complaint should be treated as setting forth
> facts that potentially justify coverage. This rule reflects the way
> that the complaint will actually be treated in the courts during the
> underlying litigation.

*Frog, Switch & Mfg. Co.*, 193 F.3d at 746 n.2 (citation omitted).[21]

As this Court held in the *Nokia* action, for Nokia to state a claim, and ultimately recover,

under the Lanham Act, it would have to demonstrate:

> (1) defendant made false or misleading statements as to its
> products, or those of the plaintiff; (2) there was actual deception or
> at least a tendency to deceive a substantial portion of the intended
> audience; (3) the deception was material in that it is likely to
> influence purchasing decisions; (4) the advertised goods traveled in
> interstate commerce; and (5) there is a likelihood of injury to the
> plaintiff in terms of declining sales, loss of good will, etc.
> Additionally, a plaintiff must demonstrate that the patent holder
> acted in bad faith.

*Nokia Corp. v. InterDigital Communications Corp.*, C.A. No. 05-16-JJF, 2005 WL 3525696, at

*5 (D. Del. Dec. 21, 2005) (citations omitted). What constitutes bad faith is determined on a

case by case basis. *See Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1354 (Fed. Cir. 1999).

---

[21] From a policy standpoint, this approach makes sense because it prevents a savvy plaintiff from
manipulating its pleading to bring a claim within a policy exclusion, denying the defendant a
defense while simultaneously permitting the plaintiff to recover for a showing of a lesser state of
mind.

As the Federal Circuit has explained, "[i]n general, a threshold showing of incorrectness or falsity, *or disregard for either,* is required in order to find bad faith in the communication of information about the existence or pendency of patent rights." *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891, 897 (Fed. Cir. 1998) (emphasis added). Disregard for incorrectness or falsity is less than knowing or intentional conduct. As the Third Circuit has observed in the analogous context of tortious misrepresentations, scienter may be "either actual knowledge of the truth or falsity of a representation, *reckless ignorance of the falsity of the matter, or mere false information where a duty to know is imposed . . . by reason of special circumstances.*" *Berda v. CBS, Inc.* 881 F.2d 20, 27 (3d Cir. 1989) (emphasis added).

Accordingly, although InterDigital vigorously disputes Nokia's positions in the underlying action, it is conceivable that Nokia could attempt to recover under the Lanham Act upon a showing that InterDigital's statements about InterDigital's patents and Nokia's products were false and made with reckless disregard as to their truth. ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████  ████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

Therefore, the exclusions relied upon by Hartford do not relieve Hartford of its duty to defend.

(2)    The Prior Publication Exclusion Does Not Bar Coverage

In addition to the "knowing violation" and "knowledge of falsity" exclusions, Hartford seeks to exclude coverage on the basis of its "prior publication" exclusion. That exclusion states:

---

22 ████████████████████████████████████████████████████████████████

████████████████████████████████████████████████

This insurance does not apply to:

. . .

c. Material Published Prior to Policy Period

"Personal and advertising injury" arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period.

(Coverage B Exclusion 2.c (App. 47, 68).)

Hartford invoked the "prior publication" exclusion in denying coverage for the claims in the First Amended Complaint. In doing so, it improperly looked beyond the face of the pleadings to extrinsic evidence in its attempt to justify the denial of a defense. (App. 208.) Based on the face of the complaint, however, it is clear that Nokia's complaint includes statements that InterDigital made in 2004. For example, Nokia alleges deficiencies in InterDigital's 2004 ETSI declarations. (Nokia FAC ¶40(d) (App. 182).) Additionally, Nokia claims that InterDigital's alleged bad faith is evidenced by its failure to withdraw prior essentiality claims in 2004, which then purportedly rendered such claims misleading. (*Id.* ¶ 40(e) (App. 183).)

Moreover, Nokia alleges that InterDigital has engaged in a "campaign of publicity concerning its claim of essentiality in the press and in other ways intended to be disseminated in the communications industry." (*Id.* ¶ 34 (App. 179).) By way of example, Nokia cites a press release issued November 10, 2006, in which InterDigital is alleged to have claimed that it has a patent portfolio that it "licenses to manufacturers of 2G, 2.5G, 3G and 802 products worldwide." (*Id.*) Thus, although Nokia complains about InterDigital's declarations to ETSI, it also complains about--and seeks to recover in a separate Lanham Act count for--allegedly false or misleading descriptions or statements about InterDigital's patent portfolio, the 3G standards (including the U.S. CDMA 2000 and UMTS standards), Nokia's products, and so on. This count

22

ostensibly concerns the "campaign of publicity" rather than the declarations to ETSI themselves, which are the subject of a second Lanham Act count. Obviously, InterDigital could not have made any campaign of publicity concerning its 2004 patent declarations prior to 2004. Therefore, by definition, there are specific claims for which Nokia is seeking to recover that are based on statements first made during the policy period.

