### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY, et al., | ) ) ) | |
| Plaintiffs, | ) ) | C.A. No. 06-422-JJF |
| v. | ) ) ) | |
| INTERDIGITAL COMMUNICATIONS CORPORATION, et al., | ) ) ) | |
| Defendants. | ) | |

**REPLY OF INTERDIGITAL COMMUNICATIONS CORPORATION AND
INTERDIGITAL TECHNOLOGY CORPORATION IN FURTHER SUPPORT OF
MOTION FOR LEAVE TO FILE MOTION FOR PARTIAL SUMMARY JUDGMENT**


OF COUNSEL:

Stephen J. Mathes
Arleigh P. Helfer III
Stacy B. Heenan
HOYLE, FICKLER, HERSCHEL &
   MATHES LLP
One South Broad Street - Suite 1500
Philadelphia, PA  19107
(215) 981-5710

Dated:  October 12, 2007
825299 / 30373

Richard L. Horwitz (#2246)
Jennifer C. Wasson (#4933)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
jwasson@potteranderson.com

*Attorneys for Defendants
InterDigital Technology Corporation and
InterDigital Communication Corporation*

Pursuant to Local Rule 7.1.2(b), defendants and counterclaim plaintiffs InterDigital Communications Corporation and InterDigital Technology Corporation (collectively, "InterDigital") hereby respectfully reply to the Response of Hartford Fire Insurance Company and Hartford Casualty Insurance Company (collectively, "Hartford") to InterDigital's Motion for Leave to File Motion for Partial Summary Judgment.

In its response, Hartford ignores controlling authority and relies on inapposite decisional law to support its position that it is entitled to conduct extensive, extremely burdensome, and prejudicial discovery that will intrude on the underlying case, before this Court may decide whether Hartford has a duty to defend InterDigital in the underlying *Nokia* action.[1] Hartford's position flies in the face of Pennsylvania and Third Circuit law, which provides that the duty to defend must be decided initially with reference only to the complaints in the *Nokia* action and Hartford's policy, and without consideration of extrinsic evidence. And it is equally clear that Hartford's duty to defend continues until, in the underlying case, Nokia confines its claims to uninsured matters. Significantly, as a matter of record before this Court, there has been no pleading subsequent to Nokia's complaints by which Nokia has in fact confined its claims to uninsured matters.

### Hartford's Legal Position is Incorrect

1.      Hartford has wholly failed to demonstrate why controlling decisions of the Supreme Court of Pennsylvania in *Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Insurance Co.*, 908 A.2d 888 (Pa. 2006), and the United States Court of Appeals for the Third Circuit in *Air Products & Chemicals, Inc. v. Hartford Accident & Indemnity Co.*, 25 F.3d 177 (3d Cir. 1994), do not govern this dispute. As InterDigital showed in

---

[1] *Nokia Corp., et al. v. InterDigital Communications Corp., et al.*, C.A. No. 05-16-JJF, United States District Court for the District of Delaware.

its motion, the duty to defend is determined under Pennsylvania law by looking to the allegations contained within the four corners of the Nokia's underlying complaint without consideration of extrinsic evidence. Hartford's duty to defend will continue thereafter until Nokia files a pleading confining the claims in the underlying case to uninsured issues. *See Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999).

2.      It is beyond dispute that the duty to defend and the duty to indemnify are separate duties under Pennsylvania law: "An insurer's duty to defend an insured in litigation is broader than the duty to indemnify, in that the former duty arises whenever an underlying complaint may 'potentially' come within the insurance coverage." *Frog, Switch & Mfg. Co.*, 193 F.3d at 746. If even one claim in a multiclaim suit is potentially covered, the insurer must defend all claims *until there is no possibility that the underlying plaintiff could recover on a covered claim. See id.* Because the duty to defend is broader than the duty to indemnify, there may be a duty to defend without an ultimate duty to indemnify. *See id.*

