# EXHIBIT  B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **HARTFORD FIRE INSURANCE COMPANY** and **HARTFORD CASUALTY INSURANCE COMPANY** | : : : : | |
| Plaintiffs, | : : | CIVIL ACTION NO. 06-cv-422-UNA |
| | : : | JURY TRIAL DEMANDED |
| v. | : : : | |
| **INTERDIGITAL COMMUNICATIONS CORPORATION** and **INTERDIGITAL TECHNOLOGY CORPORATION** | : : : : | **PUBLIC VERSION** |
| Defendants. | : : : | |

---

## BRIEF OF HARTFORD FIRE INSURANCE COMPANY AND HARTFORD CASUALTY INSURANCE COMPANY IN SUPPORT OF HARTFORD'S CROSS-MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO INTERDIGITAL'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**WHITE AND WILLIAMS**

Attorneys for Plaintiffs, Hartford Fire Insurance Company and Hartford Casualty Insurance Company

James S. Yoder, Esquire
Delaware I.D. No.: 2643
White and Williams LLP
824 N. Market Street - Suite 902
Wilmington, DE 19899-0709
(302) 654-0424

and

Gale White, Esquire
Anthony L. Miscioscia, Esquire
White and Williams LLP
1800 One Liberty Place
Philadelphia, PA 19103-7395
(215) 864-6234/6356

Sealed Version Dated: January 8, 2008

Public Version Dated: January 11, 2008

# TABLE OF CONTENTS

Page

I.    STATEMENT OF NATURE AND STAGE OF PROCEEDINGS ....................................1

II.   SUMMARY OF ARGUMENT.............................................................................................1

III.  CONCISE STATEMENT OF FACTS................................................................................3

    A.    Nokia's Original Complaint...............................................................................3

    B.    Nokia's Amended Complaint .............................................................................4

    C.    The Hartford Policies .........................................................................................5

        1.    Hartford CGL Policies...........................................................................5

        2.    Hartford Umbrella Policies...................................................................6

IV.   ARGUMENT......................................................................................................................7

    A.    This Court Must Apply A "Common Sense Perspective" In Determining Whether A Duty To Defend Exists..........................................................................7

    B.    Relevant Coverage of the Hartford CGL Policies .................................................8

    C.    Hartford Has No Duty To Defend Because Coverage Is Excluded By The IP Exclusion..................................................................................................................8

    D.    Hartford Has No Duty To Defend Because Coverage Is Excluded By The Material Published With Knowledge Of Falsity Exclusion And/Or The Knowing Violation of Rights of Another Exclusion ...........................................................16

        1.    Nokia's original Complaint ONLY alleges knowingly false misstatements............................................................................................16

        2.    Hartford similarly has no duty to defend Nokia's Amended Complaint as Nokia alleges that InterDigital had knowledge of the falsity of its statements ..............................................................................................18

            a.    Nokia's Lanham Act claims and various state law claims require Nokia to establish that InterDigital acted in "bad faith" when making its allegedly injurious statements, and thus with knowledge of its falsity...........................................................................................19

i

## TABLE OF CONTENTS
(continued)

Page

b.    Nokia's few scattered references to reckless conduct cannot create a duty to defend the Amended Complaint..........................................22

3.    Hartford has no duty to defend the Amended Complaint because Nokia alleges that InterDigital expected to inflict harm .......................................25

E.    Hartford Has No Duty To Defend Because Nokia's Claims Either Are Based Upon Publications Made Outside the Hartford Policy Period and/or Coverage Territory or Upon Statements for Which Coverage Is Precluded By the Prior Publication Exclusion ......................................................................................25

1.    Nokia's identification of statements outside Hartford's policy period and Hartford's "coverage territory"..........................................................26

a.    SEC statements..............................................................................27

b.    Website and news statements........................................................30

c.    ETSI statements.............................................................................32

d.    Licensing statements .....................................................................36

2.    Either InterDigital has failed to sustain its burden of proving coverage or Hartford should be permitted to look outside the pleadings to deny a defense where facts material to coverage, but immaterial to the *Nokia* action, demonstrate that there is no potential for coverage ........................37

V.    CONCLUSION ................................................................................................40

PHLDMS1 3863600v.1

## TABLE OF AUTHORITIES

### CASES

*Aetna Cas. & Sur. Co. v. Roe*, 437 Pa. Super. 414, 650 A.2d 94 (1994)...........................18

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).......................................................38

*Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616 (Tex. App. 2007)...................36

*Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mut. Ins. Co.*, 385 Pa. 394, 123 A.2d 413 (1956)...................................................................................... 33-35

*Charter Oak Fire Ins. v. Sumitomo Marine & Fire Ins.*, 750 F.2d 267 (3d Cir. 1984) .............................................................................................................39

*Clarendon Nat'l Ins. Co. v. City of York*, 290 F. Supp. 2d 500 (M.D. Pa. 2005), *aff'd*, 121 Fed. Appx. 940 (3d Cir. 2006)..................................................................13

*Dairy Road Partners v. Island Ins. Co., Ltd.*, 92 Hawaii 398, 992 P.2d 93 (2000)..........39

*Del Monte Fresh Produce v. Transportation Ins. Co.*, 500 F.3d 640 (7th Cir. 2007) .............................................................................................................18

*Erie Ins. Exchange v. Fidler*, 808 A.2d 587 (Pa. Super. 2002) ........................................22

*Gene's Restaurant, Inc. v. Nationwide Ins. Co.*, 519 Pa. 306, 548 A.2d 246 (1988)... 17-18

*Globetrotter Software, Inc. v. Elan Computer Group*, 362 F.3d 1367 (Fed. Cir. 2004) .......................................................................................................... 19-20

*Humphreys v. Niagara Fire Ins. Co.*, 404 Pa. Super. 347, 590 A.2d 1267, *appeal denied*, 528 Pa. 637, 598 A.2d 994 (1991) ................................................21

*Hyde Athletic Indus. v. Continental Cas. Co.*, 969 F. Supp. 289 (E.D. Pa. 1997).......24, 35

*I.C.D. Indus., Inc. v. Federal Ins. Co.*, 879 F. Supp. 480 (E.D. Pa. 1995) ........................18

*ISCO International, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 493 (D. Del. 2003)............20

*Kvaerner v. Commercial Union Ins. Co.*, 589 Pa. 317, 908 A.2d 888 (2006)...............7, 17

*Lawman Armor Corp. v. Master Lock Co.*, 2004 WL 362210 (E.D. Pa. 2004) ................20

*Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100 (Pa. 1999) .................13

i

*Manufacturers Cas. Ins. Co. v. Goodville Mut. Cas. Co.*, 403 Pa. 603, 170 A.2d 571 (1961) ...................................................................................................12

*Mark I Restoration Svc. v. Assurance Co. of Am.*, 248 F. Supp. 2d 397 (E.D. Pa. 2003), *aff'd*, 112 Fed. Appx. 153 (2004)...................................................7

*McCabe v. Old Republic Ins. Co.*, 228 A.2d 901 (Pa. 1967)...............................13

*Miller v. Boston Ins. Co.*, 420 Pa. 566, 218 A.2d 275 (1966)............................37

*Molecular Bioproducts, Inc. v. St. Paul Mercury Ins. Co.*, 2003 WL 23198852 (S.D. Cal. 2003) ...............................................................................................14

*Mutual Benefit Ins. Co. v. Haver*, 725 A.2d 743 (Pa. 1999)................................7

*Neurotron, Inc. v. Medical Serv. Assoc. of Pa., Inc.*, 254 F.3d 444 (3d Cir. 2001)...........36

*Noble Fiber Technologies, Inc. v. Argentum Med., LLC*, 2006 WL 1793219 (M.D. Pa. 2006) ....................................................................................... 19-20

*Nokia Corp. v. InterDigital Communications*, 2005 WL 3525696 (D. Del. Dec. 21, 2005) ........................................................................................................19

*Pacific Indemnity v. Linn*, 766 F.2d 754 (3d Cir. 1985) ....................................34

*QBE Ins. Group v. M&S Landis Corp.*, 915 A.2d 1222 (Pa. Super. 2007) ................ 38-39

*R.R. Donnelley & Sons Co. v. Fireman's Fund Ins. Co.*, 2004 WL 2810065 (E.D. Pa., Dec. 6, 2004)...............................................................................................12

*Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co.*, 704 A.2d 665 (Pa. Super. 1997) .............................................................................................................12

*Rust Engineering & Constr. Inc. v. J.C. Zampell Constr., Inc.*, 1997 U.S. Dist. LEXIS 19783 (E.D. Pa. Dec. 11, 1997)............................................................12

*St. Paul Fire & Marine Ins. Co. v. Appalachian Ins. Co.*, 1988 WL 124605 (E.D. Pa. Nov. 18, 1988) ..........................................................................................39

*Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563 (1983)............................................................................................. 8, 12-13

*Upright Material Handling, Inc. v. Ohio Cas. Group*, 74 Pa. D. & C. 4th 305 (Lacka. Cty. 2005) ..........................................................................................39

*West Am. Ins. Co. v. Lindepuu*, 128 F. Supp. 2d 220 (E.D. Pa. 2000)..............................39

PHLDMS1 3863600v.1

*Wilson v. Maryland Cas. Co.*, 377 Pa. 588, 105 A.2d 304 (1954) ....................................18

**STATUTES**

Fed. R. Civ. P. 56(f).........................................................................................................38

**MISCELLANEOUS**

Restatement (Second) of Torts § 630 (1977)....................................................................37

PHLDMS1 3863600v.1

I.    **STATEMENT OF NATURE AND STAGE OF PROCEEDINGS**

This is an insurance coverage action in which Hartford Fire Insurance Company and Hartford Casualty Insurance Company (collectively "Hartford") and InterDigital Communications Corporation ("ICC") and InterDigital Technology Corporation ("ITC") (collectively "InterDigital") dispute whether Hartford had or has any duty to defend InterDigital in an underlying patent lawsuit brought by Nokia Corp. and Nokia, Inc. (collectively "Nokia").

