**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

HARTFORD FIRE INSURANCE )
COMPANY, et al., )
           )
          Plaintiffs, )      C.A. No. 06-422-JJF
           )
      v. )
           )
INTERDIGITAL COMMUNICATIONS )
CORPORATION, et al., )
           )
          Defendants. )

## REPLY BRIEF OF INTERDIGITAL COMMUNICATIONS CORPORATION AND INTERDIGITAL TECHNOLOGY CORPORATION IN FURTHER SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY

Richard L. Horwitz (#2246)
Jennifer C. Wasson (#4933)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
jwasson@potteranderson.com

OF COUNSEL:

Stephen J. Mathes
Arleigh P. Helfer III
Stacy B. Heenan
HOYLE, FICKLER, HERSCHEL &
    MATHES LLP
One South Broad Street - Suite 1500
Philadelphia, PA 19107
(215) 981-5700

*Attorneys for Defendants*
*InterDigital Technology Corporation and*
*InterDigital Communication Corporation*

Dated: February 12, 2008
848166 / 30373

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... ii

I.   ARGUMENT ..................................................................................................... 1

    A.   Under Pennsylvania Law Hartford Must Defend InterDigital Against
        Nokia's Claims That Potentially Fall Within The Coverage Of
        Hartford's Policies ......................................................................................... 1

    B.   Hartford Has Not Established That Coverage Is Barred By The
        "Knowing Violation Of Rights Of Another" Or "Material Published
        With Knowledge Of Falsity" Exclusions ..................................................... 2

        1.   Hartford's Cases Do Not Eliminate The Possibility Of A
            Covered Claim ................................................................................... 2

        2.   Nokia Seeks To Establish Bad Faith Without Proof Of
            Intentional Conduct .......................................................................... 7

    C.   Hartford Has Not Established That The Claims In The Underlying
        Nokia Lawsuit Are Excluded By The Violation Of Intellectual
        Property Rights Exclusion ............................................................................ 9

    D.   There Are Potentially Covered Claims Within The Relevant Hartford
        Policies' Coverage Periods And Territories ............................................... 13

        1.   The Alleged Violations Concerning The ETSI Declarations
            Occurred In The Hartford Coverage Territory ................................ 14

        2.   Statements Made About The Essentiality Of Interdigital's
            Patents To 3G Practice In 2004 Are Not Excluded By The
            Prior Publication Exclusion ............................................................ 16

        3.   Nokia's Allegations Constitute "Advertising Injury" ....................... 16

    E.   The Hartford CGL Policies Are Not Excess ................................................ 17

    F.   Additional Discovery Is Not Warranted .................................................... 18

II.  CONCLUSION ................................................................................................. 18

## TABLE OF AUTHORITIES

### FEDERAL CASES

**PAGE**

*Air Prods. & Chems., Inc. v. Hartford Accident & Indem. Co.,*
   25 F.3d 177 (3d Cir. 1994)............................................................................1, 2, 10

*Amquip Corp. v. Admiral Ins. Co.,*
   No. Civ. A. 03-4411, 2005 WL 742457 (E.D. Pa. March 31, 2005) ....................5, 6

*Canal Ins. Co. v. Underwriters at Lloyd's London,*
   435 F.3d 431 (3d Cir. 2006)...........................................................................1, 2, 10

*Frog, Switch & Mfg. Co. v. Travelers Ins. Co.,*
   193 F.3d 743 (3d Cir. 1999)..........................................................................4

*Globetrotter Software, Inc. v. Elan Computer Group,*
   362 F.3d 1367 (Fed. Cir. 2004).....................................................................8

*I.C.D. Indus., Inc. v. Federal Ins. Co.,*
   879 F. Supp. 480 (E.D. Pa. 1995) ................................................................4

*Int'l Commc'n Materials, Inc. v. Employer's Ins. of Wausau,*
   C.A. No. 94-1789, 1996 WL 1044552 (W.D. Pa. May 29, 1996)..........................16

*ISCO Int'l, Inc. v. Conductus, Inc.,*
   279 F. Supp. 2d 489 (D. Del. 2003)...............................................................8, 9, 15

*Mikohn Gaming Corp. v. Acres Gaming, Inc.,*
   165 F.3d 891 (Fed. Cir. 1998).......................................................................7

*Molecular Bioproducts Inc. v. St. Paul Mercury Ins. Co.,*
   Civ. A. No. 03-0046, 2003 WL 23198852 (S.D. Cal. July 9, 2003). ................12, 13

*Noble Fiber Technologies, LLC v. Argentum Med., LLC,*
   Civ. A. No. 3:05-CV-1855, 2006 WL 1793219 (M.D. Pa. June 27, 2006)...............8

*Two Bros. Scotto, Inc. v. SDG Macerich Props., L.P.,*
   Nos. Civ. A. 99-5485, 99-6395, & 99-6398,
   2000 WL 1052017 (E.D. Pa. July 24, 2000) .........................................................5

*Zenith Electronics Corp. v. Exzec,*
   182 F.3d 1340 (Fed. Cir. 1999)......................................................................7