███████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████, it is clear that the prior publication exclusion should not bar the claim. The allegations potentially fall within the coverage provided because there is alleged personal and advertising injury arising out of material that was never published before the beginning of the policy period. This is especially so in light of the Pennsylvania dictate that allegations must be construed liberally in favor of finding a duty to defend. *See Frog, Switch & Mfg. Co.*, 193 F.3d at 746.

Moreover, a court applying Pennsylvania law and construing a similar "first publication" exclusion in connection with a personal and advertising injury case determined that such exclusions do "not preclude coverage for material published within the policy period, even if similar to previously published material, or if part of an 'advertising campaign.'" *International Communication Materials, Inc. v. Employer's Ins. of Wausau*, C.A. No. 94-1789, 1996 WL 1044552, at *4 (W.D. Pa. May 29, 1996). There, the insured brought suit for breach of insurance contracts by its insurers. The insured sold copier supplies and products for use in copiers made by other companies, including Ricoh. *Id.* at *2. Ricoh sued the insured, claiming infringement

of trademark, trade dress infringement, patent infringement, false advertising, and unfair

competition. *Id.* Although the insured tendered the action to its insurers, the liability carrier

Wausau provided a defense based on advertising injury coverage for only a short period before

withdrawing on the basis of the "first publication" exclusion. Later, the insured and Ricoh

settled the lawsuit. In response to the insured's lawsuit, the liability carrier argued that the non-

patent claims were excluded from coverage because of the "first publication" exclusion. *Id.* at

*3. Ricoh's claim against the insured had been based on the insured's inclusion of Ricoh's

trademark on its products and its use of Ricoh's color scheme on its products, among other

things. Ricoh also complained that the insured's "American Challenge" advertising campaign

was false advertising because its theme falsely identified Ricoh's products as Japanese and

misrepresented that the insured's products were "proven superior" to Ricoh's products. *Id.* at *4.

The insured admitted that its activities had started at least as early as July 1987, which was prior

to the April 1, 1992 inception date of the policy issued by Wausau. *Id.* at *2, 4. Wausau

therefore contended that the claims were excluded by the "first publication" exclusion[23] because

the first publication of the objectionable materials in the American Challenge campaign had

occurred prior to the policy incepting. *Id.* at *4.

The court rejected the liability carrier's attempt to apply the "first publication" exclusion

to exclude coverage for the entire "American Challenge" campaign, even though the campaign

first began nearly five years before the carrier's policy incepted. The court accepted the

insured's position that the "first publication" exclusion was intended to preclude coverage for

republication of *identical* material at a later time, not to material that is part of a continuing

---

[23] Like the exclusion Hartford relies on here, Wausau's first publication exclusion provided that
the insurance did not apply to advertising injury "[a]rising out of oral or written publication
whose first publication took place before the beginning of the policy period." *International
Communication Materials, Inc.*, 1996 WL 1044552, at *2.

publicity campaign or to material that is similar to materials that were first published prior to the inception of the policies:

> If [the insurer] had intended that the exclusion apply to advertising campaigns or material that is "*similar to*" material published before the inception of the policies, it could have provided such language. . . . Accordingly, we hold that the first publication exclusion does not preclude coverage for material published within the policy period, *even if similar* to previously published material, or if part of an "advertising campaign."

*Id*. at *4 (emphasis added). Moreover, another court applying Pennsylvania law has also concluded that the identical exclusionary language is ambiguous. *See Maddox v. St. Paul Fire & Marine Ins. Co.*, 179 F. Supp. 2d 527, 530 (W.D. Pa. 2001). Ambiguous provisions must be strictly construed against the insurer and in favor of finding coverage for the insured. *See Standard Venetian Blind Co. v. American Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983). In fact, the Pennsylvania Supreme Court has recently held that an ambiguous exclusionary clause should not be held to bar coverage. *See Prudential Prop. & Cas. Ins. Co. v. Sartno*, 903 A.2d 1170, 1174 (Pa. 2006).