3.      As discussed in InterDigital's Proposed Brief in Support of its Proposed Motion for Partial Summary Judgment, Third Circuit and Pennsylvania Supreme Court decisions demonstrate that: 1) the duty to defend is determined solely by reference to the allegations of the complaint against the insured; 2) insurers are prohibited from adducing extrinsic evidence to prove the application of any policy exclusions; and 3) any discovery into the underlying litigation is improper in a suit concerning the duty to defend. *See, e.g., Sunoco, Inc. v. Illinois Nat'l Ins. Co.*, 226 Fed. Appx. 104, 107 & n.2 (3d Cir. 2007) (observing that duty to defend is determined solely from allegations of underlying complaint and noting the district court properly refused to allow discovery into the underlying cases and their facts); *Air Prods. & Chems., Inc.*, 25 F.3d at 180 (noting that courts may not look to extrinsic evidence in ascertaining the duty to

defend unless the insured is attempting to prove it fits within an exception to an exclusion that clearly applies); *Kvaerner Metals Div.*, 908 A.2d at 896 (holding the duty to defend is ascertained solely from the face of the complaint and that the intermediate appellate court erred by considering extrinsic evidence in ascertaining whether there was a duty to defend).

4.      As explained at pages 16 through 17 of InterDigital's Proposed Summary Judgment Brief, the insurers in *Air Products* sought, exactly as Hartford seeks to do here, to introduce extrinsic evidence to prove that the broad claims asserted against their insured could not have arisen during their policy periods. *See Air Prods. & Chems., Inc.*, 25 F.3d at 179. The Third Circuit held that Pennsylvania law clearly prohibits courts from looking to extrinsic evidence in determining whether a duty to defend has been triggered by the underlying complaint. *See id.* at 180-81.

5.      The Supreme Court of Pennsylvania recently affirmed this principle. *See Kvaerner Metals Div.*, 908 A.2d at 896-97. The *Kvaerner* court held that the intermediate appellate court erred in looking beyond the face of the pleadings to determine whether there was a duty to defend. *See id.* at 896. The proper inquiry, according to the *Kvaerner* court, is to "look to the language of the policies themselves to determine in which instances they will provide coverage, and then examine [the underlying] complaint to determine whether the allegations set forth therein constitute the type of instances that will trigger coverage." *Id.* at 896-97.

6.      In light of these principles, Hartford's demand for discovery related to the allegations of the underlying complaint is improper and irrelevant. *See Sunoco, Inc.*, 226 Fed. Appx. at 107 n.2 (approving the district court's refusal to allow discovery into underlying cases). Moreover, the scope of Hartford's discovery demands is extremely burdensome as explained in Paragraphs 18 through 20 below.

7.    The cases on which Hartford relies were all decided before *Kvaerner*, and some were not decided under Pennsylvania law but under a minority rule that does not prevail in Pennsylvania.  Significantly, even the Pennsylvania cases cited by Hartford clearly acknowledge InterDigital's view of the law.  Thus, in *St. Paul Fire & Marine Insurance Co. v. Appalachian Insurance Co.*, C.A. No. 87-6071, 1988 WL 124605 (E.D. Pa. Nov. 18, 1988), the court declared:

> In *Lee v. Aetna Casualty*, 178 F.2d 750, 753 (2d Cir. 1949), Judge
> Learned Hand wrote "if the plaintiff's complaint against the
> insured alleged facts which would have supported a recovery
> covered by this policy, it was the duty of the [insurer] to undertake
> the defense, *until it could confine the claim to a recovery that the
> policy did not cover*." (Emphasis added).  Pennsylvania has
> adopted this statement as its own law.  *Cadwallader v. New
> Amsterdam Casualty*, 396 Pa. 582, 590, 152 A.2d 484 (1959);
> *American Contract Bridge League v. Nationwide Mutual*, 752 F.2d
> 71, 75 (3d Cir. 1985).
>
>                . . . .
>
> It follows that the insurer's duty to defend continues until all
> potential for coverage has been extinguished.
>
>                . . . .
>
> The insurer is bound to defend its insured until it can be said with
> certainty that the shadow has passed beyond the range of the
> policy.

*Id.* at *1, 2.  Likewise in *Charter Oak Fire Insurance Co. v. Sumitomo Marine & Fire Insurance Co.*, 750 F.2d 267 (3d Cir. 1984) (2-1 split panel), even though it was decided well before *Air Products* and *Kvaerner*, the court acknowledged:

> It is true that, according to the Supreme Court of Pennsylvania, the
> "obligation to defend arises whenever the complaint filed by the
> injured party may *potentially* come within the coverage of the
> policy." *Gedeon v. State Farm Mutual Automobile Ins. Co.*, 410
> Pa. 55, 58, 188 A.2d 320, 321 (1963); *Brugnoli v. United National
> Ins. Co.*, 284 Pa. Super. 511, 516, 426 A.2d 164, 166 (1981).