Hartford initially sought a declaration that it has no duty to defend or to indemnify InterDigital for the claims asserted in the *Nokia* action. (D.I. 20). This Court has dismissed, as premature, Count II of Hartford's Complaint concerning the duty to indemnify, with leave to refile after the conclusion of the *Nokia* action. (D.I. 32). At this point, all that remains is the issue of whether Hartford had or has any duty to defend InterDigital.[1]

II.    **SUMMARY OF ARGUMENT**

1.    An insurer's duty to defend generally is determined by comparing the allegations in the underlying complaint to the insurance policy at issue; however, Pennsylvania courts also apply a "common sense perspective" in determining whether a duty to defend exists.

2.    Here, Hartford has no duty to defend InterDigital against *either* the *original* Complaint or the *Amended* Complaint in the *Nokia* action for several independent reasons.

3.    Coverage, and any possible duty to defend, is precluded by the IP exclusion. All of the statements which InterDigital contends give rise to coverage "arise out of" alleged violation of intellectual property rights and alleged statements regarding the scope of a patent portfolio and possible violation of such patents.

---

[1]    Count III of Hartford's Complaint seeks a declaration as to whether ITC, as opposed to only ICC, qualifies as an insured to the Hartford policies. In light of the Declaration of Rebecca B. Opher submitted by InterDigital (ID. App. 171), Hartford no longer challenges whether ITC qualifies as an insured.

4.      Pennsylvania courts have construed the phrase "arising out of" broadly, even when used in an exclusion, to mean causally connected with, not proximately caused by. "But for" causation, *i.e.*, a cause and result relationship, is enough to satisfy this provision.

5.      Any possible duty to defend is further precluded by the Knowing Violation of Rights of Another and the Material Published with Knowledge of Falsity exclusions.

6.      Hartford had no duty to defend the original Complaint, which expressly alleged InterDigital made statements "in bad faith and with knowledge of their falsity." There is no allegation that these statements were anything other than knowing and in bad faith. Accepting Nokia's claims as true and confining oneself solely to the allegations of the original Complaint (as InterDigital argues the Court must), there was no duty to defend the original Complaint.

7.      There also is no duty to defend the Amended Complaint, which repeatedly alleges InterDigital knowingly and with bad faith made false statements. While the Amended Complaint also includes a few references to possible recklessly false statements, those claims cannot create coverage because (a) the Amended Complaint clearly avers that InterDigital's false statements were knowingly false and (b) the applicable substantive law requires proof of bad faith in order for a patent holder to face liability for allegedly false statements about its patent rights.

8.      Any duty to defend is precluded because the InterDigital statements upon which Nokia bases its claims either (a) were made outside the Hartford "policy period", (b) were made outside the Hartford "coverage territory", and/or (c) were first made prior to the Hartford policy period and thus excluded by the prior publication exclusion.

9.      Even if coverage existed (which is denied), the Hartford policies apply only in excess to other, more specific insurance available to InterDigital.

2

10.    Finally, InterDigital's motion is premature.  InterDigital has failed to produce the complete Amended Complaint (as certain materials incorporated therein have not been produced) and Hartford should be entitled to complete its requested discovery to ascertain facts relevant to coverage and the duty to defend but immaterial to the underlying *Nokia* action.

## III.    CONCISE STATEMENT OF FACTS

InterDigital seeks coverage for a lawsuit brought against it by one of its competitors in the mobile phone industry, Nokia.  The suit arises solely out of disputes between Nokia and InterDigital relating to the validity and essentiality of certain patents and the infringement or non-infringement of such patents.  InterDigital has represented for over ten years that it has hundreds of patents that cover the principal wireless handheld standards used in the mobile phone industry.  *See* Nokia's original Complaint ("Complaint") at ¶7 (ID. App. 3).  InterDigital asserted certain of its patents against others in the industry, including Motorola, Ericsson, OKI American, and Qualcomm.  *See id.*  More recently, InterDigital has alleged that at least 195 of its patents cover "3G" (third generation) mobile systems, *i.e.* are "essential" to mobile phone 3G standards.  *See id.* at ¶¶27-28 (ID. App. 177).

Nokia believed InterDigital planned to sue Nokia for infringement of InterDigital's 3G patents based on, *inter alia*, InterDigital's history of litigiousness.  *Id.* at ¶¶16-17 (ID. App. 6-7).  InterDigital's tactics were so well known that *Forbes Magazine* described InterDigital as a company that uses litigation to "extract[] money from companies" that make hand-held mobile phones.  *Id.* at ¶17 (ID. App. 7).  Nokia brought the underlying suit to seek a determination that Nokia's 3G products do not infringe InterDigital's 3G patents.  *Id.* at ¶¶20-21 (ID. App. 7).

### A.    Nokia's Original Complaint

Nokia's original Complaint was pled in twenty-one counts.  Twenty of those sought a declaration that 18 of InterDigital's patents were invalid and/or non-infringed.  The twenty-first

count alleged InterDigital used knowingly false and misleading descriptions regarding its patent portfolio, the applicability of InterDigital's patents to Nokia's products, and the applicability of InterDigital's patents to 3G standards, which inhibited the development of 3G technology and damaged Nokia's business and reputation. *See id.* at ¶¶142, 146 (ID. App. 34-35).

After suit was brought, InterDigital and Nokia began litigating the scope and validity of InterDigital's 3G patents. InterDigital retained ▮▮▮▮ well-known patent firms to represent it in the litigation, including Fulbright & Jaworski; Finnegan, Henderson; Wilmer Hale; Wilson, Sonsini; ▮▮▮▮▮▮; and Potter Anderson. *See* Docket, Ex. A hereto (App. 1-6).

## B.   Nokia's Amended Complaint

Nokia filed an Amended Complaint in February 2007 which again sought declaratory relief concerning the validity and essentiality of InterDigital's 3G patents and the applicability of such to Nokia's 3G products. A determination of essentiality would necessarily mean that many of InterDigital's competitors, such as Nokia, would be infringing InterDigital's patents unless they held a license. Nokia avers it holds many 3G patents and has followed industry standards relating to licensing, and that InterDigital's only real business is coercing patent license payments from the mobile phone industry. FAC at ¶¶19-20 (ID. App. 176). InterDigital claims that it has essential 3G patents and insists that manufacturers pay it licensing fees. *Id.* at ¶20 (ID. App. 176). Nokia avers that InterDigital's contentions and related statements that its patents are "essential" are false and that "InterDigital routinely and knowingly declares patents to be essential" even though it is well aware that its patents are not so. *Id.* at ¶36.c (ID. App. 180).

The *Nokia* litigation continues to the present (although we note the action recently has been stayed), with Nokia continuing to seek declarations concerning the invalidity, essentiality, unenforceability and non-infringement of at least 127 of InterDigital's patents. In its Prayer for Relief, Nokia requests judgment, *inter alia*:

4

(a) Declaring the extent to which any of the patents set forth in Attachment A [listing 127 patents] actually meet the definition of "essential" under the ETSI IPR policy;

(b) Declaring the extent to which any of the patents in Attachment A are necessarily infringed by compliance of a product with a 3G standard actually commercially implemented anywhere in the world;

(c) Declaring the extent to which any of the patents in Attachment A have valid, enforceable claims which necessarily read on any product compliant with any 3G standard, including but not necessarily limited to Nokia products made, used, sold, offered for sale or imported in the United States;

(d) Declaring that no Nokia 3G compliant product infringes any valid, enforceable claim of any of the patents in Attachment A (or any such other United States patent as InterDigital may refuse to concede is not infringed by Nokia);  (FAC at p. 26 (ID. App. 197).

Nokia also continues to seek damages on account of InterDigital's allegedly false and misleading statements concerning InterDigital's 3G patents and their alleged essentiality to 3G products and standards.  Nokia avers that InterDigital's statements were knowingly false, willful, and in bad faith. *E.g. id.* at ¶31 ("InterDigital made the ***deliberate*** decision to include IPRs that it ***knew*** were not technically necessary"); ¶¶57, 65 ("InterDigital has made these false statements in ***bad faith*** and with ***knowledge of their falsity***"); ¶¶70, 72 ("InterDigital represented that its patents were essential to 3G standards, even though it ***knew*** they were not"); ¶¶140, 147 & 155 (InterDigital's false, misleading declarations and other wrongful conduct were "***purposeful*** and in ***bad faith***") (emphasis added to all) (ID. App. 178-96).

### C.    The Hartford Policies

Four separate Hartford policies are at issue in this case -- two CGL policies and two umbrella policies (collectively, "the Hartford policies").

### 1.    Hartford CGL Policies

The Hartford Fire issued two CGL policies to ICC, one effective 12/22/03 to 12/22/04 and the second effective 12/22/04 to 12/22/05.  *See* Hartford's Amended Complaint at ¶41 (D.I.

5

43); InterDigital's Answer at ¶41 (D.I. 44). The CGL policies provide certain coverage for sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which the insurance applies. (ID. App. 47, 68). The policies apply to "personal and advertising injury" caused by an offense arising out of the named insured's business but only if the offense was committed in the "coverage territory" during the policy period. (*Ibid*). The policies exclude coverage for "personal and advertising injury", *inter alia*, arising out of violation of intellectual property rights, knowingly false publications, and publications first made before the policy period, as well as exclude coverage for offenses committed with the expectation of inflicting injury.[2] (ID. App. 41-41, 47-48, 62-63, 68-69).