## STATE CASES

*Commonwealth of Pennsylvania v. Manor Mines, Inc.,*
   565 A.2d 428 (Pa. 1989) ...........................................................................5

*Gene's Restaurant, Inc. v. Nationwide Ins. Co.,*
   548 A.2d 246 (Pa. 1988). ........................................................................2

*Madison Constr. Co. v. Harleysville Mut. Ins. Co.,*
   735 A.2d 100 (Pa. 1999) ........................................................................11

*Roman Mosaic & Tile Co. v. Aetna Cas. & Sur. Co.,*
   704 A.2d 665 (Pa. Super. Ct. 1997) .....................................................12

*Santiago v. Pennsylvania Nat'l Mut. Cas. Ins. Co.,*
   613 A.2d 1235 (Pa. Super. Ct. 1992) .....................................................5

*Sutton v. Commonwealth of Pennsylvania,*
   641 A.2d 34 (Pa. Commw. Ct. 1994) .....................................................5

*United Services Auto. Ass'n v. Elitzky,*
   517 A.2d 982 (Pa. Super. Ct. 1986)) ..................................................3, 4

## RULES

Fed. R. Civ. P. 15(b) ...................................................................................5

## MISCELLANEOUS

James W. Moore, *Moore's Federal Practice* § 15.18(1) ...............................5

6A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1493 ....................5

InterDigital respectfully submits this Reply Brief in further support of its Motion for Partial Summary Judgment.

## I.  ARGUMENT

### A.  Under Pennsylvania Law Hartford Must Defend InterDigital Against Nokia's Claims That Potentially Fall Within The Coverage Of Hartford's Policies

Although InterDigital's opening brief discussed applicable Third Circuit decisions -- *Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431 (3d Cir. 2006); *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 743 (3d Cir. 1999); *Air Prods. & Chems., Inc. v. Hartford Accident & Indem. Co.*, 25 F.3d 177 (3d Cir. 1994) -- Hartford has failed to address these cases. These Third Circuit precedents establish that an insurer must defend its insured against claims that potentially fall within the coverage of its policy until that possibility is totally extinguished. Instead, Hartford urges this Court to apply "a common sense perspective," which Hartford points out means that "it is not the actual details of the injury, but the *nature of the claim* which determines whether the insurer is required to defend." (Hartford Opp'n Br. at 7 (D.I. 78) (emphasis in original).) Because the claims here are a Lanham Act claim in Nokia's original complaint and a Lanham Act and various state unfair competition and disparagement claims in Nokia's First Amended Complaint ("FAC"), even Hartford's "common sense perspective" would seem to confirm that it is the requisite elements of these causes of action that must be considered in adjudicating Hartford's duty to defend, a view of the law consistent with InterDigital's right to a defense.

The primary thrust of Hartford's argument is that its policy exclusions prevent coverage. But, as discussed in InterDigital's opening brief, to the extent an insurer relies upon policy exclusions to avoid a duty to defend, the burden is on the insurer to demonstrate, without recourse to extrinsic evidence, that the exclusions bar all possibility that any claim could

potentially fall within the scope of the policy's coverage. *See Canal Ins. Co.*, 435 F.3d at 435; *Air Prods. & Chems., Inc.*, 25 F.3d at 179. If it is not clear from the face of the complaint whether an exclusion bars all coverage, then the insurer is required to defend. *See Air Prods. & Chems., Inc.*, 25 F.3d. at 180. Moreover, policy exclusions must be strictly construed against the insurer. *See Canal Ins. Co.*, 435 F.3d at 435. As explained below, analysis of Hartford's policy and Nokia's complaints leads to the conclusion that Hartford must defend InterDigital in the underlying case.

**B.     Hartford Has Not Established That Coverage Is Barred By The "Knowing Violation Of Rights Of Another" Or "Material Published With Knowledge Of Falsity" Exclusions**

Hartford argues that the Nokia complaints trigger policy exclusions for 1) offenses committed with the expectation of inflicting "personal and advertising" injury and 2) publication of false material with knowledge of its falsity. (*See* Hartford Opp'n Br. at 16-25 (D.I. 78).) Hartford's argument is premised on an impermissible, restrictive reading of the allegations of the complaints that ignores that the federal rules provide for notice pleading, not fact pleading. Moreover, Hartford principally relies on state cases that are based on coverage disputes involving intentional torts, which are dissimilar to the claims of unfair competition and disparagement that Nokia makes in the underlying lawsuit, all of which Nokia contends can be proven by less than intentional conduct. Hartford also misconstrues the "bad faith" element that applies in certain contexts involving statements made by patent holders, contending that it can only be established by showing "knowingly false misconduct." (*Id.* at 19.)