Here, like Ricoh, Nokia is alleging that InterDigital engaged in a campaign of publicity. Nokia does not allege the republication of identical material. To the contrary, Nokia alleges that numerous patents that were the basis of InterDigital's purported campaign were never declared until 2004 or later. Thus, there is nothing in the Nokia First Amended Complaint that would compel the conclusion that InterDigital only published information in the policy period identical to information previously published prior to the policy period.

In sum, the allegations on the face of the First Amended Complaint do not permit Hartford to establish that the prior publication exclusion bars all coverage for the claims alleged by Nokia, especially when resolving all doubts in favor of coverage as Pennsylvania law

requires. Accordingly, Hartford improperly invoked this exclusion to deny InterDigital a

defense.

> (3)    The Quality or Performance of Goods Exception Does Not
> Bar Potential Coverage of the First Amended Complaint

Hartford contends that the "quality or performance of goods" exception bars coverage for

the Nokia action. The exclusion, which is modified by the Cyberflex endorsement, states:

> This insurance does not apply to:
>
> . . .
>
> "Personal and advertising injury" arising out of the failure of
> goods, products or services to conform with any statement of
> quality or performance made in your "advertisement" or on "your
> web site".

(Hartford Fire Coverage B.2 & Cyberflex Endorsement Coverage B Exclusion 2.g (App. 42, 47,

63, 68).)

In its March 27, 2007 denial letter, Hartford's entire explanation of the purported

applicability of this exclusion is that it "bars coverage for the *Nokia* action to the extent that

Nokia alleges that InterDigital made false claims that InterDigital's patent portfolio covers 3G

wireless phone systems." (App. 208-09.)[24] However, Hartford ignores the fact that Nokia is

alleging that InterDigital engaged in a publicity campaign that included "false or misleading

descriptions or representations in connection with . . . *Nokia's* products" (*See* Nokia FAC ¶ 48

(App. 184)) (emphasis added), an allegation that by itself defeats Hartford's argument.

Moreover, reading the exclusion in the context of the policies makes it clear that it is

intended to bar only claims that InterDigital's products or services failed to live up to claims of

quality or performance made in InterDigital's advertising, not about the goods, products, or

---

24 ████████████████████████████████████████████
████████████

26

services of other entities or persons. As noted above, the Hartford Fire policies provide coverage for "personal and advertising injury," which is defined to include any injury arising out of "[o]ral, written or electronic publication of material that . . . disparages a person's or organization's goods, products, or services." (Hartford Fire Policies at Section V.17.d (App. 57, 78).) If the exclusion were read to bar all claims arising out of the failure of another company's goods, products, or services to conform to InterDigital's statements about quality or performance, then it would virtually swallow all "personal and advertising injury" coverage, which expressly includes publication of material that disparages an organization's goods, products, or services.

To the extent that Hartford is claiming that the exclusion bars coverage for any claim arising out of InterDigital's alleged statements concerning its own patent portfolio, it is misconstruing the *Nokia* action and ignoring the fact that in any event InterDigital's patents are not goods, products, or services. To be sure, Nokia alleges that InterDigital does not make any products. (Nokia FAC ¶ 21 (App. 176).) In this respect, Nokia's allegation is consistent with rulings of the United States Court of Appeals for the Federal Circuit and other courts that patents are not "goods or services" under Section 43(a) of the Lanham Act. *See Pro-Mold & Tool Co. v. Great Lakes Plastics, Inc.*, 75 F.3d 1568, 1574-75 (Fed. Cir. 1996); *digiGAN, Inc. v. iValidate, Inc.*, C.A. No. 02-420, 2004 WL 203010, at *5 (S.D.N.Y. Feb. 3, 2004) ("A patent is not a 'good or service' as those terms are used in the Lanham Act."); *Hans-Jürgen Lauge & Oxidwerk HJL AG v. KM Europa Metal AG*, C.A. No. 96-8147, 1998 WL 148427, at *2 (S.D.N.Y. Mar. 27, 1998) (same). As the Federal Circuit has also explained:

> To construe the term "goods" to encompass "patents" would distort the term "goods" beyond all recognition, and take that term out of the commercial context in which it is being used. First of all, a patent is a right to exclude, not a "good." Second, . . . Article

> 9 of the Uniform Commercial Code . . . clearly indicate[s] that
> patents are not "goods" in any generally accepted commercial
> sense.