*Id.* at 272 (emphasis in original). The *Charter Oak* court also explained that the duty to defend continued until the claims were confined to a recovery excluded from the scope of the policy. *See id.* The fact that in *Charter Oak* the underlying plaintiff had filed a pleading, a pretrial statement, which made it clear that its claims were uninsured, is of no significance here because no such pleading or its equivalent has been filed in the underlying *Nokia* action. Certainly *Charter Oak* provides no authority to justify Hartford litigating the factual issues in the underlying *Nokia* action before deciding InterDigital's Motion for Partial Summary Judgment. Finally, the district court in *West American Insurance Co. v. Lindepuu*, 128 F. Supp. 2d 220 (E.D. Pa. 2000), also acknowledged that "[t]he duty to defend arises whenever the complaint filed by the injured party may potentially come within the policy's coverage."[2] *Id.* at 225.

       8.      Hartford contends that it is entitled to discovery concerning facts that relate to whether there is coverage in this action. In support of its position, Hartford relies upon a decision of a Hawaiian state court that observed that a limited number of jurisdictions have recognized a principle permitting discovery into facts *wholly unrelated* to the underlying action. *See Dairy Road Partners v. Island Ins. Co.*, 992 P.2d 93, 113 (Haw. 2000). That case nevertheless recognized that Pennsylvania follows the majority position that "forbids insurers from relying upon extrinsic evidence for the purpose of disclaiming the duty to defend." *Id.* *Dairy Road Partners* recognized that some jurisdictions have a limited exception to the general rule where the facts the insurer seeks to rely on will not potentially be reached in the underlying suit against the insured; however, the Hawaiian court identified only New Jersey and Illinois as recognizing this exception. Pennsylvania courts have never adopted the limited exception set

---

[2] It is also significant that *Charter Oak* and *Lindepuu* considered pleadings that unequivocally confined the plaintiffs' claims as of the *time of trial* of those claims in the underlying litigation, and not while discovery was ongoing in the underlying suits.

forth in the New Jersey or Illinois cases cited by *Dairy Road Partners*. Certainly, Hartford has

not identified any such Pennsylvania case that does so.[3] In any event, the Illinois case cited by

*Dairy Road Partners* itself makes clear that the limited exception itself is quite narrow: "[N]o

consideration [may] be given to factual matters which *might be relevant* to issues in the

underlying litigation." *Id.* (quoting *Millers Mut. Ins. Ass'n of Illinois v. Ainsworth Seed Co.*, 552

N.E.2d 254, 256 (Ill. App. Ct. 1990)) (emphasis added). Even if Hartford is correct that this

limited exception is Pennsylvania law, which it is not, the discovery Hartford seeks overlaps with

issues that might be relevant to the underlying case, as will be shown below. In short, Hartford

seeks to circumvent Pennsylvania law prohibiting it from disclaiming its duty to defend through

extrinsic evidence.

9.     Hartford contends that some Pennsylvania decisions have recognized that a duty

to defend "may terminate in certain instances" and that others "in fact looked beyond the initial

pleading to terminate a duty to defend." (Hartford Resp. at ¶ 9 (D.I. 68).)

10.     First, InterDigital does not dispute that the duty to defend does not exist in a case

where there is absolutely no possibility of a recovery on a covered claim. However, Hartford is

misapplying this principle to delay adjudication of its duty to defend. Where there is a

potentially covered claim, the insurer must defend until the plaintiff's pleadings *in the underlying*

*case* unequivocally confine the claim to one that is not potentially within the coverage of the

policy at issue. It is not for the insurer to bring a declaratory judgment lawsuit to prove through

---

[3] The court in the Pennsylvania case cited by Hartford, *QBE Insurance Group v. M&S Landis Corp.*, 915 A.2d 1222, 1225 (Pa. Super. Ct. 2007), at paragraph 8 of its response did *not* adopt the limited exception discussed in *Dairy Road Partners*. In addition, the case does not stand for the proposition for which Hartford cites it (*i.e.*, that an insurer may look to facts "material to coverage but immaterial to the underlying litigation").

burdensome collateral discovery into issues relating to the allegations of the underlying complaint that there can be no indemnity and, therefore, no duty to defend.