Pursuant to the CGL policies, Hartford Fire has "the right and duty to defend" the insured against any suit seeking covered damages. (ID. App. 47, 68). Hartford Fire is not obligated, however, to defend or indemnify a "suit" that does not seek covered damages. (*Ibid*).

### 2.   Hartford Umbrella Policies

The Hartford Casualty issued two umbrella liability policies to ICC effective for the same periods. (ID. App. 80-137). These policies, however, are not material to the instant motion – as Hartford can have no duty to defend the under the Umbrella policies.[3]

---

[2]    To avoid repetition, the relevant policy provisions, definitions and exclusions are quoted in the Argument section below, when those particular provisions are discussed.

[3]    The Umbrella policies contain a Personal and Advertising Injury exclusion barring coverage for "personal and advertising injury" except if "underlying insurance" is applicable to "personal and advertising injury" and to claims arising out of that "personal and advertising injury." (ID. App. 134). As such, if "personal and advertising injury" coverage is not provided by the Hartford CGL policies, coverage also will not exist under the Umbrella policies. Conversely, even if Hartford has a duty to defend under the CGL policies (which Hartford denies), the Umbrella policies still would not be required to provide a defense as there would be "underlying insurance".

## IV.    ARGUMENT

### A.    This Court Must Apply A "Common Sense Perspective" In Determining Whether A Duty To Defend Exists[4]

An insurer's duty to defend typically is determined by comparing the underlying complaint to the insurance policy at issue. *E.g., Kvaerner v. Commercial Union Ins. Co.*, 589 Pa. 317, 329-330 (2006). Under Pennsylvania law, the duty to defend is broad. However, a *broad* duty to defend is not the equivalent of a *boundless* duty to defend, as Pennsylvania courts have consistently made clear. "A review of Pennsylvania case law reveals that courts apply a common sense perspective when addressing an insurer's duty to defend. The Pennsylvania Supreme Court has directed that 'it is not the actual details of the injury, but the *nature of the claim* which determines whether the insurer is required to defend.'" *Mark I Restoration Svc. v. Assurance Co. of Am.*, 248 F. Supp. 2d 397, 403 (E.D. Pa. 2003), *aff'd*, 112 Fed. Appx. 153 (2004) (citing *Springfield Twp. v. Indem. Ins. Co. of N. Am.*, 64 A.2d 761, 762 (Pa. 1949)).

Thus, while it is generally true, as this Court has observed, that the obligation to defend is determined solely by the allegations of the underlying complaint (*Kvaerner*, 589 Pa. at 329-30), Pennsylvania courts do not look at the allegations in a vacuum, without ascribing any significance to their context. As the Pennsylvania Supreme Court has instructed:

> The particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead it is necessary to look at the factual allegations contained in the complaint . . . . To allow the manner in which the complainant frames the request for redress to control in a case . . . would encourage litigation through the use of artful pleadings designed to avoid exclusions in liability insurance policies.

*Mutual Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999).

---

[4]    Both InterDigital's Motion and this Court's 11/29/07 Opinion (D.I. 76) are based on Pennsylvania law.

**B.**     **Relevant Coverage of the Hartford CGL Policies**

"Personal and advertising injury" is defined in the CGL policies as:

> injury, including consequential "bodily injury," arising out of one or more of the
> following offenses:
>
> \*   \*   \*
>
> d.   Oral, written or electronic publication of material that slanders or libels a
> person or organization or disparages a person's or organization's goods,
> products or services;  (ID. App. 57, 78).

InterDigital argues only that the *Nokia* action alleges claims potentially within paragraph d.
above. *See* InterDigital's Brief at 11 (D.I. 59).[5]  However, for the reasons set forth below, not all
of Nokia's claims fall within paragraph d. and, more importantly for purposes of this motion, *all*
of Nokia's claims fall outside the coverage provided by the Hartford policies.

**C.**     **Hartford Has No Duty To Defend Because Coverage Is Excluded By The IP
Exclusion**

Under Pennsylvania law, clearly worded and conspicuously displayed exclusions will be
enforced. *Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 307, 469 A.2d
563, 567 (1983). Here, there can be no dispute that the *Nokia* action is solely an intellectual
property dispute – and falls squarely within the IP exclusion to the Hartford policies.

Nokia's original Complaint contained twenty causes of action for either declarations of
non-infringement of patents or for declarations of patent invalidity and states that the action was
one *arising under the United States Patent Laws*. *See* Complaint at ¶1 (ID. App. 1). Plus, in
discussing the facts giving rise to the action, Nokia explained at length InterDigital's past patent
lawsuits and InterDigital's allegedly false claims of infringement. *Id.* at pp. 3-8 (ID. App. 3-8).

---

[5]     InterDigital makes no claim, and thus presumably agrees, that the *Nokia* action does not allege any claim
that falls within the other parts of the "personal and advertising injury" definition or the Hartford policies.

8

Similarly, in Nokia's FAC, Nokia again spends pages and pages detailing InterDigital's alleged "intellectual property rights ('IPRs')", InterDigital's prior patent litigation with others in the industry and InterDigital's allegedly false statements regarding 3G technology and related IPRs. (ID. App. 174-84). Additionally, in its Prayer for Relief, Nokia seeks declarations concerning the validity, essentiality, non-infringement and enforceability of InterDigital's patents. FAC at p. 26 (ID. App. 197).

In responding to Nokia's FAC, InterDigital further demonstrates that this case is a patent and intellectual property dispute. InterDigital admits that, "in the process of specifying standards, the participants may have intellectual property rights ('IPRs') – including patents and published patent applications – where as a technical matter the standard cannot be implements without infringing the patent (or the patent that would issue if an application were granted)." *See* Answer to FAC at ¶18, Ex. B hereto (App. 18). Additionally, in listing its "defenses" to the FAC, InterDigital details in length the standard setting process and IPR rules. *See id.* at ¶¶166 *et seq.* (App. 52-56). InterDigital's Counterclaim describes Nokia's lawsuit against InterDigital as "merely the latest step in Nokia's aggressive, worldwide campaign of attack against InterDigital and its intellectual property rights." *See id.* at ¶226 (App. 66-67).

Recently, Nokia moved this Court to stay the *Nokia* action because "InterDigital had insisted on litigating the same two patents in three different cases." *See* Nokia's 10/5/07 Brief in Support of Stay at p. 2, Ex. C hereto (App. 93). In response, InterDigital admitted that the parties' allegations in the *Nokia* action "involved the potential for litigation concerning more than 300 patents." *See* InterDigital's 11/8/07 Opposition Brief at p. 1, Ex. D hereto (App. 116).

The Hartford CGL policies, however, clearly and explicitly exclude coverage for injury arising out of intellectual property violations. The Infringement of Intellectual Property Rights exclusion ("the IP exclusion") in the Hartford policies bars coverage for:

> "Personal and advertising injury" arising out [of] any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity. (ID. App. 42, 63).

InterDigital claims that the *Nokia* action is covered under the "personal and advertising injury" offense of:

> d.    Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

Reading that paragraph into the IP exclusion, the Hartford policies preclude coverage for:

> [oral, written or electronic publication of material that …disparages [an] … organization's goods, products or services] arising out [of] any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

Here, the "personal and advertising injury" that InterDigital claims is covered clearly arises out of a violation of intellectual property rights. In fact, Nokia's alleged injury arises out of several such violations – some by Nokia and some by InterDigital.

As discussed above, the suit centers solely on intellectual property rights and violations of same. Further, Nokia's Lanham Act and related state law claims all are based upon InterDigital's misrepresentations about the scope and validity of its patents and how such patents apply to Nokia's products. *See, e.g.,* Nokia's 10/5/07 Brief p. 4 (App. 95) (summarizing Nokia's claims). Therefore, all alleged oral or written publication of materials that disparage Nokia "arise out of" violation of intellectual property rights. As such, all of the alleged disparagement arises only out of violations of intellectual property rights – Nokia's alleged violation of

10

InterDigital's patent rights and InterDigital's alleged violation of its intellectual property rights and membership rights (and those of others) in the various mobile phone standards bodies referenced in Nokia's pleadings. *See* FAC at pp. 10-12 (ID. App. 181-83) (detailing InterDigital's abuse of the mobile phone standards process); Nokia's 10/5/07 Brief at p. 5 (App. 96) ("Nokia has alleged in this case InterDigital's abuse of the ETSI declaration policy").

InterDigital seeks to escape application of the IP exclusion in several ways. First, InterDigital questions whether the exclusion even includes the phrase "arising out of." The exclusion most certainly does. While there is a slight typographical error in the exclusion, the only logical reading of the exclusion is to insert the missing word "of" into the phrase "arising out [of] any violation."[6] InterDigital, in fact, offers no other possible construction of the phrase.[7]

Next, InterDigital, conceding that no Pennsylvania court has interpreted this exact IP exclusion, contends that the exclusion, and the phrase "arising out of" must be construed narrowly to favor coverage. Pennsylvania courts, however, have construed the phrase "arising out of"[8] broadly, *even when used in an exclusion*. InterDigital's claim that the phrase arising

---

[6]     When the other exclusions in the policy are reviewed, the typographical error becomes clear. The IP exclusion is the only personal and advertising injury exclusion containing the phrase "arising out any", and omitting "of" from the phrase "arising out [of]". "Arising out of" is used in 14 of the 19 other exclusions to personal and advertising injury coverage in the CGL Coverage Form. (ID. App. 47-49, 68-70). Similarly, "arising out of" is used in both of the other two exclusions replaced/amended by the Cyberflex endorsement. (ID. App. 41-42, 62-63).