**1.     Hartford's Cases Do Not Eliminate The Possibility Of A Covered Claim**

The principal case Hartford relies upon is *Gene's Restaurant, Inc. v. Nationwide Insurance Co.*, 548 A.2d 246 (Pa. 1988). *Gene's Restaurant* involved an underlying state court

2

case in which the insured restaurant faced a claim brought by a patron, who alleged that the restaurant's employees willfully and maliciously beat her, "striking her with fists and with great force and violence repeatedly shook, cast and threw the said plaintiff to the ground" causing the alleged injuries. *Id.* at 247. The restaurant notified its insurer of the claim, and the insurer refused to defend on the basis that the complaint did not allege an "occurrence" within the meaning of the policy, which defined "occurrence" to mean an "accident." *Id.* The Pennsylvania Supreme Court held that courts should look to the allegations of the complaint in determining whether coverage is triggered. *Id.* at 246-47. Because the underlying complaint only alleged injury resulting from intentional battery, and because the court observed that a "malicious, willful assault and beating could never be" an accident, there was no possibility of a recovery for an accident and, therefore, no coverage. *Id.* at 247 & n.1. Significantly, however, to the present case, the Pennsylvania Supreme Court was careful to declare that cases in which liability could rest on reckless conduct as well as intentional conduct, as in a case alleging malicious defamation, may trigger coverage. *See id.* at 247 n.1 (citing *United Services Auto. Ass'n v. Elitzky*, 517 A.2d 982 (Pa. Super. Ct. 1986)).

In *Elitzky*, the court addressed a coverage dispute that arose from a case brought by a judge who alleged that the insureds maliciously defamed him and intentionally caused him emotional distress. *See Elitzky*, 517 A.2d at 984. The plaintiff alleged that the defendants made various defamatory statements that they knew were false, or that they were made recklessly. *Id.* The insurer denied coverage on the theory that the insureds expected or intended to injure the underlying plaintiff. The court observed, however, that the plaintiff in the underlying case "can recover on his libel claim even if the Elitzkys thought their claims were true if that belief was in reckless disregard of the truth." *Id.* at 989. Accordingly, the court held the plaintiff could

3

potentially recover even if he failed to prove that the defendants intended to harm him. *Id.* The court, using language applicable to the present case, noted that "[a]s long as the complaint comprehends an injury which may be within the scope of the policy, the company must defend the insured . . . ." *Id.* The court also observed that a cause of action for intentional infliction of emotional distress could be established through proof of reckless conduct, even though the plaintiff alleged the defendants acted intentionally. *Id.* at 990. Consequently, the court concluded that because the plaintiff might amend his complaint at a later time to conform to such proof, the complaint clearly comprehended injuries that could not be excluded from coverage by the policy's intended injury clause. *Id.*

Federal courts have used a similar analysis. *See, e.g., Frog, Switch & Mfg. Co.*, 193 F.3d at 746; *I.C.D. Indus., Inc. v. Federal Ins. Co.*, 879 F. Supp. 480, 489 (E.D. Pa. 1995). In *Frog, Switch*, the Third Circuit observed that when the underlying complaint alleges intentional conduct but proof of negligent or reckless conduct would trigger coverage and show liability, then the complaint should be treated as setting forth facts that require coverage. *Frog, Switch & Mfg. Co.*, 193 F.3d at 746 & n.2. The court in *I.C.D. Industries, Inc.*, similarly observed:

> It is one thing to conclude that an insurer owes a defense to its insured where proof of negligence or recklessness would permit a recovery *although the complaint against the insured contains allegations of intentional conduct.* . . . It is quite another altogether, however, to suggest that the insurer is obligated to defend the insured on the basis of the mere possibility that at some point in the future *an entirely different cause of action* relying on separate evidence and *requiring the proof of very different elements* may be pursued against the insured.

879 F. Supp. 480 at 489 (emphasis added). In other words, the "overstatement of a claim or the hyperbole of the pleader should not control whether an insured is entitled to a defense." *Id.* (quoting *Safeguard Scientifics v. Liberty Mut. Ins. Co.*, 776 F. Supp. 324, 330 (E.D. Pa. 1991)).

In relying on Pennsylvania state decisions, Hartford also ignores the difference between fact pleading in Pennsylvania state courts and notice pleading in federal courts. Pennsylvania's procedural rules establish it as a fact pleading jurisdiction. *See Santiago v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 613 A.2d 1235, 1238-39 (Pa. Super. Ct. 1992) (noting pleader must define the issues and set forth the acts essential to that end in the complaint); *see also Two Bros. Scotto, Inc. v. SDG Macerich Props., L.P.*, Nos. Civ. A. 99-5485, 99-6395, & 99-6398, 2000 WL 1052017, at *7 (E.D. Pa. July 24, 2000) (noting that, unlike Pennsylvania procedural rules, federal rules do not require claimant to set out in detail all the performances upon which the claim is based, so long as it gives fair notice of the claim).

Pennsylvania also adheres to a rule that a plaintiff must amend his complaint if he seeks to advance a new theory during trial. *See Commonwealth of Pennsylvania v. Manor Mines, Inc.*, 565 A.2d 428 (Pa. 1989); *Sutton v. Commonwealth of Pennsylvania*, 641 A.2d 34 (Pa. Commw. Ct. 1994). On the other hand, a federal court plaintiff is not required to amend its complaint to conform the complaint to the proof presented at trial. *See* Fed. R. Civ. P. 15(b)(2); *see also* 6A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1493 (2007); James W. Moore, *Moore's Federal Practice* § 15.18(1) (3d ed. 2007).