*U.S. Test, Inc. v. NDE Environmental Corp.*, 196 F.3d 1376, 1382 (Fed. Cir. 1999). Thus, the

*Nokia* action is not about whether InterDigital's goods, products, or services fail to conform with

statements about performance or quality. Instead, as pleaded by Nokia, it is about an alleged

disparagement by InterDigital of Nokia's goods, its wireless telephones.

Accordingly, Hartford's exclusion concerning the "failure of goods, products or services

to conform with any statement of quality or performance made in [InterDigital's] . . ."

advertisement does not bar coverage here.

(4)    The Infringement of Intellectual Property Rights Exclusion
       Does Not Bar Coverage with Respect to the First Amended
       Complaint

Hartford also relies on an exclusion concerning advertising injury arising from the

infringement of intellectual property rights, which reads as follows:

> This insurance does not apply to:
>
> i. Infringement of Intellectual Property Rights
>
> "Personal and advertising injury" arising out any [*sic*] violation of
> any intellectual property rights such as copyright, patent,
> trademark, trade name, trade secret, service mark or other
> designation of origin or authenticity.

(Hartford Fire Cyberflex Endorsement Coverage B Exclusion 2.i (App. 42, 47, 63, 68).)  In its

letter denying a defense for the claims stated in Nokia's First Amended Compliant, Hartford

contended that the exclusion barred coverage for the entire Nokia action because the claims in

the First Amended Complaint "arise out of a dispute concerning intellectual property rights."

28

(App. 209.)[25]  Hartford's reading of the exclusion is overly broad and unduly restrictive.
Moreover, it depends on a mischaracterization of the *Nokia* action.

No Pennsylvania court has interpreted the exact exclusionary language Hartford seeks to
rely upon, and it is not defined by the policy.  As such, the coverage cases applying Pennsylvania
law that construe the phrase "arising out of" are not instructive because they interpret the clause
as it has arisen in insuring clauses, where it must be read broadly to favor coverage, not
exclusions, which are at issue here, where it must be read narrowly to favor coverage.  *See, e.g.,*
*USX Corp. v. Adriatic Ins. Co.,* 99 F. Supp. 2d 593, 627 (W.D. Pa. 2000); *Tuscarora Wayne Mut.*
*Ins. Co. v. Kadlubosky,* 889 A.2d 557, 563 (Pa. Super. Ct. 2005).  In such situations where it
appears in insuring clauses, the phrase has to be read broadly to favor coverage and is typically
understood to entail something broader than proximate causation.  *See, e.g., USX Corp.,* 99 F.
Supp. 2d at 627; *Tuscarora Wayne Mut. Ins. Co.,* 889 A.2d at 563.  To the extent that the phrase
is ambiguous in the exclusionary context, however, it must be construed narrowly against
Hartford and in favor of coverage.  *See Standard Venetian Blind Co.,* 469 A.2d at 566.

There are compelling reasons why the exclusion does not apply.  First, Nokia's First
Amended Complaint does not allege any injury arising from a *violation* of intellectual property
rights by InterDigital.  To the contrary, in order to recover under the First Amended Compliant,
Nokia would have to establish that InterDigital made false statements about the scope of its
patent portfolio and its essentiality to 3G standards, not that there was an actual violation of any
intellectual property right of Nokia.  Nokia has pleaded several causes of action that demonstrate
the dispute is not about a violation of intellectual property rights, including claims for business or

---

[25] Both of Hartford's denial letters purport that the exclusion states "arising out of," although that
is not what the policy form says.

commercial disparagement. Significantly, there is no allegation that InterDigital has infringed any Nokia patent.

Second, for Nokia to prevail on the disparagement claims it does make, it must prove, ironically, that there was no patent infringement. (Nokia FAC ¶¶ 77-86 (App. 188-89).)