The two Pennsylvania state cases Hartford relies on are not in the least bit instructive. *QBE Insurance Corp. v. M&S Landis Corp.*, 915 A.2d 1222 (Pa. Super. Ct. 2007), did not address a situation in which an insurer sought discovery concerning issues relating to coverage. That case involved an insurance coverage dispute about an underlying wrongful death action. *See id.* at 1224. The court only considered the allegations of the complaint and the coverage provisions of the policy. It did not consider any extrinsic evidence whatsoever. *QBE* certainly did *not* adopt the limited exception discussed in *Dairy Road Partners* or even stand for the proposition for which Hartford cites it (*i.e.*, that an insurer may look to facts "material to coverage but immaterial to the underlying litigation"). The other case, *Upright Material Handling, Inc. v. Ohio Casualty Group*, 74 Pa. D. & C.4th 305 (Pa.Com.Pl., 2005), considered the question of the duty to defend in a bad faith action brought *after* the underlying case was resolved against the insured by a jury verdict that was within the scope of coverage. *See id.* at 311. *Upright Material* also did not consider extrinsic evidence to curtail a duty to defend. Consequently, it also sheds no light on the current dispute.

11.    Accordingly, Hartford's legal position that it may take discovery in order to generate extrinsic evidence to terminate its duty to defend is incorrect. Hartford's contention that courts applying Pennsylvania law may look beyond the allegations in the pleadings to determine whether a duty to defend exists is likewise incorrect. The controlling law makes it clear that courts determining the duty to defend under Pennsylvania law are not to look beyond the allegations of the complaint in determining the duty to defend. Thus, InterDigital's Motion for Partial Summary Judgment concerning Hartford's breach of its duty to defend is ripe for

adjudication and can be decided by examination of Nokia's complaints and the Hartford policies,

regarding which there is no dispute.    This is not a situation where uncertainty about the

allegations in the complaint led Hartford to defend InterDigital pursuant to a reservation of

rights.  Hartford outright denied InterDigital a defense.

### Even if the Law Were As Hartford Claims, Nokia's Claims Against InterDigital Are Still Within or Potentially Within the Coverage of the Policies

12.    Although a duty to defend may terminate if all possibility of a covered claim is

eliminated by the plaintiff's pleadings subsequent to the complaint in the underlying lawsuit,

there can be no dispute that there have been no such definitive pleadings in the *Nokia* action.

The case is still in the discovery phase; it is not on the eve of trial.  Nokia has not filed a pretrial

statement, binding admissions, or any other pleading unequivocally confining its claims to

uninsured matters.   To the extent that Nokia has answered interrogatories, it has reserved the

right to amend them.   Given the broad cloud cast by Nokia's operative complaint, which was

filed in February of this year, and which has not been definitively limited in the underlying case

to exclude any possibilities of a covered claim, it cannot be disputed that InterDigital's Proposed

Motion for Partial Summary Judgment is ripe.[4]

13.    Hartford claims that it is seeking discovery concerning: "(a) whether the claims

against InterDigital involve an offense covered by the Hartford policies, (b) whether any such

offense was committed in the Hartford 'coverage territory', (c) whether any such offense was

committed during the Hartford policy period, and (d) whether one or more of the policy

---

[4] Hartford mischaracterizes the discovery responses InterDigital gave concerning InterDigital Communications Corporation's ownership of InterDigital Technology Corporation at all relevant times, which has nothing to do with the underlying litigation. Hartford is improperly attempting to use InterDigital's response--which cannot be disputed and Hartford apparently has accepted-- as the thin edge of a wedge to pry into matters that are indisputably in issue in the underlying *Nokia* action.  Even if Hartford were correct--and it is not--that Pennsylvania follows the "limited exception" discussed in *Dairy Road Partners*, the discovery it seeks clearly overlaps with the facts of the *Nokia* action and should not be permitted.

exclusions (such as the prior publication exclusion) may apply to negate or terminate a duty to defend." (Hartford Resp. at ¶ 5.)