[7]     To the extent that InterDigital disputes that the exclusion bars coverage for personal and advertising injury "arising out of" any violation of intellectual property rights, InterDigital raises a factual issue precluding summary judgment and necessitating discovery. Hartford should be permitted an opportunity to conduct discovery concerning InterDigital's intent and understanding concerning the IP exclusion. InterDigital also suggests in its Brief that the IP exclusion is ambiguous – but offers no evidence of how InterDigital proposes the exclusion should be reasonably construed. Plus, in concluding it argument on this exclusion, InterDigital argues that the exclusion does not apply because, if construed as suggested by Hartford, InterDigital would be denied coverage for disputes arising out of publications that purportedly relate to the heart of InterDigital's business. InterDigital presents no affidavit supporting its claims and Hartford has been denied any discovery concerning the "nature of InterDigital's business" and whether it would "make sense" for InterDigital to "purchase" such coverage. Again, such fact issues raised by InterDigital warrant denial of InterDigital's motion.

[8]     InterDigital complains in a footnote that the exclusion does not say "arising out of." *See* InterDigital's Brief at 29 n.25 (D.I. 59). While InterDigital correctly notes that the exclusion reads "arising out [sic] any violation" (*id.* at 28), InterDigital's inclusion of "[*sic*]" when quoting the Hartford exclusion recognizes that there is

11

out of "must" be construed narrowly when used in an exclusion (*see* InterDigital's Brief at p. 29 (D.I. 59)) simply misstates Pennsylvania law.

In Pennsylvania, the "arising out of" phrase has been interpreted broadly to mean "causally connected with, not proximately caused by. 'But for' causation, *i.e.*, a cause and result relationship, is enough to satisfy this provision." *Manufacturers Cas. Ins. Co. v. Goodville Mut. Cas. Co.*, 403 Pa. 603, 607-08, 170 A.2d 571, 573 (1961); *see also Rust Engineering & Constr. Inc. v. J.C. Zampell Constr., Inc.*, 1997 U.S. Dist. LEXIS 19783, *10 (E.D. Pa. Dec. 11, 1997) ("[i]n Pennsylvania, the phrase 'arising out of' has been broadly interpreted to mean but-for causation, not proximate cause"); *R.R. Donnelley & Sons Co. v. Fireman's Fund Ins. Co.*, 2004 WL 2810065, *4 (E.D. Pa., Dec. 6, 2004); *Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co.*, 704 A.2d 665, 669 (Pa. Super. 1997) (construing the phrase in an insuring agreement, has reasoned that "construed strictly against the insurer, 'arising out of' means causally connected with, not proximately caused by" and has "been equated with 'but for' causation.") (quoting *Erie Ins. Exchange v. Eisenhuth*, 305 Pa. Super. 571, 574, 451 A.2d 1024, 1025 (1982); *Southgate Recreation & Park Dist. v. California Assoc. for Park & Recreation Ins.*, 106 Cal. App. 4th 293, 301 (2003) (in construing a construction contract exclusion, court concludes that "'arising out of' is a broad concept requiring only a '*slight connection*' or an '*incidental relationship*' between the injury and the excluded risk" and emphasizes that other California decisions equate "arising out of" with "origination, growth or flow from the event") (emphasis added).

The Pennsylvania Supreme Court's decision in *Standard Venetian* does not require a contrary conclusion. InterDigital misleadingly cites *Standard Venetian* for the proposition that

---

a typographical error in the policy. To the extent that InterDigital disputes that the exclusion should be construed as containing the phrase "arising out of", Hartford should be permitted an opportunity to conduct discovery concerning InterDigital's intent and understandings concerning such exclusion.

ambiguous phrases in exclusions must be construed against an insurer, suggesting through its reference to *Standard Venetian* that the "arising out of" phrase must be so narrowly construed. The *Standard Venetian* court, however, reached the opposite conclusion. There the court examined two separate exclusions containing the phrase "arising out of" and found both exclusions to be "plain and free of ambiguity." *Id.*, 503 Pa. at 305, 469 A.2d at 566.[9]

Moreover, contrary to InterDigital's claim, courts applying Pennsylvania law, ***including the Pennsylvania Supreme Court***, have construed the phrase "arising out of" as used in policy exclusions and construed it "broadly" to indicate a "but for" or "causal" relationship. *See Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 110 (Pa. 1999); *McCabe v. Old Republic Ins. Co.*, 228 A.2d 901, 903 (Pa. 1967); *Clarendon Nat'l Ins. Co. v. City of York*, 290 F. Supp. 2d 500, 507 (M.D. Pa. 2003), *aff'd*, 121 Fed. Appx. 940, 943 (3d Cir. 2006).

InterDigital finally seeks to avoid application of the exclusion because the *Nokia* pleadings do not, according to InterDigital, allege a violation of intellectual property rights by InterDigital. Nokia's final claim is wrong in several respects. The IP exclusion is <u>not</u> restricted to claims alleging violations of intellectual property rights. The exclusion applies so long as the alleged personal and advertising injury (here what InterDigital contends is defamation or disparagement) "arises out of" any such violation. Certainly Nokia's claims all arise out of a violation of intellectual property rights – as Nokia still seeks declarations concerning the validity, enforceability and infringement of 127 of InterDigital's patents and claims that InterDigital has falsely, and in bad faith, accused Nokia of infringing InterDigital's patent rights. *E.g.* FAC at ¶68 & p. 26 (ID. App. 187-88, 197).

---

[9]     Neither of the other two cases cited by InterDigital, *USX* or *Tuscarora*, address the meaning of the phrase "arising out of" in an exclusion. Both cases construe the phrase as used in an insuring agreement. *USX* equates "arising out of" with "but for" causation. *Id.*, 99 F. Supp. 2d at 627. Tuscarora equates "arising out of" with a causal connection, not proximate cause. *Id.*, 889 A.2d at 563.

Second, the exclusion is not limited, as InterDigital suggests, to only claims arising out of violations "by InterDigital." The exclusion clearly and unambiguously refers to "any violation." Nothing in the exclusion restricts it only to violations by InterDigital. Rather, the exclusion precludes coverage for any personal and advertising injury arising out of any violation of IP rights – without any limitation of the person or entity committing the violation.

Recognizing this, InterDigital seeks to create coverage by arguing that the exception to the IP exclusion broadens the coverage otherwise provided by the policy. The exception to the exclusion, excepting from the IP exclusion's bar certain infringement in InterDigital's advertisement or web site, does and says nothing about other claims arising out of IP violations. Nothing in that exception creates coverage for injury arising out of violations by one other than InterDigital. Similarly, nothing in the exception limits the IP exclusion's bar to only claims arising out of InterDigital's IP violations.

Third, the only decision Hartford has located which addresses the scope of a similar IP exclusion to patent defenses has concluded that patent defenses asserted against an insured patent-holder fall within an IP exclusion. In *Molecular Bioproducts, Inc. v. St. Paul Mercury Ins. Co.*, 2003 WL 23198852 (S.D. Cal. 2003), the court addressed the applicability of an IP exclusion in the context of an ongoing patent infringement dispute. There, the insured, Molecular, filed suit against a competitor, Porex, for patent infringement. Porex responded filing counterclaims for: (1) a declaration of non-infringement, (2) a declaration of patent invalidity, (3) a declaration of patent unenforceability, (4) damages and a declaration of patent unenforceability, (5) intentional interference with contract (for knowingly misrepresenting that Porex's products infringed the patent), (6) intentional interference with prospective economic

14

advantage (for knowingly misrepresenting to potential Porex customers that Porex was
infringing the patent), and (7) attempted monopolization. *Id.* at *2-3.

> The St. Paul policy contained an IP exclusion barring coverage for:
>
>> injury or damage or medical expenses that result from any actual or
>> alleged infringement or violation of the following rights or laws:
>> • Copyright.
>> • Patent.
>> • Trade dress.
>> • Trade name.
>> • Trade secret.
>> • Trademark.
>> • Other intellectual property rights or laws.
>> Nor will [St. Paul] cover any other injury or damage or medical expenses
>> alleged in a claim or suit that also alleges any such infringement or
>> violation.

*Id.* at *2.  The insured argued that the exclusion did not preclude coverage for the counterclaims
because, like InterDigital argues here, the applicability of the exclusion depends upon whether
the infringement or violation is alleged against the insured or the non-insured. *Id.* at *5.

> The court disagreed.  Rejecting the insured's contention, the court concluded that the
patent defenses raised by the counterclaims "are often described as 'violations' by no less an
authority than the Court of Appeals for the Federal Circuit" and thus held that the IP exclusion
barred any coverage for the seven counterclaims – finding that the counterclaims "allege
violations of the patent laws." *Id.* at *6.

> Here, Nokia's original Complaint contained similar patent defenses and, more
importantly, both the remaining Lanham Act claim in the original Complaint and the various
Lanham Act and state law claims in the FAC all arise out of similar alleged defenses and
violations on the part of InterDigital – whereby InterDigital is alleged to have abused its U.S.
patent and ETSI intellectual property rights.

**D.** **Hartford Has No Duty To Defend Because Coverage Is Excluded By The Material Published With Knowledge Of Falsity Exclusion And/Or The Knowing Violation of Rights of Another Exclusion**

The Hartford CGL policies contain a Knowing Violation exclusion and a Known Falsity exclusion which bar coverage for:

> a.  Knowing Violation of Rights of Another
>
> "Personal and advertising injury" caused by an offense committed by, at the direction or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury."
>
> b.  Material Published with Knowledge of Falsity
>
> "Personal and advertising injury" arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.  (ID. App. 47, 68).

Nokia expressly alleges both in the original Complaint and in the FAC that InterDigital made knowingly false statements and engaged in bad faith, and avers InterDigital engaged in a "calculated campaign" (ID. App. 241) to convince the 3G industry, through false and misleading statements, unnecessarily to pay InterDigital substantial royalties.