The effect of this distinction is apparent in cases such as *Amquip Corp. v. Admiral Insurance Co.*, No. Civ. A. 03-4411, 2005 WL 742457 (E.D. Pa. March 31, 2005). There, as here, the issue was whether the insured was entitled to a defense from its insurer under personal and advertising injury coverage. *Id.* at *4. The insurer argued that there was no coverage because the underlying complaint did not state a cause of action for defamation or commercial disparagement. *Id.* The insured argued that it was entitled to advertising injury coverage because the underlying complaint averred that the insured had disparaged the plaintiff's financial

5

condition and enticed customers to shun the plaintiff. *Id.* at *6. The court found the insured was entitled to a defense because the underlying complaint was brought in a notice pleading jurisdiction. *Id.* The court went on to explain "applying the liberal rules of notice pleading, we conclude that the conduct alleged by [the plaintiff] could, if proven, make out causes of action for deceptive trade practices and commercial disparagement. [The plaintiff's] failure to use the 'magic words' in citing the elements of defamation and disparagement does not relieve [the insurer] of its duty to defend. The substance of [the plaintiff's] claims are covered by the policy." *Id.*

Here, the underlying Nokia action was brought in federal court under the notice pleading system. As InterDigital explained in its opening brief, the underlying Nokia action includes an original complaint and an amended complaint that raise a number of causes of action that would permit recovery on a showing of less than intentional conduct. (*See* Opening Br. at 18-21 (D.I. 84).) The original complaint includes a Lanham Act count under which Nokia contends InterDigital may possibly be found liable without proof of knowledge of falsity or the expectation or intent to cause injury. Similarly, the FAC includes Lanham Act counts and state law counts that Nokia contends may give rise to liability on a showing of less than knowledge of falsity or intentional conduct, because Nokia expressly seeks to recover for InterDigital's statements it contends were wrong and which it claims InterDigital should have known were wrong. (*Id.* at 18-19.)[1]

---

[1] As explained in InterDigital's opening brief at pages 18 through 21 and 32 through 33, Nokia contends that its claims can be sustained without proof of knowledge of falsity if InterDigital should have known its statements were wrong: Nokia claims that it may establish bad faith, if it is necessary, based on "evidence that InterDigital knew *or should have known* that its ETSI declarations were 'false or misleading' at the time it made them." (Nokia Statement Pursuant to Second Discovery Order, p. 1 (App. 237) (emphasis added).)

2.    **Nokia Seeks To Establish Bad Faith Without Proof Of Intentional Conduct[2]**

As InterDigital previously pointed out, the decision in *Mikohn Gaming Corp. v. Acres Gaming, Inc.*, 165 F.3d 891 (Fed. Cir. 1998), stated that a showing of "incorrectness or falsity, *or disregard for either*, is required in order to find bad faith in the communication of information about the existence or pendency of patent rights." *Id.* at 897 (emphasis added).    Moreover, the Federal Circuit has stated that what constitutes "bad faith" is not clear cut and must be "determined on a case by case basis." *Zenith Electronics Corp. v. Exzec*, 182 F.3d 1340, 1354 (Fed. Cir. 1999).[3]  This Court has previously held in the underlying Nokia case that Nokia must prove bad faith, but the Court has not yet decided in the underlying case what constitutes bad faith.  Nokia has already contended that bad faith can be established by proof of disregard of the truth[4] or by "evidence that InterDigital knew *or should have known* that its ETSI declarations were 'false or misleading' at the time it made them." (Nokia Statement Pursuant to Second Discovery Order, p. 1 (App. 237) (emphasis added).)

In short, Nokia will try to prevail in the underlying case by demonstrating InterDigital made false statements recklessly or with disregard for their accuracy, claims which are not

---

[2] InterDigital emphasizes that it is not conceding that Nokia can prevail on this basis in the underlying case.  This analysis in this coverage case involves the arguable potential for Nokia to recover on a covered claim, irrespective of the positions InterDigital takes on the merits in the underlying case.

[3] As *Zenith* noted in its discussion of what might constitute bad faith, "Obviously, if the patentee knows that the patent is invalid, unenforceable, or not infringed, yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representations is made out.  Furthermore, statements to the effect that a competitor is incapable of designing around a patent are inherently suspect.  They are suspect not only because with sufficient effort it is likely that most patents can be designed around, but also because such a statement appears nearly impossible to confirm *a priori*.  For these reasons, the bad faith element may be much easier to satisfy for statements of this type." *Zenith*, 182 F.3d at 1354.  Thus, a knowing false statement makes out a clear case, but the particular details of each case may have a significant effect on what it takes to establish bad faith behavior.

[4] *See* Nokia's Br. Opp'n Mot. Summ. J. at 33 (D. Del. Civ. A. No. 05-16-JJF, D.I. 14).

excluded by Hartford's policy exclusions. Until this Court decides on a "case by case basis" what constitutes bad faith in Nokia's case, Hartford will have to defend InterDigital. It is only when Nokia's claim is confined to intentional misconduct that Hartford may invoke its knowledge of falsity or intentional misconduct exclusions.