Third, if Hartford intended to exclude coverage for all litigation that involved intellectual property whatsoever, overwhelming volumes of decisional law hold that it was in a position to have drafted the policy exclusion to say so and should have done so if it intended such a result. *See, e.g., Kvaerner Metals Div.*, 908 A.2d at 897 (noting the insurer drafts the policy and controls coverage); *401 Fourth Street v. Investors Ins. Group*, 879 A.2d 166, 171 (Pa. 2005). The policy language must be strictly construed against Hartford. Hartford could have drafted the exclusion to state that the insurance does not apply to any advertising action that involves disputes about intellectual property rights; however, that is not what Hartford drafted.[26]

As drafted, it is clear that the policy exclusion was intended to bar coverage of claims in which the claimant alleged that the insured violated intellectual property rights of the claimant, an issue that is not present in the *Nokia* action. It is reasonable to read the exclusion in this way in light of the "exception" to the exclusion. The Hartford policies' Cyberflex endorsement provides that the

> exclusion does not apply to infringement, in your "advertisement" or on "your web site", of:
>
> (1) Copyright;
>
> (2) Slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity; or
>
> (3) Title of any literary or artistic work.

---

[26] Hartford demonstrates that it would like to change the language by contending in its March 27, 2007 denial letter that the exclusion bars coverage for a "*dispute* concerning intellectual property rights." (App. 209) (emphasis added).

(Hartford Fire Cyberflex Endorsement Coverage B Exclusion 2.i (App. 42, 63).) This exception demonstrates the exclusion's focus on claims against the insured for alleged violations of intellectual property rights *by* the insured. Thus, if the insured engages in publication of material that somehow violates the intellectual property rights of another, there would not be coverage unless the intellectual property rights allegedly violated were in the nature of copyright, slogan, or title of literary or artistic work. This exception to the exclusion shows that the focus of the exclusion is on infringement or violations of intellectual property rights *by* the insured. No such allegations of infringement by InterDigital of any Nokia patent are found anywhere in the First Amended Complaint.

Finally, given the nature of InterDigital's business, which is to develop and license technology, Hartford's reading of the exclusion is unreasonable. If all patent-related disputes were excluded, there would be little or no "personal and advertising" coverage. It makes no sense that InterDigital's would purchase "personal and advertising injury" insurance that would not give it protection for disputes arising out of publications that relate to the heart of its business activities.

          c.      Hartford Had a Duty to Defend Against Nokia's Original Complaint

Analysis of the original Complaint also demonstrates that Hartford had a duty to defend InterDigital from the inception of the *Nokia* action.

One of the claims set forth in Nokia's original Complaint concerned an alleged violation of Section 43(a) of the Lanham Act. (Nokia Compl. ¶¶ 142-46 (App. 34-35).) Nokia alleged that "InterDigital has *used false or misleading descriptions or representations in connection with* its patent portfolio, the WCDMA Standard, the CDMA 2000 standard, *Nokia's products*, the applicability of InterDigital's patents to Nokia's products, and the applicability of InterDigital's

31

patents to 3G wireless standards within the meaning of 15 U.S.C. § 1125(a) (§ 43(a) of the

Lanham Act)." (*Id.* ¶ 142 (App. 34)) (emphasis added). Nokia alleged that this purported

"misconduct of InterDigital has inhibited the development of 3G technology, damaged Nokia's

business and its reputation in the wireless market." (*Id.*) Nokia alleged that InterDigital's public

statements concerning 3G wireless practice and its patents are false because "InterDigital's

patents are not necessary to practice 3G wireless phone standards." (*Id.* ¶ 143 (App. 35).)

Finally, Nokia alleged that these purported misrepresentations "about the scope and validity of

[InterDigital's] patents and how these patents apply to Nokia's products have injured Nokia in its

business and have damaged Nokia's reputation. (*Id.* at ¶ 145 (App. 35).)

        The original Nokia Complaint clearly alleges facts sufficient to give rise to a claim that is

potentially within the "personal and advertising injury" insuring clause of the Hartford policies.

The basis for Nokia's Lanham Act count is plainly Nokia's contention that that InterDigital has

made false or misleading statements that disparaged Nokia or its products, goods, or services

being developed in the United States.[27] Thus, viewing those allegations liberally in favor of

coverage, as the Court must, they allege facts that potentially bring the claim within the insuring

clause of the Hartford policies, triggering the duty to defend. *See Air Prods.*, 25 F.3d at 179.