14.     To the extent Hartford seeks discovery to prove any policy exclusion, including its "prior publication" exclusion, Hartford would clearly be barred from doing so pursuant to the Third Circuit's controlling decision in *Air Products*--which was decided at least ten years after the split panel decision in *Charter Oak*.  Thus, any discovery Hartford seeks to demonstrate "whether one or more of the policy exclusions . . . may apply to negate or terminate a duty to defend" is patently improper.

15.     As for "whether the claims against InterDigital involve an offense covered by the Hartford policies," that analysis is clearly performed under Pennsylvania law by comparing the allegations of the complaint to the coverage provisions of the policies without reference to extrinsic evidence.  *See Kvaerner Metals Div.*, 908 A.2d at 896 (observing that the "insurer's duties under an insurance policy are triggered by the language of the complaint against the insured"); *General Accident Ins. Co. of Am. v. Allen*, 692 A.2d 1089, 1095 (Pa. 1997) ("If the complaint against the insured avers facts that would support a recovery covered by the policy, then coverage is triggered and the insurer has a duty to defend until such time that the claim is confined to a recovery that the policy does not cover.").  Significantly, if any claim in a multiclaim lawsuit *potentially* comes within coverage, the insurer must defend all claims until the plaintiff in the underlying case confines his action to an uncovered claim.  *See Frog, Switch & Mfg. Co.*, 193 F.3d at 746; *Air Prods.*, 25 F.3d at 180 ("[W]hen the allegations may or may not fall within the exclusion (and therefore the coverage), the insurer is required to defend.").  Thus, there is no basis for Hartford's attempt to take discovery on whether Nokia's claims against

InterDigital involve an offense covered by the Hartford policies. That inquiry is to be undertaken as a matter of law by the Court.

16.     Similarly, the discovery Hartford seeks about whether the alleged offenses were committed in the "coverage territory" or during the policy period concerns issues that must be answered from the face of the Nokia complaints. As InterDigital demonstrated in its Proposed Brief in Support of its Proposed Motion for Partial Summary Judgment, Nokia's allegations clearly implicate the Hartford "coverage territory." (InterDigital Proposed Br. at 15.) Likewise, the allegations of the Nokia complaints clearly implicate statements InterDigital allegedly made during the Hartford policy period. (*See id.* at 15-16.) Furthermore, it is inconceivable that discovery concerning where and when the alleged statements were made--and what was said-- would not overlap with the facts at issue in the *Nokia* action. To recover, Nokia ultimately will have to prove that InterDigital made the alleged statements. Such proof will necessarily entail evidence of who made the statements and where and when such statements were made and disseminated. Thus, such discovery obviously concerns matters that might be resolved by trial of Nokia's claims; therefore, the discovery Hartford seeks on these issues would not even conceivably come within the "limited exception," even if it were Pennsylvania law, which it is not.

17.     As this Court rightly recognized in its Order and Opinion dated December 14, 2006: "Courts have recognized the concern that an overlapping declaratory judgment action by an insurer may result in collaterally estopping the insured from litigating certain issues in the underlying action . . . ." (D.I. 31, p.15.) Despite the Court's ruling dismissing Hartford's count seeking a declaration as to its duty to indemnify, Hartford clearly seeks to litigate such issues in this lawsuit.

18.    The discovery requests propounded by Hartford demonstrate that it seeks to litigate facts that are relevant only to the Nokia claims, not Hartford's defense obligations to InterDigital and therefore do not justify postponement of adjudication of InterDigital's Motion for Partial Summary Judgment on the question of Hartford's duty to defend.    By way of example:

- Hartford's Interrogatory No. 1 seeks identification of "all facts, documents, or witnesses that "support, pertain to or refute any of the factual allegations set forth in Hartford's First Amended Complaint."[5]   Hartford's Interrogatory No. 2 similarly seeks identification of all such facts relating to InterDigital's answer to Hartford's First Amended Complaint.  These interrogatories clearly seek discovery of all the facts in issue in the *Nokia* action and more.  It is inconceivable that such facts would not be resolved by a trial of the *Nokia* action.