**1.** **Nokia's original Complaint ONLY alleges knowingly false misstatements**

InterDigital argues that the Knowing Violation and Known Falsity exclusions do not bar coverage because the Nokia's *Amended* Complaint alleges recklessness in addition to knowing falsity.  *See* Brief at p. 18 (D.I. 59).  InterDigital, however, addresses the *original* Complaint only briefly, in the last few pages of its Brief.  There, InterDigital fails to refute Hartford's claim that the Knowing Violation and Known Falsity exclusions preclude coverage for the *original* Complaint.  Instead, ignoring Nokia's express and unequivocal allegations, InterDigital simply refers to its arguments concerning the FAC and the possibility that Nokia may recover based upon a recklessly false statements.  *The original Complaint, however, lacks any reference to*

16

***recklessly false statements.***  Instead, the original Complaint repeatedly and exclusively alleges that "InterDigital has made these false statements in bad faith and with knowledge of their falsity."  *See* Complaint at ¶146 (ID. App. 35).  ***Nowhere*** in the ***original*** Complaint does Nokia assert any claim based upon recklessness or anything other than knowing falsity on the part of InterDigital.  Taking the allegations of the original Complaint as true, as required under Pennsylvania law, InterDigital is alleged to have made false and misleading statements "in bad faith and with knowledge of their falsity."

InterDigital contends, and this Court has ruled, that under Pennsylvania law that that an insurer's duty to defend is determined ***solely*** by the four corners of the complaint and nothing else.  *See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 589 Pa. 317, 908 A.2d 888, 896 (Pa. 2006).  Pennsylvania courts have adhered to this standard in denying bodily injury coverage for certain claims where the underlying complaints expressly, and only, alleged that such injury was intentionally caused by the insured.

The leading case on this issue is the Pennsylvania Supreme Court's decision in *Gene's Restaurant, Inc. v. Nationwide Ins. Co.*, 519 Pa. 306, 548 A.2d 246 (Pa. 1988).  The insured, Gene's Restaurant, Inc., had been sued for willful and malicious assault by one of the restaurant's patrons, who claimed that he had been attacked by employees of the restaurant.  The restaurant sought coverage from its liability insurer, but because the complaint alleged intentional assault and the insurance policy covered only those bodily injury claims that arose as a result of an accident, the insurer refused to pay for the restaurant's costs of defending the suit.

In the ensuing DJ action, the Supreme Court of Pennsylvania held that the insurer was not required to provide coverage because torts based on intentional conduct, the only type of conduct alleged in the complaint, were not covered under the insurance policy.  *Id.*, 519 Pa. at 309; *see*

17

*also Wilson v. Maryland Cas. Co.*, 377 Pa. 588, 105 A.2d 304 (1954) (no duty to defend case

unequivocally alleging assault and battery); *Aetna Cas. & Sur. Co. v. Roe*, 437 Pa. Super. 414,

425-27, 650 A.2d 94, 100-01 (1994) (finding no duty to defend where "the underlying plaintiffs

made no allegations of negligent or reckless behavior", notwithstanding paragraph in complaint

alleging wanton and reckless disregard in support of punitive damage claim); *I.C.D. Indus., Inc.*

*v. Federal Ins. Co.*, 879 F. Supp. 480, 486-87 (E.D. Pa. 1995) (emphasizing that intermediate

Pennsylvania appellate authority has "steadfastly" applied the rule in *Gene's Restaurant*; noting

that, prior to the amended complaint, there were no claims of unfair competition; since insurer

had not duty to look outside the complaint, there was no duty to defend initial complaint).

Nokia's allegations that InterDigital knew its statements were false place Nokia's original

Complaint squarely within the Material Published with Knowledge of Falsity Exclusion.[10]  *See*

*Del Monte Fresh Produce v. Transportation Ins. Co.*, 500 F.3d 640 (7th Cir. 2007), *reh'g en banc*

*denied* (Oct. 11, 2007) (known falsity exclusion bars duty to defend where complaints based only

on allegations insured knowingly sent false letters concerning its patent rights, knowingly

submitted false patent applications and knowingly engaged in fraudulent patent litigation).

### 2. Hartford similarly has no duty to defend Nokia's Amended Complaint as Nokia alleges that InterDigital had knowledge of the falsity of its statements

Like the original Complaint, Nokia's FAC avers both (a) that InterDigital has used false

or misleading descriptions and has made false public statements regarding the scope of its patent

portfolio and the applicability of its patents, and (b) that these statements were made in "bad

faith" and with "knowledge of their falsity." *See, e.g.,* FAC, ¶¶40, 57, 65 (ID. App. 181-83, 186-

---

[10]    To the extent InterDigital argues that the original Complaint, although only alleging knowingly false statements, should be read as potentially alleging an (unstated) claim based upon reckless falsity, InterDigital's contention is misplaced for the reasons discussed in the next section.

87). These allegations are incorporated into and made a part of each of Nokia's claims in the FAC. InterDigital, however, seeks to avoid application of the Known Falsity exclusion by arguing that the FAC also includes a few references to reckless behavior. Those few, scattered references, however, do not negate the applicability of the Known Falsity exclusion.

<blockquote>a.    <strong><u>Nokia's Lanham Act claims and various state law claims require Nokia to establish that InterDigital acted in "bad faith" when making its allegedly injurious statements, and thus with knowledge of its falsity</u></strong></blockquote>

In Delaware and Pennsylvania, courts have established that where a Lanham Act claim is asserted against a patent holder for marketplace activity in support of its patent, in addition to proving the statutory elements under the act, the claimant also is required to establish that the patent holder acted in bad faith. *See Noble Fiber Technologies, Inc. v. Argentum Med., LLC,* 2006 WL 1793219, at \*5 (M.D. Pa. 2006) (citing *ISCO Int'l, Inc. v. Conductus, Inc.,* 279 F. Supp. 2d 489, 504 (D. Del. 2003)). Based on this authority, this Court has held in the *Nokia* action that proof of "bad faith" in required in order for Nokia to prevail on its Lanham Act claim. *Nokia Corp. v. InterDigital Communications,* 2005 WL 3525696, \*5 (D. Del. Dec. 21, 2005).

Courts have furthered held that *state tort claims* also require allegations and ultimately proof of bad faith, in order "to avoid patent law preemption...., even if bad faith is not otherwise an element of the tort claim." *Noble Fiber,* 2006 WL 1793219, at \*5 (citing *ISCO,* 279 F. Supp. 2d at 506 n.8); *see also Globetrotter Software, Inc. v. Elan Computer Group,* 362 F.3d 1367, 1374 (Fed. Cir. 2004) ("to avoid preemption, 'bad faith must be alleged and ultimately proven, even if bad faith is not otherwise an element of the tort claim").

InterDigital argues that "bad faith" does not require a showing of knowingly false misconduct; instead, InterDigital claims reckless disregard for the truth is sufficient to impose liability upon a patent holder. *E.g.* Brief at p. 21 (D.I. 59) (citing *Mikohn* case from 1998 and the

19

*Berda* case from 1989). InterDigital's reliance on cases from the 1980's and 1990's is misplaced. More recent decisions have clarified the bad faith standard.

In *Globetrotter Software, Inc. v. Elan Computer Group*, 362 F.3d 1367 (Fed. Cir. 2004), the court held that the "bad faith" standard in *Zenith* requires proof that the patent holders claims are both "objectively baseless" and "subjective bad faith." *Id.* at 1375-76. Plus, a Pennsylvania district court has stated that "if the patentee *knows* that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out." *Lawman Armor Corp. v. Master Lock Co.*, 2004 WL 362210, at *3 (E.D. Pa. 2004) (citing *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1354 (Fed. Cir. 1999) (emphasis added)).

In *Noble Fiber*, the district court dismissed Lanham Act and related state law tort claims because the underlying pleadings failed to allege *both* that the patent holder's statements were false and were knowingly false, concluding:

> there are no facts alleged within the Amended Complaint demonstrating why the statements were false *or how Defendant Miller knew that the statements were false. Absent such a showing*, defendant Miller's statements *cannot demonstrate bad faith*.

*Id.* at *6 (emphasis added).

Similarly, in *ISCO International, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489 (D. Del. 2003), the District Court of Delaware determined that *mere disregard* for the truth was *not* enough to constitute to bad faith. There, the owner of a cellular communications patent sued a competitor alleging patent infringement. *Id.* at 493 (2003). The defendants filed a cross-claim for unfair competition under section 43(a) of the Lanham Act alleging that the plaintiff issued a press-release in which it alleged that the defendants were infringing on the patent. *Id.* The jury

found that the plaintiff acted in bad faith and competed unfairly when it made certain communications to competitors and the public regarding its patent rights. *Id*. at 504.

In post-trial motions, the defendant argued that bad faith included either actual knowledge of the patent's unenforceability, or willful ignorance of the truth. *Id*. at 505. However, citing *Mikoln*, the Delaware District Court held that it is not necessarily valid to equate "disregard" for a patent's unenforceability with "ignorance" of such unenforceability. *Id*.

Rather, the court found that although *Mikoln* states that falsity of the marketplace communication, or disregard for it, is "required" in the bad faith inquiry, it does not hold that such falsity or disregard, ***without more***, is sufficient to sustain a finding of bad faith. *Id*. Accordingly, the court held that the defendants did not present affirmative evidence that the plaintiff sought, in bad faith, to enforce an unenforceable patent. *Id*.