Hartford claims that *Globetrotter Software, Inc. v. Elan Computer Group*, 362 F.3d 1367 (Fed. Cir. 2004), clarifies the bad faith standard announced in *Mikohn Gaming*. To the contrary, *Globetrotter Software* only affirms the *Mikohn* formulation of the bad faith standard, which requires that there must have been an objectively false statement before bad faith can be assessed. The other cases on which Hartford relies are also inapposite. *Noble Fiber Technologies, LLC v. Argentum Medical, LLC*, Civ. A. No. 3:05-CV-1855, 2006 WL 1793219 (M.D. Pa. June 27, 2006), addressed a motion to dismiss in a case where the plaintiff accused the defendant patent holder, among other things, of sending letters and e-mail messages to various third parties using plaintiff's technologies and telling them that plaintiff was infringing defendant's patents. The defendants moved to dismiss, claiming the plaintiff had made only conclusory allegations of bad faith and falsity. Because the complaint did not allege any facts demonstrating that the statements were false, or how the individual defendant would have possibly known they were false, the court dismissed the Lanham Act claim for failure to plead with the requisite specificity. Thus, this case sheds no new light on the bad faith standard discussed in *Mikohn Gaming* and *Zenith*.

Likewise, *ISCO International, Inc. v. Conductus, Inc.*, 279 F. Supp. 2d 489 (D. Del. 2003), does not demonstrate that *Mikohn Gaming* bad faith requires a showing of a knowing falsehood. The *ISCO* court considered post-trial motions for judgment as a matter of law. The jury had found against the plaintiff patent holder on unfair competition counterclaims. The

plaintiff claimed there was no evidence of bad faith presented to the jury which would support its verdict. The defendants argued that the plaintiff obtained a report during the litigation that suggested its invention was obvious (*i.e.*, suggesting that its patent was invalid), and, therefore, the defendants claimed the plaintiff made its statements concerning infringement "while knowing or *remaining deliberately ignorant* of the unenforceability of the . . . patent." *Id.* at 505 (emphasis added). The *ISCO* court agreed with plaintiff that the fact it had received the report and had learned of defendants' counterclaims was not sufficient by itself to establish bad faith given the posture and facts of that case. However, even *ISCO* acknowledges that bad faith must be determined on a case by case basis.

Significantly, in a discovery statement relevant to its original complaint and expressly incorporated by reference in the FAC, Nokia claims that it may establish bad faith, if it is necessary, based on "evidence that InterDigital knew *or should have known* that its ETSI declarations were 'false or misleading' at the time it made them." (Nokia Statement Pursuant to Second Discovery Order, at 1 (App. 237) (emphasis added).) Accordingly, Hartford has not carried its burden to prove that Nokia's possible recovery is confined to intentional misconduct in order to invoke the knowledge of falsity and expectation of injury exclusions as a bar to coverage.

C.    **Hartford Has Not Established That The Claims In The Underlying Nokia Lawsuit Are Excluded By The Violation Of Intellectual Property Rights Exclusion**

In response to InterDigital's arguments why the Infringement of Intellectual Property Rights exclusion ("IP exclusion") does not apply, Hartford mischaracterizes InterDigital's summary judgment arguments and the claims of the underlying lawsuit. Additionally, Hartford relies on inapposite decisional law. As the proponent of the exclusion, Hartford has failed to carry its burden to show, as a matter of law and without recourse to extrinsic evidence, that the

plain language of the exclusion bars all possibility that any claim in the underlying case could potentially fall within the scope of the policy's coverage. *See Canal Ins. Co.*, 435 F.3d at 435; *Air Prods. & Chems., Inc.*, 25 F.3d at 179.

The IP Exclusion, which appears in both of the Hartford GCL policies in the same language, states:

> This insurance does not apply to:
>
> i. Infringement of Intellectual Property Rights
>
> "Personal and advertising injury" arising out any [*sic*] violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

(Hartford Fire Cyberflex Endorsement Coverage B Exclusion 2.1 (App. 24, 27, 63, 68).) Contrary to Hartford's argument, Nokia's claimed injury does not arise out of any violation of intellectual property rights; instead, it arises from allegedly false or disparaging statements, which are completely independent of any violation of alleged IP rights. Indeed, to the extent that Nokia asserts a justiciable claim based on a violation of intellectual property rights (a point which InterDigital vigorously disputes), Nokia alleges that InterDigital was incorrect when it told the marketplace that its patents were essential to 3G mobile telephone standards. That is to say, Nokia claims it was injured precisely because InterDigital's patents are not essential, not because of any IP violation. The exclusion obviously is intended to bar IP claims made against InterDigital, but Nokia certainly is not alleging that InterDigital violated any of Nokia's intellectual property rights. (*See* Opening Br. at 30-31 (D.I. 84).)

Hartford relies on case law that construes the phrase "arising out of" to mean "causally connected with, not proximately caused by. 'But for' causation . . . ." (Hartford Opp'n Br. at 10 (D.I. 78).) However, far from supporting its argument, the cases Hartford cites actually support

10

InterDigital's position that Nokia's claimed injuries do not *arise out of* a violation of intellectual property rights. This is so because these cases interpret the phrase "arising out of" to require a causal connection between the plaintiff's injuries and the excluded activity. However, Nokia has never claimed that its injuries were caused by any IP violation. To the contrary, Nokia claims InterDigital's patents are not essential to 3G telephony and that its injury arises from InterDigital's allegedly false statements.