        For the reasons stated above, the "knowing violation of the rights of another" and

"knowledge of falsity" exclusions do not bar coverage of the original Nokia Complaint. With

respect to the Lanham Act claim, Nokia might be permitted to recover without showing that

InterDigital's statements were calculated to harm Nokia or that the statements were made with

knowledge of their falsity. As shown above at pages 20-21, *supra*, Nokia might recover under

---

[27] The original Nokia Complaint alleged that InterDigital has publicly represented for more than
a decade to the wireless handset industry that InterDigital has patents that cover the principal
wireless handset standards in the United States. (Nokia Compl. ¶ 7 (App. 3).)

the Lanham Act upon a showing that InterDigital's statements about InterDigital's patents and Nokia's products were false and made with reckless disregard as to their truth. ████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████.

    Likewise, the "prior publication" exclusion does not apply. ████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████ However, nothing on the face of the complaint supports Hartford's conclusion. To the contrary, Nokia alleged that "[w]ith respect to 3G products, InterDigital *continues* to contend that its patents broadly cover 3G technology." (Nokia Compl. ¶ 15 (App. 6)) (emphasis added).

    ████████████████████████████████████████████████████████

████████████████████████████████████████████████ The title of the Complaint itself ("Complaint for Declaratory Judgments of Patent Invalidity and Noninfringement And Violations of the Lanham Act Relating to 3G Mobile Phone Technology"), however, demonstrates that Nokia is not seeking to recover for any 2G related statements in this action. The allegations concerning InterDigital's 2G statements are clearly provided by Nokia as background to the current dispute concerning 3G technology.

    For the reasons described in section V.B.2.b.(3), *supra*, the "quality or performance of goods" exception likewise does not bar coverage. And for the reasons described in section V.B.2.b.(2), *supra*, the "intellectual property violation" exclusion also does not apply.

Significantly, when the Court dismissed the various counts of Nokia's original Complaint that sought declarations concerning the noninfringement of patents, it allowed the Lanham Act count to proceed in the *Nokia* action. Consequently, it became especially clear following the dismissal of Nokia's counts involving patents that Nokia's claim does not arise from any violation of a patent. In any event, the fact that there may have been uncovered patent claims in the case does not excuse Hartford from coverage because "if a single claim in a multiclaim lawsuit is potentially covered, the insurer must defend all claims until there is no possibility that the underlying plaintiff could recover on a covered claim." *Frog, Switch & Mfg. Co.*, 193 F.3d at 746.

For all these reasons, Hartford had a duty to defend InterDigital against the original Nokia Complaint.

## VI.    CONCLUSION

For all of the foregoing reasons, InterDigital respectfully requests that partial summary judgment be entered in its favor and against Hartford as to Hartford's liability for breach of the insurance contract and that the Court declare that Hartford has a duty to defend InterDigital in the underlying Nokia action from its inception under the Hartford policies at issue.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Stephen J. Mathes
Arleigh P. Helfer III
Stacy B. Heenan
HOYLE, FICKLER, HERSCHEL &
    MATHES LLP
One South Broad Street - Suite 1500
Philadelphia, PA 19107
(215) 981-5710

Dated: September 24, 2007
Public Version Dated: October 1, 2007
822440 / 30373

By:  */s/ Richard L. Horwitz*
      Richard L. Horwitz (#2246)
      Jennifer C. Wasson (#4933)
      Hercules Plaza, 6th Floor
      1313 North Market Street
      Wilmington, DE 19801
      (302) 984-6000
      rhorwitz@potteranderson.com
      jwasson@potteranderson.com

*Attorneys for Defendants*
*InterDigital Technology Corporation and*
*InterDigital Communication Corporation*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Richard L. Horwitz, hereby certify that on October 1, 2007, the attached document was

electronically filed with the Clerk of the Court using CM/ECF which will send notification to the

registered attorney(s) of record that the document has been filed and is available for viewing and

downloading.

I further certify that on October 1, 2007, I have Electronically Mailed the document to the

following person(s):

James S. Yoder
White & Williams LLP
824 N. Market Street, Suite 902
Wilmington, DE 19899
yoderj@whiteandwilliams.com

Anthony L. Miscioscia
Gale White
White and Williams LLP
1800 One Liberty Place
Philadelphia, PA 19103
miscIosciaa@whiteandwilliams.com
whiteg@whiteandwilliams.com

By:  /s/ Richard L. Horwitz
     Richard L. Horwitz
     Jennifer C. Wasson
     Hercules Plaza, 6th Floor
     1313 N. Market Street
     Wilmington, Delaware 19899-0951
     (302) 984-6000
     rhorwitz@potteranderson.com
     jwasson@potteranderson.com

743996