- Hartford's Interrogatory No. 9 seeks identification of "the dates, *substance*, place(s) of publication, and speaker of any statements which Nokia has identified or seeks damages on account of in the Nokia action -- including but not limited to identifying such information as to each of the alleged statements identified in the attached chart" (emphasis added).  Interrogatory No. 10 seeks identification of "all damages Nokia contends results from each such statement and identify each and every provision of the Hartford Policies which you contend provides coverage, including any defense, for each such claim."  Interrogatory No. 11 seeks the date on which InterDigital first made various alleged statements at issue in the *Nokia* action.  Interrogatory No. 12 seeks identification of the "date, location and substance of each [InterDigital 3G licensing presentation made to Nokia], . . . all persons attending each such presentation and their employer at the time of the presentation, . . . all persons involved in preparing each such presentation and their employer at the time of such presentation, including but not limited to any PowerPoints."  Again, these interrogatories seek information that undoubtedly is at issue in the *Nokia* action and which plainly must be resolved there.

- Hartford's Interrogatories Nos. 13 and 14, which have no temporal limitation whatsoever, seeks identification and description of "any statements or descriptions made by InterDigital regarding: a. InterDigital's patent portfolio; b. the WCDMA standard; c. the CDMA standard; d. Nokia's products; e. the applicability of InterDigital's patents to Nokia's products; and, f. the applicability of InterDigital's patents to 3G wireless standards" including identification of the "dates, substance, place(s) of publication and maker of each of those statements."  Given that InterDigital is in the business of developing cellular telephone technologies for

---

[5] InterDigital's Responses and objections to Hartford's April 2007 Interrogatories and Requests for Production of Documents are attached to Hartford's Motion to Compel Discovery (D.I. 57) as Exhibit C.

decades, it does not require an affidavit to demonstrate that such interrogatories are absolutely unreasonable and overbroad.[6] What is worse, it is clear that these grossly overbroad requests unquestionably implicate the core issues to be determined in the *Nokia* action.

- Hartford's overly broad document requests likewise seek discovery of information concerning facts in issue in the underlying lawsuit that must be resolved in the underlying lawsuit. (*See, e.g.*, D.I. 57, Exh. C, Requests Nos. 1, 2, 3, 6, 8, 9, 10, 11, 12, 13, 14, 15, & 20.) For example, Hartford seeks "any and all documents evidencing or discussing any allegedly false communications made by InterDigital *which are at issue* in the *Nokia* action . . . ." (*See id.*, Request No. 14 (emphasis added).)

- Similarly, Hartford seeks deposition testimony on matters that are in issue in the underlying *Nokia* action. For example, Hartford seeks, without limitation, an InterDigital Rule 30(b)(6) designee to testify about all the "facts, claims, and allegations *contained in Nokia's Amended Complaint filed in the Nokia action*, and InterDigital's Original Answer to Nokia's First Amended Complaint and Original Counterclaims." (July 31, 2007 Notice of Deposition Topic No. 1 (D.I. 49) (emphasis added).) By way of further example, Hartford similarly seeks testimony concerning "[a]ny statements made by InterDigital which Nokia and/or InterDigital has identified or seeks damages on account of in the Nokia action . . . ," and the "dates, substance, place(s) of publication, and speaker of any statements Nokia has identified or seeks damages on account of in the Nokia action . . . ." (*Id.*, Topics 2 & 3.)

- Hartford also has propounded discovery requests that are highly intrusive upon, and seek sensitive information concerning, and relationships and communications among InterDigital and its outside counsel in the *Nokia* action, including their legal strategies. (*See, e.g.*, Hartford's September 12, 2007 Rule 30(b)(6) Notice (D.I. 55); Hartford's Second Set of Interrogatories and Second Requests for Production of Documents (D.I. 54.).) For example, Hartford seeks "all documents concerning the *Nokia* action maintained by any attorneys for whom you seek defense/payment by Hartford." (D.I. 57, Exh. C Request No. 9.) Additionally, Hartford seeks testimony about why InterDigital retained specific law firms and why it may have terminated any of those firms. (D.I. 55, Topics 1 & 3.)

19.    Resolving issues in this action such as what statements InterDigital made, when and where it made them, and what the substances of those statements were would collaterally estop InterDigital from litigating those issues in the *Nokia* action.

---

[6] However, because Hartford claims InterDigital has not demonstrated that Hartford's requests are burdensome, InterDigital submits the Declaration of Lawrence J. Shay, InterDigital's Chief Legal Officer, which demonstrates just how cumbersome and paralyzing Hartford's improper discovery requests would be. A true and correct copy of the declaration is attached hereto as Exhibit A.