In short, mere falsity or disregard, as InterDigital incorrectly contends, is ***not*** enough to constitute bad faith. Instead, in order to successfully make claims under the Lanham Act and other state law claims regarding statements of patents in the marketplace, Nokia will be required to prove something more than the falsity of InterDigital's statements and InterDigital's disregard thereof. To succeed, Nokia will have to prove either that InterDigital knew of the falsity of its statements, as Nokia has alleged, or that InterDigital expected to cause Nokia damage by its actions. Either way, coverage for Nokia's claims against InterDigital is excluded under the Knowing Violation of Rights of Another and/or Material Published with Knowledge of Falsity exclusions contained in the Hartford CGL policies. *See Humphreys v. Niagara Fire Ins. Co.*, 404 Pa. Super. 347, 357-58, 590 A.2d 1267, 1272-73 (noting insurer was only required to look at the "nature of the claims" and finding no duty to defend where underlying claims, if proven to be true, would fall within policy exclusions), *appeal denied*, 528 Pa. 637, 598 A.2d 994 (1991).

21

b.    **Nokia's few scattered references to reckless conduct cannot create a duty to defend the Amended Complaint**

Likely recognizing the insurmountable obstacle created by Nokia's express claims of knowing falsity, InterDigital seeks to create a defense based upon a few references in the FAC to recklessness. Those few, limited claims cannot and do not create a duty to defend. First, the claims relied upon by InterDigital are contained only in the FAC. Nokia's original Complaint contains no claim of recklessness. As such, the few references to recklessness do not and cannot create any obligation to defend the original Complaint. Instead, InterDigital's argument speaks only to the period of time after the filing of the FAC.

Further, even as to the FAC, InterDigital's arguments go too far. Pennsylvania courts apply a "common sense" approach to look to the *nature of the claim* to determine if an insurer is obligated to defend an insured. In applying a common sense approach in the analogous context of an "expected or intended" exclusion, the Superior Court has held that the "expected or intended" exclusion precludes an insurer's duty to defend, *notwithstanding* allegations in the underlying complaint that the insured acted *negligently* in causing injury or damage. *See Erie Ins. Exchange v. Fidler*, 808 A.2d 587 (Pa. Super. 2002). In *Fidler*, a homeowners' insurer brought a declaratory judgment action seeking determination as to whether it owed a duty to defend or to indemnify its insureds in a tort action instituted by a student, who alleged that he sustained damages when he was physically assaulted by the insured at junior high school. The amended complaint at issue in *Fidler* alleged *both* intentional and negligent misconduct on the part of the insured. For example, while the amended complaint expressly alleged that the insured "threw the minor Plaintiff, Merrill Tracy Denslow, IV, with such great force that the Plaintiff's head struck the wall and a desk causing him to fall unconscious to the floor," the amended complaint also alleged that the insured, in so behaving, "failed to act with due and reasonable

22

care and in an appropriate manner under the circumstances and acted negligently and without

consideration of and/or knowledge of the consequences of his actions without desiring and

knowing that such consequences were substantially certain to result from his actions." *Id.* at 589.

Emphasizing that "[t]he obligation of an insurer to defend an action against the insured is

fixed solely by the allegations in the underlying complaint" and despite recognizing that

"[s]imple negligence or even recklessness would not be excluded under the policy language", the

*Fidler* court nonetheless held that the insurer did not owe a defense or indemnity. *Id.* at 590-91.

The court reasoned:

> In this case, the Denslows [the claimants] sought recovery for damages
> allegedly caused by the minor Fidler [the insured] when he physically
> assaulted or "threw" the minor Denslow. The amended complaint in the
> underlying lawsuit does not expressly state that Fidler "expected or
> intended" the resulting injuries, and in fact refers to the incident as
> "negligence." However, the particular cause of action that a complainant
> pleads is not determinative of whether coverage has been triggered.
> Instead it is necessary to look at the factual allegations contained in the
> complaint. *Mutual Benefit Ins. Co. v. Haver*, 555 Pa. 534, 725 A.2d 743,
> 745 (1999). If we were to allow the manner in which the complainant
> frames the request for damages to control the coverage question, we would
> permit insureds to circumvent exclusions that are clearly part of the policy
> of insurance. *See id.* (allowing the language of the complaint alone to
> control coverage questions would "encourage litigation through the use of
> artful pleadings designed to avoid exclusions"). The insured would
> receive coverage neither party intended and for which the insured was not
> charged. The fact that the Denslows couched their claims in terms of
> negligence does not control the question of coverage. *Id.*; *Acceptance Ins.
> Co. v. Seybert*, 757 A.2d 380 (Pa. Super. 2000).

*Id.* at 590. The *Fidler* court also emphasized that the original complaint "included descriptions

of the incident as an 'assault and battery'" but that "[t]his language was eliminated in the

amended complaint, presumably to avoid application of Erie's exclusionary clause." *Id.* at 590

n.2. Thus, notwithstanding the express allegations of negligence in the amended complaint, the

*Fidler* court held that the expected or intended exclusion precluded any possibility of coverage

based upon a common sense reading of the underlying pleadings.

23

One Pennsylvania federal court, considering an insured's motion for partial summary judgment concerning the duty to defend and insurers' cross-motions for summary judgment, employed a similar common sense approach to the duty to defend in *Hyde Athletic Indus. v. Continental Cas. Co.*, 969 F. Supp. 289 (E.D. Pa. 1997). There, the insured argued that underlying complaints did not support application of the pollution exclusion clause, because they did not state that the property damage at issue was caused by the discharge of pollutants. According to the insured, the face of the underlying complaints contained claims for property damage which might have been caused by something *other than* the discharge or release of pollutants and, therefore, the insurer should have defended the complaints.

The *Hyde* court rejected this argument. Citing the Pennsylvania principle that "[i]t is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend," the *Hyde* court held that:

> Plaintiffs' argument is unavailing. It asks the court to forget that the underlying Government Complaint and the two third-party complaints were CERCLA and Pennsylvania HSCA cases. The complaints refer repeatedly to the disposal and arrangement for disposal of hazardous substances, chemicals, and wastes which damaged the water and land around the Site. Reading the face of the complaints, no reasonable jury could conclude that the Government and the third-party plaintiffs are referring to anything except "the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants." The *nature of the underlying claims* clearly triggers the pollution exclusion clause.

*Id.* at 296-297 (emphasis added).

Applying Pennsylvania's common sense duty to defend approach, the same result should be reached here. Nokia's original Complaint only contained allegations of knowingly false misstatements – for which coverage is precluded by the Hartford policy's Knowing Violation of Rights of Another Exclusion and the Material Published with Knowledge of Falsity Exclusion. The FAC, which is based upon the same alleged misconduct, again expressly alleges that

24

InterDigital's statements were knowingly false and in bad faith. While the FAC also includes a few passing references to recklessness, this Court should apply a "common sense" approach and disregard those statements – as Nokia's true claims all allege knowingly false statements and as the applicable law requires proof of "bad faith" in order for there to be any potential for liability.

### 3.    Hartford has no duty to defend the Amended Complaint because Nokia alleges that InterDigital expected to inflict harm

Nokia further contends that, in addition to making knowingly false statements, InterDigital acted in bad faith in implementing and maintaining a deceptive scheme to mislead the industry into believing that (a) it has a portfolio of essential patents, (b) the portfolio's scope and value justify the royalties it has been demanding, and (c) manufacturers should pay money in order to manufacture standards-complaint technology. *See* FAC at ¶¶41-43 (ID. App. 183-84). Nokia avers that, when InterDigital made declarations that its patents for 3G technology were essential, it knew that many, if not all, of the IPRs it was declaring to ETSI did not meet the definition of "essential". *See id.* at ¶31 (ID. App. 178). It was InterDigital's "bad faith conduct, false and misleading behavior, and other wrongful acts" which Nokia avers have caused its injuries. *E.g., id.* at ¶¶42, 73 (ID. App. 183-84, 188). Thus, according to Nokia, InterDigital expected to inflict "personal and advertising injury". As such, coverage under Hartford's policies is excluded under the Knowing Violation of Rights of Another exclusion.

### E.    Hartford Has No Duty To Defend Because Nokia's Claims Either Are Based Upon Publications Made Outside the Hartford Policy Period and/or Coverage Territory or Upon Statements for Which Coverage Is Precluded By the Prior Publication Exclusion

The Hartford CGL policies apply to "personal and advertising injury" caused by an offense *only if*, *inter alia*, the offense was committed (1) in the "coverage territory", (2) during the policy period, and (3) if the injury arises out of publication of material <u>first</u> published during

the policy period.  The Hartford CGL policies were in effect from 12/22/03 to 12/22/04 and

12/22/04 to 12/22/05, respectively.  "Coverage territory" is defined in the policies as:

> a.  The United States of America (including its territories and
> possessions), Puerto Rico and Canada;

> * * *

> c.  All other parts of the world if the injury or damage arises out of:

> (1)  Goods or products made or sold by you in the territory described in a.
> above;

> (2)  The activities of a person whose home is in the territory described in
> a. above, but is away for a short time on your business; or

> (3)  "Personal and advertising injury" offenses that take place through the
> Internet or similar electronic communication ... (ID. App. 55-56, 76-
> 77)

The majority of the statements at issue in the *Nokia* action were made outside Hartford's

"coverage territory" (*e.g.*, outside the United States) and/or outside Hartford's "policy period"

(*e.g.*, before 12/22/03 or after 12/22/05).  The few remaining statements made ***both*** within

Hartford's coverage territory ***and*** during the Hartford policy period are precluded from coverage

by the prior publication exclusion.  That exclusion bars coverage for:

> c.  Material Published Prior to Policy Period

> "Personal and advertising injury" arising out of oral, written or electronic
> publication of material whose first publication took place before the
> beginning of the policy period.[11]  (ID. App. 47, 68)

### 1.  Nokia's identification of statements outside Hartford's policy period and Hartford's "coverage territory"

In documents which InterDigital contends ███████████████████████████

████████████████████████████, Nokia has identified a number of statements

---

[11]       Even if the Court were to find the potential for coverage under the initial Hartford CGL policy, which
Hartford denies, coverage and any duty to defend under the second Hartford CGL policy would still be precluded by
the prior publication exclusion.

allegedly supportive of its Lanham Act claims against InterDigital. ████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████, *all* of these statements must be considered.