Hartford cites to *Madison Construction Co. v. Harleysville Mutual Insurance Co.*, 735 A.2d 100 (Pa. 1999). In that case, an insured subcontractor brought a declaratory judgment action to determine whether its insurer was obligated to defend it against claims brought by a worker who was injured when he fainted and fell after being overcome by fumes from a concrete sealer. *Id.* at 102. The central issue in the case was whether the pollution exclusion in the policy relieved the insurer of its duty to defend. *Id.* The exclusion barred coverage for "'[b]odily injury' or 'property damage' *arising out* of the . . . release or escape of pollutants . . . .'" *Id.* (emphasis added). The insured argued that the pollution exclusion did not bar coverage because the underlying plaintiff's negligence and failure to warn claims did not *arise out of* the release or escape of pollutants. *Id.* at 109. The court disagreed and held that the pollution exclusion did apply. *Id.* at 110. In so holding, the Pennsylvania Supreme Court interpreted the phrase "arising out of" in a policy exclusion to mean a cause and effect relationship between the excluded activity and the plaintiff's injuries. *Id.* Because the plaintiff's bodily injuries on which he was suing were caused by the release of a pollutant, the court found that the pollution exclusion barred coverage. In the case at hand, Nokia's claimed injuries were not allegedly caused by any violation of intellectual property rights. Therefore, under the Supreme Court's decision in *Madison Construction Co.*, the IP exclusion in the Hartford policy does not bar coverage.

11

Hartford also cites to *Roman Mosaic & Tile Co. v. Aetna Casualty & Surety Co.*, 704 A.2d 665 (Pa. Super. Ct. 1997). However, like the holding in *Madison Construction, Co.*, the holding in *Roman Mosaic* merely demonstrates that the interpretation of the phrase "arising out of" turns on whether there is a causal connection between the plaintiff's injuries and the activity in issue.

After citing these Pennsylvania cases, which are consistent with InterDigital's position, Hartford goes on to discuss a California case, *Molecular Bioproducts Inc. v. St. Paul Mercury Insurance. Co.*, Civ. A. No. 03-0046, 2003 WL 23198852 (S.D. Cal. July 9, 2003). (*See* Hartford Opp'n Br. at 14-15 (D.I. 78).) In *Molecular Bioproducts*, the insured sued its insurer, St. Paul, claiming St. Paul owed it a defense under its commercial general liability policy for counterclaims brought against it in an ongoing patent infringement dispute. *Id.* at *2-4. The court ruled that the policy's IP exclusion applied to bar coverage. *Id.* at *5. However, even a cursory a review of the *Molecular Bioproducts* case reveals that Hartford's characterization of the case is inaccurate.

Hartford argues that *Molecular Bioproducts* is "the only decision Hartford has located which addresses the scope of . . . [an] IP exclusion" similar to Hartford's. (*See* Hartford Opp'n Br. at 14.) However, the exclusion in *Molecular Bioproducts* is entirely different than the IP exclusion in this case. The IP exclusion at issue in *Molecular Bioproducts* stated:

> Intellectual property. [St. Paul will not] cover injury or damage or medical expenses that result from any actual or alleged infringement or violation of the following rights or laws:
>
> - Copyright.
> - Patent.
> - Trade dress.
> - Trade name.
> - Trade secret.

12

- Trademark.
- Other intellectual property rights or laws.

> *Nor will [St. Paul] cover any other injury or damage or medical expenses alleged in a claim or suit that also alleges any such infringement or violation.*

*Id.* at *1 (emphasis added). Unlike St. Paul's exclusion, Hartford's IP exclusion does not contain any language that precludes coverage for injuries alleged in a claim or suit *that also alleges* an IP violation. In explaining its holding, the court stated:

> The Court finds that the 'alleged in a claim' language establishes as a matter of law that Molecular is not entitled to a defense in the Porex action. The policy language is clear and explicit and is therefore dispositive. Here all of Porex's counterclaims are alleged in a suit *that also alleges violations of the patent laws*.

*Id.* at *5 (emphasis added). *Molecular Bioproducts* demonstrates, therefore, that if Hartford intended to exclude coverage for all claims in litigation that involves any intellectual property claims or counterclaims, it could have easily drafted a policy exclusion like St. Paul's.

## D. There Are Potentially Covered Claims Within The Relevant Hartford Policies' Coverage Periods And Territories

Hartford further contends that there is no coverage because all of the claims at issue in the Nokia action are either outside of its coverage territory, made outside of its policy period, or are barred by the policies' prior publication exclusions. What Hartford fails to acknowledge is that the potential for a recovery on *any* potentially covered claim is enough to trigger its duty to defend. In short, Hartford has not demonstrated that Nokia cannot recover on any claim within the territorial or temporal scope of the policy.