20.    It is telling that Hartford has never even offered to narrow the scope of these interrogatories or document requests.    The breadth of the information Hartford seeks demonstrates not only that it is being unreasonable but also that it is seeking to litigate issues that clearly are in play in the *Nokia* action, but are not relevant to this coverage action.

21.    Under the controlling authority of *Air Products*, *Kvaerner*, and *Sunoco*, Hartford is not entitled to such discovery.    Hartford is not within the limited exception that it purports applies in Pennsylvania.    Moreover, even the cases upon which Hartford relies do not countenance such aggressive tactics on the part of insurers against their insureds.

WHEREFORE, for these reasons and the reasons set forth in InterDigital's Motion for Leave to File Motion for Partial Summary Judgment, InterDigital submits that its Motion for Partial Summary Judgment as to whether Hartford breached its duty to defend InterDigital is ripe for adjudication according to controlling Pennsylvania law.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Stephen J. Mathes
Arleigh P. Helfer III
Stacy B. Heenan
HOYLE, FICKLER, HERSCHEL &
    MATHES LLP
One South Broad Street - Suite 1500
Philadelphia, PA 19107
(215) 981-5710

Dated: October 12, 2007
825299 / 30373

By:    /s/ Richard L. Horwitz
        Richard L. Horwitz (#2246)
        Jennifer C. Wasson (#4933)
        Hercules Plaza, 6th Floor
        1313 North Market Street
        Wilmington, DE 19801
        (302) 984-6000
        rhorwitz@potteranderson.com
        jwasson@potteranderson.com

*Attorneys for Defendants*
*InterDigital Technology Corporation and*
*InterDigital Communication Corporation*

13

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

**<u>CERTIFICATE OF SERVICE</u>**

I, Richard L. Horwitz, hereby certify that on October 12, 2007, the attached document

was electronically filed with the Clerk of the Court using CM/ECF which will send notification

to the registered attorney(s) of record that the document has been filed and is available for

viewing and downloading.

I further certify that on October 12, 2007, I have Electronically Mailed the document to

the following person(s):

| | |
|---|---|
| James S. Yoder | Anthony L. Miscioscia |
| White & Williams LLP | Gale White |
| 824 N. Market Street, Suite 902 | White and Williams LLP |
| Wilmington, DE 19899 | 1800 One Liberty Place |
| <u>yoderj@whiteandwilliams.com</u> | Philadelphia, PA 19103 |
| | <u>miscioscia@whiteandwilliams.com</u> |
| | <u>whiteg@whiteandwilliams.com</u> |

By: /s/ Richard L. Horwitz
　　　Richard L. Horwitz
　　　Jennifer C. Wasson
　　　Hercules Plaza, 6th Floor
　　　1313 N. Market Street
　　　Wilmington, Delaware 19899-0951
　　　(302) 984-6000
　　　<u>rhorwitz@potteranderson.com</u>
　　　<u>jwasson@potteranderson.com</u>

743996

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HARTFORD FIRE INSURANCE )
COMPANY, et al., )
                                    )
            Plaintiffs, )            C. A. No. 06-422-JJF
                                    )
      v. )
                                    )
INTERDIGITAL COMMUNICATIONS )
CORPORATION, et al., )
                                    )
            Defendants. )
_____ )
                                    )
INTERDIGITAL COMMUNICATIONS )
CORPORATION, et al., )
                                    )
            Counterclaim Plaintiffs, )
                                    )
      v. )
                                    )
HARTFORD FIRE INSURANCE )
COMPANY, et al., )
                                    )
            Counterclaim Defendants. )

## DECLARATION OF LAWRENCE F. SHAY

I, Lawrence F. Shay, declare as follows:

1. I am the Chief Legal Officer of InterDigital Communications, LLC. In that capacity, I make the following declarations to the best of my knowledge, information and belief.

2. InterDigital Communications, LLC, its predecessors, its subsidiaries and its affiliates (collectively, "InterDigital"), are in the business of developing, patenting and licensing technologies that are used in cellular telephones, among other things. InterDigital has been developing and patenting such technologies for more than thirty years.

3. Much of InterDigital's revenue is generated by licensing its patented technologies to companies that participate in the cellular telephone industry, whether as manufacturers of cellular telephones or otherwise.