In Nokia's First Statement (Ex. E hereto),[12] Nokia identified what InterDigital has

described as four categories of statements:

    a.      statements made in [InterDigital's] filings with the Securities and
               Exchange Commission;

    b.      statements on InterDigital's website and through various news outlets;

    c.      statements made to the European Telecommunications Standards
               Institute ("ETSI"); and

    d.      statements made to Nokia during confidential licensing discussions.

*See* Answer to FAC at ¶165 (App. 52); █████████████████. For the reasons

explained below, none of these statements create any possibility of coverage.

          **a.**     **SEC statements**

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████ First, even

---

[12]       As InterDigital has explained, the Special Master ordered Nokia "to provide a verified response regarding Paragraph 143 of its Complaint, which alleges that 'InterDigital has repeatedly made public statements that its patent portfolio covers the practice of 3G wireless phone systems and the sale of 3G complaint products.'" *See* Answer to FAC at ¶164 (App. 52).

a cursory review of those SEC statements reveals that *none* says anything about Nokia or its products or services, and thus none of those statements involves any "personal or advertising injury" covered by the Hartford policies.  Second, even if the statements could be viewed as involving an enumerated personal or advertising injury offense, coverage still does not exist.



As such, the Prior Publication exclusion bars coverage for Nokia's claims relating to these ███ SEC statements.

| SEC Statements Identified By Nokia | Reason Why Statement Not Covered |
|---|---|
| ████████████████████████ | Published After Policy Period |
| ████████████████████████ | Prior Publication Exclusion |
| ████████████████████████ | Prior Publication Exclusion |
| ████████████████████████ | Prior Publication Exclusion |

28



| | Before Policy Period |
|---|---|
| | Before Policy Period |
| | Before Policy Period |
| | Before Policy Period |

InterDigital's Statement, 

PHLDMS1 3863600v.1

**b.    Website and news statements**

Nokia's claims are also based on ███████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

█████████████████████████████████████████

Thus, the prior publication exclusion bars coverage for such claims.



| WEB and Press Statements Identified by Nokia | Reason Why Statement Not Covered |
|---|---|
| ██████████████████████████████████████ | After policy period ██████████████ |
| ██████████████████████████████████████ | No Proof Made During Policy Period, and<br><br>If during policy, Prior Publication Exclusion |

---

[14]    To the extent that ████████████ statements are not dated ██████████████ ████████, Hartford renews its request for discovery to ascertain when those statements were first made. To the extent that the Court has suggested that the date on which those statements were made may be at issue in the *Nokia* action, Hartford, with all due respect to the Court, does not see where in the pleadings the date at issue. Hartford suspects that the date of those statements is known to InterDigital and is a fact which will not, and cannot, be disputed in the *Nokia* action. Hartford should be permitted to discovery the complete *Nokia* pleadings and discovery to test whether issues of when and where statements were made are truly in dispute in the *Nokia* action. Based upon the limited information disclosed to Hartford, Hartford questions whether such issues will actually need to be resolved by trial in the *Nokia* action.

PHLDMS1 3863600v.1



PHLDMS1 3863600v.1



| | Before Policy Period |
| | Before Policy Period |
| | Before Policy Period |

None of these statements are defamatory or disparaging. Moreover, each are merely republications of statements first made prior to the Hartford policy period and thus excluded by the Prior Publication exclusion.

### c.    ETSI statements

InterDigital is alleged to have made two declarations to the ETSI upon which Nokia's claims are based. One filing in April 2001 and a second in April 2004. *See* FAC at ¶28 (ID. App. 177). The April 2001 filing was made prior to the Hartford policy period and thus any claims based upon those statements cannot implicate coverage under the Hartford policies.

The second ETSI filing also does not implicate coverage for several reasons. First, the statement allegedly was made *to* the ETSI. *See* FAC at ¶28 (ID. App. 177). Being made to a European institute, those filings were made *outside* the Hartford coverage territory – which does not include Europe. To the extent that InterDigital claims that coverage exists because

InterDigital's declarations were later made available through a searchable database "on ETSI's website" (*see* FAC at ¶33 (ID. App. 178)), InterDigital's alleged wrongdoing, *i.e.*, its alleged offense, was publishing the declaration to the ETSI.  InterDigital is not alleged to have made any such declaration on its website or otherwise through the Internet.  In fact, the ETSI Guide attached as Ex. B to the FAC (and Ex. H hereto) states that ETSI IPR Information Statement and Licensing Declaration Forms are to be returned to the ETSI Director-General, and the form appended to the end of that Exhibit identifies the Director General's address as being in France. *See id.* at p. 8 and Annex 1 (App. 354, 371). ████████████████████ ███████████████████████████████████ Thus, the reference to the ETSI's website does not and cannot morph InterDigital's European offense into one inside the Hartford coverage territory.  Similarly, to the extent that InterDigital claims that InterDigital's ETSI declarations originated from InterDigital in the United States, such argument ignores the indisputable fact that a statement cannot be actionable as defamatory or disparaging until such statement is published to a third party – here to the ETSI.  Since the injury does not occur until the statement is published to the ETSI in Europe, any personal and advertising injury was committed outside the Hartford coverage territory.

Second, even if coverage did or could exist under the Hartford policies,[15] the policies would provide only excess coverage for the ETSI claims.  Under Pennsylvania law, policies covering a specific risk apply before insurance applicable to a more general risk, *i.e.* a general liability policy.  *See Blue Anchor Overall Co. v. Pa. Lumbermens Mut. Ins. Co.*, 385 Pa. 394, 399-400, 123 A.2d 413, 416 (1956) ("in Pennsylvania the rule is clear that where there are

---

[15]    Actually, since neither ETSI declaration is alleged to have been made during the second Hartford policy period (*i.e.*, from 12/22/04 to 12/22/05) none of the ETSI claims can implicate coverage under the second year of Hartford's policies.

33

specific and blanket policies covering the damaged property, the specific policies must pay in full, and if they are not sufficient to cover the loss, the blanket policies pay the difference up to the amount of the policies"). Thus, Pennsylvania courts have held a CGL and a professional liability policy did not constitute "other insurance" for purposes of an "other insurance" clause since the policies insure distinct risks. *Pacific Indem. v. Linn*, 766 F.2d 754, 767 (3d Cir. 1985). As the Third Circuit noted, under Pennsylvania law, "other ... insurance exists only where there are two or more insurance policies covering the same interest, the same subject matter and [insuring] against the same risk." *Id.* (citing *Blue Anchor*, 385 Pa. at 400, 123 A.2d at 415).

Here, InterDigital has several other policies to which the Hartford policies appear to be excess.[16] American International Specialty Lines Insurance Company ("AISLIC") issued a series of ProTech Modular Edition Insurance Policies to InterDigital which, *inter alia*, provide certain claims-made coverage, including a duty to defend, to InterDigital for wrongful acts committed or omitted in the performance of InterDigital's professional services. ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████

Since the Hartford policies insure against a risk distinct from the liability covered by the claims-made policies, the Hartford policy is not "other insurance" to the claims-made policies. "[I]n Pennsylvania the rule is clear that where there are specific and blanket policies covering the damages property, the specific policies must pay in full, and if they are not sufficient to cover the loss, the blanket policies pay the difference up to the amount of the policies." *See Blue Anchor Overall Co.*, 385 Pa. at 399-400. The same situation exists here. The Hartford CGL policies are

---

[16]    Hartford can only say "appear" because discovery concerning InterDigital's other insurance has not been completed. Hartford again renews its request for discovery.

commercial general liability policies which provide coverage for certain general risks. Alternatively, the AISLIC policies provide coverage for a specific risk. As such, the Hartford policies are excess the AISLIC policies. At a minimum, ████████████████████ ███████████████████████████████████, Hartford's policy is excess of that AISLIC policy and Hartford has no duty to defend.

InterDigital also purchased Foreign Commercial General Liability Coverage through the Insurance Company of the State of Pennsylvania. *See* Ex. K hereto. Pursuant to one such policy effective December 22, 2003 to December 22, 2004, InterDigital was provided certain coverage for "personal and advertising injury" caused by an offense with the "coverage territory" of such policy, which territory was defined as "anywhere in the world ... but excluding: a. The United States of America ... ." (App. 448). Since this international CGL coverage insures personal and advertising injury committed outside the United States (precisely the territory excluded from the Hartford policies), Hartford's policies also apply in excess of the international policies – at least as to the ETSI claims. *See Blue Anchor, supra.*

Third, coverage for the second ETSI statement is precluded by the prior publication exclusion for the reasons previously noted. The second ETSI statement was merely a continuation of InterDigital's allegedly bad faith campaign and merely repeated false, bad faith claims of essentiality when InterDigital allegedly had no basis for doing so. The fact that a some additional patents were added to the second ETSI statement should not allow InterDigital to otherwise create coverage that would not exist. Courts, albeit in the context of applying the sudden and accidental exception to the pollution exclusion, have looked to the overall nature of the underlying allegations and ignored a single event when the basic allegation is one of a continual harm. *See, e.g., Hyde Athletic Indus. v. Continental Cas. Co.*, 969 F. Supp. 289, 298

(E.D. Pa. 1997) ("the possibility of a single discharge of chromium does not create an issue of fact on the duty to defend when the underlying 'complaints and related administrative allegations clearly portray a process of pollution occurring over a period of years'") (quoting *Northern Ins. Co. of New York v. Aardvark Assoc., Inc.*, 942 F.2d 189, 195 (3d Cir. 1991)).