Hartford essentially makes three arguments. First, it contends that nothing concerning any InterDigital declaration of patents to ETSI comes within Hartford's coverage territory. Second, Hartford relies principally on materials that were incorporated by reference in Nokia's December 14, 2006 Statement Pursuant to Second Discovery Order, to argue that certain

13

statements were made outside of the relevant policy period of December 22, 2003 to December 22, 2005, or are barred by the prior publication exclusion. Third, Hartford claims that the alleged statements are not disparaging of Nokia and, therefore, do not constitute "advertising injury."

1.    **The Alleged Violations Concerning The ETSI Declarations Occurred In The Hartford Coverage Territory**

Nokia's FAC includes allegations concerning, but not limited to, two sets of declarations of patent essentiality that InterDigital made to ETSI, one in 2001 and the other in 2004. As InterDigital argued in its opening brief, the 2004 ETSI declarations are sufficient to create a covered claim within the policy period. (*See* Opening Br. at 21-26 (D.I. 84).) Hartford attempts, therefore, to argue that any claims in connection with the ETSI declarations are outside of the policies' coverage territories. (*See* Hartford Opp'n Br. at 33 (D.I. 78) ("[A]ny personal and advertising injury was committed outside the Hartford coverage territory.").)[5] This issue is of limited significance because Nokia has not limited its claims to InterDigital's ETSI statements, and in fact has indicated it relies on non-ETSI statements made by InterDigital to the marketplace.    As Hartford acknowledges, Nokia is attempting to prove its claims by InterDigital's statements in the marketplace other than through ETSI. (*See* Hartford App., Exhs. E & F.)  And as is reflected on the docket in the *Nokia* action, Nokia has supplemented and amended its Statement Pursuant to Second Discovery Order to include dozens of additional statements InterDigital is alleged to have made in the United States in press releases, in publications, and to the SEC.

---

[5] Hartford also claims that coverage for the 2004 ETSI declaration is barred by the prior publication exclusion of the policies. (*See* Hartford Opp'n Br. at 35-36 (D.I. 78).)  However, InterDigital's opening brief adequately explains why Hartford is misapplying the policy exclusion. (Opening Br. at 23 (D.I. 84).) Hartford has cited no case law in response to the cases InterDigital cited construing this ambiguous policy exclusion in favor of policyholders.

In any event, Hartford overlooks the elements of a Lanham Act claim, which require proof that the alleged false statements had entered interstate commerce. *See ISCO Int'l, Inc.*, 279 F. Supp. 2d at 504. Both of Nokia's Lanham Act counts depending on ETSI declarations allege that InterDigital made the statements at issue in interstate commerce. (Nokia FAC ¶¶ 48, 65 (App. 184, 187).) The information InterDigital transmitted to ETSI is made available to the public and the market via ETSI's Internet web page. Nokia specifically alleges that ETSI publishes all declared intellectual property rights "through a searchable database on its website." (Nokia FAC ¶¶ 29, 33 (App. 178).) The Hartford policies define "coverage territory" to include the entire

> world if the injury or damage arises out of: . . . "Personal and advertising injury" offenses that *take place through the Internet* or similar electronic means of communication provided the insured's responsibility to pay damages is determined in the United States of America . . . in a "suit" on the merits according to the substantive law in such territory . . . .

(Hartford GCL Pols. Sect. V.6.c. (App. 55-56, 76-77) (emphasis added).) Here, there can be no dispute that InterDigital's ETSI statements were published to the public and the market via ETSI's website per ETSI's declared policies.[6] To the extent InterDigital's declarations, whether through ETSI or otherwise, purportedly harmed Nokia in the market in the United States by misleading market participants about Nokia's products "made, used, sold, offered for sale, or imported into the United States," (Nokia FAC ¶¶ 54, 64 (App. 186, 187)), the "offenses" were only complete when the statements were disseminated into the United States, thereby bringing the alleged offenses within the Hartford coverage territory.

---

[6] Although the ETSI statement of policy is not incorporated by reference in the Nokia FAC, Hartford cites it as evidence of ETSI's location. The same statement of policies announces that ETSI makes all declarations available through its website.

2.    **Statements Made About The Essentiality Of InterDigital's Patents To
      3G Practice In 2004 Are Not Excluded By The Prior Publication
      Exclusion**

Hartford contends that the public statements of which Nokia complains are necessarily

barred by the "prior publication" exclusion of Hartford's policies, claiming chiefly that

InterDigital's statements were all part of a publicity campaign.    (Hartford Opp'n Br. at 35.)

However, in its opening brief, InterDigital previously offered decisional law that expressly held

that prior publication exclusions such as Hartford's only bar re-publication of *identical* material.

*See International Commc'n Materials, Inc. v. Employer's Ins. of Wausau*, C.A. No. 94-1789,

1996 WL 1044552, at *4 (W.D. Pa. May 29, 1996).    Because Nokia has not limited its claims to

InterDigital statements made in identical language prior to policy inception, the Hartford

exclusion does not apply.[7]

3.    **Nokia's Allegations Constitute "Advertising Injury"**

Finally, it bears mention that Hartford claims that none of the public statements identified

in documents incorporated in the Statement Pursuant to Second Discovery Order is specifically

disparaging or defamatory of Nokia or its products and therefore does not involve advertising

injury.    (*See* Hartford Opp'n Br. at 28, 32 (D.I. 78).)    This is a strange argument in the face of

Nokia's express allegations in the FAC that "InterDigital has used false or misleading

descriptions or representations in connection with . . . Nokia's products, [and] the applicability of

InterDigital's patents to Nokia's products," *see, e.g.*, Nokia FAC ¶ 48 (App. 184), and the FAC's

express causes of action for Injurious Falsehood, Commercial Disparagement, and Business

Disparagement.    (*See id.*, ¶¶ 112-136 (App. 192-94).)