4.  At this time, InterDigital's patent portfolio contains 3910 patents and 9943 patents pending.

5.  InterDigital currently has approximately 381 employees, a substantial percentage of whom develop technologies, are involved in some way with the licensing of InterDigital's patented technologies or otherwise have knowledge about InterDigital's patented technologies.

6.  I have reviewed the interrogatories and document requests propounded by Hartford in April, 2007, and September, 2007, as well as the Rule 30(b)(6) notices served by Hartford in July, 2007, and September, 2007, in the above-captioned insurance coverage litigation. In this declaration, I will refer to this discovery collectively as the "Discovery Requests."

7.  The scope of information sought by Hartford's Discovery Requests is vast. The Discovery Requests include no temporal limitation.

8.  For example, Hartford's Interrogatories Nos. 13 and 14 seek, without limitation, identification and description of "any statements or descriptions made by InterDigital regarding: a. InterDigital's patent portfolio; b. the WCDMA standard; c. the CDMA standard; d. Nokia's products; e. the applicability of InterDigital's patents to 3G wireless standards" and request detailed identification of the "dates, substance, place(s) of publication and maker of each of those statements."

9.  Because a substantial percentage of all statements an InterDigital employee makes in the course of employment relates to InterDigital's patent portfolio, cellular telephone standards including research and development related thereto, or the applicability of InterDigital's patents to cellular telephone standards, these two interrogatories alone would require InterDigital to identify and review nearly every statement made by each of its present and former employees for the past thirty-four years.

10. Hartford propounded a document request for the same information in its Discovery Requests. (*See* April 2007 Request for Production of Documents Request No. 15.) Thus, Hartford would have InterDigital search for and review nearly every document, including e-mail communications or electronic documents, generated by each of its present and former employees for the past thirty-four years.

11. Such requests are unreasonable and strict compliance with them, and other similarly broad Discovery Requests propounded by Hartford, would impose tremendous burdens on InterDigital's business and would be cost prohibitive.

12. Hartford also seeks extensive discovery that overlaps with the facts of the *Nokia* litigation. For example, Hartford seeks, without limitation, an InterDigital Rule 30(b)(6) designee to testify about all the "facts, claims, and allegations contained in Nokia's Amended Complaint filed in the Nokia action, and InterDigital's Original Answer to Nokia's First Amended Complaint and Original Counterclaims." (See July 31, 2007 Notice of Deposition Topic No. 1.) By way of further example, Hartford similarly seeks testimony concerning "[a]ny statements made by InterDigital which Nokia and/or InterDigital has identified or seeks damages on account of in the Nokia action . . . ," and the "dates, substance, place(s) of publication, and speaker of any statements Nokia has identified or seeks damages on account of in the Nokia action . . . ." (*Id.*, Topics 2 & 3.) Nokia also seeks "any and all documents evidencing or discussing any allegedly false communications made by InterDigital *which are at issue* in the Nokia action . . . ." (April 2007 Request for Production of Documents Request No. 14.)

13. Hartford also seeks burdensome discovery on issues that have no bearing on this insurance dispute. For example, Hartford seeks discovery, without temporal limitation or restriction as to topic, concerning any agreements or licensing agreements between InterDigital and Nokia, as well as information and documents concerning any and all other arbitrations, lawsuits, or civil proceedings between InterDigital and Nokia. (*See* April 2007 Interrogatories

Nos. 5 & 6; Request for Production of Documents Requests Nos. 10-12; July 31, 2007 Notice of Deposition Topics Nos. 7 & 9.) InterDigital has been dealing with Nokia for at least eight years.

14. Finally, without regard to the sensitive nature of the attorney-client relationship, Hartford seeks "all documents concerning the Nokia action maintained by any attorneys for whom you seek defense payment by Hartford." (See April 2007 Request for Production of Documents No. 9.) Hartford propounded a number of similarly intrusive document requests and interrogatories into InterDigital's relationships with its outside counsel in September, 2007. (See September 2007 Second Set of Interrogatories and Second Requests for Production of Documents.)

15. In sum, the discovery sought by Hartford in connection with the above-captioned coverage action is so broad as to encompass a substantial percentage of all documents and communications made by InterDigital for more than thirty years. It would require that InterDigital expend hundreds, if not thousands, of hours to comply with Hartford's discovery requests.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 12, 2007

Lawrence F. Shay
Chief Legal Officer
InterDigital Communications, LLC