### d.    Licensing statements

The licensing statements made by InterDigital to Nokia cannot create any possibility of coverage.  First, although those statements have been incorporated into the FAC by virtue of the FAC incorporating Nokia's Second Statement, ████████████████████████ InterDigital has refused to produce the licensing presentations to Hartford, ████████████ ████████████.  *See* 1/4/08 letter (Ex. L hereto) (App. 468).  InterDigital has failed to produce all materials relevant to its claim and has failed to sustain its burden of proving coverage (including, whether the presentations were made during the Hartford policy periods).

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████

Second, those statements having allegedly been made *to Nokia* cannot form the basis for a claim of disparagement.  Statements made to the claimant do not, and cannot, support a claim for defamation or disparagement.  *See, e.g., Neurotron, Inc. v. Medical Serv. Assoc. of Pa., Inc.*, 254 F.3d 444, 448 (3d Cir. 2001) ("commercial disparagement" and "injurious falsehood" refer to claims involving the "publication" of a disparaging statement concerning the business of another); *Astoria Indus. of Iowa, Inc. v. SNF, Inc.*, 223 S.W.3d 616, 624 (Tex. App. 2007) ("[a] business disparagement claim and a false advertising claim are similar in some respects to a

36

defamation claim. All three claims involve the imposition of liability for injuries sustained by the plaintiff through publications to third parties of false statements of fact."); *see also* Restatement (Second) of Torts § 630 (1977) ("publication" refers to the communication of an injurious falsehood to "someone other than the person whose interest is affected").

Perhaps recognizing this, Nokia's claims for injurious falsehood (Delaware law), commercial disparagement (Pennsylvania law) and business disparagement (Texas law) are all based on InterDigital having "published false statements through its declarations to ETSI." *See* FAC at ¶¶113, 121, 129 (ID. App. 192-94). *None* of these claims are based on the licensing presentations to Nokia.

Finally, 

## 2. Either InterDigital has failed to sustain its burden of proving coverage or Hartford should be permitted to look outside the pleadings to deny a defense where facts material to coverage, but immaterial to the *Nokia* action, demonstrate that there is no potential for coverage

To the extent that the Court finds that the Complaint or FAC do not sufficiently describe when and where InterDigital's false and misleading statements were made, InterDigital's motion should be denied for two reasons. First, InterDigital, being the insured, has the burden of proving coverage. *Miller v. Boston Ins. Co.*, 420 Pa. 566, 575, 218 A.2d 275, 277 (1966). To the extent that the Complaint or FAC do not allege when or where statements were made, and

37

thus do not allege a claim potentially within the Hartford "coverage territory" or Hartford policy period, InterDigital has failed to sustain its burden of proof.

Second, with all due respect to this Court's Nov. 29, 2007 Opinion (D.I. 76), Hartford should be able to complete discovery and to deny any duty to defend based upon facts material to coverage, but immaterial to the *Nokia* action. *See* Fed. R. Civ. P. Rule 56(f); *Anderson v. Liberty Lobby*, 477 U.S. 242, 246 n.5 (1986) (summary judgment is not available "where the nonmoving party has not had the opportunity to discover information that is essential to his opposition").

While a number of Pennsylvania courts have stated that the duty to defend is to be determined "solely" by looking to the complaint, Hartford respectfully contends that the "four corners" rule does not, and/or should not, preclude an insurer from looking outside the pleadings to ascertain facts *material to coverage **but** immaterial to the underlying litigation* – such as, here, whether any alleged offense occurred in the coverage territory, and whether any alleged statement was made, or first made, outside the policy period.

Pennsylvania courts recognize that a duty to defend may cease to exist if the underlying claims can be confined to uncovered claims. *See QBE Ins. Group v. M&S Landis Corp.*, 915 A.2d 1222, 1225 (Pa. Super. 2007) ("insurer's obligation to defend … 'is fixed solely by the allegations in the underlying complaint. … the insurer must defend its insured until the claim is confined to a recovery the policy does not cover'"). Certainly, a duty to defend will cease if the court dismisses the potentially covered claims. Similarly, if a claimant dismisses, settles or agrees not to pursue certain claims, one would expect that the insurer's duty to defend (assuming one existed in the first instance) would not continue. Unfortunately, Pennsylvania courts have not addressed many such instances and thus have not fully detailed when or how "the claim is confined to a recovery the policy does not cover."

Courts in other jurisdictions that also apply a four corners rule, however, have addressed this question further, and ruled that a duty to defend may be terminated based on something other than an amendment to the pleadings. *See, e.g., Dairy Road Partners v. Island Ins. Co., Ltd.*, 92 Hawai'i 398, 992 P.2d 93, 113 (2000) ("A limited exception to the majority [four corners] rule described above has been recognized by several jurisdictions, ***which allow an insurer to rely upon extrinsic facts to disclaim liability only when the relevant facts 'will not be resolved by the trial of the third party's suit against the insured*.'") (emphasis added).

To the extent that InterDigital has argued that Pennsylvania courts will not look beyond the face of the underlying complaint, InterDigital ignores both:  (a) those Pennsylvania decisions which hold that a duty to defend may terminate in certain instances. *See, e.g., QBE Ins. Group, supra; see also Upright Material Handling, Inc. v. Ohio Cas. Group*, 74 Pa. D. & C. 4th 305, 324 (Lacka. Cty. 2005) (insurer "carried the duty to defend until it met its burden of proving the applicability of its exclusion"); and (b) those Pennsylvania decisions which have looked beyond the original pleading to terminate a duty to defend. *See, e.g., Charter Oak Fire Ins. v. Sumitomo Marine & Fire Ins.*, 750 F.2d 267, 272 (3d Cir. 1984) (holding that by presenting the pretrial statement from the plaintiff, the insurer had confined the claim sufficiently so that it had no duty to defend the insured); *West Am. Ins. Co. v. Lindepuu*, 128 F. Supp. 2d 220, 229-31 (E.D. Pa. 2000) (following *Charter Oak*, and allowing insurer to rely upon subsequent filings and discovery disclosures to terminate duty to defend when insurer can establish that the facts of record support only claims that fall outside the policy's coverage); *St. Paul Fire & Marine Ins. Co. v. Appalachian Ins. Co.*, 1988 WL 124605, *2 (E.D. Pa. Nov. 18, 1988) ("I conclude from *Charter Oak* that if an insurer can produce an admission from the plaintiff in the underlying action which narrows the scope of the complaint to the point where the insurer no longer could

39

be liable to indemnify the insured, then the insurer may terminate its defense.  It may be that something less than an admission would justify terminating its defense.").

If a duty to defend can end sometime after the filing of a complaint, certainly some evidence other than just the underlying complaint may be considered.  Hartford respectfully requests that the Court reconsider its prior ruling that Hartford may not conduct discovery to ascertain the extent to which such evidence exists as well as the Court's ruling that only the underlying complaints may be considered to determine whether Hartford has a duty to defend.

To the extent that this Court stated in its Nov. 29, 2007 Opinion (D.I. 76) that "the Court agrees with InterDigital that discovery regarding where and when the offenses alleged in Nokia's complaint occurred will likely overlap with and implicate matters that may be resolved by trial in the *Nokia* action" (*id.* at 9), Hartford has been deprived of the opportunity to test InterDigital's claim.  The Court should not make any finding concerning what will or may be at issue in the *Nokia* action until Hartford is first permitted discovery concerning the pleadings and discovery in the *Nokia* action so Hartford can determine what, if any, facts are or are not truly in dispute in the *Nokia* action and thus fully respond to InterDigital's contention and the Court's conclusion.  Based on the limited information Hartford has been able to glean from PACER and from the limited discovery provided by InterDigital, Hartford suspects that there may not be any real disputes about when and where InterDigital made its allegedly injurious statements.

V.    **CONCLUSION**

InterDigital's Motion for Partial Summary Judgment should be denied, Hartford's Cross-Motion for Summary Judgment should be granted,[17] and the Court should declare that Hartford had and has no duty to defend either Nokia's original Complaint or its Amended Complaint.

---

[17]    Hartford has concurrently filed a Motion for Leave to file its proposed Cross-Motion for Summary Judgment.

40

Respectfully submitted,

**WHITE AND WILLIAMS**

Attorneys for Plaintiffs, Hartford Fire
Insurance Company and Hartford Casualty
Insurance Company


By:    /s/  James S. Yoder
       James S. Yoder, Esquire
       White and Williams LLP
       824 N. Market Street - Suite 902
       Wilmington, DE  19899-0709
       (302) 654-0424

       and

       Gale White, Esquire
       Anthony L. Miscioscia, Esquire
       White and Williams LLP
       1800 One Liberty Place
       Philadelphia, PA  19103-7395
       Tel. No. (215) 864-6234/6356


Sealed Version Dated: January 8, 2008
Public Version Dated: January 11, 2008

41

## CERTIFICATE OF SERVICE

I, James S. Yoder, Esquire, hereby certify that I have caused a true and correct copy of

the Public Version of Hartford Fire Insurance Company and Hartford Casualty Insurance

Company's Brief in support of Harford's Cross-Motion for Summary Judgment and in

Opposition to InterDigital's Motion for Partial Summary Judgment to be filed electronically and

thereby served, this date, upon the following:

Arleigh P. Helfer, III, Esquire
Steven Mathes, Esquire
Hoyle, Fickler, Herschel & Mathes LLP
Suite 1500
One South Broad Street
Philadelphia, PA 19107-3418
*Counsel for InterDigital*
*Communications Corporation and*
*InterDigital Technology Corporation*

Richard L. Horwitz, Esquire
Jennifer C. Wasson, Esquire
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
*Counsel for InterDigital Communications*
*Corporation and InterDigital Technology*
*Corporation*


WHITE AND WILLIAMS LLP


_____/s/ James S. Yoder_____
James S. Yoder


Date: January 11, 2008

PHLDMS1 3863600v.1