---

[7] To the extent Hartford is relying on Nokia's earlier discovery statements, such reliance is
misplaced because those statements were given prior to full discovery.    Accordingly, the
principles discussed in Section B, *supra*, apply because Nokia could easily offer evidence of
additional non-identical statements made during that time period.

### E.    The Hartford CGL Policies Are Not Excess

Finally, Hartford argues that the fact that InterDigital has other insurance covering the same period renders the Hartford policies excess of those policies. (Hartford Opp'n Br. at 33-35.) One of these policies covers occurrences outside the United States, not claims like Nokia's that arise out of allegations of wrongdoing in the United States marketplace. (*See* Hartford App., Exh. K. (Hart. App. 434, 442).) The other policy was written by AISLIC, which has denied coverage. (Hart. App. 374.)

Nokia's complaints concern InterDigital's alleged disparagement of Nokia's goods in interstate commerce in the United States. (Nokia Compl., ¶¶ 7, 11, 15, App. Exh. A. (App. 3, 4, 6); Nokia FAC, ¶¶ 48, 65, App. Exh. F (App. 184, 187).) Disparagement (*i.e.*, advertising injury) claims are a specific risk the Hartford policies insure against. Hartford has not identified any policy that more specifically responds to such claims.[8]   Therefore, the legal principle Hartford relies upon, that policies responding to a specific risk should respond first, works against Hartford here where its policies are the most specific with respect to the product disparagement and "advertising" claims brought by Nokia.

Furthermore, the Hartford CGL policies contain an "Other Insurance" clause that purports to limit Hartford's obligations only where other valid and collectible insurance is available to the insured. (Hartford GCL Policies, App. Exh. B (App. 54, 75).) In that clause, the policy states: "If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers." (*Id.*) As Hartford knows and is undisputed,

---

[8] The AISLIC policies Hartford identifies as having paid InterDigital defense costs in this matter are Errors and Omissions policies, and AISLIC withdrew its defense in May 2006 upon determining that its policies did not respond to the original Nokia complaint. Thus, that policy is not responding. To the extent Hartford claims InterDigital has a policy that covers offenses only outside of the United States, such policies do not respond to alleged disparagement of Nokia's products in interstate commerce in the United States.

there is no other insurer defending. Therefore, according to its own policy language, Hartford's duty to defend is not in excess of any other carrier's duty.

**F.    Additional Discovery Is Not Warranted**

Hartford spends the last three pages of its brief repeating virtually verbatim arguments it made in opposing InterDigital's motion for leave to file its summary judgment motion and in trying to compel discovery. The Court has previously rejected those arguments, in which Hartford claimed it should be permitted to introduce extrinsic evidence in connection with the duty to defend analysis, and Hartford did not move for reconsideration.

**II.    CONCLUSION**

For the foregoing reasons and the reasons stated in InterDigital's opening brief, the Court should grant partial summary judgment on the issue of liability in InterDigital's favor.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Stephen J. Mathes
Arleigh P. Helfer III
Stacy B. Heenan
HOYLE, FICKLER, HERSCHEL &
    MATHES LLP
One South Broad Street - Suite 1500
Philadelphia, PA 19107
(215) 981-5700

Dated: February 12, 2008
848166 / 30373

By:    */s/ Jennifer C. Wasson*
Richard L. Horwitz (#2246)
Jennifer C. Wasson (#4933)
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, DE 19801
(302) 984-6000
rhorwitz@potteranderson.com
jwasson@potteranderson.com

*Attorneys for Defendants*
*InterDigital Technology Corporation and*
*InterDigital Communication Corporation*

18

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

### CERTIFICATE OF SERVICE

I, Jennifer C. Wasson, hereby certify that on February 12, 2008, the attached document was electronically filed with the Clerk of the Court using CM/ECF which will send notification to the registered attorney(s) of record that the document has been filed and is available for viewing and downloading.

I further certify that on February 12, 2008, the attached document was Electronically Mailed to the following person(s):

James S. Yoder
White & Williams LLP
824 N. Market Street, Suite 902
Wilmington, DE  19899
yoderj@whiteandwilliams.com

Anthony L. Miscioscia
Gale White
White and Williams LLP
1800 One Liberty Place
Philadelphia, PA  19103
misciosciaa@whiteandwilliams.com
whiteg@whiteandwilliams.com

By: */s/ Jennifer C. Wasson*
Richard L. Horwitz
Jennifer C. Wasson
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, Delaware 19899-0951
(302) 984-6000
rhorwitz@potteranderson.com
jwasson@potteranderson.com

743996